IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MELVIN HERRING,

                          Plaintiff,

                                              Civil Action No.
          v.                                  12-CV-1739 (GLS/DEP)

B. TABOR, Corrections Officer,

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR THE PLANTIFF:

Melvin Herring, *Pro Se*
96 A 2574
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13204

FOR THE DEFENDANT:

HON. ERIC T. SCHNEIDERMAN            LAURA SPRAGUE, ESQ.
New York Attorney General            Assistant Attorney General
The Capitol
Albany, New York 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Melvin Herring, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights. While

the claims asserted in plaintiff's complaint were originally more broad, following the issuance of an initial screening order by Chief District Judge Gary L. Sharpe, the sole remaining cause of action is an Eighth Amendment conditions of confinement claim asserted against the only remaining defendant in this case, Corrections Officer B. Tabor, arising out of defendant's order directing plaintiff and other inmates to clean an area of a correctional facility that, according to Herring, would expose him to human feces and urine.

In response to plaintiff's complaint, defendant has moved requesting its dismissal for failure to state a claim upon which relief may be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure. Defendant also asks the court to revoke plaintiff's *in forma pauperis* status, in the event his motion is denied. For the reasons set forth below, I recommend that plaintiff's *in forma pauperis* status remain intact, but conclude that plaintiff's complaint fails to state a claim upon which relief may be granted.

I.     BACKGROUND[1]

---

[1]     In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

Plaintiff is a prison inmate confined in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. (Dkt. No. 1). Although plaintiff is now imprisoned elsewhere, at all times relevant to the events giving rise to this action, he was housed at the Marcy Correctional Facility ("Marcy"). Plf.'s Resp. (Dkt. 19) at 1; Compl. (Dkt. No. 1) at ¶ 1.

While an inmate at Marcy, plaintiff was a member of the lawn and grounds work crew. Compl. (Dkt. No. 1) at ¶ 16. Prior to the date in question, plaintiff and the other lawn and grounds crew inmate members had not previously been made to clean the facility's Residential Mental Health Unit ("RMHU") recreational pens during plaintiff's nine-month tenure working on the crew. *Id*. at ¶ 67. In fact, the inmates working on this crew were routinely warned to stay away from the RHMU recreational pens because the inmates housed in that unit have the tendency to throw urine and feces out of their cell windows. *Id*. at ¶¶ 17, 67.

While the crew was working on the morning of July 17, 2012, defendant ordered plaintiff and other crew members to clean the RHMU recreational pens, stating as a reason the fact that a DOCCS Commissioner was visiting the facility and the pens needed to be cleaned before his arrival. Compl. (Dkt. No. 1) at ¶ 20. Just prior to receiving

defendant's order, plaintiff told defendant that the RHMU recreational pens smelled of both urine and feces. *Id*. at 19. Defendant denied smelling anything. *Id*. at ¶¶ 19, 63. Although other lawn and grounds crew members refused to follow defendant's directive, plaintiff complied out of fear of retaliation.[2] *Id.* at ¶¶ 20, 63.

Plaintiff was given plastic gloves to use while cleaning, and does not allege that any human waste touched his skin or any other part of his body in the process of cleaning the pens. *Id*. at ¶ 22. While inside the RMHU recreational pen, plaintiff disposed of a shirt that "had feces all over it" by placing it into a bag using his hand that was protected by the plastic glove. Compl. (Dkt. No. 1) at ¶ 22. According to plaintiff, the smell of human waste was so strong that he nearly vomited. *Id*. at ¶¶ 23, 59.

Although it is alleged that a fellow lawn and grounds crew member suffered open sores the day following the incident, plaintiff does not contend that he suffered any physical injury as a result of his compliance with defendant's order. *Id.* at ¶ 46. Instead, the complaint alleges only that plaintiff was "emotionally traumatized" by the incident. *Id.* at ¶ 12.

---

[2] Plaintiff's complaint alleges that those inmates in the lawn and grounds crew who refused to clean the RMHU recreational pens as directed were subsequently punished with disciplinary confinement in the facility's Special Housing Unit ("SHU"). Compl. (Dkt. No. 1) at ¶ 24.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint and application to proceed *in forma pauperis* ("IFP") on November 27, 2012. Compl. (Dkt. Nos. 1, 2). In his initial review of plaintiff's complaint, Chief Judge Sharpe granted plaintiff's motion to proceed IFP, and narrowed the scope of the action by dismissing all but a single claim against one defendant. Decision and Order (Dkt. No. 12) at 6-10. As a result of that initial order, only plaintiff's Eighth Amendment conditions of confinement claim, asserted against defendant B. Tabor, remains viable in this action. *Id.* at 12-13. Plaintiff's complaint seeks various forms of injunctive relief, as well as compensatory and punitive damages. Compl. (Dkt. No. 1) at ¶¶ 79-86.

In lieu of an answer, defendant filed a motion seeking dismissal of plaintiff's complaint arguing that it fails to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def's. Memo. of Law (Dkt. No. 18-1) at 4-5. In that motion, defendant also argues that, in the event the court denies his motion to dismiss, the court should revoke plaintiff's IFP status because he has accumulated three strikes for purposes of 28 U.S.C. 1915(g). *Id.* at 5-6. Plaintiff has responded in opposition to each of defendant's arguments. Plf.'s Resp. (Dkt. No. 19).

Defendant's motion, which has been fully briefed and is now ripe for determination, has been referred to me for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and rule 72.3(c) of the local rules of practice for this court. *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Plaintiff's IFP Status

In support of his motion, defendant argues that, pursuant to 28 U.S.C. § 1915(g), plaintiff's litigation history, which includes at least three merit-based dismissals, warrants revocation of his IFP status. Def.'s Memo. of Law (Dkt. No. 18-1) at 6. Plaintiff opposes that request, and argues that he had not yet accumulated three strikes when this suit was commenced. Plf.'s Resp. (Dkt. No. 19) at 10-11.

Section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil

rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d

Cir. 2007) (citing *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997));

*accord*, *Gill v. Pidlychak*, No. 02-CV-1460, 2006 WL 3751340, at *2

(N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and

recommendation by* Treece, M.J.). The prophylactic effect contemplated

under section 1915(g) is accomplished by requiring a prisoner who has

accumulated three strikes to engage in the same cost-benefit analysis

before filing suit as other civil litigants; that is, the provision forces inmates

to assess whether the result sought to be achieved justifies the filing fee

expenditure. *Tafari*, 473 F.3d at 443.

The Second Circuit has defined a frivolous claim as one that "lacks

an arguable basis either in law or in fact." *Tafari*, 473 F.3d at 442 (citing

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). To determine whether a

dismissal satisfies the failure-to-state-a-claim prong of section 1915,

courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for

guidance. *Tafari*, 473 F.3d at 442. The question of whether the dismissal

of a prior action constitutes a strike for purposes of section 1915(g) is a

matter of statutory interpretation, and as such a question for the court. *Id.*

The plaintiff in this case has previously filed two actions in federal

court in which he was granted IFP status. *Herring v. Madison*, No. 03-CV-0152 (N.D.N.Y. filed Jan. 15, 2003) ("*Herring I*"); *Herring v. Dep't of Corr.*, No. 08-CV-0101 (N.D.N.Y. filed Jan. 28, 2008) ("*Herring II*"). *Herring I* was dismissed as frivolous by visiting Senior District Judge Thomas Eisele on July 25, 2004. *Herring I,* 03-CV-0152, Order Dated July 25, 2004 (Dkt. No. 43). Defendant argues that this dismissal counts as plaintiff's first strike. Def.'s Memo. of Law (Dkt. No. 18-1) at 6. Plaintiff subsequently appealed the dismissal in *Herring I* to the Second Circuit ("*Herring I* appeal"); that appeal, however, was dismissed for failure to comply with a court order. *Herring I,* 03-CV-0152, Mandate Dated Jan. 14, 2005 (Dkt. No. 49). Defendant argues that this dismissal represents plaintiff's second strike. Def.'s Memo. of Law (Dkt. No. 18-1) at 6. *Herring II* was dismissed for failure to timely file an amended complaint in compliance with a decision and order finding the original complaint failed to state a cognizable claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Herring II*, No. 08-CV-0101, Judgment Dated Feb. 13, 2009 (Dkt. No. 15). Defendant argues that this constitutes plaintiff's third strike. Def.'s Memo. of Law (Dkt. No. 18-1) at 6.

The district court's dismissals in *Herring I* and *Herring II* fall well

within the definition of a strike under section 1915(g). Plaintiff's complaint in *Herring I* was dismissed as frivolous, a disposition that is expressly covered by section 1915(g). *Herring I*, 03-CV-0152, Order Dated Jul. 22, 2004 (Dkt. No. 43). Although *Herring II* was ultimately dismissed because plaintiff failed to avail himself of the opportunity to amend his complaint, plaintiff was afforded that opportunity only because all of the claims asserted in his original complaint lacked palpable merit. *Herring II*, No. 08-CV-0101, Memorandum-Decision and Order Dated Dec. 15, 2008 (Dkt. No. 14). Under these circumstances, the dismissal constitutes a strike for purposes of section 1915(g). *See Bermudez v. Rossi*, No. 07-CV-0367, 2008 WL 619170, at *3 (N.D.N.Y. Mar. 3, 2008) (Kahn, J.) (finding that one of the plaintiff's previously dismissed actions counted as a strike where the plaintiff had failed to file an amended complaint following the court's determination that the original complaint "lacked substantive sufficiency").

I cannot agree, however, that the dismissal of the *Herring I* appeal constitutes a third strike against plaintiff. Defendant relies on *Guarneri v. Wood*, No. 08-CV-0792, 2011 WL 4592209 (N.D.N.Y. Sept. 2, 2011) (Homer, M.J.), in arguing that a dismissal based on a failure to comply

9

with a court order may constitute a strike under section 1915(g).

Although it is true the court in *Guarneri* held that one of the plaintiff's previously dismissed actions for failure to prosecute constituted a strike for purposes of section 1915(g), I respectfully decline to follow that holding for three reasons. First, the court in *Guarneri* found that the plaintiff's dismissed action at issue (the potential third strike) for failure to prosecute counted as a strike because, at the time the action was dismissed, the plaintiff had "filed a complaint, four notices rejecting proposed amended complaints, an amended complaint, and multiple letter requests over the course of four years before the case was ultimately dismissed for failure to prosecute." *Guarneri*, 2011 WL 4592209, at *10. The court commented that the dismissed action "was not a temporarily infected case with remediable procedural or jurisdictional flaws but one close to Congress' intended policy behind the three-strike provision to prevent the tide of egregiously meritless lawsuits*." Id*. (internal quotation marks and alterations omitted) (citing *Tafari*, 473 F.3d at 443). In this case, the circumstances surrounding the Second Circuit's dismissal of plaintiff's appeal from *Herring I* are materially distinguishable. Specifically, the dismissal occurred not even six months after plaintiff filed his notice of

appeal, and, in dismissing the appeal, the Second Circuit did not comment on its merits.

Second, although *Guarneri* relied, in part, on *Bermudez* in finding that a previous dismissal based on a failure to comply with a court order may constitute a strike, the *Bermudez* court explicitly determined that the previous action at issue in that case was "essentially" dismissed for failure to state a claim upon which relief could be granted. *Bermudez*, 2008 WL 619170, at *3. Accordingly, to the extent that *Guarneri* relied on *Bermudez* for support of the proposition that a dismissal for failure to prosecute constitutes a strike, that reliance appears to have been misplaced.

Third, in light of the fact that the Second Circuit has not addressed the matter, I am inclined to follow those courts in this circuit that have declined to find that a dismissal for failure to prosecute or comply with a court order constitutes a strike under section 1915(g). *See*, *e.g.*, *Toliver v. Perri*, No. 10-CV-3165, 2011 WL 43461, at *1 (S.D.N.Y. Jan. 6, 2011); *Kalwasinski v. McCracken*, No. 09-CV-6295, 2009 WL 4042973, at *4 (W.D.N.Y. Nov. 19, 2009); *Harry v. Doe*, No. 09-CV-2342, 2009 WL

2152531, at *1 (E.D.N.Y. Jul. 17, 2009).[3]

In sum, because I find that plaintiff had accumulated only two strikes for purposes of section 1915(g) at the time this action was commenced, I recommend that his IFP status remain intact.[4]

### B.   Legal Standard Governing Motions to Dismiss Pursuant to Rule 12 (b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though

---

[3]      At least two other circuits have also ruled that an action dismissed for failure to prosecute does not constitute a strike under section 1915(g). *Torns v. Miss. Dep't of Corrs.*, 317 F. App'x 403, 404 (5th Cir. 2009); *Butler v. Dep't of Justice*, 492 F.3d 440, 443 (D. D.C. 2007); *but see O'Neal v. Price*, 531 F.3d 1146, 115 (9th Cir. 2008) (construing a district court's dismissal of an action "during the screening process for a reason enumerated in [28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2)(B) or 42 U.S.C. § 1997e(c)]" as a strike, "even if the district court styles such dismissal as denial of the prisoner's application to file the action without prepayment of the full filing fee").

[4]      As is discussed more fully below, I am recommending that plaintiff's complaint in this action be dismissed for failure to state a cognizable claim. The Second Circuit has held that courts should determine whether an inmate has accumulated three strikes only when the section 1915(g) issue is ripe for adjudication, instead of determining whether a dismissal constitutes a strike at the time of entering judgment on the dismissal. *See Deleon v. Doe,* 361 F.3d 93, 95 (2d Cir. 2004) ("[D]istrict courts should not issue these strikes one by one, in their orders of judgment, as they dispose of suits that may ultimately - upon determination at the appropriate time - qualify as strikes under the terms of [section] 1915(g)."). While I am bound to follow this admonition, I note that, in the event that my recommendation is accepted, and this action is ultimately dismissed for failure to state a claim, it could be argued that plaintiff will then have accumulated three strikes for purposes of section 1915(g).

unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal

conclusions. *Iqbal*, 556 U.S. at 678. For purposes of assessing the motion, the court may consider the complaint as well as any documents attached as exhibits or incorporated by reference. *Avent v. Doe*, No. 05-CV-1311, 2008 WL 877176 at *2 (N.D.N.Y. Mar. 31, 2008) (Scullin, J., adopting report and recommendation by DiBianco, M.J.) (citing *Dangler v. New York City Off Track Betting Corp.*, 193 F.2d 130, 138 (2d Cir. 1998)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551

14

U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

C.    Eighth Amendment Conditions of Confinement

Plaintiff's claim in this action is grounded in the Eighth Amendment. Herring alleges that, by instructing him to clean the RMHU recreation pens, defendant subjected him to a cruel and unusual punishment. *See generally* Compl. (Dkt. No. 1). In his motion, defendant argues that the conditions to which the plaintiff was exposed, even if unpleasant, did not rise to the level of a constitutional violation. *See generally* Def.'s Memo. of Law (Dkt. No. 18-1).

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a

maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958); *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)). While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and subjective requirement. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). As to the objective requirement, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs,'" *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 2985)); *see also Walker v. Schult*, __ F.3d. ___, No. 12-CV-1806, 2013 WL 2249159, at *4 (2d Cir. May 23, 2013) ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate

indifference*,'" Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Waldo*, 1998 WL 713809, at *2; *Davidson*, 920 F. Supp. at 308.

The Second Circuit has "long recognized that unsanitary conditions . . . can, in egregious circumstances, rise to the level of cruel and unusual punishment*." Walker*, 2013 WL 2249159, at *6. An inmates' exposure to human waste may, in extreme situations, satisfy the objective element of an Eighth Amendment analysis. *See*, *e.g.*, *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

In his complaint, plaintiff alleges that he was exposed to human feces when defendant ordered him to clean the recreational pen in the

RMHU. *See generally* Compl. (Dkt. No. 1). Plaintiff alleges he nearly vomited from the smell of human waste while inside the pen, and that he contacted human feces when he disposed of a shirt that "had feces all over it" by picking it up with his hand that was protected by a plastic glove and placing it into a bag. *Id.* at ¶¶ 22, 23. Although it is not clear from plaintiff's complaint precisely how long he was inside the pen, it is alleged that he entered after he completed his regular morning lawn and grounds work, and that the lawn and grounds crew members were back in their cells by "before 12:00 p.m." *Id.* at ¶¶ 18, 23.

These allegations, considered together, suggest only that plaintiff was exposed to human waste for, at most, a period of hours, and was ordered to dispose of a shirt that had human feces on it with gloved hands as part of his job on the lawn and grounds crew. Even liberally construed, and accepted as true, these facts do not plausibly suggest that plaintiff was exposed to conditions that created an "unreasonable risk to serious damage to his health." *Walker*, 2013 WL 2249159, at *4. *See Ortiz v. Dep't of Corr. of New York City*, No. 08-CV-2195, 2011 WL 2638137, at *9 (S.D.N.Y. Apr. 29, 2011) (dismissing the plaintiff's complaint where it alleged that the toilet in his cell overflowed on three separate occasions,

and the plaintiff was forced to remain in his cell on those occasions for "a relatively small amount of hours," including one incident where plaintiff awoke in the middle of the night to an overflow and was not moved until later that day); *Kee v. Hasty*, No. 01-CV-2123, 2004 WL 807071, at *26 n.24 (S.D.N.Y. Apr. 14, 2004) (finding that an allegation that the defendant permitted the plaintiff to "suffer[] in feces" was not sufficient to state an Eighth Amendment claim where the defendant permitted the plaintiff to use the restroom at least once during his restraint); *Odom v. Keane*, No. 95-CV-9941, 1997 WL 576088, at *4 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) (finding that the plaintiff's allegations that his cell was "unsanitary" and "did not have a working toilet" were insufficient to give rise to an Eighth Amendment claim where both "conditions were rectified by the end of the day"); *Evans v. Fogg*, No. 78-CV-5363, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) ("To be kept in a refuse-strewn cell for 24 hours and in a flood cell . . . for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment."); *but see Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (finding that the plaintiff's complaint stated an Eighth Amendment conditions of

confinement claim where it alleged, *inter alia*, that defendants knowingly permitted an area outside the plaintiff's cell "to remain filled with sewage and excrement for days on end"); *Wright v. McMann*, 387 F.2d 519, 522, 526 (2d Cir. 1967) (finding that thirty-three-day period of confinement in a strip cell which was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," combined with other conditions, was a violation of the Eighth Amendment); *Smith v. United States,* No. 09-CV-729, 2011 WL 777969 at *10 (N.D.N.Y. Feb. 3, 2011) (Homer, M.J.), *report and recommendation adopted by* 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011) (McAvoy, J.), (finding that the prison official's refusal to flush an outside-controlled cell toilet that caused the plaintiff to become ill after sewage backed up onto the cell floor satisfied the objective element).

I also find that plaintiff's complaint similarly fails to satisfy the subjective element of the controlling Eighth Amendment test. *See Walker*, 2013 WL 2249159, at *4 (holding that, to state an Eighth Amendment conditions of confinement claim, a plaintiff must allege that "the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety"). Plaintiff's complaint fails to allege

facts from which one could infer that defendant was aware of a substantial risk of serious harm resulting from potential contact with human waste. Plaintiff was provided with protective plastic gloves for use in removing the human waste in issue, and exposure to it was only for a brief amount of time. Compl. (Dkt. No. 1) at ¶ 22. In addition, plaintiff's complaint alleges that defendant did not smell anything when plaintiff complained of a smell outside the RHMU recreational pens. *Id.* at ¶¶ 19, 63. Additionally, plaintiff's letter to the DOCCS Inspector General, which is incorporated by reference in the complaint, acknowledges that plaintiff did not tell defendant about the feces-stained shirt. Compl. (Dkt. No. 1) at ¶ 38; Plf.'s Resp. Ex. C (Dkt. No. 19) at 19. Although it is alleged that the lawn and grounds crew was routinely warned to stay away from the recreational pens because of the risk that RHMU inmates might throw human waste out the windows, Compl. (Dkt. No. 1) at ¶¶ 17, 67, and a liberal reading of that allegation could give rise to an inference that defendant may have been aware that the pens contained human waste, this amounts to an allegation of only negligence. An allegation of negligence is insufficient to satisfy the subjective requirements of an Eighth Amendment claim. *See Farmer* 511 U.S. at 835 (describing subjective element as requiring "more

than mere negligence"). Accordingly, there are no facts alleged from which I may infer that defendant was aware that plaintiff contacted human waste or was at risk for doing so to the extent that it would create a risk of substantial harm.

Because I conclude that plaintiff's complaint fails to allege sufficient facts to satisfy either the objective or subjective element of the Eighth Amendment conditions of confinement analysis, I recommend that this claim be dismissed.

D.    Recovery of Compensatory Damages

Although I have recommended that plaintiff's Eighth Amendment claim be dismissed on other grounds, for the sake of completeness, I will briefly address defendant's argument that plaintiff is precluded from recovering compensatory damages. Def.'s Memo. of Law (Dkt. No. 18-1) at 5.

Pursuant to 42 U.S.C. § 1997e, "No Federal civil action may be brought by a prisoner confined in a . . . correctional facility[] for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Second Circuit has held that section 1997e(e) applies to all federal civil actions, including those

pursuant to 42 U.S.C. § 1983. *Thompson v. Carter,* 284 F.3d 411, 417-18

(2d Cir. 2002). As such, "[c]laims brought by prisoners pursuant to

[section] 1983 for . . . damages unrelated to any physical injuries are

subject to dismissal." *Shariff v. Coombe*, No. 96-CV-3001, 2002 WL

1392164, at *4 (S.D.N.Y. June 26, 2002). The absence of physical injury

does not totally bar civil rights claims by inmates, however, because

section 1997e(e) does not preclude claims for nominal damages, punitive

damages, or declaratory, or injunctive relief. *Shariff*, 2002 WL 1392164, at

*5.

Here, plaintiff's complaint is devoid of any allegation that he

experienced physical injury as a result of defendant's conduct giving rise

to this action. *See generally* Compl. (Dkt. No. 1.)  Accordingly, I

recommend dismissal of plaintiff's Eighth Amendment claim to the extent

that it requests an award of compensatory damages as relief.

    E.    <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal

reading of the complaint gives any indication that a valid claim might be

stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also*

Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). In this case, most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his pleading. Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning,'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to his claim, including the dates, times, and

places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

IV.    SUMMARY AND RECOMMENDATION

Although I find that plaintiff's IFP status should remain intact, I recommend that his complaint be dismissed because the allegations contained therein do not give rise to a cognizable Eighth Amendment conditions of confinement claim.

Based upon the foregoing, it is therefore hereby respectfully

RECOMMENDED that defendant's motion (Dkt. No. 18) seeking revocation of plaintiff's IFP status be DENIED, but that his motion (Dkt. No. 18) to dismiss be GRANTED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      July 1, 2013
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Anthony G. GILL, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.
No. 902-CV-1460 (FJS/RFT).

Dec. 19, 2006.
Anthony G. Gill, of counsel, Comstock, NY, Plaintiff, Pro
Se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Douglas Goglia, Esq., Asst. Attorney General, of
counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been presented
to me by the Report-Recommendation of Magistrate Judge
Randolph F. Treece filed November 20, 2006 and the
Court having reviewed the Report-Recommendation and
the entire file in this matter, and no objections to said
Report-Recommendation having been filed, it is hereby

**ORDERED,** that the Report-Recommendation of
Magistrate Judge Randolph F. Treece filed November 20,
2006 is **ACCEPTED** in its entirety, for the reasons stated
therein; and it is further

**ORDERED,** that the Order granting Gill's IFP status
is **VACATED;** and it is further

**ORDERED,** that Defendants' Letter-Motion seeking
dismissal of Gill's Complaint pursuant to 28 U.S.C. §
1915(g) is **GRANTED** unless Gill pays the filing fee of
$150.00 within thirty days of this final order.

**IT IS SO ORDERED.**

RANDOLPH F. TREECE, United States Magistrate
Judge.

### *REPORT-RECOMMENDATION and ORDER*
### I. INTRODUCTION

Pro se Plaintiff Anthony Gill brings this civil action
pursuant to 42 U.S.C. § 1983, alleging Defendants
violated his civil rights while he was incarcerated at the
Auburn Correctional Facility. Dkt. No. 1, Compl. FN1
Specifically, Gills alleges Defendants Pidlypchak and
Dygert filed false misbehavior reports against him and
harassed him in retaliation for the filing of numerous
institutional grievances against them and a civil lawsuit
against Pidlychak for smoking violations. Compl., Pl.'s
Statement of Facts.

> FN1. On December 23, 2002, Defendants filed a
> Motion to Dismiss Gill's Complaint pursuant to
> FED.R.CIV.P. 12(b)(6) for failure to state a
> claim upon which relief can be granted. Dkt. No.
> 6, Mot. to Dismiss. By Order of the Honorable
> Joseph M. Hood, United States District Judge for
> the Eastern District of Kentucky sitting by
> designation, Defendants' Motion was granted
> dismissing Gill's complaint with prejudice. Dkt.
> No. 17, Decision & Order, dated July 28, 2003.
> Judgment was entered on August 1, 2003 and
> Gill appealed. Dkt. Nos. 18 & 19, Notice of
> Appeal, dated Aug. 4, 2003. The Second Circuit
> affirmed the District Court's dismissal of Gill's
> Eighth Amendment claim, but vacated the
> Judgment of the District Court dismissing Gill's
> First Amendment claim and remanded the action
> back to the District Court. *Gill v. Pidlypchak,*
> 389 F.3d 379 (2d Cir.2004).

Presently before the Court is Defendants'
Letter-Motion requesting an order revoking Gill's *in forma
pauperis* (IFP) status and conditionally dismissing this
action pursuant to 28 U.S.C. § 1915(g) pending Gill's
prompt payment of the statutory filing fee of $150.00.FN2
Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1.
Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp.,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION

### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis*. 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2).

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (**PLRA**) of 1996, which renders several restrictions on a **prisoner's** ability to exploit the justice system. One such mechanism is the so-called "three **strikes** rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been **dismissed** as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the **PLRA** amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to **filing lawsuits**. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to **file** actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to **file** suit at taxpayers' expense. *See Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), aff'd, 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases **count** towards the three **strikes** rule, a court may look to **dismissals** which predated the enactment of the **PLRA**. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000). The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the **prisoner's** case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). He "has **commenced** at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has **filed** at least thirty-nine (39) different **lawsuits** in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

**FN3.** *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while

incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accettulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

**FN4.** In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

## C. Application of *Snider v. Melindez* and *DeLeon v. Doe*

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w [h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider.*" Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> FN5. In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g) ] is properly considered *at the time an action is dismissed.*" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these **strikes** one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as **strikes** under the terms of § 1915(g)."[FN6] *Id* .

> FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:
>
> > The designation of **strikes** has no practical consequences until a defendant in a **prisoner's lawsuit** raises the contention that the **prisoner's** suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three **strikes**. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three **strikes**. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

*DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).

The Second Circuit also stated that "[c]ontemporanous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez,* 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accettulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accettulli,* 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325); *Gill v. Anna M. Kross Center,* 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p. 2 (S.D.N.Y.) (citing *Neitzke v. Williams,* 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accettulli* and *Kross* cases "were **dismissed** due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the **dismissals** of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "**strikes**" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were **dismissed** by the Northern District for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure.[FN7] By his own admission, Gill concedes that these two cases were **dismissed** pursuant to FED.R.CIV.P. 11. Irrespective of specific language used in the District's Decisions and Orders **dismissing** these actions, we find that a Rule 11 **dismissal** is a **dismissal** on the merits. Therefore, these two cases would also each qualify as "**strikes**" against the Plaintiff.

FN7. A history of failure to prosecute is akin to the **filing** of a frivolous claim.

From the discussion and analysis above, it is clear that these types of **dismissals** are precisely what Congress had in mind when it enacted the **PLRA**, hoping to discourage and limit the amount of *frivolous* **lawsuits** brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "**strikes**" at the time he **commenced** the present action.

**D. Exception to the "Three Strikes Rule"**

**\*5** Notwithstanding prior **dismissals**, an inmate can overcome the "three **strikes** rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

**E. Revoking Gill's IFP Status**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006.[FN8] Pl.'s Lt.-Resp. at p. 4.

> **FN8.** Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Order granting Gill's IFP status (Dkt. No. 4) be VACATED; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

***6 ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.

Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Isaias BERMUDEZ, Plaintiff,
v.
S.ROSSI, Correctional Officer, Coxsackie Correctional
Facility, et al, Defendants.
No. 9:07-CV-0367 (LEK/DRH).

March 3, 2008.

Isaias Bermudez, Attica, NY, pro se.

Hon. Andrew M. Cuomo, New York State Attorney
General, Gerald J. Rock, Esq., Assistant Attorney General,
of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on February 20, 2008 by
the Honorable David R. Homer, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the
Northern District of New York. Report-Rec. (Dkt. No.
28). After ten days from the service thereof, the Clerk has
sent the entire file to the undersigned, including the
objections Plaintiff Isaias Bermudez, which were filed on
February 27, 2008. Objections (Dkt. No. 30).

It is the duty of this Court to "make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b). "A [district] judge ... may
accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge." *Id.*
This Court has considered the objections and has
undertaken a de novo review of the record and has
determined that the Report-Recommendation should be
approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt.
No. 28) is **APPROVED** and **ADOPTED** in its
**ENTIRETY;** and it is further

**ORDERED,** that Defendants' Motion to dismiss
pursuant to 28 U.S.C. § 1915 is **GRANTED;** and it is
further

**ORDERED,** that the Clerk serve a copy of this Order
on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION AND ORDER[FN1]

> FN1. This matter was referred to the undersigned
> for report and recommendation pursuant to 28
> U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

Plaintiff pro se Isaias Bermudez ("Bermudez"), an
inmate in the custody of the New York State Department
of Correctional Services ("DOCS"), brings this action
pursuant to 42 U.S.C. § 1983 alleging that defendants,
eight DOCS employees, violated his constitutional rights
under the First, Fourth, and Fourteenth Amendments.
Compl. (Docket No. 1). Presently pending is defendants'
motion to vacate Bermudez's in forma pauperis (IFP)
status and to dismiss the complaint pursuant to 28 U.S.C.
§ 1915(g). Docket Nos. 17, 19. Bermudez opposes the
motion. Docket Nos. 18, 21. For the following reasons, it
is recommended that defendants' motion be granted.

### I. Background

Bermudez asserts that while he was incarcerated at
Coxsackie Correctional Facility ("Coxsackie") in 2005,
defendants conspired to and did violate his First and
Fourteenth Amendment rights. Compl. at ¶¶ 2, 72-82.
Bermudez contends that on July 16, 2005, he filed a
grievance because he did "not receiv[e] toothpaste, soap
and envelopes for the last 24 days that [he] was moved to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))

[the D block] ....“ *Id.* at ¶¶ 14-15. Bermudez alleges that on July 18, defendant Montgomery, a corrections officer, made "retaliatory threats" promising to cause Bermudez serious physical harm. *Id.* at ¶¶ 16-17. Later that day and in fear for his safety, Bermudez wrote a letter to the superintendent. *Id.* at ¶ 18.

On July 21, 2005, Bermudez's cellblock "was under an institutional search ..." and Bermudez alleges that defendants, falsely claiming that Bermudez threatened them, unnecessarily searched his cell. *Id.* at ¶¶ 28, 30-31. Bermudez alleges that defendants Rossi and Montgomery thereafter "prepared and then filed a false misbehavior report ..." accusing Bermudez of verbally abusing and exposing himself to defendants. *Id.* at ¶¶ 36-37. This report also contained "a tainted ticket [presented at the] hearing disposition ... offering a pretended signature of a fictitious correctional officer ....“ *Id.* at ¶ 38. Bermudez was placed in keeplock.[FN2] *Id.* at ¶ 39.

> **FN2.** "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (2007).

**\*2** On July 25, 2005, a disciplinary hearing was held. *Id.* at ¶ 40. The hearing was adjourned until July 27, during which time Bermudez alleges he was again threatened by defendants for contesting the disciplinary report. *Id.* at ¶¶ 42, 45. When the hearing was recommenced, "[Bermudez] immediately informed the hearing officer, defendant William Haggett, on the record, about the threats made by defendant ... Montgomery (which was intentionally erased [from the record] )" *Id.* at ¶ 45. Additionally, Bermudez claims that Rossi and Montgomery "testified falsely ... to keep [him] confined ....“ *Id.* at ¶ 46. "[T]he hearing officer ... found [Bermudez] guilty and sentenced [him] to six (6) months in the Special Housing Unit ("SHU")[FN3] with loss of phones, packages and privileges." *Id.* at ¶ 50. While in SHU, Bermudez requested a copy of the recording of the disciplinary hearing but received a copy with a majority of the proceedings deleted. *Id.* at ¶ 52. On October 17, 2005, "the ... disposition was reversed because the Hearing officer failed to address issues regarding retaliation

defense by the inmate." *Id.* at ¶ 56 (citations and internal quotations omitted).

> **FN3.** SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ..." N.Y. Comp.Codes R. & Regs. tit. 7, § 300.2(b) (2007). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

On August 12, 2005, Bermudez was transferred to Southport Correctional Facility. *Id.* at ¶ 54. Upon arrival, "one of [Bermudez's] property bags containing [his] sneakers, boots, walkman, headphones, contact lenses, art materials, religious materials and cosmetic items, watch, photo album and letters were intentionally thrown away and [ ] never recovered by either ... [f]acility." *Id.* at ¶ 54. This prohibited Bermudez from "attend[ing] regular bible group studies and the communion of breaking bread ...," activities essential to his faith. *Id.* at ¶ 55.

This action was commenced on or about April 5, 2007. Docket No. 1. Bermudez's application to proceed IFP was granted on April 17, 2007. Docket No. 4. Bermudez has filed at least three federal civil rights actions in courts in this circuit prior to the present action. Rock decl. (Docket No. 17, Pt. 3) at ¶ 5. Bermudez's lawsuits all appear to relate, in one fashion or another, to his incarceration in DOCS facilities.

## II. Discussion

Under 28 U.S.C. § 1915, a court "may authorize the commencement, prosecution or defense of any suit, action or proceeding ... or appeal therein, without prepayment of fees ... by a person who submits an affidavit ... that the person is unable to pay such fees ....“ 28 U.S.C. § 1915(a)(1). "Indigent or otherwise disadvantaged litigants are afforded a certain degree of leeway in the ... court system ...; [h]owever[,] the courts' generosity has its limits." *Tafari v. Hues,* 473 F.3d 440, 440 (2d Cir.2007). Defendants seek to vacate the IFP order and dismissal of the complaint under 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))

been dismissed as frivolous, malicious, or for failing to state a claim. *See* 28 U.S.C. § 1915(g) (2006).[FN4]

> **FN4.** The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA") which had as its principal purpose deterring frivolous prisoner litigation. *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997).

**\*3** These terms have subsequently been defined. Frivolous claims "lack[ ] an arguable basis either in law or in fact." *Tafari,* 473 F.3d at 442 (*quoting Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). Malicious claims are filed with the intent to hurt or harm another. *Id.* (citations omitted). The failure to state a claim uses a parallel definition from Fed.R.Civ.P. 12(b)(6); however, "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g) standard]." *Neitzke,* 490 U.S. at 326; *see also Tafari,* 473 F.3d at 442 (citations omitted).

Additionally, the "three-strikes" provision contains a narrow exception which permits suits notwithstanding prior dismissals when the prisoner is "under imminent danger of serious physical injury." *Id.* In deciding whether application of the exception is warranted, "a court must examine the available pleadings, construed in the light most favorable to the [prisoner] .... " *Gamble v. Maynard,* No. 06-CV-1543 (DNH/DEP), 2008 WL 150364, at \*4 (N.D.N.Y. Jan. 14, 2008) (citations omitted). "This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm." *Id.* (citations omitted). This harm must also be real and serious and "merely speculative or hypothetical" harms are insufficient. *Id.* (citations omitted).

Here, Bermudez has initiated at least two prior actions in the Southern District of New York. Defendants identify these two actions and a subsequent appeal as constituting strikes for the purposes of § 1915(g). *See Bermudez v. Dep't of Corr.,* No. 03-CV-312 (S.D.N.Y. Aug. 20, 2003) (hereinafter *Bermudez I* );[FN5] *Bermudez v. New York,* No. 03-CV-6705 (MBM) (S.D.N.Y. Sept. 4, 2003) (hereinafter *Bermudez II); Bermudez v. New York,* No. 03-CV-280 (2d Cir. Mar. 11, 2004) (hereinafter *Bermudez*

*III* ).[FN6] Both cases and the appeal were dismissed based upon proper § 1915(g) grounds.

> **FN5.** *Bermudez I* is preceded by a 60-day order (*Bermudez v. Dep't of Corr.,* No. 03-CV-312, Docket No. 3) (hereinafter "60-day Order") which serves as the basis for the subsequent decision and order dismissing the case.

> **FN6.** While defendants attached copies of the docket sheets for the various cases, copies of the orders in question were provided to the Court by the Clerk's Office for the Southern District of New York and are being filed in the docket of this case.

*Bermudez I* was dismissed for Bermudez's failure to comply with an order "direct[ing him] to file an amended complaint .... " *Bermudez I.* In the preceding 60-day order, the Court explained that Bermudez's complaint did not "alleg[e] facts sufficient to demonstrate that [ (1) his] injury was caused by any policy or custom of the ... defendants," (2) defendant Farsi was personally involved, "[ (3) Bermudez] ... was given Red I.D. status without th[e mandatory] procedural protections," "(4) an[y] individual(s) w[ere] deliberately indifferent to his medical condition," or (5) he had exhausted his administrative remedies. 60-day Order at 1-4. Thus, the complaint lacked substantive sufficiency and "although ... [Bermudez's] case [was dismissed] for failure to comply with [the 60-day] order, essentially the prior order found that the complaint failed to state a claim upon which relief could be granted." *Gamble v. Monette,* No. 06-CV-136 (LEK/GJD), 2007 WL 2089697, at \*4 (N.D.N.Y. July 20, 2007); *see also Haynes v. White,* No. 07-CV-150 (SWW/JTR), 2007 WL 3047006, at \*1 n. 1 (E.D.Ark. Oct. 16, 2007) ("Dismissal pursuant to ... a court ... sua sponte dismiss[ing] a case for the "failure of the plaintiff to prosecute or to comply with these rules or any order of the court" may be treated as a dismissal for filing a frivolous action, and thus a "strike ....").

**\*4** As previously discussed, the definition of a frivolous claim is one lacking a basis in law or fact. Therefore, the dismissal of *Bermudez I* constitutes a strike for purposes of § 1915(g). *Bermudez II* was also

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)

(Cite as: 2008 WL 619170 (N.D.N.Y.))

"dismiss[ed] because it lack[ed] an arguable basis either in law or in fact." *Bermudez II,* No. 03-CV-6705 at 2. Therefore, Bermudez's second action was also frivolous within the meaning of § 1915(g) and the subsequent dismissal serves as a second strike. Finally, *Bermudez III,* was dismissed because the "appeal lack[ed] an arguable basis in law and fact ...." *Bermudez III,* No. 03-CV-280 at 1. Thus, Bermudez has received three strikes under § 1915(g).

The question then becomes whether Bermudez falls within the scope of the exception to the three-strike rule. Even construing the facts in a light most favorable to Bermudez, a review of the complaint shows that he was not facing imminent danger at the time he filed his complaint. Actually, Bermudez had been transferred from Coxsackie where all of the alleged violations had occurred. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (holding that the imminent danger exception is inapplicable if it does not "involve [the] present incarceration."). Thus, it cannot be said that Bermudez was in imminent danger since none of the defendants remain in contact with him. In addition, Bermudez's claims of a deprivation of his personal property do not constitute a serious physical injury. Moreover, Bermudez's assertions attempting to contend imminent physical harm, that "no matter where he goes ... he will very easily be a target by the staff ... [who] take adverse action against prisoners like [him] ..." are conclusory, speculative, and hypothetical. Docket No. 18 at 9. Therefore, these allegations do not suffice to bring Bermudez within the exception to the rule.

Furthermore, dismissal is not precluded by the fact that Bermudez has already been granted IFP status in this action. Docket No. 4. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998).

Therefore, Bermudez has received three prior strikes within the scope of § 1915(g), he does not qualify for the exception, and it is recommended that the order granting IFP status to Bermudez be vacated and that Bermudez's complaint be dismissed unless he pays the full filing fee of

$250.00 within thirty (30) days of the entry of a final order by the district court.

## III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion (Docket Nos. 17, 19) be **GRANTED** and that:

1. The order granting Bermudez's IFP status (Docket No. 4) be **VACATED;**

2. The complaint be **DISMISSED** as to all defendants and all claims *unless* Bermudez pays the full filing fee of $250.00 within thirty (30) days of the entry of a final order by the district court; and

**\*5** 3. Bermudez be **BARRED** from filing any IFP complaints in this district unless he is under imminent danger of serious physical injury.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.

Bermudez v. Rossi
Not Reported in F.Supp.2d, 2008 WL 619170 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Joseph Paul GUARNERI, Plaintiff,
v.
R.K. WOOD, Superintendent, Upstate Correctional
Facility; M. Tirone, Deputy Superintendent, Upstate
Correctional Facility; L. Peary, Sergeant of Grievance
Program; Lester Wright, Chief Medical Officer and
Associate Commissioner; Brian Fischer, Commissioner;
Lucian Leclaire, Deputy Commissioner; M. Travers,
Nurse; N.P. Parmer; Carr, Correctional Officer;
Warriner, Correctional Officer; John Doe, Sergeant;
Jane Doe, Nurse Administrator; John Doe, Medical
Director; Soucia, Law Library Officer; J. Demarse,
Mental Health Counselor; R. Hallard, Counselor;
George B. Alexander, NYS Division of Parole; Peter
Skinner, Parole Officer; B. Robin, Senior Parole
Officer; Mr. Lowary, Parole Area Supervisor; and
Lusseve, Parole Officer, Defendants.[FN1]

FN1. Defendant Sergeant John Doe, defendant
nurse administrator Jane Doe, defendant medical
director John Doe and defendants Soucia,
Demarse, and Lusseve have neither appeared nor
been served in this action. Fed.R.Civ.P. 4(m)
requires that a complaint be served upon a
defendant within 120 days after the complaint is
filed or the complaint may be dismissed as to any
unserved defendant without prejudice. *See also*
N.D.N.Y.L.R. 4.1(b). The complaint here was
filed on July 21, 2008. Compl. (Dkt. No. 1). No
summons were served upon these defendants.
More than 120 days have passed since the
complaint was filed. Accordingly, it is
recommended that the complaint be dismissed as
to these five defendants without prejudice
pursuant to Rule 4(m) and Local Rule 4.1(b).

No. 08–CV–792 (TJM/DRH).

Sept. 2, 2011.
Joseph Paul Guarneri, Schoharie, NY [FN2], pro se.

FN2. In the last document filed by Guarneri in
this case, he listed a return address of 1597
Canady Hill road, Middleburgh, New York
12122. *See* dkt. No. 93 at 11. Guarneri has taken
no action to change the address for him listed in
the docket of this case to the Middleburgh
address. However, the Clerk is directed to send
a copy of this report-recommendation to
Guarneri at both the address listed in the docket
and to the Middleburgh address listed in this
footnote.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Dean J. Higgins, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

**REPORT–RECOMMENDATION AND ORDER**[FN3]

FN3. This matter was referred to the undersigned
for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

**\*1** Plaintiff pro se Joseph Paul Guarneri ("Guarneri"),
formerly an inmate in the custody of the New York State
Department of Corrections and Community Services
("DOCCS"), brings this action pursuant to 42 U.S.C. §§
1983 and 1985 alleging that defendants, a DOCS
Commissioner, fifteen DOCS employees, and five
employees of the New York State Division of Parole,
violated his constitutional rights under the First, Fifth,
Eighth and Fourteenth Amendments. Compl. (Dkt. No. 1).
Presently pending is defendants' motion for summary
judgment. Dkt. No. 91. Guarneri opposes the motion. Dkt.
No. 93. For the reasons which follow, it is recommended
that defendants' motion be granted.
**I. Background**

The facts are related herein in the light most favorable

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

to Guarneri as the non-moving party. *See* subsection II(A) *infra.*

### A. Medical Care

Guarneri's medical complaints occurred while he was confined in Upstate Correctional Facility ("Upstate") from April 15 until August 15, 2008. Compl. ¶ 2.

As background to those complaints, in July 2006, Guarneri complained of "give away" episodes in his right knee. Dkt. No. 91–11 at 148; 93–1 at 46. Guarneri was diagnosed with a chronic ACL tear, with some arthritic changes, to the knee, but it was observed that Guarneri ambulated with a normal gait and had no swelling or signs of severe arthritic changes. Dkt. No. 91–11 at 148; 93–1 at 46. When surgery was discussed with Guarneri he stated that he "had an option of doing [surgery] through medical providers who cover the prison ..., but has decided not to," expressing his preference to undergo surgery by his personal physician when he was no longer incarcerated. Dkt. No. 91–11 at 148; 93–1 at 46. On August 8, 2007, an MRI report of Guarneri's knee and shoulder showed a chronic tear of the ACL with ganglion cysts on the back of his knee joint and a nearly full-thickness tear of the rotator cuff. Dkt. No. 91–11 at 145; Dkt. No. 93–1 at 48. During Guarneri's follow-up appointment at the Bassett Hospital, the provider shared the MRI results with Guarneri and noted that he still appeared to be in no acute distress, retained good strength and mobility, and "ha[d] at least a partial rotator cuff tear [and] ... an old ACL tear and some degenerative change" which can continued to be treated conservatively with a knee brace, therapy, and steroid injections. Dkt. No. 91–11 at 143–44; Dkt. No. 93–1 at 44–45.

Prior to the winter of 2007, Guarneri was reincarcerated. His medical records from the correctional facility prior to his time at Upstate indicated his history of an ACL tear and use of a knee brace. Dkt. No. 91–11 at 37; Dkt. No. 93–1 at 21. Guarneri told medical staff at the facility that he could not climb stairs or walk more than thirty feet without the brace. Dkt. No. 91–11 at 37; Dkt. No. 93–1 at 21. However, the medical staff noted that Guarneri's knee was neither tender nor swollen, he retained good range of motion in the joint, and he ambulated around his bed without the brace. Dkt. No. 91–11 at 37; Dkt. No. 93–1 at 21. In January and February, 2008, Guarneri was seen by medical staff on at

least three occasions ambulating around the correctional facility without difficulty without his knee brace. Dkt. No. 91–11 at 36–37; Dkt. No. 93–1 at 21. In February 2008 Guarneri also began refusing Tylenol and Ibuprofen and requesting prescription pain medication for the pain associated with his knee and shoulder. Dkt. No. 91–11 at 35–36. Medical staff denied him the prescription medication, but continued to offer him the over-the-counter pain medication, which Guarneri claimed he could not take because of ulcers. *Id.* The medical records make no mention of an ulcer condition.

**\*2** At the end of February 2008, Guarneri was given a prescription for physical therapy twice a week, for four weeks, to assist with his joint pain and ambulatory difficulties. Dkt. No. 91–11 at 49. Guarneri attended the first therapy session, but he refused therapy on March 10, 12, 17, and 19, and, due to non-compliance, was discharged from therapy. Dkt. No. 91–11 at 49–62. Guarneri was then transferred to Upstate. Dkt. No. 91–11 at 13–14; Dkt. No. 93–1 at 24–25.

Upon entry to Upstate, Guarneri advised prison officials of his various medical problems and that he possessed a knee brace.[FN4] However, the intake screening indicated that Guarneri did not need special accommodations as he continually refused to participate in physical therapy for his knee, appear to be acutely ill, or appear to have any other contraindications for placement in a double cell or bunk bed. Dkt. No. 91–11 at 79–80; Travers Decl. (Dkt. No. 91–8) ¶ 7. On April 17, 2008, defendant Parmer conducted a chart review and confirmed that there was no evidence for continued use of Guarneri's knee brace, as Guarneri's medical record indicated that he could ambulate without difficulty. Dkt. No. 91–11 at 26; Travers Decl. ¶¶ 8, 10. As there were no radiology results in Guarneri's chart, however, Parmer ordered x-rays to be obtained and also prescribed the brace when traveling distances over fifty feet. Dkt. No. 91–11 at 26; Travers Decl. ¶¶ 9–10. Despite the in-take form, it appears Guarneri was also prescribed a permit limiting him to a lower bunk. Dkt. No. 91–11 at 11.

FN4. Those problems included mental health issues. "Mental Health services at Upstate are provided by employees of the New York State

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

Office of Mental Health which has personnel working at Upstate." Travers Decl. (Dkt. No. 91–8) ¶ 6; *see also* Holanchock Decl. (Dkt. No. 91–9) ¶¶ 4–5 (explaining that law dictates that mental health care at correctional facilities by provided by the Office of mental Health and, as such, the office has its own employees prescribing medication and providing such care within the correctional institutions). "In the Guarneri case, the mental health care about which [he] complains was not undertaken by or was the responsibility of the DOCS' defendants in the case." Holanchock Decl. ¶ 6.

On April 22, 2008, an EKG was requested for Guarneri to test for hypertension. Dkt. No. 91–11 at 31. On April 22, Guarneri refused his morning medication, claiming it upset his stomach. Dkt. No. 91–11 at 26. From April 25 through 28, Guarneri refused to take his mental health medication. Travers Decl. ¶ 18. Medical staff discussed the risks of his refusals with Guarneri and presented him with forms to sign. Dkt. No. 91–11 at 24–25, 72–78; Dkt. No. 93–1 at 36. On May 2, 2008, after speaking with a psychiatrist, Guarneri's mental health medication was discontinued. Travers Decl. ¶ 19.

On May 1, 2008, Guarneri was seen by Parmer, requesting an increase in pain medication for his knee and shoulder. Dkt. No. 91–11 at 24; Dkt No. 93–1 at 35; Travers Decl. ¶¶ 13–14. Guarneri informed medical staff that he would have his knee and shoulder "fixed" when he got out of prison and medical staff responded by prescribing him a pain medication and his knee brace for distances of fifty feet or more. Dkt. No. 91–11 at 24; Dkt No. 93–1 at 35; Travers Decl. ¶¶ 15–16, 20. On May 6, 2008, the radiology report for Guarneri's right knee x-rays was received, showing early signs of degenerative joint disease. Dkt. No. 91–11 at 46; Dkt. No. 93–1 at 40. On or about May 10, 2008, Guarneri sought an increase in his prescription pain medication. Dkt. No. 91–11 at 22; Dkt. No. 93–1 at 33; Travers Decl. ¶ 21. The request was denied as Guarneri had not yet given the medication a fair amount of time to improve his pain and receive its full therapeutic effect. Dkt. No. 91–11 at 22; Dkt. No. 93–1 at 33; Travers Decl. ¶ 21.

**\*3** On May 19 and 21, Guarneri refused undergoing blood work and laboratory testing. Dkt. No. 91–11 at 22, 70. However, during that time period Guarneri did request and receive treatment for various skin problems, but during these appointments Guarneri was abrasive and argumentative. Dkt. No. 91–11 at 21–22. On May 22, 2008, Guarneri was advised by Parmer of the results of his x-rays that they revealed early degenerative joint disease attributable to normal wear and tear on his knee. Travers Decl. ¶ 22. On June 7, 2008, Guarneri again requested an increase in the doseage of his prescription pain medication. Dkt. No. 91–11 at 20; Dkt. No. 93–1 at 31. Medical staff saw Guarneri on June 20th, indicating there were no additional requests when his medication was dispensed. Dkt. No. 91–11 at 20; Dkt. No. 93–1 at 31. On June 28, 2008, Guarneri again requested an increase in the dosage of his prescription medication and an examination to discuss this issue was scheduled for July 10, 2008. Dkt. No. 91–11 at 19; Dkt. No. 93–1 at 30; Travers Decl. ¶ 23.

On July 10, 2008, Guarneri was seen at his medical examination by Parmer and did not exhibit any signs or symptoms of acute pain. Dkt. No. 91–11 at 17; Dkt. No. 93–1 at 28; Travers Decl. ¶ 24. Guarneri had refused therapy and surgical interventions while incarcerated, as well as over-the-counter pain medication. Dkt. No. 91–11 at 17; Dkt. No. 93–1 at 28; Travers Decl. ¶ 24. His request was denied, but his level of prescription pain medication was renewed. Dkt. No. 91–11 at 17; Dkt. No. 93–1 at 28; Travers Decl. ¶ 25; *see also* Dkt. No. 91–11 at 67, 69 (prescription medication chart showing provision of Ultram for months of May and August). No further medical treatment was rendered prior to Guarneri's release. On August 5, 2008, upon release Guarneri was to receive prescription pain medication, and that on August 8, the provider ordered a thirty-day supply of said medication. Dkt. No. 91–11 at 4; Dkt. No. 93–1 at 26.

Prior to February 2009, Guarneri was again incarcerated. Guarneri continued to complain of pain, requested for medication, and displayed aggressive and threatening behavior towards medical staff. Dkt. No. 91–11 at 123–24. On February 27, 2009, Guarneri was ambulatory, there was no swelling in his knee, and the medical staff provided him with treatment including non-narcotic pain medication, to avoid the possibility of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

addiction, physical therapy, or an orthopaedic consultation. Dkt. No. 91–11 at 118. In March and April, 2009, Guarneri was provided with a knee brace and also participated in physical therapy. Dkt. No. 91–11 at 117, 159, 138–41.

On June 11, 2009, Guarneri again insisted on pain medication for his knee, specifically requesting the medication previously provided to him at Upstate, refusing all other medications offered to him, and becoming verbally abusive towards medical staff. Dkt. No. 91–11 at 109. Guarneri still ambulated without difficulty, walked up stairs, and dressed without difficulty. Dkt. No. 91–11 at 108. Medical staff from the facility also concluded that no acute or pharmacological intervention was indicated at that time. *Id.* In July 2009, Guarneri was "cheeking" his medication, refusing to take it, and attempting to flush the pills down the sink after the medical staff had left the cell area. Dkt. no. 91–11 at 106–107.

**\*4** Prior to January 2010, Guarneri was released from prison. On January 5, 2010, Guarneri began treating with Dr. Belanger, complaining of knee and shoulder pain, claiming that his pain medication was not effective, and stating his intentions on returning to Bassett Hospital to receive surgery on his joints. Dkt. No. 93–1 at 9, 15. On February 3, 2010, Dr. Belanger reported that Guarneri was becoming aggressive with his staff and suggested that Guarneri find another physician to treat him, noting that "[i]n all honesty, [Guarneri] really needs to be in some for of structured living where medications are monitored." Dkt. No. 93–1 at 8, 12. Guarneri continued to complain of inadequate pain management and Dr. Belanger agreed to continue treating him so long as he never threatened himself or his staff. *Id.* On June 3, 2010, Guarneri returned for an increase in pain medication and had been taking twice as much medication as was prescribed for him. Dkt. No. 93–1 at 6, 10. Dr. Belanger expressed concern about increasing Guarneri's pain medication and instead suggested radiology exams and referral to a pain management clinic. *Id.* At the end of the month, Guarneri returned twice more for the same reason—that he had run out of pain medication before he could refill his prescriptions. Dkt. No. 93–1 at 13. Dr. Belanger noted that Guarneri's x-rays had remained unchanged and that he would be required to wait until it was appropriate to refill

his medication to receive any further medication. *Id.*

**B. Parole**

Guarneri was released on parole supervision on April 26, 2006. Dkt. No. 91–13 at 142. On June 5, 2006, Guarneri violated his parole, parole was revoked, and he was ordered into custody for twelve months. *Id.* Guarneri was released back on parole supervision on June 7, 2007, whereupon he was placed at the Parole Stabilization Program in Albany. *Id.* Guarneri was also issued special conditions of release, which prohibited contact with various persons without prior permission of probation, including his mother and ex-wife. *Id.* at 70. Guarneri was not allowed to return to his home because of a protective order his mother had obtained against him. Compl. ¶ 92; Guarneri Dep. at 91; *see also* Dkt. No. 91–13 at 21 (portion of pre-sentence report where mother states that Guarneri "is not welcome in her home and ... that she is fearful of her son and ... is of the belief that there will be a full restraining order in effect....").

Guarneri was housed at the Parole Stabilization Program from June 7 through 27, 2006. Dkt. No. 91–13 at 51–53. During the three weeks, staff met with Guarneri and drug tested him, staff had conference calls with Albany County Mental Health to assess Guarneri's wellness, and Guarneri completed intake procedures at a drug and alcohol rehabilitation program. *Id.* at 52. On the morning of June 27, Guarneri was disruptive and claimed that he required psychiatric help and that he could not get an appointment with mental health. *Id.* Defendant Lowrey reviewed Guarneri's file and discovered that he was previously seen by Schoharie County Mental Health, the agency was contacted, a request for an appointment was made, and Schoharie staff indicated there would schedule the appointment and subsequently notify Guarneri. *Id.* However, by that afternoon Guarneri's problems adapting to the Parole Stabilization Program [FN5] came to a climax and he was discharged from the program. *Id.* at 51.

> [FN5.](#) Among the issues Guarneri expressed with the Parole Stabilization Program was its inability to provide him with the necessary mental health care he required. Guarneri Dep. at 103, 107.

**\*5** Upon release, Guarneri requested to be sent to his

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

mother's home. Dkt. No. 91–13 at 51. Guarneri's mother agreed to allow him to stay with her despite the order of protection and special conditions of release and it was made clear that if Guarneri because hostile or threatening he would be immediately arrested. *Id.;* Guarneri Dep. at 100–102. While residing with his mother, Guarneri was in constant contact with defendant Skinner,[FN6] reporting that things were going well and that there were no issues with drugs, alcohol, or police contact. *Id.* at 48–51. On July 25, 2007, Guarneri reported that his next appointment with mental health providers would be August 9, 2007 and notes indicated that transportation had been arranged for Guarneri. *Id.* at 49. On August 20, 2007, Guarneri was served with a violation of parole report by Skinner for violative conduct which included unauthorized contact with his ex-wife whom had an order of protection against Guarneri, harassment and threatening his ex-wife, arrest, and failure to notify Skinner of his arrest. Dkt. No. 91–13 at 139–41; *see also* Dkt. No. 91–13 at 155–57 (arrest report), *Id.* at 159–64 (affidavits).

> FN6. Guarneri had repeated reports of transportation issues and was permitted to call in to probation and to make special arrangements for reporting. Dkt. No. 91–13 at 50.

On August 23, 2007, Guarneri attended a preliminary hearing for a parole violation. Dkt. No. 91–13 at 71–113, 137–38. The hearing officer communicated, and Guarneri expressed understanding, of his rights at the hearing including the right to produce relevant documents and witnesses, the right to cross-examine adverse witnesses, and the limited or qualified right to an attorney if Guarneri had demonstrated a "outstanding need" for one. *Id.* at 74. The hearing officer questioned Guarneri and determined he was competent to proceed in the hearing without the assistance of counsel. *Id.* at 76–80. Guarneri agreed with the hearing officer's assessment. *Id.* at 78. Skinner proffered two different violations for consideration by the hearing officer. As to the first, Guarneri's alleged failure to immediately communicate police conduct, the hearing officer declined to make a decision whether probable cause supported the alleged parole violation. *Id.* at 83–94, 151. As to the second, Guarneri's alleged contact with his ex-wife, the hearing officer found probable cause for the violation. *Id.* at 94, 151.

On September 26, 2007, the first of two final hearings was conducted with regard to Guarneri's parole violation. Dkt. No. 91–13 at 114–23. Guarneri was represented by counsel at the hearing. *Id.* at 115. The administrative law judge indicated that at the preconference hearing, a plea could not be negotiated and a subsequent hearing would follow. *Id.* at 116–17. On November 28, 2007, the second final hearing was conducted. *Id.* at 124–36. Guarneri was again represented by counsel. *Id.* at 125. During the hearing, the administrative law judge recognized a negotiated plea between the parties, whereupon Guarneri agreed to plea guilty to one of the parole violations and that the government would dismiss all other pending charged violations. *Id.* at 129, 134–35. This would constitute Guarneri's second violation of parole. *Id.* at 129–30.[FN7] Guarneri expressed understanding and assent to the terms of the plea. *Id.* at 131, 133–34. Additionally, the court recognized that the habeas corpus action that Guarneri had filed, which dealt with the process afforded to him during his preliminary hearing on August 23, was preserved and allowed to continue. *Id.* at 131–32.

> FN7. The first parole violation occurred on June 5, 2006, when Guarneri failed to cooperate with medical treatment and was in possession of a knife. Dkt. No. 91–13 at 142.

**\*6** On January 21, 2008, Guarneri's habeas petition was denied, being classified as "inappropriate ... for a number of reasons [and] ... rendered moot by the final determination to revoke parole, which ... was the petitioner's plea entered at the final hearing ." Dkt. No. 91–13 at 68. The habeas petition alleged the same violations in the instant complaint that Guarneri's due process rights were violated by his inability to call witnesses, the lack of *Miranda* Warnings, the absence of assigned counsel, and the application of double jeopardy and collateral estoppel. *Id.* at 65; *see also* Compl. ¶¶ 97, 103–09. The court discussed the merits of Guarneri's claims, which were rendered moot by his guilty plea, explaining that his right to counsel was limited, double jeopardy was inapplicable, and that Guarneri's assent to the conditions of parole indicated his understanding of the revocation process if and when said conditions were violated. *Id.* at 66–68.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

### C. Grievances/Access to Court

Guarneri also contends that while at Upstate, his grievances were systematically denied and that defendants failed to comply with their internal grievance procedures. Compl. ¶¶ 63–67. Guarneri also alleges that defendants lost or destroyed his legal papers, denied him provision of paper, required him to pay for his own photocopies, and failed to provide him with adequate legal assistants in the library as those that were employed should have been better trained in the law. *Id.* ¶¶ 78–80, 87–88. Guarneri alleges that this prejudiced his legal actions. *Id.* ¶ 82. Guarneri testified that his state actions were delayed, and some were dismissed, but he was unable to provide any particular case names or numbers to correspond with said dismissals. Guarneri Dep. (Dkt. No. 91–12) at 85–87.

### D. Prior Lawsuits

Since 1999, Guarneri has filed at least fifteen civil actions in the Second Circuit, eight of which have been filed in the Northern District of New York. Dkt. No. 91–3. In 2000, a decision in the Southern District of New York concluded that Guarneri's § 1983 claim "ha[d] failed to state a claim under federal law upon which relief can be granted against any of the named d[e]f [endan]ts." *Guarneri v. Prison Health Servs., Inc. et. al.,* No. 99–CV–03211 (hereinafter *Guarneri I)* Dkt. No. 91–5 at 7, Entries 45, 47. Guarneri was granted in *forma pauperis* ("IFP") status in that case. *Id.* at 2, Entry 1.

On July 1, 2002, Guarneri's amended complaint in another 1983 action was dismissed due to his failure to comply with a previous court order to further define and specify his allegations. *Guarneri v. Sackit et. al.,* 02–CV–590 (LEK/RFT) (N.D.N.Y.) (hereinafter *Guarneri II* ) Dkt. No. 91–7 at 7, 10. Guarneri sought reconsideration, the court vacated dismissal, and Guarneri was granted leave to file a second amended complaint. *Id.* at 3, Entry 12 and 10–13. Guarneri failed to file another amended complaint and the case was dismissed. *Id.* at 3, Entries 16–17. In that case, Guarneri was granted IFP status. *Id.* at 2, Entry 3.

**\*7** On January 21, 2005, Guarneri's § 1983 complaint against seven Schoharie County employees was dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for a failure to prosecute and to comply with

court orders. *Guarneri v. Meyers et al.,* No. 01–CV–1567 (GLS/DRH) (N.D.N.Y.) (hereinafter *Guarneri III* ), Dkt. No. 91–6 at 9. Guarneri failed to provide the court with his current address, precluding the litigation from advancing. *Id.* at 9–10. Thus, the amended complaint was dismissed. In that case, Guarneri was granted IFP status. *Id.* at 2, Entry 5.

### II. Discussion

Guarneri contends that his First Amendment rights were infringed upon as defendants (1) lost and or destroyed his legal papers (Compl .¶ 78, 88), (2) denied him paper (Compl.¶ 79), (3) charged him for photocopying relevant material (Compl.¶ 87), and (4) failed to provide him with competent legal assistants at the law library (Compl.¶¶ 78, 88). Guarneri claims that his Eighth Amendment rights have been violated by defendants' (1) failure to treat his mental and physical health issues (Compl.¶¶ 28–32, 36, 38, 42–43, 46–49, 53–58, 60), (2) policy to not provide inmates with treatment unless that inmate will be incarcerated up Upstate for at least a year (Compl.¶ 33), (3) failure to preserve the confidentiality of his medical records (Compl.¶ 61), (4) failure to provide him with all involved party names through FOIL requests (Compl.¶¶ 41, 59) and (4) failure to provide him with continued care upon his release from prison (Compl.¶ 51). Guarneri claims that his Fourteenth Amendment rights were violated because (1) his grievances were systematically denied (Compl.¶¶ 63, 67) and (2) defendants failed to comply with the grievance procedures (Compl.¶ 65). Guarneri also alleges Fourteenth Amendment violations in conjunction with his parole hearings, including being denied certain rights at his preliminary hearing. Compl. ¶¶ 96–109. Lastly, Guarneri contends that defendants conspired against him to obstruct justice in the grievance program. Compl. ¶¶ 71, 73.

Defendants first contend that Guarneri's IFP status should be revoked as he has received "three strikes" based upon his previous filings and dismissals. As such, Guarneri's case should be dismissed unless and until he pays the appropriate filing fees. Even if the merits of the case are considered, defendants seek dismissal based upon their contentions that (1) Guarneri's constitutional claims are meritless, (2) he fails to state a claim with regards to the grievance procedure, and (3) his claims regarding his parole are barred by the *Rooker–Feldman* doctrine.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Fed.R.Civ.P. 56*; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

**\*8** The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

## B. 28 U.S.C. § 1915(g)[FN8]

FN8. One of the cases which defendants offer as a strike dismissed pursuant to 28 U.S.C. § 1915(d), a section which did not at that time authorize dismissals. Defs. Memorandum of Law

(Dkt. No. 91–15) at 5. Defendants argue that this is clearly a typographical error, but without the underlying decision which articulates the reasons for which the claim was dismissed, construing the facts in the light most favorable to Guarneri prevents assuming what the actual intentions of the court were in dismissing that claim.

Defendants seek dismissal of the complaint under 28 U.S.C. § 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have been dismissed as frivolous, malicious, or for failing to state a claim. *See* 28 U.S.C. § 1915(g) (2006).[FN9] Frivolous claims "lack[ ] an arguable basis either in law or in fact." *Tafari v. Hues,* 473 F.3d 440, 442 (2d Cir.2007) (*quoting Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). Malicious claims are filed with the intent to hurt or harm another. *Id.* (citations omitted). The failure to state a claim applies a parallel definition from Fed.R.Civ.P. 12(b)(6), but "it does not follow that a complaint which falls afoul of the [12(b)(6) motion to dismiss] standard will invariably fall afoul of the [§ 1915(g) standard]." *Neitzke,* 490 U.S. at 326; *see also Tafari,* 473 F.3d at 442 (citations omitted).

> FN9. The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1995), which had as its principal purpose deterring frivolous prisoner litigation. *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997).

This "three-strikes" provision contains a narrow exception which permits suits, notwithstanding prior dismissals, when the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Lewis v. Sullivan,* 279 F.3d 526, 531 (7th Cir.2002) (applying imminent danger exception "[w]hen a threat or prison condition is real and proximate, and when the potential consequence is 'serious physical injury.') In determining whether the imminent danger provision applies, the court must evaluate whether the claimed danger was still in existence when the complaint was filed and whether such danger was serious enough, in light of the liberal standards accorded to *pro se* plaintiffs, to require protection. *Chavis v. Chappius,* 618 F.3d 162,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

169–70 (2d Cir.2010) (citations omitted). Additionally, dismissal is not precluded by the fact that Guarneri has already been granted IFP status in this action. Dkt No. 7. When a court becomes aware of three prior strikes only after granting IFP status, it is appropriate to revoke that status and bar the complaint under § 1915(g). *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998).

**\*9** As previously stated, Guarneri has filed multiple lawsuits in the Second Circuit, and the Northern District. Two of the three cases noted above were dismissed for failure to state a claim and the third for being a frivolous action, both included within the categories of cases identified for accruing a strike. In *Guarneri I,* the court expressly dismissed Guarneri's claims because he had failed to state a claim. Dkt. No. 91–5 at 7, Entries 45–46. Even though this is only documented through the docket sheet, the court's use of express language dismissing Guarneri's claim for failing to state a claim suffices to satisfy the strike provision. *See Andrews v. King,* 398 F.3d 1113, 1120 (9th Cir.2005) (holding that "defendants must produce documentary evidence ... to conclude that the plaintiff has filed at least three prior actions that were dismissed [as strikes and that] ... docket records may be sufficient ... [if they indicate] that a prior case was dismissed because it was frivolous, malicious or failed to state a claim.") (internal quotation marks and citations omitted); *see also Harris v. City of New York,* 607 F.3d 18, 23–24 (2d Cir.2010) ("Nothing in the PLRA or caselaw ... suggests that courts have an affirmative obligation to examine actual orders of dismissal," when docket sheets "accurately describe the grounds for dismissal.").

In *Guarneri II,* the court dismissed Guarneri's claims both because he initially failed to state a claim and because he failed to comply with court orders to file an amended complaint which corrected his conclusory and inadequate allegations. The court ultimately referred to the initial report-recommendation opinion, identifying Guarneri's failure to establish defendants' personal involvement and articulate his claims with specificity and particularity, to dismiss his complaint. Both of those reasons suffice to support a dismissal for failure to state a claim.

However, it is unclear whether this district would consider *Guarneri III* as a strike because Guarneri's claims were dismissed for his failure to prosecute the claims. Defendants argue that, pursuant to *Bermudez v. Rossi et al.,* No. 07–CV–367, 2008 WL 619170 (N.D.N.Y. Mar. 3, 2008), claims dismissed for failure to prosecute and failure to comply with court orders constitute a frivolous action. Defs. Mem. of Law at 5–6; *see also Bermudez,* 2008 WL 619170, at \*3 (Dkt. No. 91–6 at 11–15) (citing cases which held that failing to comply with court orders and failing to prosecute amounted to frivolous claims worthy of a strike). Additionally, dismissals for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure have been classified in this district as "akin to the filing of a frivolous claim." *Gill v. Pidlypchak,* No. 02–CV–1460 (FJS/RFT), 2006 WL 3751340, at \*4, n. 7 (N.D.N.Y. Dec.19, 2006) (Dkt. No. 91–6 at 16–22). Conversely, in *McFadden v. Herman,* No. 09–CV–1415, 2010 WL 5572766 (N.D.N.Y. Oct. 4, 2010), *Bermudez* was examined for the same proposition, but it was found that such dismissals did not amount to a strike. *Id.,* 2010 WL 5572766, at \*1–2 (citations omitted) (attached to this decision).

**\*10** When *Guarneri III* was filed, Guarneri had been engaged in litigation against various DOCCS employees for at least two years. In *Guarneri III,* Guarneri filed a complaint, four notices rejecting proposed amended complaints, an amended complaint, and multiple letter requests over the course of four years before the case was ultimately dismissed for a failure to prosecute. Dkt. no. 91–6. While conflict appears to exist in this district as to whether a dismissal for failure to prosecute, on its face, represents a frivolous action, the submitted docket sheet in addition to the amount of time elapsed and judicial resources expended during the course of this case lead to the conclusion that the dismissal was in response to a frivolous action. This is not a "temporarily infected [case] with remediable procedural or jurisdictional flaws" but one closer to Congress' intended policy behind the three-strike provision to prevent "the tide of egregiously meritless lawsuits ...." *Tafari,* 473 F.3d at 443 (citations omitted). Accordingly, Guarneri's failure to prosecute and comply with court orders to keep the court apprised of his current whereabouts support the conclusion that this

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

dismissal also counts as a strike.

Guarneri's response papers to the present motion fail to allege that the imminent danger exception would apply to the present case. Guarneri Mem. of Law (Dkt. No. 93) at 9–10. In fact, it appears that Guarneri accepts that the exception is inapplicable and that, at worst the consequences would "only ... [require Guarneri] to pay the filing fee for this case [which] does not end the case or change the facts." *Id.* at 10. Therefore, the imminent danger exception is inapplicable to the present case.

Accordingly, defendants' motion to dismiss should be granted on this ground, Guarneri's present IFP status should be revoked, and he should be required to remit the appropriate filing fee.

## C. Access to Courts

As to the merits of Guarneri's claims, "[p]risoners ... have a constitutional right of access to the courts ...." *Bourden v. Loughren,* 386 F.3d 88, 92 (2d Cir.2004) (internal quotation marks omitted) (citing *Bounds v. Smith,* 430 U.S. 817, 821–22, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (citations omitted) (holding that all prisoners have a well-established Constitutional right to "adequate, effective, and meaningful" access to courts). This "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers...." *Bounds,* 430 U.S. at 828. In order to state a claim for denial of access to the courts, a plaintiff must allege "that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.' " *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (citing *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997) (quoting *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). The injury must have been the result of the deliberate and malicious behavior of a defendant. *Tajeddini v. Gluch,* 942 F.Supp. 772, 780 (D.Conn.1996).

**\*11** In this case, Guarneri contends that his rights were infringed upon when his legal papers were lost, he was denied paper [FN10], he did not have a competent law library assistant, and he was charged for expenses for photocopying his materials. Some of these allegations are insufficient to state a claim. Specifically, Guarneri's request to have more intelligent and capable law library assistants is meritless. *See Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (explaining that there is no "abstract, freestanding right to a law library or legal assistance, [and that] an inmate cannot establish relevant ... injury [requiring constitutional protection] simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."). While Guarneri may be frustrated by the caliber of assistance the prison provides, this is insufficient to reach the status of a constitutional violation. Accordingly, because Guarneri has no legal entitlement to assistants with a certain level of education or experience, such relief should be denied. Additionally, "an inmate has no constitutional right to free copies...." *Collins v. Goord,* 438 F.Supp.2d 399, 416 (S.D.N.Y.2006) (citations omitted). Thus, Guarneri's claims that his rights were violated by having to pay for his photocopies is unsupported by federal law.

> FN10. "It is undisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents ...." *Bounds,* 430 U.S. at 824. Thus, at first blush, Guarneri states a cognizable claim. However, his claim is conclusory and belied by the record. Guarneri has actively participated in the current litigation, executing his handwritten complaint in June of 2008 when he was confined at Upstate. Compl. at 52–53. Additionally, defendants' provided the court with copies of a grievance and appeal which were also submitted, handwritten on a sheet of paper, while Guarneri was incarcerated at Upstate. Dkt. No. 91–10 at 3, 6. Such claims should be dismissed as meritless.

As to Guarneri's other claims, he contends that these actions resulted in prejudice to his legal actions. However, Guarneri fails to state which legal actions were prejudiced. Conclusory generalizations are insufficient to establish an actual injury. *See Lewis,* 518 U.S. at 351 (giving examples of actual injury including inability to assert or continue a claim); *Arce v. Walker,* 58 F.Supp.2d 39, 43 (W.D.N.Y.1999) ("[A] claim that prison practices kept a prisoner from raising an argument or asserting a claim in his pleadings, in response to a dispositive motion, or at

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

trial would likely suffice to show harm," but claims that the prison practice prevented the inmate from "ma[king] a more compelling or sophisticated argument would not."). Accordingly, without identification of the underlying action which was prejudiced, actual injury, and by extension a First Amendment violation, cannot be established. *See Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) ("[T]he underlying cause of action ... is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

Accordingly, defendants' motion should be granted on this ground.

### D. Eighth Amendment[FN11]

> FN11. Guarneri's claims that defendants did not properly provide him with names of other medical personnel who he wished to include as defendants is moot as, for the reasons articulated *infra,* no Eighth Amendment violation has been demonstrated. Moreover, it is noteworthy that Guarneri has proffered these same claims relating to his knee, back, shoulder, and mental health treatment, with regard to other defendants and facilities, and those claims were also denied. *See Guarneri v. Hazzard,* No. 06–CV–985, 2010 WL 1064330 (N.D.N.Y. Mar.22, 2010); *Guarneri v. Bates,* No. 05–CV–444, 2008 WL 686809 (Mar. 10, 2008).

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This includes the provision of medical care. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Hathaway,* 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Second, the prisoner must show that the prison official

demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan,* 511 U.S. 825, 844, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

**\*12** " 'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright,* 315 F.3d 158, 162–63 (2d Cir.2003) (citing *Chance,* 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. *Smith,* 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance,* 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251, (1976).

Thus, disagreements over medications, diagnostic techniques (e.g ., the need for x-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence, amounting to medical malpractice, but not the Eighth Amendment.

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) (citing *Estelle,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

429 U.S. at 107); *see also Chance,* 143 F.3d at 703 (holding that "[m]ere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Guarneri's overarching contention is that he received no treatment because the medical staff refused to provide care for any inmate incarcerated at Upstate for less than a year, or that the care rendered was too abrupt to be effective, is belied by the medical record. The record demonstrates that Guarneri received a wide array of treatment including an intake assessment, therapy, medication, and follow-up care as referenced infra. Moreover, to the extent that Guarneri's complaints can be construed as a general Eighth Amendment claim that his time in Upstate's Special Housing was *per se* cruel and unusual punishment, such claims are meritless. *See Coleman v. Beale,* 636 F.Supp.2d 207, 212 (W.D.N.Y.2009) (finding no Eighth Amendment cause of action where inmate "has not alleged or presented any facts showing that his conditions of confinement in SHU were particularly severe, or that they jeopardized his health or safety ....") (internal quotation marks and citations omitted). Accordingly, defendants' motion for summary judgment should be granted on this ground.

**1. Knee**

**\*13** Guarneri may have offered evidence sufficient to conclude that the knee injury he sustained was serious. Generally, knee injuries have been "insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." *Johnson v. Wright,* 477 F.Supp.2d 572, 575 (W.D.N.Y.2007) (holding that a prisoner's torn meniscus suffered as a result of a basketball injury was not a serious medical need) (citations omitted). However, construing the facts in the light most favorable to Guarneri, his allegations of pain, recommendations for therapy and surgery, and requirement of an assistive device to help ambulate long distances suffice to establish a serious medical need.

However, it is clear that defendants were not

deliberately indifferent to his medical care. Medical records show that radiological exams were done to assess the severity of Guarneri's injuries and that he was offered a range of conservative treatment methods. Guarneri was prescribed physical therapy but chose not to engage in it prior to his incarceration at Upstate. Any ill effects attributable to the lack of consistent therapy cannot be attributed to defendants as Guarneri made the decisions not to participate in said therapy. Moreover, any consequences for not pursuing a surgical intervention are also attributable to Guarneri who indicated that he wished to wait for his release from incarceration to pursue such treatment.

To the extent that Guarneri contends that defendants were deliberately indifferent for failing to provide him with his knee brace at all times in Upstate, such contentions are also meritless. The record shows that, upon arrival at Upstate, Guarneri had regularly been ambulating without his knee brace without any difficulty. Thus, medical records support the decision not to provide him with a brace. Furthermore, Guarneri was not completely denied use of the brace. The fact that Guarneri felt that he required the brace at all times and not just for distances greater than fifty feet amounts to a disagreement in the progression of his treatment, which is insufficient to establish an Eighth Amendment violation. *Sonds,* 151 F.Supp.2d at 312.

Additionally, Guarneri's claims that he should have received a different type or dosage of pain medication to alleviate the resulting symptoms from his knee injury are also insufficient to raise a question of fact. The record shows that defendants did attempt to treat Guarneri's subjective complaints of pain with a variety of medication. Defendants regularly offered Guarneri non-narcotic pain medication and he refused it because he felt that he should be prescribed different medication. Guarneri's complaints about the type of medication given to him for pain again amounts to a disagreement over treatment, which is insufficient to allege a constitutional violation. *Sonds,* 151 F.Supp.2d at 312. Defendants also prescribed Guarneri with pain medication. Guarneri's subsequent complaints and resulting claims that the dosage of such medication was not strong enough are also insufficient to state a claim. The record shows that defendants monitored

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

Guarneri's health and pain levels and, for his own safety, refused to increase the dosage of medication because they were concerned about its addictive properties and because Guarneri had not yet given the medication enough time to produce its therapeutic effect. All of these disagreements over the type and amount of medication to prescribe for Guarneri's knee pain are insufficient to establish a constitutional claim. *Sonds,* 151 F.Supp.2d at 312.

**\*14** Accordingly, defendants' motion should be granted on this ground.

### 2. Shoulder

As to the first prong of the analysis, Guarneri may have offered sufficient evidence to prove that his shoulder injury constituted a serious medical need. Other cases suggest that allegations of "severe pain ... [and] reduced mobility ..." in the shoulder are sufficient to raise a material issue of fact as to a serious medical need. *Sereika v. Patel,* 411 F.Supp.2d 397, 406 (S.D.N.Y.2006). Thus, when applying the aforementioned three-part test, it appears that Guarneri has demonstrated a serious medical need.

However, for substantially the same reasons as discussed *supra,* Guarneri has failed to proffer facts sufficient to show a material dispute about the quality of medical care that he received. The medical records show that Guarneri was evaluated, radiological films were taken, conservative treatment methods for his joint problems and pain were offered, he was given pain medication, and he was continually attended to. Any disagreements Guarneri has with the method or type of treatment provided to him is insufficient to state a claim as all the intervention he received was adequate.

Accordingly, defendants' motion should be granted on this ground as well.

### 3. Mental Health

Guarneri also alleges that he suffered from and received inadequate medical treatment for post-traumatic stress disorder ("PTSD"), bipolar disorder, and depression. "Treatment of mental disorders of mentally disturbed inmates is ... a serious medical need" as contemplated by *Estelle. Guglielmoni v. Alexander,* 583

F.Supp. 821, 826 (D.Conn.1984). Thus, considering all of Guarneri's various complaints concerning his mental health, it is clear that he has alleged facts sufficient to provide relief as to whether he suffered a serious medical need as a result of his mental illnesses.

However, Guarneri's claim still fails because he has failed to establish that any of the represented defendants were personally involved in his mental health treatment. " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). The record is clear that any and all mental health treatment, including prescription and provision of medication, was provided by the OMH and not DOCCS.[FN12] Accordingly, defendants' motion should be granted on this ground.

> FN12. The only defendant who was involved in the provision of mental health, defendant Demarse, has not been served or otherwise appeared. Dkt. No. 26.

However, even assuming the appropriate defendant had been served, Guarneri's claims still fail to establish a constitutional violation. The gravamen of Guarneri's complaint is that he required certain medications and that the facility prescribed a different medication, which he claimed was ineffective. This again amounts to a difference in opinion over treatment methods and modalities, a contention which is insufficient to state an Eighth Amendment claim. *Sonds,* 151 F.Supp.2d at 312. Furthermore, the record demonstrates that Guarneri voluntarily chose to refuse continuing his prescribed medication. Therefore, any consequences occurring as a result of Guarneri's decision to cease taking the prescribed medication after its discontinuation at Upstate cannot be attributed to deliberate indifference on the part of any defendant.

**\*15** Accordingly, defendants' motion for summary judgment should be granted as to this claim.

### 4. Disclosure of Medical Records

Liberally construing Guarneri's complaint, he

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

contends that his medical records were not handled by defendants with a proper regard for their confidential nature, presumably because defendants used his records without his prior consent or written authorization.

Claims surrounding disclosure of confidential medical information are analyzed under both the Eighth and Fourteenth Amendments. *See generally Rodriguez v. Ames,* 287 F.Supp.2d 213, 218–21 (S.D.N.Y.2003). However, the expectation that a plaintiff has in maintaining the confidentiality of his or her medical records is neither concrete nor absolute. *See Doe v. Marsh,* 918 F.Supp. 580, 585 (N.D.N.Y.1996) ("[I]t also was clear that the privacy right, at least as it applied to medical information, was not absolute."); *Jarvis v. Wellman,* 52 F.3d 125, 126 (6th Cir.1995) ("[T]he court approved the release of medical records ... based upon the legitimate nature of the requests for information. The district court inferred from this approach that a non-legitimate release of confidential medical information would violate a constitutional right ....") (internal quotation marks and citations omitted). Accordingly, when an inmate affirmatively places his medical condition at issue in litigation, he may waive any right to privacy in that information. *See Doe,* 918 F.Supp. at 585 ("A plaintiff may waive the privilege when his medical condition is at issue in a lawsuit.").

Moreover, such privacy rights can be outweighed by a strong government interest, such as the need for investigation into policies and procedures and marshaling a defense to constitutional claims. *Doe,* 918 F.Supp. at 585 ("The right to privacy in one's medical history is a conditional right that may be overcome by the government's interest in having or using the information.") (citations omitted). Such governmental uses must "advance a substantial state interest" while using the most "narrowly tailored [amount of confidential information] to meet the legitimate interest." *Id.* (citations omitted); *see also Rodriguez,* 287 F.Supp.2d at 219–20 (upholding Fourteenth Amendment protection where the prisoner "has an unusual medical problem which, if disclosed unnecessarily to other inmates, would likely expose plaintiff to discrimination, intolerance, or potential violence," or where the information "spread through 'humor or gossip.' ") (quotations omitted); *Webb v. Goldstein,* 117 F.Supp.2d 289, 298–99 (E.D.N.Y.2000)

(dismissing a Fourteenth Amendment claim because the prisoner "has not alleged that his prison records contained the sort of sensitive medical information at issue in ... *Powell.*" ).

In this case, it is clear that Guarneri's claims directly relate to his medical conditions. As such, he affirmatively placed the conditions at issue and waived his right to object to any subsequent release of his records. Additionally, to the extent a privacy interest may still exist, the nature of the lawsuit, which alleges that the defendants failed to provide necessary medical treatment for a person in its custody, represents the type of strong and legitimate penological interest contemplated by the disclosure exceptions. Moreover, the medical information was released only to necessary parties, the attorneys defending the respective individual defendants. The information was not widely disseminated, and as such, no unnecessary third parties became privy to the material.

**\*16** Accordingly, the motion of the defendants as to this claim should be granted.

### 5. Provision of Medical Care as a Parolee

Guarneri claims that for the six months he was housed in the Parole Stabilization Program, he was denied mental health treatment by the parole defendants. Guarneri Dep. at 107–108. The Northern District has found that, although the state does not generally have an affirmative duty to provide medical services to anyone, there is an obligation to continue to provide medical services to individuals recently released from incarceration. *Lugo v. Senkowski,* 114 F.Supp.2d 111, 114 (N.D.N.Y.2000). This includes parolees. That duty extends until the parolee is able to secure medication on his own, which may realistically be a period of days or weeks after release. *Id.* Until that time, the state is required to provide the parolee with a supply of medication sufficient to sustain him until he can obtain his own medical treatment. *Id.* at 115.

Medical records do not indicate that Guarneri was receiving any mental health medication or treatment at the time prior to the three week period he was living at the Parole Stabilization Program. Therefore, there is nothing in the record to demonstrate that he was entitled to a supply of medication upon his release. Moreover, except

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

for Guarneri's conclusory allegations, there is nothing in the record to indicate that parole defendants did not provide access to mental health services to attempt to initiate treatment for Guarneri.

Contrary to Guarneri's contentions, the parole logs indicate that the personnel at the program were neither deliberately indifferent nor unresponsive to Guarneri's mental health needs. Staff initiated a conference call with Albany County Mental Health to arrange for treatment almost immediately after Guarneri reported to the program. The fact that Guarneri preferred, and was a prior patient of, Schoharie County Mental Health was unknown to the parole defendants at the program. Immediately after Guarneri's request to be seen by Schoharie for psychiatric services, a telephone call was made to arrange for an appointment. Guarneri had left the program prior to Schoharie having to change to schedule the appointment with him. This was not the fault of defendants. Their actions in immediately contacting a facility for an appointment upon Guarneri's request, in addition to their preliminary efforts to schedule Guarneri with Albany County, refute any contentions of indifference or delay.

Moreover, parole defendants maintained constant contact with Guarneri after he was relocated to his mother's house. Guarneri was scheduled with Schoharie County Mental Health at the beginning of August and parole made arrangements for transportation to the appointment since Guarneri had problems acquiring his own. These are not actions of defendants who are deliberately indifferent. Furthermore, parole defendants were constantly inquiring as to Guarneri's status with his temperament and responses to temptations for addictive substances. This constant dialogue presented multiple opportunities for Guarneri to express additional requests for continued, expedited or additional mental health services. No requests were forthcoming. Parole defendants cannot be tasked with having premonitions about Guarneri's mental health needs. They responded quickly and adequately to the concerns he raised. Guarneri had the opportunity and responsibility to ask for any additional help. His failure to do so cannot be attributed to defendants as an act of deliberate indifference.

**\*17** Accordingly, defendants' motion on this ground

should be granted.

### E. Confiscation/Destruction of Property

Guarneri claims that defendants confiscated, destroyed or lost his legal property. For the reasons stated *supra,* such claims have failed to establish a First Amendment violation. Additionally, such claims fail to establish a Fourteenth Amendment violation.

An inmate has a right not to be deprived of property without due process. However, federal courts do not provide redress for the deprivation of property if there is an adequate state court remedy which the plaintiff can pursue. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "An Article 78 [FN13] proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." *Locurto v. Safir,* 264 F.3d 154, 174 (2d Cir.2001) (citations omitted); *see also* N.Y. C.P.L.R. §§ 7803, 7804; *Campo v. New York City Employees' Ret. Sys. .,* 843 F.2d 96, 101 (2d Cir.1988) ("Article 78 ... provides a summary proceeding which can be used to review administrative decisions."). State law also provides that "[a]ny claim for damages arising out of any act done ... within the scope of ... employment and in the discharge of the duties of any officer or employee of the department [of corrections] shall be brought and maintained in the court of claims as a claim against the state." N .Y. Corr. Law § 24(2).

> FN13. N.Y. C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

In this case, Guarneri contends that there was an unconstitutional deprivation when his legal property was allegedly confiscated. Such claims fail as a matter of law for several reasons. First, the Article 78 procedure exists and affords an adequate state court remedy. Second, because Guarneri is suing for damages, he must pursue his claims here against New York State in the New York Court of Claims pursuant to Corrections Law § 24. Thus, the correct venue to litigate these claims is in state court.

Accordingly, defendants' motion should be granted as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

to this claim.

### F. Grievance Proceedings

An action commenced pursuant to § 1983 requires proof of the "deprivation of any right[ ], privilege[ ], or immunit[y] secured by the Constitution" or laws of the federal government. 42 U.S.C. § 1983. Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

"[I]nmate grievance programs [FN14] created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak,* 365 F.Supp.2d 362, 370 (W.D.N.Y.2005) (citations omitted); *see also Dolberry v. Levine,* 567 F.Supp.2d 413, 416 (W.D.N.Y.2008) ("The law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. A violation of the inmate grievance procedures does *not* give rise to a claim under section 1983.") (internal quotation marks and citations omitted). However, "[i]f prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim." *Shell,* 365 F.Supp.2d at 370 (citations omitted).

> FN14. The DOCCS IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

**\*18** In this case, Guarneri cannot establish that he had a liberty interest which required constitutional protection. To the extent that Guarneri has proffered complaints about the grievance process as a whole, stating that grievances were summarily denied, that he did not receive the correct

paperwork that he required, or that claims were not properly addressed and mailed to the IGRC, such claims are not cognizable in this court. Additionally, to the extent Guarneri's grievances dealt with the underlying constitutional violations discussed in this report-recommendation, specifically alleged violations of his First, Eighth, and Fourteenth Amendment rights, for the reasons proffered herein, such claims are meritless. Defendants' motion on this ground should be granted.

### G. Conspiracy

In his complaint, Guarneri asserts a cause of action pursuant to § 1985 based upon defendants' attempts to obstruct justice, specifically through the grievance program. "Section 1985 prohibits conspiracies to interfere with civil rights." *Davila v. Secure Pharmacy Plus,* 329 F.Supp.2d 311, 316 (D.Conn.2004). To state a claim for relief under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*United Bd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Additionally, a plaintiff "must demonstrate that the defendant ... acted with class-based invidiously discriminatory animus." *Webster v. Fischer,* 694 F.Supp.2d 163, 196 (N.D.N.Y.2010) (citations omitted).

Here, Guarneri does not assert any facts giving rise to a conspiracy. First, Guarneri vaguely asserts conclusory statements relating to an alleged conspiracy among defendants. This is insufficient. *See generally Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999) (granting summary judgment for a § 1985(3) claim where the "assertions were conclusory and vague, and did not establish the existence of an agreement among defendants to deprive [plaintiff] of his constitutional rights."). Second, there has been proffered no evidence relating to agreements, or even communications, between the defendants, the purpose of their alleged conspiracy, or an

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

intent by defendants to deprive Guarneri of his civil rights. See *Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir.2003) ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (internal quotation marks and citations omitted); *see also Romer v. Morgenthau,* 119 F.Supp.2d 346, 364 (S.D.N.Y.2000) (explaining that a plaintiff "cannot satisfy the conspiracy prong [if] his claims are too general and conclusory to sufficiently plead the meeting of the minds requirement.") (citations omitted). Murray also fails to allege or establish discriminatory animus.

**\*19** Additionally, if any defendant "ha[d] knowledge that any of the wrongs ... mentioned in section 1985 ... [we]re about to be committed, and ha[d] power to prevent or aid in preventing the commission of the same, [and] neglect[ed] or refuse[d] so to do ..., [he] shall be liable to the party injured." 42 U.S.C. § 1986. However, "[a] claim under section 1986 ... lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). No such viable claim has been shown here.

Accordingly, defendants' motion as to this claim should be granted.

## H. Parole[FN15]

FN15. Defendants also contend that Guarneri's parole revocation claims were barred by the *Rooker–Feldman* doctrine. Under that doctrine, federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments. See *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486–87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). In light of the recommendations herein as to defendant Skinner, the *Rooker–Feldman* doctrine need not be addressed. The preclusive effects of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and its favorable termination rule also will not be addressed since

defendants did not raise that argument in their papers.

### 1. Alleged Deficiencies in Preliminary Hearing

A final parole revocation proceeding is an administrative proceeding held solely to enable parol authorities to determine whether the parolee violated the terms of parole. *People ex rel. Maiello v. New York State Bd. of Parole,* 65 N.Y.2d 145, 147, 490 N.Y.S.2d 742, 480 N.E.2d 356 (1985). Although a parolee facing revocation of release is not entitled to the "full panoply of rights" due a defendant in a criminal prosecution, the Supreme Court has held that the revocation of parole implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Morrisey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Upholding the *Morrisey* decision, a year later the Supreme Court further defined the process required during a preliminary parole revocation hearing. *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). "At the ... hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." *Id.* (citing *Morrisey,* 408 U.S. at 487). Furthermore, at the final hearing, individuals are given a more detailed hearing with the minimum requirements including:

'(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyears; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

*Id.* (citing *Morrisey,* 408 U.S. at 489)

Here, Guarneri alleges that a variety of his constitutional rights were violated during the course of his

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

preliminary hearing. Compl. ¶¶ 96–109. Guarneri contends that his parole was revoked based on false statements from Skinner, that he was denied his right to confront witnesses and have counsel, and that he made statements in contravention of his rights against self-incrimination. *Id.* However, the record demonstrates that Guarneri received what the process to which he was entitled.

**\*20** Guarneri was served with a violation of probation report and stated that he received that report prior to his preliminary hearing. Dkt. No. 91–13 at 73. Thus, Guarneri was provided with notice of the alleged parole violations. Additionally, Guarneri was provided with the opportunity to cross examine the witnesses during the preliminary hearing, as well as call his own witnesses during the course of the hearing. *Id.* at 86–90, 92, 100–09. Guarneri was also permitted to present a closing statement. *Id.* at 93–94, 109–11. Guarneri also engaged in a lengthy conversation with the hearing officer about the state of his mental health and his ability to comprehend the preliminary hearing proceedings and confidently represent himself.[FN16] *Id.* at 76–78. Therefore, the record conclusively refutes any arguments that Guarneri's mental health problems interfered with his preliminary hearing. Lastly, Guarneri was provided with an explanation on the record of the reasons for finding probable cause, as well as a written statement. *Id.* at 111, 151. While Guarneri contends that defendant Skinner committed perjury, the hearing officer's decision finding probable cause resulted from the testimony of Skinner as well as the witness testimony and the inconsistencies in Guarneri's own testimony. Therefore, there were multiple sources upon which to find probable cause. Guarneri's claims regarding his need for counsel during the preliminary hearing are rejected as he was not guaranteed counsel at that stage and his own testimony indicated that he did not require counsel. Counsel was provided for Guarneri during his final revocation proceedings, where the ultimate decision to revoke his parole was made. Moreover, the right to call witnesses was not an element of due process afforded during the preliminary hearing. Thus, Guarneri was provided with all portions of due process identified by the Supreme Court as necessary during a preliminary hearing.

FN16. The Supreme Court has held that the right

to counsel at parole revocation hearings is limited and should be determined based upon the circumstances of each case. *See Gagnon,* 411 U.S. at 790.

Guarneri asserted no issues regarding the observance of his constitutional rights during his final revocation hearing. Even liberally construing his complaint to include such allegations, these contentions would be negated by the record and Guarneri's knowing and voluntary guilty plea. *See generally Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (concluding that "a guilty plea represents a break in the chain of events which has preceded it ....," therefore, when a guilty plea is rendered, the defendant, "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea ....."); *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.1996) (same). Guarneri has not made any contentions against the knowing and voluntariness of his plea. Moreover, the dialogue between the judge, Guarneri, and his counsel would refute any claims that Guarneri's plea was made under misinformation, duress, or coercion. Specifically, the judge discussed, on the record, with Guarneri that he was on medication for mental health issues, had taken that medication, felt well that day, and understood the proceedings prior to accepting his plea of guilty. Dkt. No. 91–13 at 133–34. Accordingly, any contentions that Guarneri may have proffered that his mental illness interfered with his parole revocation proceedings is belied by the record.

**\*21** Therefore, defendants' motion should be granted on this ground.

## 2. Absolute Immunity

Guarneri has named parole officers Skinner, Robin, and Lusseve and parole supervisor Lowary as defendants in this action in connection with their actions regarding his parole revocation. However, "[p]arole officers ... receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)

(Cite as: 2011 WL 4592209 (N.D.N.Y.))

prosecutorial in nature." *Scotto v. Almenas,* 143 F.3d 105, 112 (2d Cir.1998) (citations omitted). The same is true for parole board officials who "serve a quasi-adjudicative function in deciding whether to grant, deny, or revoke parole." *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999). Accordingly, with regard to the parole defendants and their actions in instituting, pursuing, and ordering Guarneri's parole revocation, such actions are protected and these defendants are absolutely immune from suit.

Therefore, defendants' motion on this ground should be granted.

### 3. Conditions of Parole

To the extent that Guarneri contends that his conditions of parole "banishing" him from his home were unconstitutional, such claims are meritless. "A parolee has no constitutionally protected interest in being free of a special condition of parole." *Boddie v. Chung,* 2011 WL 1697965, at *1 (E.D.N.Y. May 4, 2011) (attached to decision) (citations omitted); *see also* N.Y. Comp.Codes. R & Regs. tit. 9, § 8003.3. ("A special condition may be imposed upon a [parolee] either prior or subsequent to release," memorialized by "a written copy of each special condition imposed."). Moreover, review of parole conditions are generally reserved to state courts. *Boddie,* 2011 WL 1697965, at *2 (citations omitted). Lastly, "parole conditions are not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner." *Id.* The conditions precluding Guarneri from initially returning to his home to live with his mother, who had an order of protection against Guarneri, was logical and reasonable and thus the condition was neither arbitrary nor capricious. Guarneri's contentions that his eventual return to the home after he was dismissed from Parole Stabilization illustrate the fact that he the condition was illusory are also meritless. The fact that parole authorities approved Guarneri's mother's home as a principle residence after it had been determined that the Division of Parole could not provide Guarneri with suitable alternative housing was preferable to the alternatives of leaving Guarneri homeless or reincarcerating him. Moreover, the parole defendants acquired the mother's permission for him to live at the house while still maintaining the protective conditions of the order of protection. Therefore, even though the housing requirement was eventually modified, the initial special conditions were still conserved and continued to be based on sound judgment.

**\*22** Accordingly, defendants' motion should be granted on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Defendants' motion for summary judgment (Dkt. No. 91) be **GRANTED** and that judgment be entered for all defendants on all claims; and

2. The complaint be **DISMISSED** without prejudice as to defendants Sergeant John Doe, Nurse Administrator Jane Doe, Medical Director John Doe and Soucia, Demarse, and Lusseve.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2011.

Guarneri v. Wood
Not Reported in F.Supp.2d, 2011 WL 4592209 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)

(Cite as: 2011 WL 43461 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Michel TOLIVER, Plaintiff,
v.
Somu Detective Almo Sanchez PERRI, et al.,
Defendants.
No. 10 Civ. 3165(PAC)(MHD).

Jan. 6, 2011.
*MEMORANDUM AMD ORDER*

MICHAEL H. DOLINGER, United States Magistrate
Judge.

**\*1** Before the court is defendants' request to revoke
plaintiff's *in forma pauperis* status pursuant to 28 U.S.C.
§ 1915(g), the "three strikes" provision of the Prison
Litigation Reform Act ("PLRA"). (*See* Dec. 20, 2010
letter to the Court from Ass't Corp. Counsel Bradford C.
Patrick). Because we find that plaintiff has only one
"strike" as defined in section 1915(g), we deny defendants'
request without prejudice to renewal should two or more
of plaintiff's currently pending actions in this court be
dismissed as frivolous, malicious, or failing to state a
claim upon which relief may be granted.

The "three strikes" provision of the PLRA provides:

In no event shall a prisoner bring a civil action or appeal
a judgment in a civil action or proceeding under this
section if the prisoner has, on 3 or more prior occasions,
while incarcerated or detained in any facility, brought an
action or appeal in a court of the United States that was
dismissed on the grounds that it is frivolous, malicious,
or fails to state a claim upon which relief may be
granted, unless the prisoner is under imminent danger of
serious physical injury.

28 U.S.C. § 1915(g); *cf.* Fed.R.Civ.P. 12(b)(6). There
is no dispute that the plaintiff in this action is a "prisoner"
for purposes of section 1915(g), as he is presently

incarcerated at the Five Points Correctional Facility in
Romulus, New York. (*See* Letter from Michel Toliver to
the Court, Oct. 30, 2010; *see also* 28 U.S.C. § 1915(h)
(defining "prisoner" for purposes of section 1915)). Hence
we must determine whether, while incarcerated, he has
previously filed three civil actions (or appeals) which have
been dismissed as frivolous, malicious, or failing to state
a claim upon which relief may be granted.

Defendants cite four cases previously filed by the
plaintiff, and assert that each was dismissed for failure to
state a claim upon which relief could be granted. In one
instance, defendants are correct that plaintiff's claim was
dismissed under Rule 12(b)(6). *See Toliver v. Dep't of
Corr.,* 07 Civ. 3017(KMW) (Order of Dismissal, Apr. 17,
2007, at 2 (S.D.N.Y.) ("[T]he complaint ... is dismissed
because it fails to state a claim on which relief may be
granted.").

In each of the three other cases, however, plaintiff's
complaint was dismissed, not because he failed to state a
claim upon which relief could be granted, but because he
failed to amend his complaint within a certain time period,
as ordered by the court. *See Toliver v. Dep't of Corr.,* 07
Civ. 4539(KMW) (Order, Sept. 11, 2007) (S.D.N.Y.)
("By order dated May 30, 2007, plaintiff was directed to
file an amended complaint with this Court within 60 days.
Since plaintiff has failed to file an amended complaint as
specified ... the complaint is dismissed."); *Toliver v. New
York City Police Dep't,* 07 Civ. 4575(KMW) (Order, Sept.
11, 2007) (S.D.N.Y.) ("By order dated May 31, 2007,
plaintiff was directed to file an amended complaint with
this Court within 60 days. Since plaintiff has failed to file
an amended complaint as specified ... the complaint is
dismissed."); *Toliver v. New York City Police Dep't,* 07
Civ. 5877(KMW) (S.D.N.Y.) (Order, Sept. 11, 2007)
("By order dated June 21, 2007, plaintiff was directed to
file an amended complaint with this Court within 60 days.
Since plaintiff has failed to file an amended complaint as
specified ... the complaint is dismissed."). Each of these
orders cited to 28 U.S.C. § 1915(e)(2)(B)(ii), a section of
the PLRA that refers to dismissal when a complaint "fails
to state a claim on which relief may be granted."

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)

(Cite as: 2011 WL 43461 (S.D.N.Y.))

Nonetheless, it appears clear from the text of the orders that each of these three cases was dismissed because plaintiff failed to amend his complaint as directed by the court. Fairly construed, this type of dismissal is best characterized as resting on a failure to prosecute a pending action rather than a failure to state a claim.[FN1]

> FN1. We recognize that the apparent context of these dismissals leaves some definitional dispute regarding the nature of the dismissal. In each of these cases the plaintiff submitted a proposed *pro se* complaint, which was reviewed by the *Pro Se* Clerk of the Court, who found it wanting, and as a result the then-Chief Judge issued an order directing that the complaint be filed and then dismissed for failure to state a claim, but with the proviso that the plaintiff could file an amended complaint within sixty days since it appeared that he might be able to plead claims that would pass muster under Rule 12(b)(6). In each instance plaintiff did not file an amended complaint within the specified time, and as a result the case was dismissed.
>
> It is true that in each case the original complaint was found legally inadequate and therefore dismissed, but the case was not itself dismissed until after the plaintiff had failed to comply with the court's directive to file a corrected pleading within 60 days. We therefore view the dismissal of each of these cases—as distinguished from the dismissal of the initial complaint—as being premised, in substance, on a failure to prosecute.

**\*2** While the Second Circuit has not addressed whether dismissal for failure to prosecute counts as a strike, this and other courts in this Circuit have declined to find that such a dismissal constitutes a strike. *See Toliver v. New York City Dep't of Corr.,* 10 Civ. 0822(RJS)(RLE) (Order, Dec. 21, 2010) (S.D.N.Y.); *Toliver v. New York City Dep't of Corr.,* 10 Civ. 6666(RJS)(RLE) (Order, Dec. 21, 2010) (S.D.N.Y.); *Kalwasinski v. McCraken,* 2009 WL 4042973, at \*4 (W.D.N.Y. Nov. 19, 2009) ("the Court is not aware of any support for finding a "strike" based upon a failure to prosecute."); *Harry v. Doe,* 2009 WL 2152531, at \*2 (E.D.N.Y. Jul. 17, 2009) ("the Court considers it unlikely that the dismissal for failure to prosecute would count as a strike"). Moreover, at least two other Circuits have ruled that dismissal for failure to prosecute is not a strike. *See Torns v. Mississippi Dep't of Corrections,* 317 Fed. Appx. 403, 404 (5th Cir.2009); *Butler v. Dep't of Justice,* 492 F.3d 440, 443 (D.C.Cir.2007).

In *Butler,* the District of Columbia Court of Appeals examined the three grounds upon which dismissals count as "strikes" under the relevant provision of the PLRA. It first noted that a dismissal "for failure to state a claim on which relief may be granted" clearly refers to dismissals under Rule 12(b)(6), which it found was not implicated in a dismissal for failure to prosecute. 492 F.3d at 443. The court in *Butler* also determined that dismissal for failure to prosecute "does not rest on the merits of a claim," in contrast to a dismissal on the grounds that the case is frivolous, which is "based on the utter lack of merit of an action or appeal." *Id.* Finally, the court held that dismissal for failure to prosecute does not "fit [ ] appropriately within the statutory category of a dismissal 'on the ground [ ] that it is ... malicious.' " *Id.* Given the existence of "non-malicious reasons why a prisoner may fail to prosecute a matter, including transfer to another facility and sickness," the court in *Butler* held that dismissal for failure to prosecute was not dismissal of an action as "malicious," and therefore did not fall within the categories enumerated by the PLRA. *Id.*

The court in *Butler* also noted a Supreme Court case, *Neitzke v. Williams,* 490 U.S. 319 (1989), decided under an earlier version of the *in forma pauperis* statute. "At the time, the *in forma pauperis* statute authorized 'federal courts to dismiss a claim filed *in forma pauperis* if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.' " *Butler,* 492 F.3d at 444 (quoting *Neitzke,* 490 U.S. at 324 (1989)). In *Neitzke,* prison officials urged the Supreme Court to adopt a *per se* rule that dismissals under Rule 12(b)(6) were frivolous. The Court declined to do so, reasoning that it could not, as a matter of statutory construction, conclude that complaints filed *in forma pauperis* were frivolous because they failed to state a claim. *Id.* (quoting *Neitzke,* 490 U.S. at 331).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)

(Cite as: 2011 WL 43461 (S.D.N.Y.))

**\*3** As the Court of Appeals noted in *Butler,* "[h]ad Congress wanted to include dismissals for failure to prosecute among the strikes listed in § 1915(g), it could have done so." *Id.* (citing *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007). Since Congress did not include dismissals for failure to prosecute in the categories of strikes listed in the PLRA, we cannot count such dismissals as strikes in this case.[FN2]

> [FN2.] The court in *Butler* also noted that litigation by prisoners who file numerous suits and fail to prosecute them could constitute a burden to the courts, and suggested that the solution to this problem "lies in exercising our discretionary authority to deny [*in forma pauperis* ] status to prisoners who have abused the privilege." *Butler,* 492 F.3d at 444. It then examined previous cases where the Supreme Court had denied *in forma pauperis* status to litigants, and decided to "examine the number, content, frequency, and disposition of [the appellant's] previous filings to determine if there is a pattern of abusing the [*in forma pauperis* ] privilege in his litigation history. *Id.* at 445–46 (citing cases). It went on to deny the appellant *in forma pauperis* status. *Id.* at 446–47. In each case examined by the *Butler* court, however, the litigant in question had filed at least twenty-five actions or appeals within the preceding three to four years. Mr. Toliver may be well on his way to filing that number of cases, but he is not there yet. We therefore decline to exercise our discretion in favor of revoking his *in forma pauperis* status.

We find the reasoning of *Butler* and the other cases that have declined to count dismissals for failure to prosecute as "strikes" persuasive, and hence conclude that plaintiff has only one strike for purposes of the PLRA. We therefore deny the City's motion to revoke his *in forma pauperis* status.

## CONCLUSION

There is no doubt that the plaintiff in this action is a serial litigant. (*See* Defs.' Letter to the Court, Nov. 3, 2010, at p. 3 n. 3 (listing nine cases filed by the plaintiff in 2010)). He has not, however, accumulated enough "strikes" under the PLRA to lose his capacity to request, and receive, *in forma pauperis* status. He may do so in the future, at which point defendants are free to renew their motion; but until that time, it is denied.

**SO ORDERED.**

S.D.N.Y.,2011.

Toliver v. Perri
Not Reported in F.Supp.2d, 2011 WL 43461 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 4042973 (W.D.N.Y.)

(Cite as: 2009 WL 4042973 (W.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

W.D. New York.
Mitchell KALWASINSKI, Plaintiff,
v.
R. McCRAKEN, et al., Defendants.
No. 09–CV–6295–CJS.

Nov. 19, 2009.
Mitchell Kalwasinski, Comstock, NY, pro se.

J. Richard Benitez, A.A.G., New York State Attorney General's Office, Rochester, NY, for Defendants.

DECISION & ORDER

CHARLES J. SIRAGUSA, District Judge.
**INTRODUCTION**

**\*1 Siragusa, J.** Defendants filed a Notice of Motion and memorandum of support on August 26, 2009 (Docket No. 4), seeking an Order pursuant to 28 U.S.C. § 1915(g) and 28 U.S.C. § 1915(e)(2) revoking Plaintiff's *in forma pauperis* status and a stay, alleging that Plaintiff is in violation of the "three strikes" provision of the Prisoner Litigation Reform Act of 1995, PL 104–134, 110 Stat 1321 ("PLRA"). In his response to Defendants' motion, Plaintiff has included a cross-motion seeking, in essence, to strike Defendant's motion for failure to comply with Local Rule of Civil Procedure 7.1, by failing to "file with the court, and plaintiff a copy of its declaration, affidavit or affirmation in support of its notice of motion of [A]ugust 26, 2009...." (Kalwasinksi Decl. (undated) ¶ 3.) For the reasons stated below, both applications are denied.

**BACKGROUND**

Plaintiff filed a complaint on June 8, 2009, asserting claims against twelve defendants, all employees of the New York State Department of Correctional Services ("DOCS"). In his complaint, Plaintiff alleges he was confined at Southport Correctional facility (Compl.¶ 1) when, on June 15, 2006, one defendant "maliciously and sadistically attacked plaintiff with a baton knocking plaintiff to the ground, then viciously and maniacally began to brutally kick with booted feet in his groin, thighs and back area causing serious physical injury to plaintiff" (Compl.¶ 18). He also alleges that Defendants conspired to take unlawful measures against him to cover up the attack, and specifies the measures he alleges they took. (Compl.¶¶ 19–25.) Plaintiff enumerates the actions in his complaint, which include filing false misbehavior reports against him, destroying his property, denying him exercise, showers, cell cleanup and library services, *etc.* Finally, he further alleges that he "is in imminent danger of serious physical injury as defendants continue to conspire to retaliate against plaintiff by beating him and causing him other injuries for his filing of grievances and lawsuits." (Compl.¶ 44.)

On July 14, 2009, the Court granted Plaintiff's motion to proceed *in forma pauperis* and directed service of the complaint. On August 26, 2009, Defendants moved to dismiss (Docket No. 4), and Plaintiff sent his response to Chambers FN1 on October 23, 2009.

> FN1. Plaintiff's papers include a certificate of service showing they were mailed on October 23, 2009, to J. Richard Benitez, Esq., who represents Defendants in this action. As a courtesy to Plaintiff, the Court provided the papers to the Clerk for docketing. Evidently, Plaintiff also provided a copy to the Clerk, since his response is docketed twice: Docket No. 9 and Docket No. 10.

According to the DOCS Inmate Locator,FN2 Plaintiff was originally received by DOCS on October 5, 1982, on a new commitment from Kings County, New York, following a conviction for murder in the second degree. In pleading guilty, Plaintiff admitted that he struck a threeyear-old infant more than two times and the child died as a result of the injuries. *People v. Kalwasinski,* 160 A.D.2d 732, 553 N.Y.S.2d 802 (N.Y.App.Div.1990). He received a sentence of fifteen years to life.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 4042973 (W.D.N.Y.)

(Cite as: 2009 WL 4042973 (W.D.N.Y.))

FN2. DOCS Inmate Lookup service is available at http:// nysdocslookup.docs.state.ny.us/kinqw00 (last accessed Nov. 9, 2009).

**STANDARDS OF LAW**

*Local Rule of Civil Procedure 7.1.*

Western District of New York Local Rule of Civil Procedure 7.1 provides in pertinent part as follows:

**\*2** All pleadings, notices and other papers shall be served and filed in accordance with the Federal Rules of Civil Procedure....

Under all other circumstances, and except as ordered otherwise by the Court, notices of motion together with supporting affidavits and memoranda shall be served on the parties and filed with the Clerk at least ten business days prior to the return date of the motion.

(Loc. R. Civ. P. 7.1(a) & (c).) Federal Rule of Civil Procedure 12(b) permits any of the enumerated defenses to be made by motion; however, "Motions advancing non-Rule 12(b) defenses and objections also are authorized by several federal statutes." 5C Fed. Prac. & Proc. Civ. § 1360 (3d ed.). The Court has previously entertained a motion pursuant to the Prison Litigation Reform Act. *See Burgess v. Conway,* 631 F.Supp.2d 280 (W.D.N.Y.2009). Unlike motions for summary judgment, a motion made under the PLRA does not require supporting affidavits, and the issue of whether a prior dismissed lawsuit is a "strike" for PLRA purposes is a question of law for the Court. *See Tafari v. Hues,* 473 F.3d 440 (2d Cir.2007).

*PLRA and "Three Strikes"*

The PLRA added the following language to 28 U.S.C. § 1915:

(e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—

(A) the allegation of poverty is untrue; or the action or appeal—

(I) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief....

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(e)(2) & (g) (1996). The language in subdivision (g) has been referred to as the "three strikes" rule. The Second Circuit has held that,

Section 1915(g) denies in forma pauperis status-that is, the ability to file a civil action with fees paid by the Court-to an incarcerated person who has filed three or more previous actions deemed to be "frivolous, malicious, or [which] fail[ed] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).
*Polanco v. Hopkins,* 510 F.3d 152, 153 (2d Cir.2007). Even if a court has already granted *in forma pauperis* status to a plaintiff, should it thereafter become aware of a basis for denying that status pursuant to § 1915(g), it may nevertheless apply the statute. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998).

**ANALYSIS**

**\*3** First, addressing Plaintiff's cross-motion to strike, the basis for Defendants' application is statutory, and neither the statute, nor the Federal Rules of Civil Procedure, requires the filing of an affidavit or affirmation. Accordingly, there is no basis to strike Defendants' motion under Local Rule 7.1.

Turning now to Defendants' motion, they allege that Plaintiff has already suffered three "strikes" in prior federal litigation. They argue that, "[g]iven plaintiff's documented history of malicious litigation, he cannot be entitled to IFP status in the present action and his complaint must be dismissed." (Def.s' Mem. of Law at 3.) As the Honorable David N. Hurd of the Northern District of New York determined, Plaintiff accumulated three strikes as a result of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 4042973 (W.D.N.Y.)

(Cite as: 2009 WL 4042973 (W.D.N.Y.))

two cases in the Northern District and one in the Western District of New York. *Kalwasinski v. Wood,* No. 9:02–CV–1146 (CNH/RFT), slip opn. at 6 (N.D.N.Y. Sept. 28, 2004). The Court has reviewed its own docket, as well as cases appealed from the Western District of New York to the Second Circuit, and discovered the following matters previously filed by Plaintiff along with their dispositions:

| | |
|---|---|
| 94–CV–6043–MAT *Kalwasinski v. Bernard* | Oct. 11, 1994, Order entered dismissing complaint. |
| 94–CV–6123–MAT *Kalwasinski v. Coughlin* | Jun. 6, 1995, Order entered dismissing case for failure to prosecute. |
| 95–CV–6343–CJS–WGB *Kalwasinski v.Coombe, et al.* | May 8, 2002, Judgment for defendants following bench trial. |
| USCA No. 01–310 *Kalwasinski v. Coombe, et al. Appeal* | Dec. 8, 2003, MANDATE of USCA dismissing appeal for failure to comply with USCA Court's previous order by properly ordering a copy of the trial transcript; appellants pending motions are denied as moot |
| 95–CV–6526–MAT–JWF *Kalwasinski v. Coombe, et al.* | Apr. 3, 1997, Summary Judgment entered for Defendants |
| 95–CV–6632–MAT *Kalwasinski v. Coombe* | May 28, 1997, Summary Judgment entered for Defendants. |
| 96–CV–6113–MAT *Kalwasinski v. Vanderlaan* | May 20, 1996, Order entered complaint dismissed without prejudice and leave to appeal as a poor person denied. |
| 96–CV–6172–JWF *Kalwasinski v. Morse, et al.-JWF* | Mar. 19, 1999, Summary Judgment entered for Defendants. |
| USCA No. 05–1104–pr *Kalwasinski v. McGinnis* | Apr. 4, 2007, Interlocutory appeal dismissed as defaulted. |
| 96–CV–6475–JWF *Kalwasinski v. McGinnis, et al.* | Sep. 17, 2007, Order entered dismissing complaint. |
| USCA No. 97–2786 *Kalwasinski v. McGinnis* | June 11, 1999, Order filed denying certificate of appealability |
| USCA No. 08–3605–pr *Kalwasinski v. McGinnis* | Mar. 13, 2008, appeal dismissed for lack of jurisdiction. |

In accordance with § 1915, the Court will consider only those cases that were dismissed on grounds that they were frivolous, malicious, or fail to state a claim upon which relief may be granted.

In that regard, the Court first considers *Kalwasinski v.* *Bernard,* No. 94–CV–6043T, slip opn. at 4–5 (W.D.N.Y. Oct. 12, 1994). On October 12, 1994, the Honorable Michael A. Telesca, U.S. District Judge of this court, entered a Decision and Order dismissing Plaintiff's complaint for failure to state a cause of action. Plaintiff alleged that on April 28, 1993, he "observed the defendant, a corrections counselor, 'aggressively

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 4042973 (W.D.N.Y.)

(Cite as: 2009 WL 4042973 (W.D.N.Y.))

stroking the erect phallus' on an inmate named Robinson. Plaintiff claims that Mrs. Bernard subsequently threatened and harassed him in an effort to prevent him from informing prison authorities of what he had allegedly witnessed." *Id.* at 1. Pursuant to the statute, case 94–CV–6043T is a "strike" since it was "dismissed on the grounds that it ... fail[ed] to state a claim upon which relief may be granted...." 28 U.S.C. § 1915(g). Judge Hurd considered this case and also determined that it constituted a "strike" for 1915(g) purposes. *Kalwasinski v. Wood,* No. 9:02–CV–1146 (CNH/RFT), slip opn. at 6 (N.D.N.Y. Sept. 28, 2004).

**\*4** Second, with regard to *Kalwasinski v. Coughlin,* No. 94–CV–6123, the Court is not aware of any support for finding a "strike" based upon a failure to prosecute. *See Harry v. Doe,* No. 09–CV–2342 (SJF)(LB), 2009 WL 2152531, 2 (E.D.N.Y. Jul. 17, 2009) ("the Court considers it unlikely that the dismissal for failure to prosecute would count as a strike, *see Harry v. Doe,* No. 05 Civ. 8131 (S.D.N.Y. Sept. 20, 2005) (dismissal for failure to prosecute), unless the Corporation Counsel can provide support for such a claim."). In his Decision and Order in 94–CV–6043T, Judge Telesca did suggest that the case had no merit:

> The Court notes that plaintiff has filed another complaint relating to his incarceration at Attica Correctional Facility, 94–CV–6123T, in which he claims that three male corrections officers engage in homosexual activities with inmates who take hormones to develop feminine-type bodies, that three female corrections officers and a registered nurse have had intercourse with him, and that another registered nurse's "major concern was to stare at [his] penis."

*Kalwasinski v. Bernard,* No. 94–CV–6043T, slip. opn. at 3 n. 1. However, since 94–CV–6123T was dismissed not because it was frivolous, malicious, or for failure to state a claim, the Court concludes that it does not constitute a "strike" under 1915(g).

Third, in *Kalwasinski v. Vanderlaan,* No. 96–CV–6113T, slip. opn. at 7 (W.D.N.Y. May 15, 1996), the Honorable John T. Elfin entered a Memorandum and Order dismissing Plaintiff's complaint. In this case, Plaintiff, then an inmate of Southport Correctional Facility, alleged that the defendant gave documents received in response to Plaintiff's Freedom of Information Act request to an inmate named Rodrigues and

other inmates at Southport. *Id.* at 1. Plaintiff claimed "that the documents contained information pertaining to 'plaintiff's incarceration, his placement in protective custody, the reason why' and names, address, and telephone number of plaintiff's sister and her children." *Id.* at 1–2. As a result of the disclosure of information, Plaintiff alleged that "fellow inmates were threatening his life, and the lives of his sister and her children." *Id.* at 2. He also alleged that inmates were banging on the steel heater covers preventing him from sleeping and reading, and that he was "being confined to his cell and deprived of outdoor recreation because fellow inmates threaten to spin on him and throw bodily waste on him if he emerges from his cell." *Id.* at 2.

In dismissing the complaint, Judge Elfin set forth the standards under 28 U.S.C. § 1915(d), Judge Elfin and concluded: "A review of plaintiff's papers demonstrates that plaintiff's claims in this case are based on indisputably meritless legal theories. As a result, under the above-noted standards, they are subject to dismissal under Section 1915(d)." *Id.* at 3. He reasoned that Plaintiff had no "constitutional right to keep his criminal conviction confidential.... Similarly, because the names, addresses and phone numbers of plaintiff's family members is information readily available to the public, disclosure of this information did not violate plaintiff's constitutional rights." *Id.* at 3. With regard to his fellow inmates' banging on the heater covers to harass Plaintiff, Judge Elfin determined that Plaintiff had "not alleged a deprivation that is 'sufficiently serious' to amount to an Eighth Amendment violation." *Id.* at 5. Judge Elfin also concluded that Plaintiff's allegation that he was being confined to his cell "as a method of protecting [his] safety" was not "sufficiently serious" to amount to an Eighth Amendment violation, citing *Van Hoorelbeke v. Hawk,* 70 F.3d 117 (7th Cir.1995), since he was permitted to move about his cell and had not alleged that his health had been threatened. *Id.* at 6. Judge Elfin wrote that, "[e]ven affording plaintiff's complaint the liberal reading due pleadings filed by *pro se* litigants ..., the Court finds that the complaint is frivolous as a matter of law." *Id.* at 7. Therefore, pursuant to the statute, case 96–CV–6113T is a "strike" since it was "dismissed on the grounds that it [was] ... fail[ed] to state a claim upon which relief may be granted...." 28 U.S.C. § 1915(g). [FN3]

> FN3. Though Judge Elfin made his dismissal "without prejudice," he did not do so on procedural

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 4042973 (W.D.N.Y.)

(Cite as: 2009 WL 4042973 (W.D.N.Y.))

grounds, but on the merits. *See Rafari v. Hues,* 473 F.3d 440 (2d Cir.2007) ("The jurisdictional defect in Moscicki stands in stark contrast to the clearly baseless suits with which Congress was concerned when passing the PLRA."). In Rafari, the Second Circuit made clear that a dismissal, in order to qualify as a "strike" under § 1915(g), must be on the merits, not due to a procedural deficiency, such as failure to exhaust administrative remedies. Accordingly, Judge Hurd's decision in *Kalwasinski v. Wood,* which determined that Judge Elfvin's dismissal did not qualify as a "strike," is distinguishable based on later Second Circuit case law.

**\*5** Fourth, *Kalwasinski v. McGinnis, et al.,* No. 96–CV–6475, was dismissed by U.S. Magistrate Judge Jonathan W. Feldman as a sanction based upon his finding that Plaintiff had threatened to murder the defendants and their families through civilian associates. As egregious as Plaintiff's conduct was in that case, the Court cannot conclude that the dismissal was because his lawsuit was "frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted...." 28 U.S.C. § 1915(g).

Fifth, in *Kalwasinski v. McGinnis,* No. 97–2786 (2d Cir. Jun. 11, 1999), the United States Court of Appeals for the Second Circuit on June 11, 1999, entered an Order in denying Plaintiff's appeal, which it,

construed ... as a motion for certificate of appealability. Construed as such, the motion for a certificate of appealability is denied and the appeal is dismissed. Appellant has failed to make the requisite showing that he is being held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. 2254. (JMMc, C.J.DJ, C.J.McMahon\*) by (LC). (pr24)

The Court determines that the Second Circuit's denial of Plaintiff's appeal constitutes a strike, since it was an appeal dismissed on the grounds that it failed to state a claim upon which relief may be granted. *See Burgess v. Conway,* 631 F.Supp.2d 280, 282 (W.D.N.Y.2009) ("the Court of Appeals denied plaintiff's IFP request and dismissed the appeal as frivolous" constituting a strike.). A certificate of appealability can be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2) (1996). As the Fourth Circuit observed in *United States v. Kornegay,* 204 Fed. Appx. 198 (4th Cir.2006):

A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *Miller–El v. Cockrell,* 537 U.S. 322, 336–38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *Rose v. Lee,* 252 F.3d 676, 683–84 (4th Cir.2001).

*Kornegay,* 204 Fed. Appx. at 99. Consequently, the Circuit Court's denial of a certificate of appealability amounted to a determination that Plaintiff "fail[ed] to state a claim upon which relief may be granted...." 28 U.S.C. § 1915(g), and constitutes a strike.

Therefore, considering cases from the Western District of New York, as well as those from the Northern District of New York referenced by Judge Hurd in his decision, Plaintiff has accumulated more than three "strikes." 28 U.S.C. § 1915(g). Accordingly, "unless the prisoner is under imminent danger of serious physical injury" at the time the present lawsuit was filed, he is not entitled to *in forma pauperis* status. *Id.* In this regard, the Second Circuit wrote in *Pettus v. Morgenthau,* 554 F.3d 293 (2d Cir.2009):

**\*6** we hold that the complaint of a three-strikes litigant must reveal a nexus between the imminent danger it alleges and the claims it asserts, in order for the litigant to qualify for the "imminent danger" exception of § 1915(g). In deciding whether such a nexus exists, we will consider (1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury.

*Pettus,* 554 F.3d 298–99.

As indicated above, Plaintiff alleges in his complaint that he "is in imminent danger of serious physical injury as defendants continue to conspire to retaliate against plaintiff by beating him and causing him other injuries for his filing of grievances and lawsuits." (Compl.¶ 44.) Reading Plaintiff's allegation liberally, he alleges in a conclusory fashion that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 4042973 (W.D.N.Y.)

(Cite as: 2009 WL 4042973 (W.D.N.Y.))

Defendants are *conspiring* against him by making plans to retaliate for his filing of grievances and lawsuits. However, since Defendants to whom Plaintiff's allegations pertain are at Southport and Attica Correctional Facilities, and not Great Meadow Correctional Facility, where he was housed at the time he filed his complaint (Compl.¶¶ 1–6), he cannot possibly meet the imminent danger exception. *See Welch v. Selsky,* No. 9:06–CV–00812 (LEK/DEP), 2008 WL 238553, *6 n. 4 (N.D.N.Y. Jan.28, 2008)* ("While plaintiff's complaint alleges in wholly conclusory terms that defendants' conspiracy against him is both systemic and ongoing, it is arguable that he can no longer satisfy the imminent danger exception requirement in light of his transfer...."); *Burgess v. Conway,* 631 F.Supp.2d 280, 283 (W.D.N.Y.2009) ("To fall within the exception, however, the danger must be specific in nature, and amount to more than just fear that a physical attack could occur at some point in the future. *See Brown v. Johnson,* 387 F.3d 1344, 1349–1350 (11th Cir.2004) (plaintiff must present 'specific fact allegations ... of a pattern of misconduct evidencing the likelihood of imminent serious physical injury')...."). Accordingly, Plaintiff is not entitled to *in forma pauperis* status. 28 U.S.C. § 1915(g). The Court, though, declines to dismiss the action based on Defendants' argument, raised in their supporting memorandum, that the complaint was filed nearly three years after the alleged acts took place and that Plaintiff has a history of frivolous and malicious litigation. (Def.s' Mem. of Law at 4.)

## CONCLUSION

Defendants' motion (Docket No. *4* ) for an Order revoking Plaintiff's *in forma pauperis* status and dismissing the complaint is granted in part and denied in part. Plaintiff's *in forma pauperis* status is revoked pursuant to 28 U.S.C. § 1915(g). Plaintiff's cross-motion (Docket No. 9) is denied for the reasons stated above. **Plaintiff shall pay the applicable filing fee of $350.00 within thirty (30) days of the filing of this Order and that failure to pay such fee will result in a dismissal of this case without further order of the Court.**

*7 The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

IT IS SO ORDERED.

W.D.N.Y.,2009.

Kalwasinski v. McCraken
Not Reported in F.Supp.2d, 2009 WL 4042973 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Jonathan ODOM, Plaintiff,
v.
Ana E. CALERO, et al., Defendants.
No. 06 Civ. 15527(LAK)(GWG).

July 10, 2008.
*REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

**\*1** Jonathan Odom, currently an inmate at the Auburn Correctional Facility, brings this suit *pro se* under 42 U.S.C. §§ 1983 and 1985 against employees of the New York State Department of Correctional Services ("DOCS"). After the defendants filed a motion to dismiss, the undersigned issued a Report and Recommendation recommending that the motion be granted. Following objections by plaintiff, the district judge granted the defendants' motion to dismiss some of the claims but sustained Odom's objection to dismissing two of the claims on statute of limitations grounds. Thus, the instant Report and Recommendation addresses the alternative grounds raised in the motion to dismiss with respect to the remaining two claims.

In the remaining causes of action, Odom alleges that, in retaliation for testifying in 2001 regarding the assault of a fellow inmate at the Sing Sing Correctional Facility ("Sing Sing"), Correction Officers W. Perez and Brian McCoy filed false misbehavior reports against him, and that Hearing Officer Ana E. Calero violated his right to due process through her conduct at his disciplinary hearings. Following the hearings, Odom was sentenced to various amounts of time in the Special Housing Unit ("SHU") at Sing Sing. Odom further alleges that Brian Fischer, the Superintendent of Sing Sing, and Donald Selsky, the Director of the Special Housing/Inmate Disciplinary Program, violated his right to due process by

affirming the decisions made at those hearings.

Defendants Perez and McCoy have never been served. Defendants Calero, Fischer, and Selsky move to dismiss Odom's claims for failure to state a claim and on qualified immunity and Eleventh Amendment immunity grounds. For the reasons stated below, the defendants' motion should be granted in part and denied in part.

I. *BACKGROUND*

A. *Facts*

On this motion to dismiss, the Court assumes that the facts alleged in Odom's complaint, amended complaint, and affirmation in opposition to the motion are true. *See, e.g., Burgess v. Goord,* 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) (" 'the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum' " (quoting *Gadson v. Goord,* 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997))); *accord Torrico v. IBM Corp.,* 213 F.Supp.2d 390, 400 n.4 (S.D.N.Y.2002). In addition, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007).

Odom's allegations stem from an incident on May 27, 2001, in which he alleges that he witnessed Perez and "other[ ] prison officials" assault another inmate. *See* Amended Complaint, filed May 24, 2007 (Docket # 10) ("Am.Compl."), ¶ 12. Odom was issued approximately ten misbehavior reports both before and after he testified at the other inmate's disciplinary hearing. *Id.* ¶ 16; *see id.* ¶¶ 24-25, 43-44. All of the charges against Odom were dismissed at disciplinary hearings or on appeal before Selsky, except for the charges considered at disciplinary hearings held on June 7, 2001 and July 16, 2001. *Id.* ¶ 17. Those charges resulted in Odom being sentenced to 455 days in the SHU. *Id.* ¶ 18. The charges considered at these hearings were ultimately dismissed on June 17, 2005, and December 30, 2005. *Id.* ¶ 17; *see* Exs. A, F to Am. Compl.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))

**\*2** In his first and second causes of action, Odom alleges violations of his due process rights. *Id.* ¶ 27; *see id.* ¶¶ 38; 56. Two Correction Officers, Perez and McCoy, filed misbehavior reports in retaliation for Odom's testifying about the assault of a fellow inmate in 2001. *See id.* ¶¶ 24-25, 44-45. Fischer caused Odom to be subjected to misbehavior reports and unfair disciplinary hearings, and he also assigned Calero as the hearing officer in order to violate Odom's due process rights. *Id.* ¶¶ 14, 28, 43, 46. Calero undertook "to act as [his] inmate assistant, and then did nothing to help assist [him]," *id.* ¶ 29; *see id.* ¶ 47; asked prison officials leading questions and "then provided most of their answers," *id.* ¶ 30; *see id.* ¶ 48; and "refused to allow [Odom] to call witnesses and precluded [him] from presenting a defense, resulting in him being found guilty with no evidence to support the charges," *id.* ¶ 31; *see id.* ¶ 49; Affirmation in Opposition to Defendants' Motion to Dismiss, filed Sept. 7, 2007 (Docket # 25) ("Pl.Aff."), ¶ 9 (Calero failed "to obtain the testimony of the witnesses requested by the plaintiff during his June 7, 2001 and July 16, 2001 disciplinary hearings"). Following one of the hearings, Calero told plaintiff to "mind his business next time." Am. Compl. ¶ 14.

Odom filed appeals with Fischer and Selsky after the disciplinary hearings. *Id.* ¶ 15. While neither Fischer nor Selsky "commit[ted] the due process violations," *id.* ¶ 32, 50, Fischer and Selsky "both became responsible for them[ ] when they ... failed to correct them in the course of their supervisory responsibilities," *id.* ¶ 32; *see id.* ¶ 50. They "refus[ed] to overturn [his] disciplinary conviction and expunge it, despite their knowledge of the ... due process violations." *Id.* ¶ 34; *accord id.* ¶¶ 50-52.

B. *Procedural History*

The original complaint was received by the Pro Se Office on June 27, 2006, and was filed on December 29, 2006. (Docket # 1). After submitting a "Supplemental Complaint" (filed May 4, 2007 (Docket # 7)), Odom filed the Amended Complaint on May 24, 2007, *see* Am. Compl.

Defendants Calero, Fischer, and Selsky filed their motion to dismiss and supporting papers on August 22,

2007. *See* Notice of Motion, filed Aug. 22, 2007 (Docket # 20) ("Def.Not."); Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Aug. 22, 2007 (Docket # 21) ("Def.Mem."); Declaration of Jeb Harben, filed Aug. 22, 2007 (Docket # 22). Odom responded with an affirmation, *see* Pl. Aff., and the defendants filed a reply brief, *see* Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, filed Sept. 21, 2007 (Docket # 28) ("Def.Reply").

On February 19, 2008, the undersigned issued a Report and Recommendation recommending that all claims be dismissed. *Odom v. Calero,* 2008 WL 449677 (S.D.N.Y. Feb. 19, 2008). The district judge granted the defendants motion to dismiss claims three, four, five and six in the Amended Complaint, sustained Odom's objection to the dismissal of claims one and two on statute of limitations grounds, and referred the motion back to the undersigned to address the alternative grounds in defendants' motion to dismiss. *See* Order, filed Mar. 25, 2008 (Docket # 40). Odom responded to this order, *see* Affirmation in Reply to Judge Lewis A. Kaplan's March 27, 2008 Court Order, dated April 14, 2008 (Docket # 51), and defendants filed a motion for reconsideration, *see* Motion for Reconsideration, filed Apr. 9, 2008 (Docket # 42), which was denied, *see* Order, filed Apr. 15, 2008 (Docket # 45).

**\*3** Shortly before the denial of the motion for reconsideration, Odom submitted a motion for summary judgment. *See* Notice of Motion for Summary Judgment, dated April 14, 2008 (Docket # 48) ("S.J.Motion"); Plaintiff's Affirmation in Opposition to Defendants' Motion for Reconsideration and in Support of the Plaintiff's Motion for Summary Judgment, dated April 14, 2008 (Docket # 49); Brief in Support of Plaintiff's Motion for Summary Judgment, dated April 14, 2008 (Docket # 50); Statement of Undisputed Facts, dated April 14, 2008 (Docket # 52). As discussed below, the summary judgment motion should be denied for procedural reasons. Nonetheless, we have considered Odom's submissions in support of the summary judgment motion to the extent they are relevant to his opposition to the defendants' motion to dismiss.

In addition to arguing for dismissal on statute of

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))

limitations grounds, Calero, Fischer, and Selsky moved to dismiss the complaint for failure to state a claim or "insufficient pleadings," qualified immunity, failure to allege a conspiracy, and Eleventh Amendment immunity. Def. Mem. at 5-17.

## II. *DISCUSSION*

### A. *Law Governing a Motion to Dismiss for Failure to State a Claim*

Under Fed.R.Civ.P. 8(a)(2), a pleading is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir.2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (some internal quotation marks and citation omitted). On a motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n.1 (2002).

Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do .... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007) (internal quotation marks, citations, and brackets omitted); *see also id.* at 1966 (pleading must "possess enough heft to show that the pleader is entitled to relief") (internal quotation marks, citation, and brackets omitted). Thus, "a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007).

For purposes of deciding a motion to dismiss, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 127 S.Ct. 2197, 2200

(2007) (per curiam) (internal quotation marks and citations omitted); *accord* Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir.2008).

**\*4** Calero, Fischer, and Selsky argue that Odom has failed to "allege sufficient specific facts to support the stated causes of action," Def. Mem. at 7, by which they apparently mean to argue that he has failed to state a claim under Fed.R.Civ.P. 12(b)(6), *see* Def. Mem. at 4-5, 7 (citing *Bell Atl. Corp.*), 9-11; Def. Not. We now consider whether Odom's Amended Complaint states a claim against any of these defendants.

### B. *Section 1983* Claims

To assert a claim under 42 U.S.C. § 1983, a plaintiff must show that he has been deprived of a right secured by the Constitution or federal law by a defendant acting under the color of state law. 42 U.S.C. § 1983; *see West v. Atkins,* 487 U.S. 42, 48 (1988). Section 1983 does not grant any substantive rights, but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999) (citations omitted), namely in the Constitution or federal statutes. Here it is undisputed that the defendants were acting under color of law. The only question is whether plaintiff has shown that they committed a violation of plaintiff's federal rights. In this case, the only violations that the complaint may be fairly read to assert are violations of the Due Process clause of the Fourteenth Amendment.

A party asserting a due process claim " 'must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001)), *cert. denied,* 543 U.S. 1187 (2005). Prisoners subject to disciplinary proceedings can show a liberty interest only if "disciplinary punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003) (per curiam) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))

disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)).

"Segregation of longer than 305 days in standard SHU conditions is sufficiently atypical to require procedural due process protection under *Sandin.*" *Iqbal v. Hasty,* 490 F.3d 143, 161 (2d Cir.2007). Odom alleges that he was sentenced to 455 days in the SHU as a result of the disciplinary hearings on June 7, 2001 and July 16, 2001, Am. Compl. ¶ 18, and defendants do not contest that Odom's confinement implicates a liberty interest. Thus, for the purposes of this motion we assume that Odom's sentence of confinement in the SHU implicates a liberty interest.

**\*5** We next address each defendant's arguments regarding whether Odom was deprived of his liberty through insufficient process.

1. *Calero*

As previously noted, Odom alleges that Calero violated his due process rights by the manner in which she conducted disciplinary hearings with respect to misbehavior reports on June 7, 2001 and July 16, 2001. *See* Am. Compl. ¶¶ 4, 17, 27-31, 46-49. Specifically, he alleges that "Calero ... violated the plaintiff's due process rights by failing (without rational explanation) to obtain the testimony of the witnesses requested by the plaintiff during his June 7, 2001 and July 16, 2001 disciplinary hearings." Pl. Aff. ¶ 9; *see* Am. Compl. ¶ 31 (Calero "refused to allow plaintiff to call witnesses and precluded the plaintiff from presenting a defense"); *accord id.* ¶ 49. Odom asserts that in one of the hearings he requested that Calero call "several inmates as witnesses" for him and "provided their cell locations," Declaration in Support of Plaintiff's Motion for Summary Judgment, dated Apr. 14, 2008 (attached to S.J. Motion), ¶ 3, but that she refused to call them on the ground that "staff reports gave a 'full picture' of the incident," *id.* ¶ 4. "The evidence at the hearing consisted solely of the written report of defendant Perez, inmate Hurt's and my neighbor W16 cell and my

testimony" [sic]. *Id.* ¶ 5.

In addition, Odom alleges that he was not afforded "the right to a fair and impartial hearing officer" in his disciplinary hearings. Am. Compl. ¶ 27; *accord id.* ¶ 48. Specifically, he alleges that Calero asked prison officials leading questions and provided "most of their answers." *Id.* ¶ 30; *accord id.* ¶ 48.

According to the Second Circuit:

The due process protections afforded a prison inmate do not equate to "the full panoply of rights" due to a defendant in a criminal prosecution. *Wolff v. McDonnell,* 418 U.S. at 556, 94 S.Ct. 2963. Notably, there is no right to counsel or to confrontation at prison disciplinary hearings. *See id.* at 567-70, 94 S.Ct. 2963. Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *See id.* at 563-67, 94 S.Ct. 2963; *accord Luna v. Pico,* 356 F.3d at 487; *Kalwasinski v. Morse,* 201 F.3d at 108.

*Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004).

Construing the complaint in the manner most favorable to plaintiff, Odom's allegations that he was not given a reasonable opportunity to call witnesses and that Calero "provided answers" to questions asked at the hearings are sufficient to state a claim for violation of his due process rights. The defendants' argue that the allegations are infirm because Odom does not give sufficient factual details such as the names of witnesses that he would have called or the evidence he would have presented. Def. Mem. at 7. At this stage of the litigation, however, when only a "short and plain statement" of a claim is required by Fed.R.Civ.P. 8(a)(2), and where the plaintiff is proceeding *pro se,* such factual detail is not required in the complaint.

**\*6** The defendants also argue that Odom has failed to state a claim because there was some evidence on which Calero could have reasonably relied in making her

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))

decisions at the disciplinary hearings. Def. Mem. at 10; Def. Reply at 4. Certainly, a hearing decision will be upheld if there is "any evidence" in the record to support it. *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) (emphasis omitted). But this argument fails for two reasons. First, it requires the Court to look outside the record on a motion to dismiss. Second, it does not address the question of whether Calero committed a due process violation. By asking the Court to judge the decision based on the record that Calero allowed to be created, the defendants ignore the allegations that Odom was not given a reasonable opportunity to call witnesses in order to create a proper record in the first place.

2. *Fischer and Selsky*

The defendants argue that Odom has failed to allege the personal involvement of Fischer and Selsky in any constitutional violation. Def. Mem. at 9. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (internal quotation marks and citation omitted). In addition, personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior. See, e.g., Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) ("supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*"), *cert. denied,* 543 U.S. 1093 (2005); *accord Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). According to the Second Circuit:

The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

*Iqbal,* 490 F.3d at 152-53 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

Odom's central allegation is that Fischer and Selsky violated his rights by not overturning Calero's decisions when he appealed the disciplinary hearing decisions to them. Odom argues that Fischer and Selsky "both became responsible" for the due process violations committed at the hearings "when they ... failed to correct [the violations] in the course of their supervisory responsibilities." Am. Compl. ¶¶ 32, 50. He alleges that they "refus[ed] to overturn [his] disciplinary conviction and expunge it, despite their knowledge of the ... due process violations." *Id.* ¶ 34; *accord id.* ¶¶ 50-52. While the source of that knowledge is not identified, the context of allegations make clear that it could only have been derived from their review of Odom's assertions as part of the appeal process itself. Indeed, in another submission, Odom asserts that he "identified the due process violations in his discretionary appeal and direct appeal letters," and that as a result "Fischer and Selsky both knew just what to look for." Pl. Aff. ¶ 12.

**\*7** These allegations are insufficient to show personal involvement in the due process violation alleged to have been committed by Calero. Odom concedes that neither Fischer nor Selsky "commit[ted] the due process violations" themselves. Am. Compl. ¶¶ 32, 50. Rather, Calero is alleged to have committed the alleged due process violation. Once the hearing was over and her decision was issued, the due process violation was completed. The only opportunity that Fischer or Selsky had to rectify this violation was through the appeal process itself.

The only method outlined by the Second Circuit by which personal involvement may be shown potentially relevant here is that Fischer and Selsky, "after being informed of the violation through [the appeals], failed to remedy the wrong." *Colon,* 58 F.3d at 873. This method does not apply here, however, because-as has been noted in a related context-"affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca,* 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (citing, *inter alia, Foreman v. Goord,* 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) ("The fact that [the prison superintendent] affirmed the denial of plaintiff's grievances is insufficient to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))

establish personal involvement.")). As was noted in *Thompson v. New York,* 2001 WL 636432 (S.D.N.Y. Mar. 15, 2001), "[w]ere it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent." *Id.* at *7 (internal citations omitted). The reference in case law to an official who "fails to remedy" a violation logically applies only to ongoing, and therefore correctable, constitutional violations-not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded. As was held in *Harnett v. Barr,* 538 F.Supp.2d 511 (N.D.N.Y.2008), "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Id.* at 524; *accord Thompson,* 2001 WL 636432, at *7 ("The Second Circuit's reference to the failure by a supervisor to remedy a known wrong seems to have a different focus. As worded, it appears to address cases involving continuing unconstitutional prison conditions that the warden may be proven or assumed to know about, and a refusal by the warden to correct those conditions."). In this case, any constitutional violation allegedly committed by Calero was concluded by the time Fischer and Selsky were called upon to review it. Accordingly, they were not "personally involved" in committing the alleged due process violations.[FN1]

> **FN1.** Odom has made other allegations against Fischer that are too vague and conclusory to state a claim for a due process violation, such as the assertion that Fischer "subjected" Odom to four of the misbehavior reports after Odom testified at the other inmate's disciplinary hearing. Am. Compl. ¶ 43. Another assertion-that Fischer intentionally assigned Calero as the hearing officer at both hearings in order to violate Odom's due process rights, *id.* ¶¶ 14, 28, 46-is insufficient to show personal involvement inasmuch as it was Calero's responsibility to act as an impartial hearing officer. To fault Fischer, as a supervisory official, for giving her this assignment is tantamount to arguing that he

failed in his supervisory responsibilities. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

### C. *Qualified Immunity*

**\*8** The defendants assert that they are entitled to qualified immunity. Def. Mem. at 11. The doctrine of qualified immunity precludes civil liability where prison officials performing discretionary functions " 'did not violate clearly established rights or if it would have been objectively reasonable for the official[s] to believe [their] conduct did not violate plaintiff's rights.' " *Reuland v. Hynes,* 460 F.3d 409, 419 (2d Cir.2006) (quoting *Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003)), *cert. denied,* 128 S.Ct. 119 (2007); *accord Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (qualified immunity ensures that defendants have "fair notice" that their conduct is unlawful before being exposed to liability, and "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right' " (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987))). A qualified immunity defense may be asserted as part of a motion under Fed.R.Civ.P. 12(b)(6) if it is based on facts appearing on the face of the complaint, though defendants asserting the defense at this stage face a "formidable hurdle." *McKenna v. Wright,* 386 F.3d 432, 434-35 (2d Cir.2004).

With respect to Calero, the defendants' brief makes no argument that the rights of a prisoner to due process at a disciplinary hearing under the standard set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974), were not clearly established at the time of Odom's hearings. *See* Def. Mem. at 11-12. Instead, they seem to argue that Calero's actions were objectively reasonable. *Id.* But their only support for this argument is material outside the record, *see id.* at 11, and their claim that the decision on the disciplinary hearings must have been justified by the evidence presented at the hearing. As noted previously, however, the issue is whether the complaint alleges that Calero

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))

committed a due process violation-not whether the decision was justified by record.

"In analyzing whether the defense of qualified immunity may be successfully invoked on a motion to dismiss, the court need look no further than the complaint's allegations regarding the specific procedural protections allegedly denied the plaintiff. If the entitlement to those protections was 'clearly established' at the time of the administrative hearing ... then the defense is unavailable." *Wright v. Dee,* 54 F.Supp.2d 199, 207 (S.D.N.Y.1999). Calero does not contest that it was clearly established at the time of Odom's hearings that he was entitled to call witnesses on his behalf, *see, e. g., Sira,* 380 F.3d at 69, and that he was entitled to an impartial hearing officer, *see, e.g., Allen v. Cuomo,* 100 F.3d 253, 259 (1996). Odom alleges that these procedural protections were denied him. Thus, Calero has not shown that the complaint establishes that she is entitled to qualified immunity for Odom's due process claims.[FN2]

> [FN2.] While it is clear in the Amended Complaint that Odom is alleging that Perez and McCoy filed the misbehavior reports in retaliation for Odom's testifying at another inmate's disciplinary hearing, Am. Compl. ¶¶ 24-25, 44-45, no retaliation claim has been asserted against Calero. To the extent the complaint could be construed as making such a claim against Calero, it would have to be dismissed because it is not clearly established in this Circuit that a prisoner has a constitutional right to testify in a disciplinary hearing of another inmate. *See Pettus v. McGinnis,* 533 F.Supp.2d 337, 340 (W.D.N.Y.2008) ("This Court has found no authority ... that even today clearly establishes within this circuit whether an inmate's testimony on behalf of another inmate at the other inmate's disciplinary hearing is constitutionally protected.") (dismissing claim of retaliation) (emphasis omitted).

D. *Claims Under 42 U.S.C. § 1985*

**\*9** Odom also purports to assert conspiracy claims under 42 U.S.C. § 1985. *See* Am. Compl. at 1. "To state

a conspiracy claim under 42 U.S.C. § 1985, plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights." *Porter v. Selsky,* 287 F.Supp.2d 180, 187 (W.D.N.Y.2003) (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994)), *aff'd on other grounds,* 421 F.3d 141 (2d Cir.2005). There are no explicit allegations of conspiracy in the Amended Complaint, however. When this issue was raised by defendants in their motion, Odom's response, *see* Pl. Aff. ¶ 46, pointed to scattered allegations in the Amended Complaint that particular defendants "acted alone and/or in conjunction with another named defendant." *See, e.g.,* Am. Compl. ¶¶ 28, 31, 32, 46, 50. Nothing in Odom's allegations, however, shows that the elements of a section 1985 claim, quoted above, have been met.

E. *Eleventh Amendment*

The defendants argue that "[i]f claims are being made against defendants in their positions of authority within DOCS, those claims are essentially claims against DOCS or the State of New York and are barred." Def. Mem. at 17. Odom does not address this argument.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While the language of the Eleventh Amendment is not literally applicable to suits brought by citizens of the state being sued, the Supreme Court has long held that it bars such suits as well. *See, e.g., Employees of Dep't of Pub. Health and Welfare v. Dep't of Pub. Health and Welfare,* 411 U .S. 279, 280 (1973). Thus, "[i]t is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (citations omitted). The Supreme Court has also explicitly held that 42 U.S.C. § 1983 is not a statute that abrogates the States' sovereign immunity. *See Quern v. Jordan,* 440 U.S. 332, 340-45 (1979).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)

(Cite as: 2008 WL 2735868 (S.D.N.Y.))

The bar imposed by the Eleventh Amendment "remains in effect when State officials are sued for damages in their official capacity ." *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Thus, the Eleventh Amendment bars suits against individual employees of the State who are named as defendants in their official capacities. *See, e.g., Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003); *Eng v. Coughlin,* 858 F.2d 889, 894 (2d Cir.1988). Accordingly, to the extent that Odom intends to state claims for money damages against Calero or any other defendant in their official capacities, such claims must be dismissed.

E. *Odom's April 14, 2008 Motion for Summary Judgment*

**\*10** Odom recently filed a motion for summary judgment (Docket # 48). This motion should be denied for two reasons. First, its statement of material facts (Docket # 52) violates Local Civil Rule 56.1(d) inasmuch as none of the statements are "followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Second, discovery has not yet begun in this case. Thus, a motion for summary judgment is premature and would merely result in a denial pursuant to Fed.R.Civ.P. 56(f). Odom previously filed a motion for summary judgment and it was denied for precisely this reason. *See* Order, filed Nov. 30, 2007 (Docket # 36) (available at: *Odom v. Calero,* 2007 WL 4191752 (S.D.N.Y. Nov. 28, 2007)).

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss the first and second causes of action (Docket # 20) should be granted in part and denied in part, with the only claim to proceed being the due process claim against Calero. Odom's motion for summary judgment (Docket # 48) should be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2008.

Odom v. Calero
Not Reported in F.Supp.2d, 2008 WL 2735868 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Benjamin SMITH, Plaintiff,
v.
UNITED STATES of America; Dan Peterson, Factory
Manager, FCI Ray Brook; Susan Keiffer, Case
Manager, FCI Ray Brook; Federal Correctional
Industries (Unicor), FCI Florence, Florence, Colorado;
Mr. Felner, Unit Manager, FCI Ray Brook; D. Kirkby,
Factory Foreman, FCI Ray Brook; Mr. Lucas, Case
Manager, FCI Ray Brook; and T.R. craig, Facility
Superintendent, FCI Ray Brook, Defendants.
No. 9:09–CV–729 (TJM/DRH).

Feb. 3, 2011.
Benjamin Smith, Cumberland, MA, pro se.

Hon. Richard S. Hartunian, United States Attorney,
Charles E. Roberts, Esq., Assistant United States Attorney,
of Counsel, Syracuse, NY, for Defendants.

**REPORT–RECOMMENDATION AND ORDER**[FN1]

> **FN1.** This matter was referred to the undersigned
> for report and recommendation pursuant to 28
> U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

**\*1** Plaintiff pro se Benjamin Smith ("Smith"), a
federal prison inmate, brings this action under *Bivens v.
Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971),
alleging that defendants, six employees of the Ray Brook
Federal Correctional Institution ("Ray Brook"), violated
his constitutional rights under the First, Eighth, and
Fourteenth Amendments. Compl. (Dkt. No. 1). Smith also
alleges a product liability and negligence claim under the
Federal Tort Claims Act ("FTCA") against the individual
defendants as well as the United States and one of its

agencies.[FN2] *Id.* Presently pending is defendants' motion to
dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the
alternative, for summary judgment pursuant to
Fed.R.Civ.P. 56. Dkt. No. 23. Smith opposes the motion.
Dkt. Nos. 27, 33. For the following reasons, it is
recommended that defendants' motion be granted in part
and denied in part.

> **FN2.** A *Bivens* action cannot be asserted directly
> against the United States or federal agencies. *See*
> *F.D.I.C. v. Meyer,* 510 U .S. 471, 484–86 (1994)
> (refusing to extend *Bivens* to allow suits to be
> brought directly against the federal government
> or its agencies).

**I. Background**

The facts are related herein in the light most favorable
to Smith as the nonmoving party. *See* subsection II(B)
*infra.* The events in question occurred during Smith's
incarceration at Ray Brook. Liberally construing his
complaint, Smith asserts six causes of action concerning
a variety of matters.

**A. Interference With Mail**

In April 2006, Smith was involved in a civil action
that he filed against the City of Philadelphia. Compl. at 2.
At that time, defendant Keiffer, Smith's case manager at
Ray Brook, opened and read Smith's legal mail without his
authorization. *Id.* Keiffer also either failed to deliver a
deposition notice to Smith or failed to advise him of the
scheduled deposition, causing Smith to miss this
proceeding. *Id.* On April 28, 2006, Smith lodged an
informal complaint against Keiffer with defendant Felner,
a unit manager at Ray Brook. *Id.* On that same day,
Keiffer filed a disciplinary report noting that Smith failed
to report to a specified area of the facility to participate in
a "legal call" despite having been previously notified of
the appointment and paged by the control room. Smith
Decl. (Dkt. No. 27–1) Ex. A, at 3.

**B. Retaliation/False Disciplinary Reports**

Smith contends that Keiffer filed the April 28, 2006,
disciplinary report in retaliation for his complaint to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

defendant Felner. Compl. at 2. This report was allegedly "swept under the rug" and essentially ignored by defendant Felner due to its "blatant retaliatory nature." *Id.* Smith filed a formal grievance against Keiffer on June 6, 2006, complaining that she opened and withheld his mail. Smith Decl., Ex. A, at 4. This grievance was denied by the warden, who noted that the legal mail was addressed to both Smith and Keiffer. *Id.* at 7a. The warden also asserted that Smith had received proper notice of the scheduled deposition but failed to attend. *Id.*

Smith claims that on August 3, 2006, defendants Keiffer and Lucas, a case manager at Ray Brook, threatened to retaliate against him if he continued to file grievances. Magnusson Decl. (Dkt. No. 23–6) at 24; Compl. at 3. Smith reported these threats to the Regional Office on August 16, 2006. Smith Decl., Ex. A, at 5–7. On August 17, 2006, Smith's custody classification score was changed from "Medium" to "High" by Keiffer and Lucas.[FN3] *Id.* at 7b; Magnusson Decl. at 24. Smith filed a grievance related to this classification score change on October 8, 2006 which was received on October 25, 2006. Smith Decl., Ex. A, at 7c. On November 2, 2006, Keiffer lodged a disciplinary report against Smith, charging him with threatening her with bodily harm and being insolent towards a staff member. *Id.* at 8; Fehlner Decl. (Dkt. No. 23–4) Ex. B. As a result of this incident, Smith spent three weeks in the Special Housing Unit ("SHU"). Compl. at 3.

> **FN3.** Smith has withdrawn his claim that his custody classification score was changed in retaliation for the grievances filed. *See* Dkt. No. 27 at 5. Thus, his retaliation claim involves only the allegedly fraudulent and retaliatory disciplinary reports regarding his failure to attend the deposition and his threatening conduct on November 2, 2006.

**\*2** In late 2006 and early 2007, Smith appealed numerous grievances to the Regional Office that had been denied by administrators at Ray Brook. Magnusson Decl. at 14, 16, 18, 20, 22, 24.[FN4] In all of these grievances, Smith complained that defendants erroneously raised his custody classification score and filed false disciplinary reports against him in retaliation for past grievances he lodged against Keiffer. *Id.* These appeals were addressed and denied as the reviewers confirmed that his custody

score appropriately reflected the severity of his criminal conviction. *Id.* at 15, 17, 19, 21, 23, 25. The administrators also found no evidence to substantiate Smith's allegations that the prison staff had retaliated against him. *Id.*

> **FN4.** As of April 2010, Smith had filed a total of 119 grievances through the Administrative Remedy Program. Magnusson Decl. at 2, ¶ 6.

### C. Biased Disciplinary Hearing Officer

As a result of the November 2, 2006, incident, a disciplinary hearing was held at which defendant Felner presided as the hearing officer. Compl. at 3; Felner Decl. ¶ 6. Smith maintains that Felner was biased against him based on his prior knowledge of the ongoing retaliation. Compl. at 3. Smith claims, and defendants deny, that during the hearing Felner stated that the assault charge would be dismissed "because he knew that Mrs. Keiffer was lying," but that he had to find Smith "guilty of something." *Id.;* Felner Decl. ¶ 9. At the conclusion of the hearing, Felner found that the charged conduct did not amount to a "High Severity" offense but did constitute the "Moderate Severity" offense of "Insolence." Felner Decl. ¶ 7. Felner then "informally resolved" the matter through verbal counseling and "extra duty," and recommended that Smith be released from the SHU. *Id.* ¶ 8.

### D. Inadequate Conditions of Confinement

While Smith was in the SHU, he shared the small cell with three other inmates. Compl. at 3. This cell had one toilet that had to be flushed by a corrections officer from outside the cell. *Id.* However, the corrections officers, who are not specifically named in the complaint, refused to flush the toilet or provide the inmates with toilet paper for two weeks. *Id.* Smith and the other inmates were forced to use pieces of clothing and napkins as toilet paper. *Id.* The toilet eventually overflowed, causing human waste to pour onto the floor of the cell. *Id.* Smith, who slept on a plastic mattress on the floor near the overflowing toilet, became nauseous and lightheaded from the odor. *Id.* Smith claims that the prison staff, particularly Fehlner, knew of but ignored these conditions. *Id.*

### E. Product Liability/Negligence

On June 12, 2007, Smith was sitting in an office chair

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

while working in the "factory" at Ray Brook. *Id.* at 4. As Smith leaned back, the chair broke, and he fell backward onto a sheared metal support bar. *Id.* at 4. This resulted in an injury to Smith's lower back. *Id.* Smith maintains that the chair, which had been manufactured by UNICOR [FN5] at the Florence Federal Correctional Facility in Florence, Colorado, was "defective." *Id.* Smith also asserts that defendant Peterson, factory manager at Ray Brook, and defendant Craig,[FN6] facility superintendent at Ray Brook, knew that this particular chair was defective but failed to take steps to protect him from this unsafe condition. *Id.*[FN7] Smith filed a claim with the Federal Bureau of Prisons seeking monetary damages for the injuries he received due to the allegedly defective chair. Magnusson Decl. at 50. This claim was rejected, and Smith was advised to seek a remedy through the Inmate Accident Compensation System instead.[FN8] *Id.*

> **FN5.** UNICOR, also known as Federal Prison Industries, is a government-owned corporation that employs and trains federal prison inmates, and produces various goods including office furniture. *See generally* UNICOR ONLINE, http://www.unicor.gov (last visited Jan. 21, 2011).

> **FN6.** It appears that Craig is the defendant previously identified as "John Doe." *See id.*

> **FN7.** Peterson maintains that the chair in question had been at Ray Brook since before he began working there. Peterson Decl. (Dkt. No. 23–7) ¶ 3. Peterson also denies having knowledge of any prior incidents involving the chairs at Ray Brook that would suggest they were defective or unsafe at the time of Smith's injury. *Id.*

> **FN8.** The Inmate Accident Compensation System provides "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126. This system affords the exclusive remedy for federal inmates who sustain work-related injuries while incarcerated. *United*

*States v. Demko,* 385 U.S. 149, 152 (1966). Moreover, § 4126 provides "the exclusive remedy when a work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel." *Moore v. United States,* No. 85–CV–1151, 1988 WL 70025, at *3–4 (N.D.N.Y June 30, 1988) (Munson, J.).

**\*3** Smith sought compensation pursuant to the Inmate Accident Compensation Act, but he was denied because his injuries were deemed "non-work-related." Smith Decl., Ex. E, at 41.

### F. Deliberate Indifference to Medical Needs

As a result of the fall caused by the broken chair, Smith suffered a puncture wound, measuring approximately 1/4" in diameter, and bruising on his lower back. Compl. at 4. Smith contends that despite his obvious need for medical attention evidenced by "profuse" bleeding, his complaints of pain, and his inability to walk unassisted, defendants Peterson and Kirkby, factory foreman at Ray Brook, failed to request any medical treatment for him. *Id.* These defendants dismissed Smith's injury as "just a little blood," and Peterson ordered him to return to his cell at the end of the work shift. *Id.* Smith notes that two inmates had to help him walk back to his housing unit. *Id.* After returning to his cell, Smith continued to bleed from his back injury and remained in pain. *Id.* at 5. Over two and one-half hours later, medical personnel were summoned by the housing unit officer. *Id.* Smith filed several grievances complaining of inadequate medical treatment related to this incident. Magnusson Decl. at 26, 28, 30. These grievances and the subsequent appeals were denied, and the reviewing administrators found that Smith received proper and prompt medical care. *Id.* at 27, 29, 31.

### II. Discussion

Smith alleges that Keiffer intercepted his legal mail without his authorization and further violated his due process rights by failing to advise him of a pending civil deposition. Smith also alleges that after he filed grievances against Keiffer, Keiffer and Lucas retaliated by charging him with false disciplinary infractions and providing a biased hearing officer, Fehlner, at the subsequent

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

disciplinary hearing. Moreover, Smith claims that Fehlner was deliberately indifferent to the unsanitary conditions of the SHU, and Peterson and Kirkby were deliberately indifferent to his serious medical needs after he was injured on the broken chair. Finally, Smith alleges that Peterson and Craig failed to protect him from the unsafe chair, which had been defectively manufactured by the United States and UNICOR.

Defendants contend that: (1) any claims related to the interference with Smith's mail in April 2006 are barred by the statute of limitations; (2) Smith did not suffer any actual injury related to the interference with his mail; (3) Smith fails to state a claim for retaliation; (4) there is no support for Smith's conclusory allegation that the disciplinary hearing officer was biased; (5) the FTCA does not authorize suits against the United States based in strict liability; (6) defendants were not aware that the chair posed an excessive risk to Smith; (7) Smith's injury was not sufficiently serious for Eighth Amendment purposes; and (8) Smith's claim under the FTCA is barred by the Inmate Accident Compensation Act.

### A. Conversion of the Motion

**\*4** Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Federal Rule of Civil Procedure 56. In support of their motion, defendants have submitted declarations and exhibits. A district court may convert a motion to dismiss into a motion for summary judgment if the nonmoving party has "sufficient notice" and an opportunity to respond to the motion for summary judgment. Groden v. Random House, Inc., 61 F.3d 1045, 1052 (2d Cir.1995). To determine if notice is sufficient, "[t]he essential inquiry is whether the [non-movant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Id. (internal quotation marks omitted). Notice is especially important when the nonmoving party "is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues." Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir.1983).

Here, the motion to dismiss explicitly indicated that defendants sought, in the alternative, summary judgment.

*See* Dkt. Nos. 23, 23–1. Moreover, defendants provided Smith with a Notification of the Consequences of Failing to Respond to a Summary Judgment Motion. Dkt. No. 23–9. This form advised Smith of Local Rule 7.1's requirement that he submit the following in opposition to the motion: a memorandum of law, one or more affidavits, and a concise statement of material facts. *Id.* It also cautioned that failure to respond to the motion might result in the dismissal of some or all of his claims. *Id.* These documents provided sufficient notice that the defendants' motion to dismiss was likely to be converted into one for summary judgment. This is further evidenced by the fact that Smith filed a lengthy memorandum of law, a declaration, and 55 pages of exhibits in opposition to the defendants' motion. *See* Dkt. Nos. 27, 27–1. Smith also filed a subsequent reply titled "Plaintiff's Response to Defendants' Reply to the Motion in Opposition to *Summary Judgment."* Dkt. No. 33 (emphasis added). Clearly, Smith had sufficient notice that the motion might be converted, and he responded accordingly.

### B. Summary Judgment—Legal Standard

A motion for summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits that support the motion. Fed.R.Civ.P. 56(c); *Celotex Corp.,* 477 U.S. at 323. Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson,* 477 U.S. at 248. All ambiguities are resolved and all reasonable inferences are drawn in favor of the nonmoving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

**\*5** The party opposing the motion must respond by setting forth facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250. The nonmoving party must do

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the nonmoving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006); *see also Sealed Plaintiff v. Sealed Defendant No. 1,* 537 F.3d 185, 191 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

### C. Interference With Mail

Smith alleges that Keiffer intercepted his legal mail in April 2006 and caused him to miss a scheduled deposition. Defendants argue that these claims are barred by the statute of limitations or, alternatively, should be dismissed on the merits.

### 1. Statute of Limitations

"It is undisputed that the statute of limitations for a *Bivens* action arising in New York is three years." *Thunder Island Amusements, Inc. v. Ewald,* 650 F.Supp.2d 195, 199 (N.D.N.Y.2009) (McCurn, S.J.) (citing *Tapia–Ortiz v. Doe,* 171 F .3d 150, 151 (2d Cir.1999) (per curiam)). The record shows conflicting dates on which the complaint was filed. The docket sheet indicates that the complaint was postmarked on June 16, 2009, and filed on June 25, 2009. The official district court stamp on the first page of the complaint shows that it was filed on June 25, 2009. Compl. at 1. Smith signed the fourth page of the complaint and dated it as June 12, 2009. *Id.* at 4. However, the handwritten attachment to the complaint has an official district court stamp with a filing

date of November 5, 2008, and was signed by Smith on October 31, 2008. *Id.* at 5, 9. Smith explains that he filed his original complaint on November 5, 2008, and amended that complaint on June 25, 2009. Dkt. No. 33, at 1.

If the complaint was filed in June 2009, the interference with legal mail claim, which arises from events occurring prior to June 2006, would be barred by the statute of limitations. On the other hand, if the complaint was filed in November 2008, this claim is timely as the events occurred after November 2005. Liberally construing the complaint and making all reasonable inferences in Smith's favor, it must be determined that the complaint was filed on November 5, 2008. The handwritten part of the complaint bears an official stamp indicating that it was filed on that date. Therefore, Smith has offered sufficient facts at least to raise a material issue whether the complaint was filed within the period of limitations and defendants' motion on this ground should be denied.

### 2. Merits of the Mail Interference Claim

**\*6** Smith alleges that Keiffer intercepted and withheld his legal mail, causing him to miss a scheduled deposition pertaining to an ongoing civil action. Because the legal correspondence at issue was clearly addressed to "Benjamin Smith, Pro Se, c/o Susan Keiffer, Case Manager," Smith's claim that Keiffer was not authorized to open this mail is without merit. The envelope, notices of deposition, and letter from the attorney who was to take Smith's deposition were all addressed in this manner. Dkt. No. 28, Exs. A, B, C, & E.

Moreover, after Smith failed to attend the first scheduled deposition on April 28, 2006, a letter was mailed directly to Ray Brook's warden in an attempt to reschedule the proceeding. *Id.* at Ex. D. It is clear that the court and defense counsel in the civil action sought to communicate directly with prison staff and administrators in an effort to schedule Smith's deposition. Therefore, it was entirely proper for those staff members to open and read such correspondence. Smith's mail interference claim is thus limited to his assertion that Keiffer's actions or omissions interfered with his ability to participate in the pending civil action.

Interference with an inmate's legal mail implicates the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

right to access the courts guaranteed by the Fourteenth Amendment. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). To state a valid claim, a prisoner must allege that the official deliberately and maliciously interfered with legal mail, resulting in an "actual injury" such as a dismissal of an otherwise meritorious legal claim. *Id.; see also Lewis v. Casey,* 518 U.S. 343, 351 (1996). Further, "[w]hile a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis,* 320 F.3d at 351 (internal citation omitted). Instead, the prisoner must show that officials "regularly and unjustifiably interfered with the incoming mail." *Id.* (internal quotation marks omitted).

Smith identifies only one specific instance in which Keiffer interfered with his legal mail, causing him to miss a scheduled deposition. Not only does this act fall short of "regular" interference, but Keiffer's act was justified. Indeed, as noted above, the mail bore her name in the address. Moreover, defendants have countered with evidence indicating that Smith was properly advised of the pending deposition. On the April 12, 2006, letter that accompanied the notice of deposition, there is a handwritten note indicating: "Inmate Smith aware of time and date per our conversation outside of unit 4–26–06—he stated he didn't need to be put on call out." Dkt. No. 28, Ex. C. Smith fails to respond with any evidence to support his conclusory assertion that Keiffer maliciously failed to advise him of the deposition appointment.

In addition, Smith fails to allege an actual injury. Although missing a scheduled deposition may cause delay and annoyance, it is not tantamount to the dismissal of a meritorious claim. It appears that the deposition that Smith missed on April 28, 2006, was rescheduled for May 22, 2006. *Id.* at Ex. D. There is nothing in the record to suggest that this rescheduled deposition did not take place or that Smith was negatively impacted by missing the first appointment.

**\*7** Therefore, Smith has not sufficiently alleged malicious intent on the part of Keiffer nor identified any actual harm he suffered. Accordingly, it is recommended that defendants' motion be granted as to Smith's mail interference claim.

### D. Retaliation/False Disciplinary Reports

Smith alleges that he was subjected to retaliation on two occasions. Smith claims that Keiffer filed false disciplinary reports against him on April 28, 2006, and November 2, 2006, after he filed administrative grievances against her.[FN9] Claims of retaliation are rooted in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004). To state an actionable claim for retaliation, a plaintiff must first show that the conduct at issue was constitutionally protected and, second, that the conduct was a "substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

FN9. Smith also asserts that Lucas threatened to retaliate against him by stating "we are going to get you." Compl. at 3. However, this does not constitute "adverse action" to support a retaliation claim. *See Smith v. Christopher,* No. 9:06–CV–1196, 2008 WL 4283519, at \*13 (N.D.N.Y. Sept. 16, 2008) (Kahn, J. & Peebles, M.J.) (defendant's threat that if plaintiff did not drop his lawsuit he would "never see the streets again" was "nothing more than simple verbal harassment which does not rise to the level of constitutional significance"); *Bartley v. Collins,* No. 95 Civ. 10161, 2006 WL 1289256, at \*6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."). There is nothing to provide a causal connection between Smith's protected conduct and Lucas. Lucas was not named in any of the grievances that pre-date the disciplinary reports, and he did not file any disciplinary reports against Smith. Therefore, Smith cannot establish a retaliation claim against Lucas. *See Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (affirming the dismissal of a retaliation claim because defendant was not named in plaintiff's original

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

grievance); *Tafari v. McCarthy,* 714 F.Supp.2d 317, 373–74 (N.D.N.Y.2010) (Hurd, J. & Lowe, M.J.) (plaintiff could not establish any connection between the grievances he filed and defendants who were not named in the grievances).

Courts must view retaliation claims with care and skepticism due to the ease with which they can be fabricated and to avoid judicial intrusion into matters of prison administration. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 214–15 (N.D.N.Y.2008) (McAvoy, S.J. & Lowe, M.J.). Conclusory allegations alone are insufficient. *Id.* at 214 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). For purposes of the first element of the claim, it is undisputed that the filing of grievances is constitutionally protected conduct. *See* Gill, 389 F.3d at 384; *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002).

### 1. April 28, 2006 Disciplinary Report

Smith's contention that Keiffer filed the April 28, 2006 disciplinary report in retaliation for his complaints about her opening his legal mail is conclusory and unsupported by the record. Smith fails to identify or provide a copy of any formal grievance he filed against Keiffer prior to April 28, 2006. In fact, the earliest formal grievance related to the alleged mail interference is dated June 6, 2006, and was received on July 17, 2006. Smith Decl., Ex. A, at 4. Moreover, Smith seems to have changed his argument regarding Keiffer's motivation for this disciplinary report, claiming it was filed in an effort to "cover her back" after failing to notify him of the scheduled deposition. *See* Dkt. No. 27 at 3. Smith has therefore failed to establish a causal connection between any constitutionally protected conduct and the April 28, 2006, disciplinary report. *See Tafari,* 714 F.Supp.2d at 373 (plaintiff failed to establish a causal connection because he only filed a grievance *after* the report was lodged against him).

### 2. November 2, 2006 Disciplinary Report

**\*8** Smith claims that the November 2, 2006, disciplinary report was filed in direct response to the formal grievance he filed on October 8, 2006. The first prong of the analysis is therefore met. The issue thus becomes whether the grievance was a substantial or

motivating factor for the disciplinary report.

"[T]he temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation." *Gayle,* 313 F.3d at 683. Here, Smith filed a grievance against Keiffer on October 8, 2006, it was received on October 25, 2006, and Keiffer lodged a disciplinary report against him on November 2, 2006. Smith Decl., Ex. A, at 7c; Magnuson Decl. at 24. This close temporal relationship provides circumstantial evidence that the disciplinary report was retaliatory.

However, unlike *Gayle,* the disciplinary report at issue here did not arise from the same statements or facts involved in the grievance. *See Gayle,* 313 F.3d at 683 (giving additional support to plaintiff's retaliation claim because the disciplinary report arose from statements plaintiff made to defendant while discussing the grievance he had filed six days earlier). Indeed, the grievance and the disciplinary report involve wholly independent facts and circumstances. While Smith's grievance complained that Keiffer and Lucas improperly raised his custody classification score in August 2006, the disciplinary report charged Smith with threatening bodily harm and being insolent towards a staff member after he allegedly approached Keiffer in a physically threatening manner on November 2, 2006. Smith Decl., Ex. A, at 7c–8.

Smith asserts that his retaliation claim is further supported by the outcome of the disciplinary hearing that followed the November 2, 2006, incident. Smith claims that since he was only found guilty of a lesser offense and was released from the SHU, it follows that the original charges were fabricated and retaliatory. This reasoning is not persuasive and, if followed, would undermine the prison disciplinary review process. There is nothing to suggest that Fehlner's decision finding Smith guilty of a lesser offense than that originally charged by Keiffer was an attempt to cover up or remedy retaliatory action.

Therefore, the only link between Smith's grievance and the disciplinary report is the temporal proximity and Smith's conclusory allegation that the report was retaliatory and false. This is insufficient to survive summary judgment. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (noting that where circumstantial

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

evidence is the sum total of plaintiff's proof, "we might be inclined to affirm the grant of summary judgment based on the weakness of [plaintiff's] case"). There is thus insufficient support for Smith's claim that his exercise of constitutionally protected conduct, filing grievances, was the motivating factor behind the November 2, 2006, disciplinary report. Accordingly, it is recommended that defendants' motion as to Smith's retaliation claim be granted.

### 3. False Disciplinary Reports Claim

**\*9** An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). To constitute an actionable claim, "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right" or the denial of procedural protections. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *Freeman,* 808 F.2d at 952. Because Smith makes no specific allegation that he was denied a required procedural safeguard and, as explained immediately above, he cannot establish a claim of retaliation, any remaining due process claim regarding the issuance of false disciplinary reports must also fail. Defendants' motion as to any such claims should also be granted.

### E. Biased Hearing Officer

Smith next alleges that his due process rights were violated by Felner, who presided over the disciplinary hearing that followed the November 2, 2006, incident and was biased against him. It is well-established that an "inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996). Although a hearing officer's impartiality does not have to mirror that of judges generally, the result of a disciplinary hearing cannot be "arbitrarily and adversely predetermined." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). An impartial hearing officer is one who "does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990). Prison officials serving as adjudicators enjoy a rebuttable presumption that they are unbiased. *Allen,* 100 F.3d at 259.

To support his assertion that Fehlner was biased, Smith claims that Felner was aware of Keiffer's allegedly retaliatory conduct. Compl. at 3. However, Felner's knowledge of, or even participation in an investigation into, Keiffer's alleged retaliatory actions does not demonstrate bias against Smith. *See Vega v. Artus,* 610 F.Supp.2d 185, 200 (N.D.N.Y.2009) (Suddaby, J.) (failing to find bias where the hearing officer conducted both the disciplinary proceeding and the investigation into the inmate's grievance against the involved corrections officer).

Smith also points to a statement Felner allegedly made at the hearing in which he admitted that the disciplinary report was false but had to find Smith "guilty of something." *See* Compl. at 3; Smith Decl., ¶ 13. Assuming this to be true, as must be done for purposes of this motion, it indicates that Felner's decision was arbitrarily and adversely predetermined. Even though only of a lesser charge, Smith was indeed found guilty. Fehlner vehemently denies ever making such a statement. Felner Decl. ¶ 9. Nonetheless, this dispute raises a triable issue of fact. *See Keesh v. Goord,* No. 04–CV–271A, 2007 WL 2903682, at \*15 (W.D.N.Y. Oct. 1, 2007) (denying defendants' motion for summary judgment in light of prisoner's sworn assertion that the hearing officer advised that his guilt had been predetermined, even though the hearing officer vigorously disputed making such a statement). Accordingly, it is recommended that defendants' motion for summary judgment be denied as to Smith's due process claim that the hearing officer was biased.

### F. Eighth Amendment

**\*10** Smith alleges two Eighth Amendment violations: (1) the unsanitary conditions of his confinement in the SHU and (2) the inadequate medical treatment he received after he was injured on the broken chair.

### 1. Conditions of Confinement

The Eighth Amendment prohibition against cruel and unusual punishment extends to prison conditions. *Horne v. Coughlin,* 155 F.3d 26, 31 (2d Cir.1998). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective ... and subjective test." *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996) (citations omitted).

In order to satisfy the objective element of this claim, "a 'plaintiff must demonstrate that the conditions of his confinement result[ed] in ... serious deprivations of basic human needs' or deprived him 'of the minimal civilized measure of life's necessities .' " *Govan v. Campbell,* 289 F.Supp.2d 289, 296 (N.D.N.Y.2003) (Sharpe, M.J.) (quoting *Anderson v. Coughlin,* 757 F.2d 33, 34–35 (2d Cir.1985)). Basic human needs include "food, clothing, shelter, medical care, and reasonable safety." *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002) (citation and internal quotation marks omitted).

The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind ... of deliberate indifference to inmate health or safety." *Farmer,* 511 U.S. at 834 (citations omitted). This entails a showing that the prison official knew of but disregarded an excessive risk to inmate health or safety. *Id.* at 837. Such knowledge can be inferred from circumstantial evidence "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Here, Smith asserts that he was housed in a cell of the SHU with three other inmates and was not provided toilet paper for two weeks. Compl. at 3. Smith further alleges that the prison officers refused to flush the toilet, which was controlled from outside of the cell, causing the toilet to overflow and covering the floor with urine and feces. *Id.* Smith claims that he was forced to sleep on the floor near the sewage and became ill due to the odor. *Id.* Such conditions satisfy the objective element of an Eighth Amendment claim. *See Gaston v. Coughlin,* 249 F.3d 156, 166 (2d Cir.2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end."); *Reeder v. Hogan,* No. 9:09–CV–520, 2010 WL 3909050, at *7 (N.D.N.Y. Sept. 30, 2010) (Mordue, C.J.) ("Deprivation of toiletries, 'especially toilet paper, can

rise to the level of unconstitutional conditions of confinement.' " (quoting *Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003)).

**\*11** With regard to the subjective element, Smith fails to name the prison guards who allegedly refused to flush the toilet and does not attempt to ascribe this conduct to Fehlner. However, he asserts that "Mr. Fehlner, Unit Manager knew of the fact that raw sewage could make plaintiff sick but [he] ignored his complaints which caused his sickness and nausousness [sic]." Compl. at 4. This language, liberally construed, suffices to allege that Felner was aware of the inhumane conditions in the SHU but failed to take remedial action despite Smith's complaints that the odor of sewage was making him ill. *See Gaston,* 249 F.3d at 166 (assertion that defendant prison guards "made daily rounds of SHU" was sufficient to establish that they had actual knowledge of obvious inhumane conditions). This satisfies the subjective element of the Eighth Amendment claim.

Importantly, nowhere in their motion papers do defendants dispute that Felner knew of the conditions in the SHU. In fact, they do not address the conditions-of-confinement claim at all in the initial motion. *See generally* Dkt. No. 23. Defendants' attention to this claim is limited to a single paragraph in their Reply to Plaintiff's Response in which they simply assert that the claim must be dismissed because Smith failed to name the prison guards who refused to flush the toilet. Dkt. No. 28 at 5. Moreover, in his own declaration, Felner does not mention the conditions-of-confinement claim at all. *See* Felner Decl. Accordingly, it is recommended that defendants' motion for summary judgment be denied as to Smith's conditions-of-confinement claim against Felner.

**2. Medical Care**

To state an Eighth Amendment claim for inadequate medical care, a plaintiff must establish the same objective and subjective elements as outlined in the conditions-ofconfinement claim above. *See Helling v. McKinney,* 509 U.S. 25, 35 (1993). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

averted." *Farmer,* 511 U.S. at 844.

" 'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). When determining if a medical condition is sufficiently serious, a court may consider factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright,* 315 F.3d 158, 162–63 (2d Cir.2003) (citing *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)). The severity of the denial of care should also be judged in the context of the surrounding facts and circumstances of the case. *Smith,* 316 F.3d at 185. Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance,* 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

**\*12** In this case, Smith fails to establish a serious medical need to satisfy the objective element. Smith claims that he suffered a puncture wound measuring 1/4" in diameter as well as a bruise measuring 10" long and 3" wide on his lower back when he fell onto the broken chair. Compl. at 4. Smith maintains that he bled "profusely" and required the assistance of two inmates to walk back to his cell. *Id.* However, the medical records do not support his assertion that his injuries were serious.

The Inmate Injury Assessment and Followup form, completed by an emergency medical technician on the day of Smith's injury, indicates that Smith suffered a "small scrape" on his upper buttock. Magnusson Decl., Ex. E. The injury required "Minor First Aid," and Smith was advised to rest, ice his back, and make a sick call if the pain worsened. *Id.* Moreover, on the Inmate Injury Report, which Smith signed, the incident is summarized by the following: "Leaned back in chair and chair back rest snapped off. Injured fell back onto piece of metal which

snapped causing a *small cut/puncture."* Smith Decl., Ex. E, at 36 (emphasis added). A small cut requiring minor first aid is insufficient to establish the objective element of Smith's Eighth Amendment claim. *See Dawes v. Coughlin,* 159 F.3d 1346 (2d Cir.1998) (a 1 1/2 -inch laceration on inmate's elbow is insufficient to constitute a serious injury under the Eighth Amendment); *Tafari,* 714 F.Supp.2d at 354 (bruises and superficial lacerations from an assault did not constitute a serious medical condition).

Accordingly, it is recommended that defendants' motion as to Smith's Eighth Amendment claim of inadequate medical care be granted.

### G. Product Liability/Negligence

Smith invokes the FTCA and seeks compensation from the United States and UNICOR for injuries he received due to the allegedly defective chair. Smith also alleges that defendants Peterson and Craig were negligent in their failure to inspect the chair to ensure it was safe for use.[FN10] Defendants argue that the Inmate Accident Compensation Act ("IACA") is the exclusive means of recovery for Smith's work-related injuries, and, therefore, the court lacks jurisdiction to adjudicate his FTCA claim.

> [FN10.] It is also possible to interpret Smith's claim against these defendants as a conditions-of-confinement claim under the Eighth Amendment. However, such a claim would fail as Smith cannot establish that Craig or Peterson acted with the requisite culpable state of mind. There is nothing to suggest that they were aware of and consciously disregarded the allegedly unsafe condition of the chair prior to Smith's fall. Indeed, Peterson denied having knowledge of any prior incidents involving the chairs at Ray Brook. Peterson Decl. at ¶ 3. As explained below, Smith cannot establish that these defendants were negligent. Therefore, neither can they be found to have acted with deliberate indifference, which requires proof of a state of mind beyond that for mere negligence and akin to recklessness. *See Farmer,* 511 U.S. at 839–40. Moreover, it appears that Smith has abandoned any Eighth Amendment claims against Peterson. *See* Dkt. No. 27 at 8.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

**1. Inmate Accident Compensation Act**

The IACA allows for the compensation of federal prison inmates "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Defendants are correct that the IACA is the exclusive remedy for a prisoner's work-related injuries. 28 C.F.R. § 301.319; *United States v. Demko,* 385 U.S. 149, 152–54 (1966). Smith sought recovery through the IACA process and was apparently denied because his injuries were not work-related. Although Smith was in the factory at Ray Brook when the incident occurred, the Injury Report indicates that his injuries were "Non Work Related" because the incident "did not occur at his work station." Smith Decl., Ex. E, at 36. After the prison Safety Committee denied his initial claim, Smith filed a grievance with the warden's office at FCI Cumberland, where he had been transferred. *Id.* at 38. The warden denied the claim, arguing that Smith's injuries were caused by his own negligent use of the chair and noting that the supervisory staff had determined the incident was not work-related. *Id.* at 39. Smith appealed this decision to the Administrator of National Inmate Appeals, who also denied the IACA claim because his injuries were "non-work-related." *Id.* at 41.

**\*13** Thus, defendants have consistently asserted that Smith's injury was not work-related and, therefore, that the IACA was inapplicable. On this motion, defendants assert that Smith's claim under the FTCA is barred by the IACA because his injury was work-related. The defendants attempt to have it both ways—Smith's injury was work-related for purposes of the FTCA but not so for purposes of the IACA. Because prison administration officials at multiple levels have already denied Smith's IACA claim and deemed his injuries non-work-related, there exists at least a question of fact as to whether Smith's injury was work-related as to bar Smith's FTCA claim. Accordingly, defendants' motion on this ground should be denied.

**2. Federal Tort Claims Act**

The FTCA waives sovereign immunity and permits lawsuits against the United States for injuries caused by the negligence of any government employee acting within the scope of his or her employment. 28 U.S.C. § 1346(b)(1). Defendants correctly point out that the FTCA does not allow suits against the United States based on strict product liability. *See Laird v. Nelms,* 406 U.S. 797, 798–99 (1972) ("[T]he Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of misfeasance or nonfeasance on the part of the Government." (internal quotation marks and citation omitted)). Smith concedes this point and appears to have limited his FTCA claim to hold the United States liable for the alleged negligence of Peterson and Craig. *See* Compl. at 4; Dkt. No. 27 at 8. Smith alleges that these defendants "failed to properly inspect" the chair to ensure "safe operation and equipment." Dkt. No. 27 at 8. Even though defendants have not specifically responded to a negligence claim, such an action can be disposed of on the merits as Smith fails to establish a prima facie case.

Under the FTCA, a court is to apply state tort law. *Gardner v. United States,* 896 F.Supp. 89, 92 (N.D.N.Y.1995) (Scullin, J.). To state a claim of negligence in New York, a plaintiff must establish the following elements: (1) the existence of a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damage proximately resulting from that breach. *Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 467 (2d Cir.1995). With regard to the duty element, "plaintiff must establish that a dangerous condition existed ... *and* that the United States either affirmatively created that condition or had notice, actual or constructive, of its existence." *Gardner,* 896 F.Supp. at 92. Constructive notice can be established by showing that the defect was "visible and apparent" and existed "for a sufficient length of time prior to the accident to permit the owner to discover and remedy it." *DiNunzio v. Ken–Jil Elec. Contractors, Inc.,* 473 F.Supp.2d 485, 487 (S.D.N.Y.2007) (internal quotation marks and alterations omitted). Constructive notice is also generally found where a "reasonable inspection" would have uncovered the dangerous condition. *Id.*

**\*14** Here, even assuming the chair was in a "dangerous condition," Smith fails to allege or explain how defendants had actual or constructive notice of such a condition. Peterson claimed that there had been no prior incidents involving similar chairs in the factory at Ray Brook. Peterson Decl. ¶ 3. There are no records of prior complaints or injuries related to the chairs to establish

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

actual notice that they were unsafe. Moreover, Smith makes no allegations that the dangerous condition was apparent or existed long enough to establish constructive notice. Similarly, there is no evidence that a reasonable inspection would have uncovered the dangerous condition. Therefore, Smith cannot establish that the defendants had notice of the dangerous condition.

Accordingly, it is recommended that defendants' motion as to Smith's product liability/negligence claim under the FTCA be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 23) be:

1. **GRANTED** as to his claims for:

A. Interference with mail;

B. Retaliation/false disciplinary reports;

C. Eighth Amendment claim of inadequate medical care; and

D. Product liability/negligence under the FTCA;

2. **DENIED** as to his claims for:

A. A biased hearing officer; and

B. Conditions of confinement; and

3. All defendants be **TERMINATED** except Felner.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. §

636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2011.

Smith v. U.S.
Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)
END OF DOCUMENT

Not Reported in F.Supp.2d, 2011 WL 776150 (N.D.N.Y.)

(Cite as: 2011 WL 776150 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Benjamin SMITH, Plaintiff,
v.
UNITED STATES of America; Dan Peterson, Factory
Manager, FCI Ray Brook; Susan Keiffer, Case
Manager, FCI Ray Brook; Federal Correctional
Industries (Unicor), FCI Florence, Florence, Colorado;
Mr. Felner, Unit Manager, FCI Ray Brook; D. Kirkby,
Factory Foreman, FCI Ray Brook; Mr. Lucas, Case
Manager, FCI Ray Brook; and T.R. Craig, Facility
Superintendent, FCI Ray Brook, Defendants.
No. 9:09–CV–729 (TJM/DRH).

March 1, 2011.
Benjamin Smith, Cumberland, MD, pro se.

Charles E. Roberts, Office of the United States Attorney,
Syracuse, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.
**I. INTRODUCTION**
    **\*1** This *pro se* action brought under *Bivens v. Six
Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct.
1999, 29 L.Ed.2d 619 (1971), was referred to the Hon.
Judge David R. Homer, United States Magistrate Judge,
for a Report and Recommendation. No objections to the
Report–Recommendation and Order dated February 3,
2011 have been filed, and the time to do so has expired.
Furthermore, after examining the record, this Court has
determined that the Report–Recommendation and Order
is not subject to attack for plain error or manifest injustice.
**II. CONCLUSION**

    Accordingly, the Court adopts the
Report–Recommendation and Order for the reasons stated
therein. It is therefore **ORDERED** that Defendants'

motion for summary judgment (Dkt. No. 23) is
**GRANTED IN PART AND DENIED IN PART.**
    The motion is **GRANTED** as to the claims for:

    A. Interference with mail;

    B. Retaliation/false disciplinary reports;

    C. Eighth Amendment claim of inadequate medical
care; and

    D. Product liability/negligence under the FTCA, and
these claims are **DISMISSED.**

    The motion is **DENIED** as to the claims for:

    A. A biased hearing officer; and

    B. Conditions of confinement.

    Based on this determination, all defendants are
**TERMINATED except Defendant Felner.**

    **IT IS SO ORDERED.**

N.D.N.Y.,2011.

Smith v. U.S.
Not Reported in F.Supp.2d, 2011 WL 776150 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))



United States District Court, S.D. New York.

Abdul SHARIFF, Mark Bartley, Jamal Stephenson, David Gobern, Lewis Purcell, Sam Johnson, Terence Stevens, Stephen Gowins, and Abdul Suluk, Plaintiffs,
v.
Philip COOMBE, Commissioner of New York State Docs; Glen Goord, Acting Commissioner; Christopher Artuz, Superintendent of Green Haven Corr. Facility; Gail Haponic, Acting Deputy of Admin. of Green Haven; Roger Maines, Supervisor of Green Haven; M. Muller, Maintenance Supervisor of Green Haven, individually and in their official capacities, and the State of New York, Defendants.
No. 96 Civ. 3001(BSJ).

June 26, 2002.
*Memorandum & Order*

JONES, J.

### I. INTRODUCTION

**\*1** Plaintiffs, nine disabled prisoners who depend on wheelchairs for mobility, bring this action against the State of New York and six individuals employed by the New York State Department of Correctional Services ("DOCS") in an administrative capacity. Those six individuals, who are sued both in their individual and in their official capacities, are two former DOCS Commissioners and four administrators at Green Haven Correctional Facility ("Green Haven"), including the Superintendent, the former Plant Superintendent, a Deputy Superintendent, and a Maintenance Supervisor. Plaintiffs seek both injunctive and monetary relief for conditions affecting disabled inmates at Green Haven. The gravamen of the Fourth Amended Complaint [FN1] is that the conditions at Green Haven amount to unlawful discrimination against disabled inmates. These conditions allegedly violate (1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.;* (2) Title V of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.;* (3) Section 70 of the New

York State Correction Law; and (4) the Eighth and Fourteenth Amendments of the Constitution pursuant to 42 U.S.C. § 1983.

> FN1. Unless otherwise noted, references to the "Fourth Amended Complaint" refer to Plaintiffs' most recent Complaint, the Fourth Amended Complaint dated September 29, 1998.

Defendants move for summary judgment on several grounds pursuant to Federal Rule of Civil Procedure 56. Due to changes in the legal standards applicable to Plaintiffs' claims and the facts relevant to the issues of injunctive relief, exhaustion, and prior adjudication, the court must reserve decision on some issues at this time. In such circumstances, the court has identified issues for additional briefing by the parties in a second round of dispositive motions. Indeed, the complexity of those and other issues applicable to Plaintiffs' remaining claims may require a hearing for proper resolution. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice to renew.

### II. CLAIMS FOR INJUNCTIVE RELIEF

Any Plaintiff who is no longer incarcerated at Green Haven is barred from asserting a claim for injunctive relief regarding conditions at Green Haven. *See Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (citing cases). Plaintiffs Bartley, Gobern, Johnson, Purcell, Stevens, and Suluk are no longer incarcerated at Green Haven. Therefore, the court dismisses with prejudice all claims for injunctive relief brought by those six Plaintiffs.

Plaintiffs are not entitled to injunctive relief for those claims that are now moot because they have been addressed by prison officials. *See Prins v. Coughlin,* 76 F.3d 504, 506; *see also Farmer v. Brennan,* 511 U.S. 825, 846 (1994). Plaintiffs' injunctive claims as to the A & B yard have been rendered moot because Defendants have "repaired and repaved" this yard. (*See, e.g.,* Pls.' Mem. of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

Law in Opp'n to Defs.' Mot. for Summ. J. at 11.) Accordingly, all Plaintiffs, but particularly Plaintiffs Shariff and Stephenson, are precluded from seeking injunctive relief as to the conditions of the A & B yard that have been repaired, and the court dismisses those claims with prejudice.

**\*2** In light of the changes in both Plaintiffs' circumstances and the conditions at Green Haven that have occurred since this motion was filed, the court has been unable to address Plaintiffs' remaining claims for injunctive relief. For example, when this motion was filed, numerous repairs and renovations were scheduled for Green Haven. (*See* Turbin Aff. Ex. E.) If any such repairs were, in fact, conducted, Plaintiffs' claims for injunctive relief concerning those repairs would also be moot. The court directs the parties to address these issues, as well as other changes in the facts of this case that may affect the viability of Plaintiff's claims for injunctive relief, in the additional briefing ordered by the court.

### III. CLAIMS FOR MONETARY RELIEF

#### A. CLAIMS UNDER 42 U.S.C. § 1983

Absent express statutory abrogation or consent by a state to suit, the Eleventh Amendment bars suits brought in federal court against a state by citizens of another state or the state's own citizens. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72-73 (2000); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996). Section 1983 does not abrogate a state's immunity, *Quern v.. Jordan,* 440 U.S. 332, 343-45 (1979), and New York has not consented to suit in federal court, *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir.1977). State employees sued in their official capacities are also immune from suits for monetary damages under the Eleventh Amendment in cases where the state is the real party in interest. *See Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Moreover, "[s]tates[ ] and state officers, if sued in their official capacities for retrospective relief ... are not 'persons' subject to suit under § 1983." *K & A Radiologic Tech. Services, Inc. v. Commissioner of Dep't of Health,* 189 F.3d 273, 278 (2d Cir.1999). Therefore, the court dismisses Plaintiffs' claims for monetary relief pursuant to § 1983 against the State of New York and the other six

Defendants in their official capacities.
### B. THE ADA AND THE REHABILITATION ACT [FN2]

> FN2. The ADA, which was adopted in 1992 and covers individuals and entities that do not receive federal funds, is broader in scope than the Rehabilitation Act, which was adopted in 1973 and is limited to programs receiving financial assistance from the federal government. *See Kilcullen v. New York State Dep't of Labor,* 205 F.3d 77, 79 n. 1 (2d Cir.2000).

Neither Title II of the ADA nor Section 504 of the Rehabilitation Act provides for suits against state officials in their individual capacities. *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001) (collecting cases). Therefore, the court dismisses with prejudice Plaintiffs' claims under the ADA and the Rehabilitation Act against the six individual Defendants in their individual capacities.

The legal standards applicable to Plaintiffs' claims under the ADA and the Rehabilitation Act against the State of New York and the other six Defendants in their official capacities have changed during the pendency of this motion. The changes in the law render much of Defendants' briefing on these claims inapplicable. The court directs the parties to brief Plaintiffs' remaining claims under the ADA and the Rehabilitation Act in light of the standards set forth in *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98 (2d Cir.2001). *See also Harris v. New York State Dep't of Health,* No. 01 Civ. 3343, 2002 WL 726659, at \*27-\*31 (S.D .N.Y. Apr. 24, 2002) (applying the standards set forth in *Garcia* ).

### C. STATE LAW CLAIMS

**\*3** Plaintiffs raise state law claims alleging that Defendants have failed to fulfill their duties under Section 70 of the New York State Correction Law. The court dismisses Plaintiffs' claims under Section 70 against the State of New York and the six other defendants in both their personal and their official capacities for lack of subject matter jurisdiction pursuant to New York State Correction Law Section 24 and the Eleventh Amendment. *See Baker v. Coughlin,* 77 F.3d 12, 14-15 (2d Cir.1996).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

IV. OTHER ARGUMENTS CONCERNING PLAINTIFFS' REMAINING CLAIMS

A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

In their Motion for Summary Judgment, Defendants argue that Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies. Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA") on April 26, 1996, no action brought by a prisoner pertaining to prison conditions may be brought until all available administrative remedies are exhausted. *Porter v. Nussle,* 122 S.Ct. 983, 988 (2002); *see* 42 U.S.C. § 1997e(a) (Supp.2000) (as amended by PLRA § 803). While the mandatory exhaustion requirement of the PLRA does not apply retroactively, any claim filed after April 26, 1996, must be exhausted administratively before it may be raised in federal court. *See Salahuddin v. Mead,* 174 F.3d, 272, 275 (2d Cir.1999); *Blissett v. Casey,* 969 F.Supp. 118, 125 (N.D.N.Y.1997).

The court denies without prejudice to renew that portion of Defendants' motion seeking dismissal of Plaintiffs' claims for failure to exhaust administrative remedies. The court reserves final decision on the issues raised by Defendants' arguments relating to exhaustion for three reasons. First, the issue of exhaustion was briefed insufficiently by the parties to permit the court to rule. Specifically, the court requires a detailed, plaintiff-by-plaintiff analysis of the exhaustion requirements applicable to each claim and the actions taken by each Plaintiff. Second, the court recognizes that Plaintiffs may have pursued additional administrative remedies during the pendency of this motion. Third, changes in the law since briefing was submitted on this motion have clarified the exhaustion requirements applicable to each Plaintiff's claims. Depending on the exhaustion requirements applicable to each claim and the actions taken by individual Plaintiffs to pursue administrative relief, the court may lack jurisdiction over some of Plaintiffs' remaining claims. The court notes the following as guidance for the parties in fashioning future arguments:

Plaintiff Shariff's initial *pro se* Complaint was filed on February 27, 1996; therefore, the claims he alleged therein

are not subject to mandatory exhaustion. Nevertheless, the court retains discretion and may require exhaustion with respect to the pre-PLRA claims raised by Plaintiff Shariff under certain circumstances. *See* 42 U.S.C. § 1997e(a) (1994) (amended 1996). The court expressly leaves open the questions of whether the court should, in its discretion, require exhaustion as to Plaintiff Shariff's claims and whether Plaintiff Shariff did, in fact, pursue administrative remedies with respect to the claims raised in this case.[FN3]

> **FN3.** Additionally, the parties have not addressed the question of whether any claims raised by Shariff in amendments to the initial Complaint filed after April 26, 1996, should be subject to the mandatory exhaustion requirements of the PLRA. The court reserves decision as to that issue.

**\*4** The other eight Plaintiffs first included their claims as part of the multiple amended complaints filed in this case after the exhaustion provisions were amended in 1996. Thus, it seems likely to the court that those eight Plaintiffs are required to have exhausted their claims prior to filing them in federal court. Cf. *Farber v. Wards Co., Inc.,* 825 F.2d 684, 689 (2d Cir.1987) (noting that "Rule 15(c) governs the 'relation back' of amended pleadings only for the purpose of the statute of limitations"). "Rule 15(c) does not exist merely to keep the door open for any tardy plaintiff.... Rather, Rule 15(c) stands as a remedial device for adding or substituting a party who 'but for a mistake concerning the identity of the proper party' would have been named originally." *Morin v. Trupin,* 778 F.Supp. 711, 735 (S.D.N.Y.1991). Thus, the decision by the other eight Plaintiffs, who raise many claims distinct from those initially filed by Plaintiff Shariff in his *pro se* Complaint, to file their claims as part of this case rather than filing their own lawsuits is unlikely to have obviated the PLRA's mandatory exhaustion requirement with respect to their claims. Since this issue has not been addressed in the light of current case law, the court reserves decision on this issue as well.

B. PRIOR ADJUDICATION

When briefing was submitted on this motion, some of Plaintiffs' claims already had been adjudicated or were

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

pending in other fora. (Defs.' Reply Mem. for Summ. J., Table C.) Defendants argue for dismissal of Plaintiffs' claims on the basis of such prior adjudication, which may preclude Plaintiffs from raising those claims in this court. *See Harris v. New York State Dep't of Health,* No. 01 Civ. 3343, 2002 WL 726659 (S.D.N.Y. Apr. 24, 2002) (discussing interaction between preclusion rules and abstention doctrines). Once again, the court has not been provided with enough detail of the claims raised by Plaintiffs in other proceedings to determine whether preclusion rules, abstention doctrines, or principles concerning double recoveries would bar any of the claims raised in the Fourth Amended Complaint, and Defendants have not addressed those topics substantively in their briefing on this motion. Thus, the court denies without prejudice to renew Defendants' motion to dismiss Plaintiffs' claims as a result of prior adjudication.

C. PRIOR PHYSICAL INJURY REQUIREMENT

Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Claims by prisoners brought pursuant to § 1983 for emotional damages unrelated to any physical injuries are subject to dismissal. *See, e.g., Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir.2001) (finding failure to make an objective showing of actual injury necessary to state an Eighth Amendment claim based on prison conditions); *Siglar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir.1997) (finding bruised ear an insufficient physical injury to overcome bar of § 1997e(e)); *Zehner v. Trigg,* 952 F.Supp. 1318, 1322-23 (S.D.Ind.) (dismissing claim based on prisoners' exposure to asbestos), *aff'd* 133 F.3d 459, 461 (7th Cir.1997); *Brazeau v. Travis,* No. 96 CV 783, 1996 WL 391701, at *1 (N.D.N.Y. July 9, 1996) (holding that claim for emotional damages caused by delay in receipt of parole hearing transcript was barred by § 1997e(e)).

**\*5** The absence of a physical injury does not constitute a total bar to claims by prisoners under § 1983, since application of § 1997e(e) does not bar claims for nominal damages, punitive damages, or declaratory or injunctive relief. *Wagnoon v. Gatson,* 00 Civ. 3722 and 99 Civ. 5872, 2001 U.S. Dist. LEXIS 8417, at *12-*13 (June 25, 2001). Nevertheless, Plaintiffs' claims for

compensatory damages relating to non-physical accidents, particularly those raised by Plaintiffs Gobern, Johnson, and Purcell, may not meet the physical injury requirement of the PLRA. The court expressly leaves open the question of whether any Plaintiff can meet the prior physical injury requirement, which has been inadequately briefed on a plaintiff-by-plaintiff basis. Indeed, Defendant raises this issue only briefly in the context of argument presented as to the standard applicable to claims of a deprivation of rights under the Eighth Amendment. (*See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 30-31.)

V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice to renew. The following claims raised in the Fourth Amended Complaint are dismissed with prejudice: claims by Plaintiffs Bartley, Gobern, Johnson, Purcell, Stevens, and Suluk for injunctive relief; all claims for injunctive relief as to the conditions of the A & B yard that have been repaired; all claims against the State of New York and the other six Defendants in their official capacities for monetary relief pursuant to § 1983; all claims against the six individual Defendants in their individual capacities pursuant to the ADA and the Rehabilitation Act; and all claims against all Defendants under Section 70 of the New York State Correction Law. The remainder of Defendants' Motion for Summary Judgment is denied without prejudice to renew.

The court directs the parties to appear before the court for a conference at 3:00 p.m. on Tuesday, July 2, 2002, prepared to discuss Plaintiffs' remaining claims and current conditions at Green Haven. If Defendants choose to submit additional briefing, such briefing must be submitted as a renewed motion for summary judgment filed within thirty days of the date of this Memorandum and Order.

SO ORDERED:

S.D.N.Y.,2002.

Shariff v. Coombe
Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY,
JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED
COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER
STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON,
NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE,
J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE,
COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE
INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI
INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON,
UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST
BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN
UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH,
JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES,
JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE,
JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON,
SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1 Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided
May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.*

*4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.


*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.


*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.


*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.


*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.


*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.


*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.


*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.


*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.


*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

*MEMORANDUM-DECISION AND ORDER*

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]    The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.

5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

**ANALYSIS**

**The Defaults**

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

**II. The Jurisdictional Arguments**

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

**A. Personal Jurisdiction**

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Younquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6     We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332*. Cf. *Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25] of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d)*, holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE