IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MELVIN HERRING,

                        Plaintiff,                 Civil Action No.
                                               9:12-CV-1739 (GLS/DEP)

     v.

B. TABOR,

                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

MELVIN HERRING, *Pro Se*
96-A-2574
Gouverneur Correctional Facility
Scotch Settlement Road
P.O. Box 480
Gouverneur, NY 13642

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN     LAURA A. SPRAGUE, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Melvin Herring, a New York State prison inmate, commenced this action against B. Tabor, a corrections officer stationed at the prison facility in which plaintiff was confined at the relevant times, pursuant 42 U.S.C. § 1983, alleging deprivation of his civil rights. Plaintiff's claim arises out of defendant's order directing plaintiff and other inmates to clean an area of the Regional Mental Health Unit ("RMHU") that, according to Herring, exposed him to human feces and urine.

Currently pending before the court is a motion brought by defendants seeking dismissal of plaintiff's amended complaint based on a failure to state a claim upon which relief may be granted. For the reasons set forth below, I recommend that defendant's motion be granted.

I.      <u>BACKGROUND</u>

Plaintiff is a prison inmate confined in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). <u>Dkt. No. 30 at 1</u>. Although plaintiff is now imprisoned elsewhere, at all times relevant to the events giving rise to this action he was housed at the Marcy Correctional Facility ("Marcy"), located in Marcy, New York. *Id.* at 2.

In his amended complaint, plaintiff alleges that while an inmate at Marcy, he was a member of the lawn and grounds crew. <u>Dkt. No. 30 at 5</u>.

While that crew was working on the morning of July 17, 2012, defendant ordered plaintiff and other crew members to clean the RHMU recreational pens.[1]  Dkt. No. 30 at 10.  Prior to that date, the lawn and grounds crew had been warned to stay away from the RHMU recreational pens and inmates because the inmates housed in that unit have a tendency to throw urine and feces out of their cell windows.  *Id*.  Just prior to receiving defendant's order, plaintiff told him that the RHMU recreational pens smelled of both urine and feces.  *Id*. at 6.  Defendant responded by denying that he smelled anything.  *Id*.  Plaintiff also alleges that defendant never looked inside the pens for any contaminated material before sending the crew members inside.  *Id*. at 6.  Although other lawn and grounds crew members refused to follow defendant's directive, plaintiff complied out of fear of retaliation.[2] *Id*. at 7.

Plaintiff alleges that he was given "micro thin" plastic gloves to use while cleaning the pens, but does not claim that any human waste touched his skin or any other part of his body in the process of cleaning the pens.  Dkt. No. 30 at 7.  Plaintiff's amended complaint alleges that he was

---

[1]     According to plaintiff, the RMHU is an area secluded from the general population of prisoners.  Dkt. No. 30 at 5.

[2]     Plaintiff's amended complaint alleges that the inmates who did not enter the RMHU pens, in violation of defendant's order, were subsequently punished with disciplinary confinement in the facility's special housing unit.  Dkt. No. 30 at 9.

required to dispose of a shirt that had "fresh feces in the form of diarrhea" by placing it into a bag using his hand that was protected by the plastic glove. *Id.* at 7. According to plaintiff, the smell of human waste was so strong that he became nauseated "to the point of needing air to breath[e]." *Id.* at 8.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action November 27, 2012. Dkt. No. 1. Following an initial review of plaintiff's original complaint, Chief District Judge Gary L. Sharpe issued an initial order on March 28, 2013, dismissing all of plaintiff's claims with exception to his cause of action against defendant Tabor. Dkt. No. 12. In lieu of filing an answer, defendant moved to dismiss plaintiff's surviving claim based on a failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915(g). Dkt. No. 18. On November 20, 2013, the court granted defendant's motion to dismiss with leave for plaintiff to replead. Dkt. No. 28.

Plaintiff filed amended complaint on December 12, 2013. Dkt. No. 30. The allegations set forth in plaintiff's amended complaint are similar to those contained in the original complaint. *See generally id.* Like the original, the amended complaint asserts an Eighth Amendment conditions

of confinement claim. *Id.* It also appears that plaintiff has added a claim against defendant alleging that he violated state rules and regulations by directing the lawn and grounds crew to clean the RMHU recreation pens. *Id.* at 8, 10. Once again, in lieu of answering plaintiff's amended complaint, defendant filed a motion seeking its dismissal, arguing that it fails to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 31. In that motion, defendant also contends that plaintiff's amended complaint should be dismissed because he has not alleged cognizable damages. *Id.*

Defendant's motion, to which plaintiff has not responded, is now ripe for determination, and has been referred to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the defendant- unlawfully-harmed me accusation" in order to withstand

scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. For purposes of assessing the motion, the court may consider the complaint as well as any documents attached as exhibits or incorporated by reference. *Avent v. Doe*, No. 05-

CV-1311, 2008 WL 877176 at *2 (N.D.N.Y. Mar. 31, 2008) (Scullin, J.,

adopting report and recommendation by DiBianco, M.J.) (citing *Dangler v.*

*New York City Off Track Betting Corp.*, 193 F.2d 130, 138 (2d Cir. 1998)).

To withstand a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570);

*see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

As the Second Circuit has observed, "[w]hile *Twombly* does not require

heightened fact pleading of specifics, it does require enough facts to

'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In*

*re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting

*Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop,

particular deference should be afforded to a *pro se* litigant, whose

complaint merits a generous construction by the court when determining

whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94

("'[A] *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers.'" (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a

7

plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Plaintiff's Failure to Respond to Defendant's Motion

Initially, plaintiff's failure to oppose defendant's motion and its legal significance must be addressed.  Under rule 7.1(b)(3) of the local rules of practice for this court, a party who fails to oppose a motion has effectively consented to the granting of the relief sought.  That rule provides as follows:

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3).

In this case, plaintiff has not responded to defendant's motion to dismiss.  The motion was properly filed by defendant, and defendant, through his motion, has met his burden of demonstrating entitlement to the relief requested.  With respect to whether defendant has met his burden, I note that his "burden of persuasion is lightened such that, in order to

succeed, the motion need only be 'facially meritorious.'" *See Rodriguez v. Goord*, No. 04-CV-0358, 2007 WL 4246443, at *1 (Scullin, J., *adopting report and recommendation by* Lowe, M.J.) (finding that whether a movant has met its burden to demonstrate entitlement to dismissal under local rule 7.1(b)(3) "is a more limited endeavor than a review of a contested motion to dismiss" (citing cases)).[3]  Because defendant has accurately cited proper legal authority supporting the ground upon which his motion is based, and plaintiff has failed to respond in opposition to the motion to dismiss, I find that defendant's motion is facially meritorious.  Accordingly, I recommend the court grant defendant's motion to dismiss on this basis.

C.    Eighth Amendment Conditions of Confinement

In an abundance of caution, I have also considered the merits of defendant's motion.  In support of that motion, defendant contends that a prison inmate's isolated exposure to human waste is not actionable under the Eighth Amendment. No. 31-1 at 5.

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction

---

[3]    All unreported decisions cited to in this report have been appended for the convenience of the *pro se* litigant.

of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958); *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)). While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and subjective requirement. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). As to the objective requirement, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'" *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 2985)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference,'" *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting*

*report and recommendation by* Homer, M.J.).  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *see also Waldo*, 1998 WL 713809, at *2; *Davidson*, 920 F. Supp. at 308.

The Second Circuit has "long recognized that unsanitary conditions . . . can, in egregious circumstances, rise to the level of cruel and unusual punishment."  *Walker*, 717 F.3d at 127.  An inmate's exposure to human waste may, in extreme situations, satisfy the objective element of an Eighth Amendment analysis.  *See*, *e.g.*, *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end."); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

In his amended complaint, plaintiff alleges that, on one occasion, he was exposed to human feces when he was ordered by defendant Tabor to clean the recreational pen in the RMHU.  Dkt. No. 30 at 10-12.  Plaintiff

alleges that defendant was deliberately indifferent to his health and safety when (1) defendant ordered him to clean this area after learning that the area smelled heavily of urine and feces, (2) defendant failed to investigate the area for infected material, and (3) defendant failed to provide plaintiff with protective gear. *Id.* Plaintiff acknowledges that he was provided at least "micro thin messhall" gloves to clean the area, including to dispose of feces. *Id.* at 7. According to plaintiff, disposing of the shirt almost caused him to feel nauseous because it "smelled horribly of feces." *Id.* Plaintiff's amended complaint neither alleges how long he was required to work in the recreational pens, nor specifies the length of time that he was exposed to or came in contact with feces or urine. *See generally* Dkt. No. 30.

These allegations, considered together, suggest that plaintiff was actually exposed to human waste for only a short period of time, and was ordered to dispose of a shirt that had human feces on it with gloved hands as part of his job on the lawn and grounds crew. Even liberally construed and accepted as true, these facts do not plausibly suggest that plaintiff was exposed to conditions that created an "unreasonable risk to serious damage to his health." *Walker*, 717 F.3d at 125. Instead, plaintiff alleges a limited exposure to unsanitary conditions, which is insufficient to rise to the level of an Eighth Amendment violation. *See Wiley v. Kirkpatrick,* No.

07-CV-6484, 2013 WL 434188, at *9 (W.D.N.Y. Feb. 4, 2013) (dismissing the plaintiff's conditions of confinement claim where his toilet water was shut-off for several days and where he had to breathe in the odor of human excrement); *Hamilton v. Fisher*, No. 10-CV-1066, 2012 WL 987374, at *8-9 (N.D.N.Y. Feb. 29, 2012) (Treece, M.J.), *report and recommendation adopted by* 2012 WL 987122 (N.D.N.Y. Mar. 22, 2012) (D'Agostino, J.), (dismissing the plaintiff's complaint for failure to state a claim because, *inter alia*, mere allegations of "feces being thrown" was not enough to establish the objective element of an Eighth Amendment claim); *Ortiz v. Dep't of Corr. of New York City*, No. 08-CV-2195, 2011 WL 2638137, at *9 (S.D.N.Y. Apr. 29, 2011) (dismissing the plaintiff's complaint where it alleged that the toilet in his cell overflowed on three separate occasions, and the plaintiff was forced to remain in his cell on those occasions for "a relatively small amount of hours," including one incident where the plaintiff awoke in the middle of the night to an overflow and was not moved until later that day); *Evans v. Fogg*, No. 78-CV-5363, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) ("To be kept in a refuse-strewn cell for 24 hours and in a flood cell . . . for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual

punishment."); *but see Gaston*, 249 F.3d at 166 (finding that the plaintiff's complaint stated an Eighth Amendment conditions of confinement claim where it alleged, *inter alia*, that the defendants knowingly permitted an area outside the plaintiff's cell "to remain filled with sewage and excrement for days on end"); *Wright v. McMann*, 387 F.2d 519, 522, 526 (2d Cir. 1967) (finding that a thirty-three-day period of confinement in a strip cell which was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," combined with other conditions, was a violation of the Eighth Amendment); *Smith v. United States,* No. 09-CV-0729, 2011 WL 777969 at *10 (N.D.N.Y. Feb. 3, 2011) (Homer, M.J.), *report and recommendation adopted by* 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011) (McAvoy, J.)*,* (finding that the prison official's refusal to flush an outside-controlled cell toilet that caused the plaintiff to become ill after sewage backed up onto the cell floor satisfied the objective element).

I also find that plaintiff's amended complaint similarly fails to satisfy the subjective element of the controlling Eighth Amendment test. *See Walker*, 717 F.3d at 125 (holding that, to state an Eighth Amendment conditions of confinement claim, a plaintiff must allege that "the defendant official acted with a sufficiently culpable state of mind, such as deliberate

indifference to inmate health or safety").  Plaintiff's amended complaint

fails to allege facts plausibly suggesting that defendant was aware that, by

obeying defendant's directive, plaintiff was exposed to a substantial risk of

serious harm resulting from potential contact with human waste.  While

plaintiff's amended complaint alleges that defendant Tabor was informed

by plaintiff and other inmates that the recreational area smelled of feces,

defendant denied the existence of an odor.  Dkt. No. 30 at 6.  Plaintiff was

also given plastic gloves to protect his skin from contact with potentially

contaminated material, and his exposure to the contaminated shirt

appears to have been an isolated incident.  *Id.* at 7.  Additionally, plaintiff's

letter to the DOCCS Inspector General acknowledges that he did not tell

defendant Tabor about the feces-stained shirt that he alleges caused him

to become nauseous.[4]  Although it is alleged that the inmates on the lawn

and grounds crew were routinely warned to stay away from the

recreational pens because of the risk that RHMU inmates might throw

human waste out the windows, and a liberal reading of this allegation

---

[4]      Plaintiff's letter to the DOCCS Inspector General was incorporated by reference
in plaintiff's original complaint.  Dkt. No. 1 at 3.  The court's consideration of that letter
in connection with defendant's pending motion to dismiss is proper in light of plaintiff's
obvious notice of its existence.  *See James v. Correct Care Solutions*, No. 13-CV-
0019, 2013 WL 5730176, at *3 ("Especially important to the inquiry of whether to
consider a document outside the complaint is whether plaintiff has notice of the
documents outside the complaint."  (citing *Cortec Indus.*, *Inc.* v. *Sum Holding L.P.*, 949
F.2d 42, 48 (2d Cir. 1991)).

could give rise to an inference that defendant may have been aware that the pens contained human waste, at best this amounts to an allegation of only negligence.  An allegation of negligence is insufficient to satisfy the subjective requirements of an Eighth Amendment claim.  *See Farmer* 511 U.S. at 835 (describing subjective element as requiring "more than mere negligence").  Accordingly, I find that plaintiff's amended complaint fails to allege facts plausibly suggesting that defendant was aware that plaintiff contacted human waste or was at risk for doing so to the extent that it would create a risk of substantial harm.

Because I conclude that plaintiff's amended complaint fails to allege sufficient facts to satisfy either the objective or subjective element of the Eighth Amendment conditions of confinement analysis, I recommend that this claim be dismissed.

D.    Violation of State Rules and Regulations

Liberally construed, plaintiff's amended complaint alleges that defendant Tabor violated New York State rules and regulations when he directed the lawn and grounds crew to clean the human waste in the RMHU recreation pens.  Dkt. No. 30 at 8, 10.  It is well established, however, that violations of such regulations are not cognizable under section 1983.  *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985)

("[A] violation of state law is not cognizable under [section] 1983." (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *accord, Old St. George's LLC v. Bianco*, 389 F. App'x 33, 35 (2d Cir. 2010). For that reason, I recommend that any claim asserted against defendant Tabor arising from an allegation that he violated state rules or regulations be dismissed.

E.    Recovery of Compensatory Damages

Although I have recommended that plaintiff's Eighth Amendment claim be dismissed on other grounds, for the sake of completeness, I will briefly address defendant's argument that plaintiff is precluded from recovering compensatory damages. Dkt. No. 31-1 at 5-6.

Pursuant to 42 U.S.C. § 1997e, "[n]o Federal civil action may be brought by a prisoner confined in a . . . correctional facility[] for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Second Circuit has held that section 1997e(e) applies to all federal civil actions, including those pursuant to 42 U.S.C. § 1983. *Thompson v. Carter,* 284 F.3d 411, 417-18 (2d Cir. 2002). As such, "[c]laims brought by prisoners pursuant to [section] 1983 for . . . damages unrelated to any physical injuries are subject to dismissal." *Shariff v. Coombe*, No. 96-CV-3001, 2002 WL 1392164, at *4 (S.D.N.Y. June 26, 2002).

Here, plaintiff's amended complaint alleges that he became "nauseated to the point of needing air to breath[e]" and that he was nervous about feces or urine being thrown at him. Dkt. No. 30 at 8. Plaintiff also contends that he suffered "seriously bodily harm." *Id.* at 12. These allegations are either wholly conclusory or insufficient to satisfy the physical injury requirement under section 1997e(e). *See Alexander v. Tippah Cnty.*, *Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (finding that allegations of nausea, unaccompanied by any other symptoms and not alleged to have had "lasting effects," are insufficient to satisfy section 1997e(e)'s physical injury requirement); *Brazeau v. Travis*, No. 96-CV-0783, 1996 WL 391701, at *1 (N.D.N.Y. July 9, 1996) (Pooler, J.) ("The damages [the plaintiff] seeks relate to his alleged anxiety and mental anguish. Because [the plaintiff] has not alleged any prior physical injury in conjunction with his alleged mental injury, he may not properly maintain this lawsuit." (footnote omitted)). Accordingly, I recommend dismissal of plaintiff's Eighth Amendment claim to the extent that it requests an award of compensatory damages as relief.

F.    Whether to Permit Further Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept.

19

22, 1997) (Pooler, J.).

In this instance, plaintiff has already been provided one opportunity to amend his complaint with respect to his Eighth Amendment claim against defendant Tabor.  [Dkt. No. 28 at 6-7](#).  The deficiencies with his original complaint and identified by the court in its decisions, however, have not been cured with the now-operative amended complaint.  Based on my review of plaintiff's original and amended complaints, I conclude that his claims suffer from substantive deficiencies and extend beyond the mere sufficiency of his pleadings.  Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

IV.   SUMMARY AND RECOMMENDATION

Plaintiff was permitted to amend his original complaint to cure the deficiencies identified by the court.  While the amended complaint provides slightly more factual support regarding plaintiff's allegations against defendant Tabor, considered as a whole, the allegations do not give rise to any cognizable claim.

Based on the foregoing, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss ([Dkt. No. 31](#)) be GRANTED, and that plaintiff's amended complaint be DISMISSED.

20

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     April 29, 2014
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

**c**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Reuben AVENT, Plaintiff,
v.
John DOE, Correctional Officer; Jack Doe, Correctional
Officer; K. Perlman, Superintendent; C. Parmita, I.G.P.;
Superintendent Graham; Glenn S. Goord,
Commissioner; Thomas Eagen; and Schweber, I.G.P.,
Defendants.
No. 9:05-CV-1311 (FJS/GJD).

March 31, 2008.
Reuben Avent, Auburn, NY, pro se.

Office of the New York State Attorney General, James J.
Seaman, AAG, of Counsel, Albany, NY, for Defendants.

**ORDER**

SCULLIN, Senior District Judge.

**\*1** In an Order and Report-Recommendation dated
March 20, 2007, Magistrate Judge DiBianco
recommended that the Court grant Defendants' motion to
dismiss and deny Plaintiff's motion for joinder and to
supplement his complaint. *See* Dkt. No. 29. Plaintiff has
filed objections to those recommendations. *See* Dkt. No.
30.

It is somewhat difficult to comprehend the specific
nature of Plaintiff's objections. However, a review of the
record demonstrates that, in his objections, Plaintiff raises
many of the same arguments that he did in opposition to
Defendants' motion to dismiss. The Court finds such
objections without merit for the same reasons that
Magistrate Judge DiBianco rejected these arguments in his
Order and Report-Recommendation. Moreover, to the
extent that Plaintiff is requesting leave to file an amended
complaint, the Court denies that request as futile. *See*
*Tocker v. Philip Morris Cos., Inc.,* 470 F.3d 481, 491 (2d
Cir.2006) (holding that "a motion for leave to amend a

complaint may be denied when amendment would be
futile" (citation omitted)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge DiBianco's March
20, 2007 Order and Report-Recommendation is
**ADOPTED IN ITS ENTIRETY for the reasons stated
therein;** and the Court further

**ORDERS** that Defendants' motion to dismiss
Plaintiff's complaint is **GRANTED;** and the Court further

**ORDERS** that Plaintiff's motion for joinder and to
supplement his pleading is **DENIED;** and the Court
further

**ORDERS** that the Clerk of the Court shall enter
judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

**ORDER and REPORT-RECOMMENDATION**

GUSTAVE J. Di BIANCO, United States Magistrate
Judge.

This matter has been referred to me for Report and
Recommendation by the Honorable Frederick J. Scullin,
Jr., Senior United States District Judge pursuant to 28
U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff
alleges that defendants denied him access to courts and
denied him access to the prison grievance program in
violation of his federal constitutional rights. (Dkt. No. 8).
Plaintiff seeks injunctive and substantial monetary relief.

Presently before the court is defendants' motion to
dismiss pursuant to FED. R. CIV. P.12(b)(6). (Dkt. No.
22). Plaintiff has opposed defendants' motion. (Dkt. No.
23). Defendants' have filed a reply. (Dkt. No. 24). Plaintiff
filed a later motion for "joinder," and defendants have
responded in opposition to that motion. (Dkt.Nos.25, 28).
This court will consider all the pending motions in this

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

recommendation.

## DISCUSSION

**1.** *Motion to Dismiss*

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (citing *inter alia Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam)). In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency,* 953 F.2d 26, 28 (2d Cir.1991) (citation omitted).

**\*2** When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1998). The court may also consider public documents and those of which judicial notice may be taken. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773-74 (2d Cir.1991). When matters outside the pleadings are presented, the court may either exclude those matters or treat the motion as one for summary judgment under FED.R.CIV.P. 56. FED. R. CIV. P. 12(b).

However, when a plaintiff chooses not to attach or incorporate by reference a document upon which he solely relies and that is integral to the complaint, the court may take the document into consideration without converting the motion. *Internat'l Audiotext Network v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995). In order to be "integral" to the complaint, the complaint must rely heavily on the document's terms and effect." *Young v. Lee,* 432 F.3d 142, 146-47 (2d Cir.2005) (citations omitted). If the court is to consider this type of document, it must be clear that no dispute exists regarding the authenticity or accuracy of the document and that no material dispute exists regarding the relevance of the document. *Falkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). One of the most important considerations is that when considering the sufficiency of a pro se complaint, the court must afford the

plaintiff great liberality and apply less stringent standards than when a party is represented by counsel. *Branham v. Meachum,* 77 F.3d 626, 628-29 (2d Cir.1996).

**2.** *Facts*

Plaintiff begins the factual portion of his amended complaint by stating that in late 2004, he attempted to file a grievance at Coxsackie Correctional Facility "with" defendant Inmate Grievance Program (IGP) Supervisor Schweber. Amended Complaint (AC) ¶ 10. The subject matter of this grievance was apparently the alleged denial of plaintiff's personal and legal property for a period of "several hours." *Id.* This grievance also allegedly "expressed [plaintiff's] concern" over his legal materials relating to a federal action that he was pursuing, which also alleged the deprivation of legal property. AC ¶ 11.

According to plaintiff, defendant Schweber would not allow plaintiff to file this grievance because there was a policy of denying inmates the right to pursue grievances that could ultimately lead to a civil suit against officers, officials, and against the State itself. AC ¶ 12. Plaintiff states that he later filed a grievance with defendant Thomas Eagen, claiming that he was not allowed to file the previously mentioned grievance "complaining of the imminent unconstitutional deprivation of [plaintiff's] legal property." AC ¶ 13. Plaintiff states that he was attempting to obtain "precautionary" relief from defendant Eagen, but the grievance to defendant Eagen was rejected, and plaintiff was "left without any administrative relief." *Id.*

**\*3** Plaintiff states that on July 7, 2005, he was transferred to Mid-State Correctional Facility. AC ¶ 14. Plaintiff states that he "insisted" at Coxsackie, that one of his bags of "miscellaneous property" be sent to him by mail instead of one of his four other bags, containing "active legal materials." AC ¶ 15. Plaintiff states that the processing officer refused, and instead forced plaintiff to choose one of the "legal" draft bags to send by mail, rather than allow the bag to travel with plaintiff to Mid-State. AC ¶ 15. Plaintiff states that he chose the lightest legal draft bag, and that he was charged $ 33.50 to send this bag to Mid-State. *Id.*

Plaintiff alleges that while he was housed at Mid-State he was not allowed to have any legal materials, regardless

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

of any court deadlines. AC ¶ 16. He states that he was allowed to take "personal" books out of the four bags which apparently contained a great deal of legal material. AC ¶ 17. Plaintiff states that although there were only four of his bags at Mid-State during July and August, he was not allowed to go through his property, rather the property was spread out a table and he was forced to point to the personal items that he wanted. AC ¶ 18.

Plaintiff claims that "sometime thereafter," he filed three grievances, apparently claiming that the officials at Mid-State would not let him have his legal materials so that he could pursue his federal lawsuits. AC ¶ 19. Plaintiff also states that he filed a motion for an extension of time in one of his federal court cases [FN1] because Mid-State would not let him have his legal materials for his "active" cases. AC ¶ 19. Plaintiff states that although all three grievances were filed, he was made to "sign off" on them after IGP Supervisor, Virkler (not named as a defendant in this case) and an unknown Sergeant visited plaintiff's cell and told him to just write to the courts for an extension of time. AC ¶¶ 20-21.

> FN1. *Avent v. Filion,* 03-CV-6709 (SDNY).

Plaintiff claims that the unknown Sergeant told plaintiff that if he "want[ed] to be an asshole, and take it to a hearing," they could be "asshole[s]" too. AC ¶ 20. Plaintiff appears to state that one of the three grievances was against defendant Corrections Officer Jones, the Mid-State Law Library officer who delivered books to inmates confined in the Special Housing Unit [FN2] (SHU). *Id.* Plaintiff complained that this individual did not hand out paper, envelopes, or carbon paper to inmates so that they could draft "legal motions." AC ¶ 21.

> FN2. Plaintiff was apparently confined to the Special Housing Unit upon his arrival at Mid-State.

Plaintiff states that the following week, his cell was searched by defendant Jones, who placed handcuffs and shackles on plaintiff that were so tight they "could have" cut into plaintiff's flesh. AC ¶ 22. Plaintiff then "spoke to" defendant Jones regarding whether this was done in retaliation for the grievance about the Law Library, and

defendant Jones allegedly told plaintiff that if he "wanted" his constitutional rights, he should not "come to prison" and then told plaintiff that he had money to buy paper. *Id.*

**\*4** Plaintiff claims that on several occasions while plaintiff was "double bunked" with another inmate, he and plaintiff were deprived of legal books, paper, envelopes, and carbon paper by defendant Jones. AC ¶ 23. Plaintiff claims that "sometime" in early September of 2005, plaintiff "finally received his legal draft bag" after he had filed several grievances and claim forms regarding the bag that had been mailed separately from Coxsackie. AC ¶ 24. Plaintiff states that he was taken to get his property by defendant Jones. AC ¶ 24.

Plaintiff alleges that on September 5, 2005, three days after he received his legal draft bag, he was "packed up" by defendants John and Jack Doe, who told plaintiff and his roommate to go out to the recreation pen while Jack Doe took plaintiff's full draft bag of legal work and other personal property. AC ¶ 26. Plaintiff claims that defendant Jack Doe returned to plaintiff's cell and forced plaintiff to sign an incomplete I64 form,[FN3] over plaintiff's objections. AC ¶ 27. Plaintiff states that he objected to signing the form because it only took defendant Jack Doe ten minutes to complete the form, and he could not have gone through all plaintiff's property in that short period of time. *Id.*

> FN3. The I64 form appears to be an inventory form for an inmate's property that is transferred from one facility to another. *See* Plaintiff's Exs. F1 & F2.

Plaintiff states that he was transferred to Downstate Correctional Facility on September 6, 2005 and then to Auburn Correctional Facility on September 7, 2005. AC ¶ 28. Plaintiff states that when he was given his property on September 9, 2005, there were only four draft bags and no I64 form. AC ¶ 29. Plaintiff states that "days later," he found out that his "3 other legal draft bags" were "plundered of all his active legal work," and it appears that plaintiff is claiming that the other property that he had in his Mid-State cell was mixed in with his "missing" legal materials." AC ¶ 29.

Plaintiff states that he did not know whether "such"

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

was done in good faith, whether the materials were mailed "sua sponte" by Mid-State, or whether the property was "unlawfully deprived and destroyed." AC ¶ 30. Thus, plaintiff states that on September 12, 2005, he filed a grievance, stating that plaintiff had a fifth draft bag that was not accounted for, nor did he have an I64 form detailing his property. *Id.* Plaintiff stated that this fifth bag contained important legal work that he needed for "immediate court deadlines." *Id.* Basically, he was requesting why Mid-State did not send the bag, and if the facility had sent the bag, plaintiff wished to know its location. *Id.*

Plaintiff alleges that shortly thereafter, he filed another grievance and also sent letters to the courts in which his "active" actions were pending, stating that he had been "deprived" of his legal materials and requesting whatever relief was possible. AC ¶ 31. On September 20, 2005, plaintiff states that he filed a "lost property" claim with the Auburn Inmate Accounts Officer, and on September 27, 2005, he wrote to Auburn's Grievance Committee and Inmate Accounts Officer, telling them that he filed a grievance on September 12, 2005 and that he did not receive a hearing or any other response. AC ¶ 32.

**\*5** Plaintiff states that on September 27, 2005, the same day that he wrote the above letters, he received a denial of the property deprivation grievance, and he immediately appealed this denial to defendant Superintendent Graham. AC ¶ 33. Plaintiff also received his I64 forms in the facility mail on September 27, 2005. AC ¶ 34. Plaintiff claims that neither of the two I64 forms accompanied plaintiff's four bags of property when the bags were given to him at Auburn. AC ¶ 35. Plaintiff states that there was no notification that extra property bags were either kept or mailed by Mid-State. AC ¶ 35.

Plaintiff then asserts that the lack of a "reasonable printed name or signature" of either John or Jack Doe on the I64 forms implies that these defendants acted with the "intention of destroying and/or obtaining" some of plaintiff's legal documents and with the intent of destroying or depriving plaintiff of materials that might be important to his cases. AC ¶ 36.

Plaintiff then states that the draft bags, issued by the

Department of Correctional Services, are all equal in size and that plaintiff had one bag full of miscellaneous items, and four bags of legal materials consisting of paper, including the bag that cost plaintiff $ 33.50 to send when he was transferred to Mid-State. AC ¶ 38. Plaintiff then states that during his stay at Mid-State "he collected another 10 pounds of legal papers," and that it was impossible for plaintiff's fifth bag, containing all his legal papers to cost him only $ 18.26 to mail. AC ¶ 39. Plaintiff seems to be alleging that if the bag was only going to cost $ 18.26 to mail, then it could not contain all the legal documents that it should have and thus, some documents must have been destroyed.

Plaintiff states that on September 28, 2005, he again wrote to all the courts in which he had pending actions notifying them of this problem, and he also sent the letter as a grievance to Mid-State SHU, so that they would not destroy the materials, pending an investigation "to assure the lawful return of [plaintiff's] property in full and not just $ 18.26 worth of it in weight." AC ¶ 40.

Plaintiff alleges that his Mid-State grievance was rejected on October 4, 2005, and he was told to file the grievance at Auburn, his current facility. AC ¶ 41 & Plaintiff's Ex. J. On the same day, plaintiff filed the grievance at Auburn, but it was rejected by defendant Parmiter because it was "untimely." AC ¶ 42. Plaintiff alleges that defendant Parmiter rejected the grievance "informally" rather than with an "official" response. *Id.* & Plaintiff's Ex. L.

Plaintiff states that he filed another grievance on October 7, 2005, complaining about defendant Parmiter's rejection of the October 4, 2005 grievance and complaining about the lack of a "formal" rejection. AC ¶ 43. Plaintiff's concern is that because the rejection consisted of what appears to be a "post-it note", plaintiff could later be accused of not attempting to follow the grievance procedure and would then be precluded from obtaining judicial relief because he failed to exhaust his administrative remedies. AC ¶ 43.

**\*6** Plaintiff also claims that defendant Parmiter acted outside the scope of DOCS Directives when she rejected plaintiff's October 4, 2005 grievance because it was filed

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

within the fourteen day period provided by Directive # 4040. AC ¶ 44. Plaintiff argues that the grievance was timely because the "acts" were ongoing and new facts were discovered regarding the alleged deprivation of plaintiff's property. AC ¶ 44.

Plaintiff claims that all the defendants were acting according to instructions, training, and official policy of defendants Graham, Perlman, Goord, and Eagen who "directly participated and enforced these actions." AC ¶ 45. Plaintiff states that each individual acted with actual or implied knowledge and malice toward plaintiff and toward African Americans "in general." AC ¶ 46. Plaintiff claims that defendants had a policy and custom of interfering and precluding plaintiff from obtaining access to courts. AC ¶ 47.

Plaintiff alleges that defendants deprived him of his legal materials from July 7, 2005 until the filing of the amended complaint. AC ¶ 48. Plaintiff also claims that defendants had no right to separate plaintiff's "active legal property" from his other property, and did so "maliciously." AC ¶ 49. Plaintiff alleges that defendants had no right to deprive plaintiff of his "active legal property" and then charge him for its "partial return" after the deprivation was discovered, nor do they have a right to destroy plaintiff's property if he does not pay for the shipping. AC ¶ 50.

Plaintiff states that as a result of defendants' actions he could not file an "opposition Reply Motion" to the Attorney General's papers in plaintiff's Court of Appeals case *Avent v. New York State,* 02-CV-828, App. No. 03-24. AC ¶ 51. Plaintiff also states that he could not file a response in his habeas corpus action, *Avent v. Filion,* 03-CV-6709. Plaintiff states that the case was "extended" for three months because of defendants' actions. *Id.* Plaintiff alleges that he is unable to meet the extended deadlines in all his cases, including *Avent v. Solfaro,* 02-CV-914, which was scheduled for submission of a final pretrial order by plaintiff, and he was deprived of half of his exhibits. Plaintiff also claims that he is precluded from discovery and substantive motion filing in *Avent v. Annucci,* 04-CV-302. *Id.* Plaintiff states that his June 2005 discovery request was never answered, and he could not do anything about it because of defendants' actions and

now plaintiff's "time to do so" has expired. *Id.* Plaintiff alleges that due to the delay caused by defendants' actions, many of plaintiff's witnesses will have been released from jail and will be difficult to find, thus, material testimonial evidence "has been destroyed by defendants' actions." *Id.*

Plaintiff also appears to allege that defendants Goord and Eagen had an unconstitutional custom or policy and failed to properly train the Inmate Grievance Program (IGP) officials and had a policy or custom of overlooking illegal behavior by these individuals. AC ¶ 55. Plaintiff states that defendants Eagen, Schweber, and Parmiter improperly used their positions to preclude "any future judicial intervention." AC ¶¶ 56.

**\*7** A careful reading of the amended complaint shows that plaintiff is making two versions of his access to courts claim. First, he claims that the failure of defendants to provide him with his fifth draft bag filled with legal materials deprived plaintiff of access to courts. AC ¶¶ 48-51. Second, plaintiff claims that the IGP officials improperly prevented plaintiff from filing grievances so that he would be unable to exhaust his administrative remedies and be precluded from suing in federal court for civil rights violations .[FN4] AC ¶¶ 54-56.

> FN4. The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a) requires an inmate to exhaust his administrative remedies prior to bringing a federal civil rights action and applies to *all inmate suits about prison life,* whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir.2004).

**3.** *Eleventh Amendment*

Plaintiff seeks damages against the defendants in their "official" as well as individual capacities. It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir.1995) (citing *Will v. Michigan Department of Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

interpretation of section 1983. *Id.* at 815 n. 3.

An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales,* 984 F.2d 84, 87 (2d Cir.1991). Thus, to the extent that the complaint seeks damages against defendants in their "official capacities", the complaint may be dismissed. The complaint may proceed as against the defendants in their "individual capacities."

**4. *Access to Courts***

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates officers in their preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Supreme Court has also held that an inmate alleging a denial of access to courts must show ***actual injury*** as a result of the deficient access to courts. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The ***cause of the injury*** must be inadequacy of the access. *Id.* at 351. Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis v. Casey,* 518 U.S. at 353).

**A. Improper Grievance Procedures**

In his amended complaint, plaintiff names the IGP Supervisor at Coxsackie, Bradley Schweber; the IGP Supervisor at Auburn, Cheryl Parmiter; and the IGP Director in Albany, Thomas Eagen. Plaintiff also appears to claim that defendant Commissioner Goord and defendant Eagen failed to properly train the IGP officials, making defendant's Goord and Eagen responsible for the IGP defendants' allegedly unconstitutional actions.

The court notes that plaintiff has also named Mid-State Superintendent Kenneth Pearlman and Auburn Superintendent Harold D. Graham as defendants. Defendants Pearlman and Graham are clearly supervisory defendants. Although defendant Graham is mentioned in the amended complaint as being involved in the denial of plaintiff's grievances, it is unclear what involvement defendant Pearlman is alleged to have had with respect to

plaintiff's case.[FN5]

FN5. The court notes that personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and that *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). The court understands that an allegation that the supervisory official had a "policy" that allowed the constitutional violation occurred may be used to support a claim of personal involvement by a supervisory defendant. *See Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) (a supervisory official may be personally involved in a constitutional violation if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue). Although plaintiff in this case alleges generally that the supervisory defendants had a "policy" supporting these constitutional deprivations, his allegations against defendant Pearlman are almost non-existent. Additionally, plaintiff does not claim that he filed grievances or appeals of those grievances at Mid-State that might have been seen by defendant Pearlman. Thus, the lack of personal involvement would be a separate basis for dismissal against defendant Pearlman. Since the court is recommending dismissal on the merits, and defendants did not argue this basis for dismissal, it is unnecessary for this court to rely upon this basis and has not done so in this decision. It is mentioned solely as an alternative.

**\*8** Regardless of what plaintiff alleges with respect to the IGP defendants, plaintiff's amended complaint may be dismissed. First, the law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003). A violation of the inmate grievance procedures does ***not*** give rise to a claim under section 1983. *Cancel v. Goord,* No. 00-Civ.2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713 (S.D.N.Y. Mar. 29,

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

2001). Thus, to the extent that plaintiff alleges that grievances were not processed or were not processed properly, whether by the IGP supervisors or defendant Eagen, or alleges that defendants Eagen and Goord did not properly supervise the IGP program, the complaint may be dismissed.

The court is well-aware that plaintiff is claiming *more* than the improper processing of his grievances. Plaintiff claims that defendants are deliberately failing to process grievances so that plaintiff will later be denied access to courts based on his failure to exhaust administrative remedies. Once plaintiff's claim changes to a denial of access to courts, the standard articulated in *Lewis v. Casey, supra* applies, and plaintiff must show an *actual injury* as the result of defendants actions. As stated above, plaintiff must show that a non-frivolous action was frustrated or impeded *due to defendants' actions. Lewis v. Casey,* 518 U.S. at 353.

Plaintiff claims that in "late 2004," plaintiff attempted to file a grievance with defendant Schweber, alleging that plaintiff had been denied his legal materials for 816 hours. AC ¶ 10. Plaintiff alleges that defendant Schweber did not allow plaintiff to file this grievance because there was a "policy" about allowing grievances that would ultimately lead to a civil suit against the officers or the state. AC ¶ 12. Plaintiff alleges that he later tried to file a grievance directly with defendant Eagen, complaining that he was not allowed to file a grievance regarding the "imminent" unconstitutional deprivation of his legal property. AC ¶ 13. Plaintiff states that this grievance was also rejected by defendant Eagen, leaving plaintiff "without any administrative relief." *Id.*

The court notes that even assuming the truth of plaintiff's allegations, he has not shown that there was any actual injury that resulted from either defendant Schweber's or defendant Eagen's actions. Plaintiff himself states that he was deprived of his legal property for a period of 8-16 hours, and these allegations have *nothing to do with the ultimate claim* that he makes in this action regarding deprivation of his legal materials. Plaintiff makes no claim that the denial of this grievance caused any injury whatsoever. There is no claim that plaintiff attempted to file a federal action claiming the denial of his

legal material, that was denied for failure to exhaust administrative remedies. Thus, the amended complaint may be dismissed in its entirety as against defendant Schweber.

**\*9** The court also notes that a defendant's intentional act, preventing plaintiff from filing a grievance has been, and continues to be an *exception to the exhaustion requirement. See Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir.2006) (citation omitted). In *Brownell,* the Second Circuit articulated a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether *defendants' own actions inhibiting exhaustion estops them from raising the defense;* and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.* There is no incentive for defendants to develop a "policy" preventing inmates from exhausting their administrative remedies since the law is quite clear that the defendants actions may estop them from raising the defense.[FN6] Even if such a policy existed, in this case, it did not prevent plaintiff from filing any federal non-frivolous actions.

FN6. Even after *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), where the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies, Justice Breyer, in his concurring opinion, specifically noted that two circuits, the **Second** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford* ] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 126 S.Ct. at 2393 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates." Id.* (emphasis added). Thus, if a

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

defendant intentionally prevents a plaintiff from filing a grievance, particularly with the intent of preventing plaintiff's later federal court claim, this will be an exception to the exhaustion requirement.

The same is true for defendant Parmiter's alleged denial of a hearing on plaintiff's September 12, 2005 grievance or defendant Parmiter's denial of plaintiff's October 4, 2005 grievance as "untimely." Plaintiff complains that defendant Parmiter violated DOCS directives by denying the October 4, 2005 grievance with a "peal [sic] off sticker" rather than a "recorded official response." AC ¶ 43 & Ex. L. Plaintiff cannot show that the denial of either grievance prevented plaintiff from filing a lawsuit complaining about the deprivation of his fifth draft bag of property.

Clearly, there was no actual injury since plaintiff has filed **this lawsuit,** challenging the alleged denial or deprivation of the fifth bag of legal property, and **defendants in this case have not argued that plaintiff failed to exhaust his administrative remedies.** Thus, plaintiff can show **no actual injury** based upon defendant Parmiter's actions, and the entire complaint may be dismissed as against defendant Parmiter.

Plaintiff claims that either defendant Parmiter failed to mail plaintiff's appeal [FN7] to defendant Graham or that defendant Graham failed to respond to plaintiff's September 27, 2005 grievance appeal. Plaintiff's Ex. E. Since plaintiff can show no actual injury as the result of either defendant Parmiter's actions or defendant Graham's actions, the complaint may be dismissed as to both of these defendants, and plaintiff's second cause of action alleging denial of access to courts based upon improper grievance procedures may be dismissed in its entirety.

FN7. Plaintiff's Ex. K.

**B. Denial of Legal Materials**

The basis of plaintiff's claim is that the failure to transfer his fifth draft bag, containing a substantial amount of plaintiff's legal materials, from Mid-State to Auburn caused the denial of plaintiff's access to courts because this bag contained material relevant to four of plaintiff's pending federal cases. Plaintiff claims that the denial of the legal materials contained in that fifth bag adversely affected his ability to pursue his legal actions: *Avent v. Solfaro,* 02 Civ. 914 (S.D.N.Y.); *Avent v. New York,* No. 03-24 (2d Cir.), 02-CV-828 (W.D.N.Y.); *Avent v. Filion,* 03 Civ. 6709 (S.D.N.Y.); *Avent v. Filion, et al.,* 04-CV-302 (N.D.N.Y.).

*10 The court would first point out that plaintiff himself submits an exhibit indicating that he was told on September 23, 2005 that Mid-State Correctional Facility **still had plaintiff's property.** Plaintiff's Ex. G. The letter is from Jean M. Yost, Steward and states that in order for Mid-State to forward plaintiff's property, plaintiff would have to pay $ 18.26. *Id.* Plaintiff could have the postage deducted from his inmate account. *Id.* The letter did state that if Mid-State were not notified by plaintiff's "Inmate Accounts office" within 30 days, the property would be destroyed. *Id.*

Plaintiff states in the amended complaint that he received this letter. AC ¶ 37. Instead of attempting to obtain this bag, plaintiff implies that this bag could not contain all his legal materials since a bag that he had mailed cost him $ 33.50 to send. [FN8] AC ¶¶ 38-39. Plaintiff states that during his stay at Mid-State he "collected another 10 pounds of legal papers," and it was, therefore, "impossible for Avent's 5th bag containing all legal work as before to cost him $ 18.26 to send out." AC ¶ 39. Thus, without ever seeing the bag or taking inventory of what was in the bag, plaintiff was convinced that somehow his legal property had been removed or destroyed, perhaps by the John Doe defendants who had packed his belongings. AC ¶¶ 25-27.

FN8. There is a four-bag limit when an inmate is transferred from one facility to another. DOCS Directive 4913 *cited in Salahuddin v. Coughlin, 591 F.Supp. 353, 356-57 (S.D.N.Y.1984).* Plaintiff is well-aware of this rule since he states that upon his transfer to Mid-State he paid $ 33.50 to ship the fifth bag of property. AC ¶ 15; Plaintiff's Ex. B at p. 2.

Instead, plaintiff filed this action on October 18, 2005. (Dkt. No. 1). Plaintiff signed the original complaint

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

on October 13, 2005, approximately one week after defendant Parmiter's October 6, 2005 denial of plaintiff's October 4, 2005 grievance as untimely. Plaintiff, thus, has no idea what could have been in that fifth bag of property, even assuming that it was not the "full" bag. Plaintiff cannot create his own denial of access to courts by refusing to obtain the property that is being held for him.[FN9]

> [FN9.] The court also notes that although unnecessary to this decision, defendants allege that plaintiff's fifth bag was never destroyed and is still available for plaintiff to ship. Shipment currently costs $ 19.07. Relf Aff. ¶ 10 (attached to defendants' reply papers).

Notwithstanding the above, the court will focus on whether plaintiff has sufficiently stated actual injury as the result of his alleged denial of legal documents. Plaintiff claims that as a result of defendants' actions, he could not file an "opposition Reply motion to the attorney general's [sic] adverse motion in his Second Circuit Court of Appeals case. Although plaintiff does not state what papers were missing that prevented him from doing this, the court notes that on December 2, 2005, the Second Circuit reversed the *sua sponte* dismissal of plaintiff's Western District of New York case, and sent the case back to the District Court for further proceedings. *Avent v. New York,* 157 Fed. Appx. 375 (2d Cir. Dec.2, 2005).

*Avent v. New York* is a case in which plaintiff is again claiming denial of access to courts. Plaintiff was granted *in forma pauperis* status to pursue the appeal on April 18, 2005. *Id.* at 376. In the Second Circuit opinion, the court stated that it directed plaintiff to brief " 'the specific harm to his civil cases and divorce action that access to the law library would have prevented.' " *Id.* at 377. The court then stated that "[a]fter reviewing Avent's complaint and his brief, we are satisfied that he may be able to state a claim for the denial of access to the courts if given an opportunity to amend his complaint." *Id.*

*11 Clearly, whatever denial of legal materials plaintiff alleges to have suffered, it did not affect his ability to pursue and win his appeal to the Second Circuit. It is unclear what plaintiff is referring to when he states

that he could not file an "opposition Reply Motion" in that case, but even assuming that this statement were true, it did not adversely affect this action. Thus, plaintiff cannot show "actual injury" in his Second Circuit action.

Plaintiff seems to claim that he was unable to file something in his Southern District of New York habeas corpus action,[FN10] and that defendants' actions caused plaintiff to be unable to "meet the extended deadlines." AC ¶ 51. Defendants have submitted as Exhibit F, the Report-Recommendation of the Honorable Magistrate Judge George Yanthis. Magistrate Judge Yanthis recommended that the court deny plaintiff's habeas corpus action as time-barred. Defendants' Ex. F.

> [FN10.] *Avent v. Filion,* 03 Civ. 6709 (S.D.N.Y.).

In this case, plaintiff does not allege what materials he was denied that would have changed Magistrate Judge Yanthis's recommendation or the District Court's later affirmance of that recommendation. This court notes that the Southern District had originally denied the petition as time-barred on September 4, 2003. *Id.* at 2. The Second Circuit vacated the judgment and remanded to the District Court to allow plaintiff (then petitioner) notice and opportunity to be heard on the timeliness issue. *Id.* at 3. Plaintiff filed an amended petition in that case on June 4, 2004, offering an explanation for the delay in filing his petition. *Id.* at 3. In a footnote, it is clear that then-Chief Judge Mukasey specified exactly what plaintiff was to argue regarding why the petition should be equitably tolled. *Id.* at 3 n. 3.

It is clear from Magistrate Judge Yanthis's recommendation that plaintiff had already submitted whatever argument he had in support of his claim that the petition should not be denied as time-barred. There is absolutely no indication that the denial of any legal materials, beginning in July of 2005 was the cause of the dismissal of plaintiff's habeas action.

Plaintiff also claims that the denial of legal materials adversely affected *Avent v. Solfaro,* 1:02 Civ. 914 (S.D.N.Y.). At the time plaintiff wrote the amended complaint in this action, plaintiff alleged that he was supposed to file a "final pretrial order" in *Avent v. Solfaro,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

and that half of the case exhibits were missing. As stated by defendants, plaintiff filed *Avent v. Solfaro* on February 6, 2002. Seaman Aff. Ex. A (Docket Sheet in 02 Civ. 914, Dkt. No. 1). The case proceeded for several years, and on January 23, 2006, plaintiff stated during a telephone conference, that he had lost legal documents when he was transferred to Auburn. *Id.* (Docket Sheet, Minute Entry of Jan. 23, 2006 telephone conference). The court ordered defendants to make a copy of the case file. *Id.* Both parties requested that they be able to file motions for summary judgment simultaneously. *Id.*

**\*12** The docket sheet also shows that on March 15, 2006, a letter addressed to Judge Casey from Alexander Saunders stated that plaintiff had "all the records that [defendants] have." *Id.* Thus, plaintiff was able to obtain all the records in the case prior to the motions deadline, and he can show no actual injury to *Avent v. Solfaro,* resulting from any action of any of the defendants in this case.

Finally, plaintiff alleges that he is "precluded from discovery and substantive motion filing in *Avent v. Filion (Annucci),* 04-CV-302, pending in the Northern District of New York. Once again, plaintiff has failed to allege what documents he is missing that would prevent him from discovery and "motion filing." The court notes that plaintiff made a motion to compel on June 12, 2006, restating several dates, including the date that he served his first set of interrogatories on defendants. (Dkt. No. 47). The motion further states that plaintiff was deprived of his legal materials, and that these materials were "destroyed", however defendants in 04-CV-302 "have sent Avent a copy of his discovery requests on May 9, 2006." *Id.* at 1 (footnote).

Thus, the defendants' actions did not prevent plaintiff from filing a discovery motion, and defendants had apparently already provided plaintiff with a copy of the document that he said he needed. Defendants filed a response to the motion on July 31, 2006. (04-CV-302, Dkt. No. 58). Plaintiff filed a reply on August 11, 2006. (04-CV-302, Dkt. No. 59). On February 6, 2007, Magistrate Judge Treece **granted** plaintiff's motion to compel. (04-CV-302, Dkt. No. 61). The motion to compel filing deadline was extended until April 30, 2007 in order

to resolve any issues that might arise regarding defendants' responses to plaintiff's discovery demands, and the dispositive motion deadline has been extended until May 31, 2007. *Id.* at p. 7.

Thus, plaintiff has not been injured by any deprivation of his legal materials, and plaintiff's speculative claim that he will be prevented "in the future" from presenting evidence, arguments, and exhibits does not state actual injury resulting from the actions of any of the named defendants in this case. It is clear that any delays in plaintiff's actions were not due to the deprivation of plaintiff's legal materials, and plaintiff's claim that the delays have caused inmate witnesses to be released from prison is simply not related to defendants' alleged actions in this case.[FN11]

> [FN11]. As stated above, plaintiff may still obtain his fifth bag of property simply by paying the shipping. He may then recover some of the materials that he states are missing.

**C. Corrections Officer Jones**

The court would simply note that although plaintiff names Corrections Officer Jones as a defendant, it is unclear what claims plaintiff is attempting to make against this officer. Plaintiff claims that he wrote a grievance against defendant Jones, who apparently was the Mid-State Law Library Officer. AC ¶ 21. Plaintiff alleges that one week later, defendant Jones searched plaintiff's cell and placed handcuffs on plaintiff that were so tight that they "could have" cut into plaintiff's skin. AC ¶ 22. Plaintiff then alleges that he and his roommate were denied legal books, paper, envelopes, and carbon paper by defendant Jones on several unspecified occasions. AC ¶ 23. Finally, plaintiff alleges that sometime in September of 2005, defendant Jones told plaintiff in "amusement" that he could have his property. AC ¶ 24.

**\*13** None of the allegations made against defendant Jones show that anything allegedly done by this defendant denied plaintiff his access to courts. Plaintiff never alleges that any actions taken by this defendant caused plaintiff "actual injury" to any of the actions mentioned in the amended complaint. The fact that handcuffs were placed on plaintiff tightly so that they "could have" cut him does

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

not rise to the level of a constitutional violation.[FN12]

FN12. The Eighth Amendment prohibits the " 'unnecessary and wanton infliction of pain.' " *Baker v. Willett,* 42 F.Supp.2d 192, 196 (N.D.N.Y.1999) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Although plaintiff in this case never raises an Eighth Amendment claim, the court would merely point out that nothing alleged against defendant Jones with respect to the handcuffs would even come close to alleging a constitutional violation in this regard.

**5. *Motion to Supplement***

FED. R. CIV. P. 15(d) allows a party to supplement a pleading with matters that occurred ***after the filing of the original complaint, but pertain to the original pleading.*** *Albrecht v. Long Island Rail Road,* 134 F.R.D. 40, 41 (E.D.N.Y.1991). A party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party." *Id.* The court may grant a motion to supplement even though the original pleading is defective in its statement of a claim. FED. R. CIV. P. 15(d).

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Rule 15(a). *Klos v. Haskell,* 835 F.Supp. 710, 715 (W.D.N.Y.1993) (Fisher, M.J.), *adopted by* 835 F.Supp. at 713 (W.D.N.Y.1993) (Telesca, D.J.). Generally, the court has discretion whether or not to grant leave to amend [a pleading]. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, in exercising this discretion, the court must act pursuant to Fed.R.Civ.P. 15(a), granting leave to amend "freely ... when justice so requires." Fed.R.Civ.P. 15(a); *Id.* at 182.

In deciding whether to exercise its discretion, the court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party. *Evans v. Syracuse City School District,* 704 F.2d 44, 46 (2d Cir.1983) (citing *Foman,* 371 U.S. at 182). The court must also examine whether there will be prejudice to the opposing party. *Kovian v. Fulton County National*

*Bank,* 86-CV-154, 1992 U.S. Dist. LEXIS 7023, 1992 WL 106814 (N.D.N.Y. May 13, 1992). Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted).

On October 23, 2006, plaintiff made a motion for joinder and to supplement pleadings. (Dkt. No. 25). Plaintiff has included a host of exhibits with his motion. (Dkt. No. 25). Defendants have opposed the motion. (Dkt. No. 28). Plaintiff seeks to add ten new defendants and many new allegations to this action. Plaintiff has already filed one amended complaint in this action, and this court has found that the complaint does not state a claim for denial of access to courts.

The court would first note that as argued by defendants, plaintiff has not submitted a supplemental pleading that is numbered sequentially to the pleading that his is attempting to supplement. This failure would mandate the denial of plaintiff's motion in the first instance. However, the court also notes that plaintiff is attempting to add new defendants and claims that are completely unrelated to the central issues in the amended complaint. These unrelated claims include denial of meals in 2005 and 2006 and some disciplinary problems in December of 2005. (Dkt. No. 25). The court also notes that none of the information submitted by plaintiff affects this court's decision in this case. Therefore, the court must deny plaintiff's motion for joinder and to supplement.

**\*14 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 22) be **GRANTED,** and the complaint **DISMISSED IN ITS ENTIRETY,** and it is further

**ORDERED,** that plaintiff's motion for joinder and to supplement (Dkt. No. 25) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)

(Cite as: 2008 WL 877176 (N.D.N.Y.))

shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2008.

Avent v. Doe
Not Reported in F.Supp.2d, 2008 WL 877176 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jose RODRIGUEZ, Plaintiff,
v.
Glen S. GOORD, et al, Defendants.
No. 9:04-CV-0358 (FJS/GHL).

Nov. 27, 2007.
Jose Rodriguez, Willard, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

FREDERICK J. SCULLIN, Senior District Judge.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge George H. Lowe filed November 6, 2007, and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, the Court hereby

**ORDERS,** that Magistrate Judge Lowe's November 6, 2007 Report-Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS,** that Defendants' motion, pursuant to Local Rule 41.2(b), to dismiss for Plaintiff's failure to provide notice to the Court of a change of address, is **GRANTED;** and the Court further

**ORDERS,** that the Clerk of the Court enter judgment in favor of the Defendants and close this case.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, Jose Rodriguez ("Plaintiff") alleges that, while he was an inmate at Oneida Correctional Facility in 2003 and 2004, ten employees of the New York State Department of Correctional Services ("Defendants") were deliberately indifferent to his serious medical needs, and subjected him to cruel and unusual prison conditions, in violation of the Eighth Amendment. (Dkt. No. 27 [Plf.'s Am. Compl.].) Currently pending is Defendants' motion to dismiss for failure to provide notice to the Court of a change of address, pursuant to Local Rule 41.2(b) of the Local Rules of Practice for this Court. (Dkt. No. 86.) Plaintiff has not opposed the motion, despite having been given more than six weeks in which to do so. Under the circumstances, I recommend that (1) Defendants' motion to dismiss be granted, and (2) in the alternative, the Court exercise its inherent authority to *sua sponte* dismiss Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

### I. DEFENDANTS' MOTION TO DISMISS

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) he failed to oppose the motion, (2) the motion was properly filed, and (3) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion. L.R. 7.1(b)(3).

In particular, with regard to this last factor (i.e., that Defendants have met their burden of demonstrating entitlement to the relief requested), Defendants argue that their motion to dismiss should be granted because (1) Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

action," (2) on April 15, 2004, Plaintiff was specifically advised of this rule when (through Dkt. No. 5, at 4) the Court advised Plaintiff that "his failure to [promptly notify the Clerk's Office and all parties or their counsel of any change in his address] will result in the dismissal of his action," (3) on May 22, 2007, Plaintiff was released from the Willard Drug Treatment Center, (4) since that time, Plaintiff has failed to provide notice to the Court (or Defendants) of his new address, as required by Local Rule 10.1(b)(2), and (5) as a result of this failure, Defendants have been prejudiced in that they have been unable to contact Plaintiff in connection with this litigation (e.g., in order to depose him, as authorized by the Court on May 4, 2007). (Dkt. No. 86, Part 4, at 1-2 [Defs.' Mem. of Law].)

**\*2** Authority exists suggesting that an inquiry into the third factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] ) is a more limited endeavor than a review of a contested motion to dismiss.[FN1] Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious." [FN2] Given that Defendants accurately cite the law and facts in their memorandum of law, I find that they have met their lightened burden on their unopposed motion. Moreover, I am confident that I would reach the same conclusion even if their motion were contested.

> FN1. *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at \*7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*" ) [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at \*2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1

[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at \*2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at \*3 (N.D.N.Y. Aug. 27, 1996) (Hurd, J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

> FN2. *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625 at \*8.

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

## II. *SUA SPONTE* DISMISSAL

Even if Defendants have not met their burden on their motion to dismiss, the Court possesses the inherent authority to dismiss Plaintiff's Amended Complaint *sua sponte* under the circumstances. Rule 41 of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a proceeding for (1) failure to prosecute the action and/or (2) failure to comply with the Federal Rules of Civil Procedure or an Order of the Court. Fed.R.Civ.P. 41(b).[FN3] However, it has long been recognized that, despite Rule 41 (which speaks only of a *motion* to dismiss on the referenced grounds, and not a *sua sponte* order of dismissal on those grounds), courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) not only recognizes this authority but *requires* that it be exercised in appropriate circumstances. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

> FN3. Fed.R.Civ.P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

order of court, a defendant may move for dismissal of an action or of any claim against the defendant").

**A. Failure to Prosecute**

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[FN4] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute:

FN4. *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[FN5]

FN5. *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

**\*3** As a general rule, no single one of these five factors is dispositive.[FN6] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[FN7]

FN6. *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

FN7. *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at *2-3, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal. The duration of Plaintiff's failure is some six-and-a-half months, i.e., since April 22, 2007, the date of the last document that Plaintiff attempted to file with the Court (Dkt. No. 85). Plaintiff received adequate notice (e.g., through the Court's above-referenced Order of April 15, 2004, and Defendants' motion to dismiss) that his failure to litigate this action (e.g., through providing a current address) would result in dismissal. Defendants are likely to be prejudiced by further delays in this proceeding, since they have been waiting to take Plaintiff's deposition since May 4, 2007. (Dkt. No. 84.) I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action.[FN8] Finally, I have considered all less-drastic sanctions and rejected them, largely because they would be futile under the circumstances (e.g., an Order warning or chastising Plaintiff may very well not reach him, due to his failure to provide a current address).

FN8. It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

**B. Failure to Comply with Order of Court**

With regard to the second ground for dismissal (a failure to comply with an Order of the Court), the legal standard governing such a dismissal is very similar to the legal standard governing a dismissal for failure to prosecute. "Dismissal ... for failure to comply with an order of the court is a matter committed to the discretion of the district court." [FN9] The correctness of a dismissal for failure to comply with an order of the court is determined in light of five factors:

FN9. *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988) [citations omitted].

(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in a dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.[FN10]

FN10. *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) [citations omitted].

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal for the same reasons as described above in Part II.A. of this Report-Recommendation. I note that the Order that Plaintiff has violated is the Court's Order of April 15, 2004, wherein the Court ordered Plaintiff, *inter alia,* to keep the Clerk's Office apprised of his current address. (Dkt. No. 5, at 4.) Specifically, the Court advised plaintiff that *"[p]laintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action."* (*Id.*) I note also that, on numerous previous occasions in this action, Plaintiff violated this Order, resulting in delays in the action. (*See* Dkt. Nos. 47, 48, 49, 50, 54, 59, 72, 78, 79 & Dkt. Entry for 12/15/06 [indicating that mail from the Court to Plaintiff was returned as undeliverable.])

*\*4 As a result, I recommend that, should the Court decide to deny Defendants' motion to dismiss, the Court exercise its authority to dismiss Plaintiff's Amended Complaint *sua sponte* for failure to prosecute and/or failure to comply with an Order of the Court.

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 86) be *GRANTED%;* and it is further

**RECOMMENDED** that, in the alternative, the Court exercise its inherent authority to *SUA SPONTE DISMISS* Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)..

N.D.N.Y.,2007.

Rodriguez v. Goord
Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)
END OF DOCUMENT



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. *See* Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER FN1

> FN1. This matter was referred to the undersigned
> pursuant to 28 U.S.C. § 636(b) and
> N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments. FN2 In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

### I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

### II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

### III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes,* 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,*524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 434188 (W.D.N.Y.)
**(Cite as: 2013 WL 434188 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Aaron WILLEY, Plaintiff,
v.
Robert KIRKPATRICK, et al., Defendants.

No. 07–CV–6484 (MAT).
Feb. 4, 2013.

Aaron Willey, Elmira, NY, pro se.

J. Richard Benitez, Nys Attorney General's Office, Rochester, NY, for Defendants.

**DECISION AND ORDER**
MICHAEL A. TELESCA, District Judge.
**I. Introduction**
   *1 On October 4, 2007, *pro se* plaintiff Aaron Willey ("Willey" or "Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging that they violated his constitutional rights while he was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The Complaint alleges that Defendants acted "both individually and in concert," but does not allege any claims against them in their official capacities. The Complaint demands a "declaratory judgment stating that Defendants violated [Plaintiff's] constitutional rights," as well as compensatory and punitive damages. Plaintiff was granted permission to file an amended complaint (Dkt # 60), which is the operative pleading in this action.

   Defendants Robert A. Kirkpatrick, M. Monahan, Martin Kearney, Scott Lambert, Taylor Roberts, M. Sztuk, A. Allessandro, M. Overhuff, and Tom Schoellkopf have moved for summary judgment dismissing the complaint pursuant to Federal Rules of Civil Procedure 56. Plaintiff has opposed the motion and renewed his request for the

appointment of counsel.

   For the reasons discussed herein, Defendants' motion for summary judgment is granted, and the amended complaint is dismissed.

**II. Background**

**A. The Parties**

   At all relevant times, Plaintiff was housed at Wende Correctional Facility ("Wende"), and Defendants were all employed at Wende. Specifically, Robert Kirkpatrick ("Supt.Kirkpatrick") was Superintendent at Wende; M. Monahan ("DSS Monahan") was Deputy Superintendent for Security; Martin Kearney ("Capt.Kearney") was a Corrections Captain; Scott Lambert ("Sgt.Lambert") and Jeff Jeziorski ("Sgt.Jeziorski") were Corrections Sergeants; Taylor Roberts ("C.O.Roberts"), M. Sztuk ("Sztuk"), A. Allesandro ("C .O. Allesandro"), and M. Overhuff ("C.O.Overhuff") were Corrections Officers; and Tom Schoellkopf ("H.O.Schoellkopf") was a Hearing Officer.

**B. Factual Summary**

   The recitation of facts below is drawn from the pleadings and discovery documents on file in this matter. The Court has viewed the facts in the light most favorable to Plaintiff, as the party opposing summary judgment. *See, e.g., United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party.).

**1. The October 2005 False Misbehavior Report for Possessing a Weapon**
   On October 15, 2005, Sgt. Lambert and C.O. Roberts detained Willey and frisked him for no apparent reason. They brought him to a small room without a surveillance camera and questioned him about an inmate they suspected of smuggling con-

Not Reported in F.Supp.2d, 2013 WL 434188 (W.D.N.Y.)
**(Cite as: 2013 WL 434188 (W.D.N.Y.))**

traband into Wende. Sgt. Lambert opened a desk drawer and pulled out what appeared to be a metal weapon and said that if he did not work with them as an informant, they would falsely charge him with possessing a weapon. Plaintiff refused to cooperate, stating that he did not have any knowledge of the alleged smuggling. Sgt. Lambert responded, "Have it your way," and brought Willey back to his cell.

**\*2** On October 17, 2005, while Willey was undergoing a pat-frisk before attending yard recreation, C.O. Roberts allegedly uncovered a flat piece of metal about four inches long and three-quarters of an inch wide secreted near his crotch area. C.O. Roberts issued a disciplinary report charging Plaintiff with Possession of a Weapon and Possession of Contraband (PR 110.13 and 110.23). Willey was subsequently found guilty at a disciplinary hearing, even though he was not given notice or an opportunity to appear at the hearing.

On appeal, the conviction was set aside and a new hearing was ordered. At the hearing before Capt. Kearney on December 28, 2005, Plaintiff alleges that he was denied the right to call inmate witnesses and was unjustly removed from the hearing. He states that Capt. Kearney threatened to "beat the shit out of" him and called him a "young punk." According to Capt. Kearney, Willey's removal from the hearing was warranted because he refused to stop interrupting Capt. Kearney and attempting to place irrelevant matters on the record. Capt. Kearney found Willey guilty of both charges, and imposed 180 days in the Special Housing Unit ("SHU"), 180 days of lost privileges, and 12 months recommended loss of good time credits. On appeal, the conviction was set aside by Special Housing Unit Director Donald Selsky ("SHU Director Selsky") on February 28, 2006.[FN1]

> **FN1.** On November 28, 2006, Plaintiff was charged criminally with Promoting Prison Contraband in the First Degree, based upon the false misbehavior report issued by C.O. Roberts in October 2005, regarding Plaintiff's possession of a shank-type

weapon. This charge was subsequently dismissed, however, by Alden Town Court Justice LaDuca.

**2. The November 2005 False Misbehavior Report**

On November 26, 2005, C.O. Sztuk and C.O. Allessandro escorted Willey to the shower. When Willey returned, he found that his cell had been "trashed"—the toilet had been flooded, and Willey's papers and belongings were strewn about his cell. When Willey asked C.O. Sztuk for a "search contraband slip," Sztuk replied, "You really like fucking with me." Willey responded, "What?" C.O. Sztuk said, "You heard me, keep fucking with me asshole and see what happens."

Inmates housed nearby confirmed that they had seen C.O. Sztuk carrying Willey's legal paperwork out of his cell after the cell search. Willey yelled out and asked to speak to an area supervisor. He was told to "give it a rest," to which he replied that he would not give it a rest because they had stolen his legal paperwork. At that point, C.O. Sztuk said, "What's that, Willey, you said you are going to shit us down (i.e., throw feces and/or urine on corrections officers)?" Willey denied saying anything like that.

Nevertheless, he was moved to the restricted side of the SHU where a Plexiglas shield was placed on his cell. C.O. Allessandro then turned off the water to Plaintiff's cell, so that he could not flush the toilet. As a result, feces and urine accumulated in the bowl and made the air in the cell noxious. Willey alleges that the area supervisor, Sgt. Jeziorski, failed to properly supervise C.O. Allessandro and C.O. Sztuk.

On or about November 28, 2005, C.O. Sztuk filed a false misbehavior report against Plaintiff, accusing him of threatening to "shit down" staff members. At the subsequent disciplinary hearing on December 7, 2005, before Susan Post (not a defendant in this action), Willey attempted to use videotape evidence to prove that he did not make such

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

threat. However, according to Willey, someone had tampered with the surveillance tape to remove the sound and destroy the picture quality. Willey was found guilty and sentenced to 90 days in the SHU. On appeal, the charge was affirmed by SHU Director Selsky.

**3. The December 2005 False Misbehavior Report**
**\*3** On December 18, 2005, Willey placed the garbage from his evening meal on his feed-up tray to be picked up. However, C.O. Overhuff refused to remove the refuse, and issued another false misbehavior report against Plaintiff for refusing a direct order (namely, to turn in his food tray) in violation of Prison Rule 106.10. According to C.O. Overhuff, he told Willey to hand him tray, and Willey instead began to break his garbage in pieces; C.O. Overhuff reiterated the order, and Willey again allegedly refused.

D.S.S. Monahan placed Willey on a pre-hearing restricted diet, and, on December 20, 2005, denied Willey's appeal of that decision.

At the disciplinary hearing conducted on January 10, 2006, with regard to the December 18, 2005 incident, H.O. Schoellkopf refused to allow Willey to question witnesses and ejected him from the hearing. According to Willey, H.O. Schoellkopf told him, "You are going to die in the SHU, you young punk." H.O. Schoellkopf found Willey guilty and sentenced him to 30 days in the SHU, 30 days of lost privileges and two months of recommended loss of good time credits. On February 28, 2006, the conviction was reversed on appeal by SHU Director Selsky, who found that Willey "was inappropriately removed from the hearing."

**4. Harassment by Corrections Officers and Plaintiff's Suicide Attempt**
Willey states that while he was housed in the SHU, he was subjected to continuous verbal harassment by numerous corrections officers, especially C.O. Allesandro. According to Willey, C.O. Allessandro made sexually harassing comments and, while Willey was showering, would stare at him

licking his lips and blowing kisses. As a result, Willey became severely depressed and attempted to overdose on ibuprofen on February 9, 2006. He was taken to Erie County Medical Center and, upon his return to Wende, was placed in an observation cell he describes as filthy and reeking of urine and feces. Willey was left there, naked, for fourteen days. At that point, he was involuntary committed to the Central New York Psychiatric Center, where he stayed for six months.

While there, Willey states that he was attacked by deranged, violent patients; strapped down to a gurney; and injected with potent psychotropic drugs against his will.

After his stint at the Psychiatric Center, he was returned to the Wende SHU.

**5. The August 2006 False Misbehavior Report**
On August 25, 2006, Willey received another misbehavior report for allegedly kicking a corrections officer while he was in restraints on February 10, 2006, the day after his suicide attempt. The issuing officer is not identified in the Complaint.

At the disciplinary hearing, H.O. Schoellkopf found Willey guilty and sentenced him to 180 days in the SHU. On September 17, 2006, Plaintiff wrote to Supt. Kirkpatrick regarding his continuing "false imprisonment" in SHU, claiming that he had done "nothing wrong." Willey also described the history of false misbehavior reports issued against him, beginning on October 15, 2005. Supt. Kirkpatrick responded that based on his review of the "hearing record packet and other related materials," he found "no reason to modify [the] disposition as rendered." Nevertheless, on appeal, SHU Director Selsky reduced the sentence in connection with the August 2006 misbehavior report.

**III. General Legal Principles**

**A. Summary Judgment Standard**

**\*4** The standard for granting summary judgment is well established. Summary judgment may

not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, the movant may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the initial burden has been met by the movant, the non-moving party is required demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is 'material' only if the fact has some effect on the outcome of the suit." *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998) (citing *Anderson,* 477 U.S. at 248). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

The court must draw all reasonable inferences, and resolve all ambiguities, in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previ-

ous deposition testimony." *Hayes v. New York City, Dept. of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) (citations omitted).

Although a court must read a *pro se* litigant's papers liberally, interpreting them "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), when alleging a violation of a civil rights statute, even a *pro se* litigant must make "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987).

**B. 42 U.S.C. § 1983**

To prevail in a Section 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. 42 U.S.C. § 1983; *see also, e.g., West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Section 1983 itself, however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).

**\*5** "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). The personal involvement of a supervisory defendant may be shown by evidence that, *inter alia,* the "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong ... or ... the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) [FN2] (citing *Wright,* 21 F.3d at 501 (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986))).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN2. In *Colon,* the Second Circuit affirmed summary judgment for Commissioner of DOCCS and the facility superintendent on the grounds that, *inter alia,* the contents of the inmate's letters to them was not in the record and therefore the court did not know "whether the letter was one that reasonably should have prompted [defendants] to investigate." 58 F.3d at 873, 874 n. 8.

**IV. Analysis**

**A. Issuance of False Misbehavior Reports in Retaliation For Plaintiff's Refusal to Act as an Informant**

The filing of baseless or false charges against an inmate does not, in and of itself, give rise to a constitutional violation. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986) (An inmate "has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest."). Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, the inmate must be able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right. *See Freeman,* 808 F.2d at 951–53 (reasoning that the filing of false charges is not a constitutional violation, as long as the prisoner is granted a hearing and given an opportunity to rebut the charges); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988) (reversing grant of summary judgment where prisoner claimed that false disciplinary charges were filed against him as retaliation for his cooperation with a state investigation into alleged inmate abuse).

Here, Willey has not alleged that the misbehavior reports were issued in retaliation for his exercise of a constitutionally protected right. However, the Complaint can be construed as alleging that certain defendants issued false misbehavior reports against Plaintiff and that the defendants acting as hearing officers denied him of due process at the related disciplinary hearings. *See* Complaint ¶ ¶ 19–22, 25–29, 45–48, 55–57, 69–70. In particular, Willey complains that both H.O. Kearney and H.O. Schoellkopf unlawfully ordered him removed from various disciplinary hearings stemming from the false misbehavior reports issued by C.O. Sztuk and C.O. Roberts.

Under New York State regulations, an inmate has the right to "be present at the hearing unless he refuses to attend, or is excluded for reason of institutional safety or correctional goals." N.Y. COMP.CODES R. & REGS., tit. 7, § 254.6. Although an inmate may bring a successful New York Civil Practice Law and Rules ("C.P.L.R.") Article 78 proceeding pursuant to this regulation, a claim under state law does not necessarily provide a viable due process claim under 42 U.S.C. § 1983.

**\*6** Here, New York has provided inmates with a procedural safeguard at their disciplinary hearings-the right to be personally present-above and beyond that which is required by the federal Constitution. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (ruling that inmates accused of disciplinary violations be afforded certain procedures, including 24—hours notice, the right to call—but not necessarily to be present during the testimony of—witnesses, and an impartial tribunal); *Francis v. Coughlin,* 891 F.2d 43 (2d Cir.1989). "A procedural safeguard does not constitute a liberty interest[.]" *Dawes v. Leonardo,* 885 F.Supp. 375, 378 (N.D.N.Y.1995) (citing *Patterson v. Coughlin,* 761 F.2d 886, 892 (2d Cir.1985) (noting how the court below had "apparently confuse[d] the deprivation of a liberty interest with the denial of the constitutional right to procedural safeguards which is implicated by that interest"), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986)). "[W]here that safeguard is not required by the United States Constitution's Due Process Clause, its denial cannot constitute a violation of that clause[.]" *Id.* (citing *Patterson,* 761 F.2d at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

892 (finding a section 1983 action permissible where the disciplinary hearing in question violated state procedural requirements simultaneously violated federal due process mandates)). Thus, although it was violative of Willey's state regulatory rights to be excluded from the hearing, his federal constitutional rights were not violated thereby. Accordingly, his retaliation claim premised on a subsequent federal due process violation must fail. *See, e.g., Livingston v. Kelly,* 561 F.Supp.2d 329, 331 (W.D.N.Y.2008) ("[A]n inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimum procedural due process protections guaranteed by the Fourteenth Amendment.") (citations omitted).

**B. Destruction of Personal Property**

Willey alleges that C.O. Sztuk and C.O. Allessandro stole legal documents from his cell, and destroyed his personal property (e.g., family photographs and letters). Under *Hudson v. Palmer,* 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), even the intentional destruction of an inmate's property by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate post-deprivation remedy. While the loss of property is regrettable, and even though Willey has alleged that these defendants were personally responsible for the loss, he has not stated an actionable constitutional claim because New York state law provides him with an adequate post-deprivation remedy, i.e., § 9 of the Court of Claims Act. *Reyes v. Koehler,* 815 F.Supp. 109, 114 (S.D.N.Y.1993) (citing *Blum v. Koch,* 716 F.Supp. 754, 762 (S.D.N.Y.1989); *Friedman v. Young,* 702 F.Supp. 433, 437 (S.D.N.Y.1988); *DeYoung v. City of New York,* 607 F.Supp. 1040, 1042–43 (S.D.N.Y.1985)); *accord, e.g., Murchison v. Keane,* No. 94 Civ. 466 CSH, 2000 WL 489698, at *6 (S.D.N.Y. Apr.25, 2000) (citations omitted).

**C. Harassment**

**\*7** Willey alleges that C.O. Allessandro violated his constitutional rights by subjecting him to continuous harassment, which Willey describes as "psychological, emotional, verbal, and sexual." Willey states that C.O. Allesandro would bang on his cell and turn his light switch on and off rapidly. Also, Willey indicates that C.O. Allesandro would stare at him while he was showering and toweling off, and would make sexually suggestive comments. Willey does not claim that C.O. Allessandro physically touched him in a sexual manner, however.

"Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) (citing *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir.1987) (derogatory remarks do not constitute a constitutional violation); *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989); *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987); *Martin v. Sargent,* 780 F.2d 1334, 1338–39 (8th Cir.1985)). Willey has made no showing of uninvited physical or sexual contact, nor has he pled such a cause of action in his Complaint. C.O. Allesandro's annoying conduct and comments, unaccompanied by physical threats or attacks, do not amount to a constitutional violation under § 1983.

**D. Eighth Amendment Violation Based Upon Unsanitary Conditions**

Willey asserts that C.O. Sztuk and C.O. Allessandro violated his Eighth Amendment right to be free from cruel and unusual punishment by turning off the running water to his cell while the Plexiglas cell shield was in place between December 1, 2005, and January 10, 2006. At one point in the Complaint, Willey states that his drinking water and toilet water was shut off for "extensive lengths of time". Compl., ¶ 87 (Dkt # 1). In the next sentence, he states that his toilet water was shut off for "seven (7) days, forcing plaintiff to stay in a plexy glass shield (no air circulation) and breathe in air smelling of urine/feces...." *Id.*

In his response to interrogatories propounded

by Willey, C.O. Allessandro denied "purposely shut[ting] [his] toilet [sic] and water pressure off in between" December 1, 2005, and January 10, 2006. Dkt # 95 at 3, ¶ 9. However, Defendants failed to address this conditions-of-confinement claim in their motion for summary judgment.

"While the Eighth Amendment's prohibition against cruel and unusual punishment 'does not mandate comfortable prisons,' " *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)), the conditions of confinement must be at least 'humane,' " *id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). An Eighth Amendment violation based upon living conditions requires the inmate to show (1) a deprivation that is "objectively, sufficiently serious" of "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of the defendant official, such as deliberate indifference to inmate health or safety. *Gaston,* 249 F.3d at 164 (quoting *Farmer,* 511 U.S. at 834) (internal quotation marks omitted in *Gaston* ).

**\*8** A Section 1983 claim will not lie for prison conditions that are merely unpleasant,, but chronic exposure to human waste will give rise to a colorable claim. *See Gaston v. Coughlin,* 249 F.3d 165–66. In *Gaston,* the Second Circuit reinstated an inmate's Eighth Amendment claim against two defendants where the area in front of the inmate's cell "was filled with human feces, urine, and sewage water" for several consecutive days. The Second Circuit stated that it was "unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end." *Id.* at 166. Similarly, in *LaReau v. MacDougall,* 473 F.2d 974, 977–79 (2d Cir.1972), the Second Circuit held that an inmate who spent five days in a cell that contained only a grate-covered hole in the floor for a toilet, which could only be flushed from the outside, was

deprived of his Eighth Amendment rights. The circuit court observed that "[c]ausing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted. The indecent conditions that existed in this ... cell seriously threatened the physical and mental soundness of its unfortunate occupant." *Id.* at 978; *see also Wright v. McMann,* 387 F.2d 519, 522, 526 (2d Cir.1967) (finding 33–day placement of prisoner in strip cell which was "fetid and reeking from the stench of the bodily wastes of previous occupants which ... covered the floor, the sink, and the toilet," combined with other conditions, violated Eighth Amendment).

Courts outside of the Second Circuit have reached the same result where exposure to sewage lasts for a substantial period of time. *See McCord v. Maggio,* 927 F.2d 844, 846–47 (5th Cir.1991) (finding Eighth Amendment violation where inmate lived in cell for two years and slept on floor for months "into which rain water and backed-up sewage leaked"); *Williams v. Adams,* 935 F.2d 960, 961–62 (8th Cir.1991) (reversing grant of summary judgment for prison defendants where plaintiff alleged "that the toilet in the cell did not work" and overflowed continuously "and the floor stay[ed] filthy with its wast[e]" over 13–day period); *Howard v. Adkison,* 887 F.2d 134, 136–38 (8th Cir.1989) (holding Eighth Amendment violation sufficiently proven where inmate lived for two years in cell where walls, door and food slot "were covered with human waste," mattress was "stained with urine and human waste" and pleas for remedial measures went unanswered); *McCray v. Sullivan,* 509 F.2d 1332, 1336 (5th Cir.1975) (finding conditions in isolation cells where inmates lived for as long as 21 days violated Eighth Amendment where waste "frequently" overflowed onto the floors of the cells); *Looper v. Sanders,* Civil No. 6:10–cv–06037, 2011 WL 861714, at *4–*5, *8 (W.D.Ark. Mar.10, 2011) (denying defendants' motion for summary judgment where plaintiff was exposed to raw sewage for over 10 months); *Jones v. Sanders,* No. 08–6035, 2009 WL 2432632, at *7

(W.D.Ark. Aug.7, 2009) (Report and Recommendation) (recommending denial of defendants' motion for summary judgment where plaintiff was exposed to raw sewage for a month and a half).

**\*9** "Where an inmate's exposure to waste lasts for three or four days, the Circuits are split." *Ortiz v. Department of Correction of City of New York,* 2011 WL 2638137 (S.D.N.Y. Apr.29, 2011) (comparing *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir.1996) (affirming summary judgment for defendants where plaintiff was subjected to an overflowing toilet in his cell for four days), *with McBride v. Deer,* 240 F.3d 1287, 1291–92 (10th Cir.2001) (vacating Rule 12(b)(6) dismissal where plaintiff alleged he was forced to live in "feces-covered cell" for three days); *Sperow v. Melvin,* No. 96–4219, 182 F.3d 922, 1999 WL 450786, at \*l–\*3 (7th Cir. June 24, 1999) (unpublished opn.) (reversing Rule 12(b)(6) dismissal where inmate "was subjected to appalling conditions" of waste-filled cell "for three full days"); *Young v. Quinlan,* 960 F.2d 351, 355–56, 363–65, (3d Cir.1992), *superceded by statute on other grounds as stated in Ghana v. Holland,* 226 F.3d 175, 184 (3d Cir.2000) (reversing summary judgment for defendants where inmate was moved to "dry cell" without working toilet for 96 hours and forced to urinate and defecate in his cell)).

Especially because Willey has adequately pled maliciously wilful conduct by C.O. Allessandro, rather than mere negligence, the alleged shut-off of the running water to Willey's toilet for several days place this case on the borderline between the levels of discomfort to be expected in prison and unacceptable, inhumane conditions. After reviewing the cases cited above, however, the Court concludes that on the particular facts presented here, Willey's conditions-of-confinement claim cannot withstand summary judgment. First, Willey is vague as to the dates that the alleged shut-off occurred, and has made conflicting allegations about the duration ("extensive lengths of time" versus "seven days" versus the time between December 1, 2005, and

January 10, 2006). Second, Willey has not claimed that human waste from his toilet overflowed into his cell. *See Smith v. United States,* No. 9:09–CV–729 (TJM/DRH), 2011 WL 777969 at \*2, \*11 (N.D.N.Y. Feb.3, 2011) (Report and Recommendation) (recommending denial of summary judgment where inmate alleged that officers "refused to flush the toilet or provide the inmates with toilet paper for two weeks," causing overflow of human waste to spill onto cell floor and inmate to become "nauseous and lightheaded from the odor"), *adopted by,* 2011 WL 776150 (N.D.N.Y. Mar.1, 2011). Third, Willey has not claimed that he suffered sickness or other ill effects as a result of the malodorous atmosphere caused by the water shut-off. *Contrast with Sperow, supra* (reversing dismissal of complaint where, after three days of exposure to human feces and urine on the walls and floor, pieces of a mattress on the floor caked with feces and urine, and a dozen plastic food trays with decayed food, plaintiff was had a headache, gastrointestinal and respiratory problems, and was feverish and sweating); *Smith, supra* (denying summary judgment where inmate alleged that his exposure to raw sewage from overflowing toilet caused sickness and nauseousness).

**E. Imposition of Restricted Diet in Violation of Eighth Amendment and Due Process**

**\*10** Willey asserts that D.S.S. Monahan placed him on a pre-hearing restricted diet for seven days, consisting of a loaf of bread cabbage, in violation of his Eighth Amendment rights. According to Willey, the bread was usually stale and the cabbage usually rotten. Willey also asserts a due process claim in connection with his request to D.S.S. Monahan to rescind the restricted-diet order during the seven days.

**1. Eighth Amendment**

As stated above, "a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'.... [Second,] a prison official must have a 'sufficiently culpable state of mind.' "

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Farmer,* 511 U.S. at 834.

With respect to the first prong, "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin,* 725 F.2d 12, 15–16 (2d Cir.1983) (citations omitted). For instance, "the Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served nutritionally adequate food ... [that does not] present an immediate danger to health and well being of the inmates who consume it." *Id.* at 15 (internal quotation marks and citation omitted). With respect to the second prong, a deliberate indifference to inmate health or safety may be shown where a prison official knew a diet was inadequate and likely to inflict pain. *See Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002).

Courts in this Circuit routinely have dismissed claims similar to Willey's, finding that the inmate failed to establish that he experienced a sufficiently serious deprivation for purposes of the Eighth Amendment. *See Smith v. Burge,* 2006 WL 2805242, at *11 (N.D.N.Y. Sept.28, 2006) ("Plaintiff does not establish, or even specifically allege, that (1) the food he was served [i.e., a hard loaf of bread and an apple per day] was nutritionally inadequate (e.g., with respect to the total calories it contained, its grams of carbohydrates, protein, fiber, and fat, or its units of vitamins and minerals, etc.), (2) that he was physically unable to eat the food, or (3) that he lost weight during the week in question.") (footnotes omitted) & *id.,* n. 78 (citing, *inter alia, McEachin v. McGuinnis,* 357 F.3d 197, 199–201 (2d Cir.2004) (affirming district court's F.R.C.P. 12(b)(6) dismissal of Eighth Amendment claim alleging, *inter alia,* that inmate was placed on a restricted diet consisting of "loaf" for seven days)).

## 2. Procedural Due Process

To pursue a claim under 42 U.S.C. § 1983 that a defendant deprived him of his constitutional right to due process, a plaintiff must show that he "enjoyed a protected interest, and defendant's

deprivation of that interest occurred without due process of law." *Taylor v. Rodriguez,* 238 F.3d 188, 191 (2d Cir.2001) (citation omitted). Thus, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient...." *Kentucky Dept. of Corr.,* 490 U.S. at 460.

**\*11** Apparently relying on 7 N.Y.C.R.R. § 304.2,[FN3] Willey asserts that he was entitled to a hearing before D.S.S. Monahan regarding his request to be removed from the restricted diet prior to the end of the seven-day period.

> FN3. Title 7, Section 304.2 of the New York Code of Rules and Regulations provides, in pertinent part, as follows:
>
> "The superintendent or his designee may issue a written order placing an inmate reported to have engaged in conduct described in subdivision (b) of this section [which conduct includes refusing to obey a direct order to return a food container at the conclusion of a meal] on a restricted diet for no more than seven days pending the outcome of the inmate's superintendent's hearing. The order shall briefly state the reason(s) for the imposition of the restricted diet and contain the following notice to the inmate: 'You may write to the deputy superintendent of security or his/her designee to make a statement as to the need for the continued pre-hearing imposition of the restricted diet.'..."

In order to demonstrate the existence of a liberty interest, the plaintiff must allege facts suggesting that he was subjected to a deprivation that imposed "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484,

115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Tellier,* 280 F.3d at 80. Willey is hard-pressed to allege or establish such facts given that the Second Circuit has held that the imposition of a restricted diet does not impose an "atypical and significant hardship" on inmates. *McEachin v. McGuinnis,* 357 F.3d at 200–01 (finding that a seven-day post-hearing restricted diet did not impose an atypical and significant hardship). Indeed, several federal courts "have specifically held that the imposition of a seven-day pre-hearing restricted diet of 'loaf' (imposed without the issuance of a deprivation order or the holding of a hearing during the seven-day period) did not create an atypical and significant hardship for purposes of the Fourteenth Amendment." *Smith v. Burge, supra* at n. 88 (citing *Beckford,* 151 F. Supp .2d at 208–209, 218–219 & n. 4 (not mentioning 7 N.Y.C.R.R. § 304.2, but granting defendants motion for summary judgment as to plaintiff's due process claims because a seven-day pre-hearing restricted diet did not impose an atypical and significant hardship); *Turnboe v. Gundy,* 25 Fed. Appx. 292, 293 (6th Cir.2001) (being placed on a pre-hearing restricted diet consisting of "food loaf" for seven days does not constitute an "atypical and significant hardship" on the inmate in relation to the ordinary incidents of prison life); *Thomas v. Virginia,* 04–CV–0273, 2005 WL 15517, at *10–11 (W.D.Va. July 28, 2005)). The Court finds the analysis in these cases, especially *Smith v. Burge, supra,* persuasive. Accordingly, the Court concludes that Willey has failed to establish a procedural due process claim with respect to the seven-day imposition of a restricted diet prior to his disciplinary hearing.

## V. Conclusion and Orders

For the foregoing reasons, Defendants' motion for summary judgment is granted, and the Amended Complaint is dismissed. Plaintiff's motion for appointment of counsel, asserted in his opposition to Defendants' summary judgment motion, is denied as moot.

Plaintiff is advised that he must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

W.D.N.Y.,2013.
Willey v. Kirkpatrick
Not Reported in F.Supp.2d, 2013 WL 434188 (W.D.N.Y.)

END OF DOCUMENT


Not Reported in F.Supp.2d, 2012 WL 987374 (N.D.N.Y.)
**(Cite as: 2012 WL 987374 (N.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Derrick HAMILTON, Plaintiff,
v.
Brian FISHER, Commissioner of New York State
Department of Correctional Services; FN1 Joseph
T. Smith, Superintendent of Shawangunk Corr.;
John Maly, Deputy of Shawangunk Corr. Fac.; Kay
Knott, Deputy of Shawangunk Corr. Fac.; Dennis
Giglio, Captain of Shawangunk Corr. Fac.; G.
Gardner, Lieutenant of Shawangunk Corr. Fac.;
R.K. Woods, Superintendent of Shawangunk Corr.
Fac.; FN2 M. Sheahan, Deputy Supt. of Shawan-
gunk Corr. Fac.; FN3 Seargent Brand, Upstate
Corr. Fac.; Curtis Drowns, Commissioner Hearing
Officer; Norman Bezio, Director of Special Hous-
ing; H. Moss, Sergeant Shawangunk Corr. Fac.; M.
Signorella, Corr. Officer, Shawangunk Corr. Fac.;
D. Forbes, Corr. Officer, Shawangunk Corr. Fac.;
Joe Wolczyk, Commissioner Hearing Officer; Neil
Hochman, Psychologist, Shawangunk Corr. Fac.;
Susan Strickland, Mental Health Unit Chief Auburn
Corr. Fac.; Osman Yildiz, Social Worker, Sullivan
Corr. Fac.; Sue Ann Smith, Unit Chief, Sullivan
Corr. Fac.; Doctor Mahmud, Psychiatrist, Sullivan
Corr. Fac.; Doreen Faber, Social Worker, Auburn
Corr. Fac.; Christopher P. Mayer, Unit Chief, Au-
burn Corr. Fac., Defendants.

> FN1. In the caption to his Complaint,
> Plaintiff spells this Defendant as "Brian
> Fisher." However, according to this De-
> fendant's executed Acknowledgment of
> Service, the correct spelling of his last
> name is "Fischer," which Plaintiff utilizes
> throughout his Complaint. Dkt. No. 20. We
> will refer to him as such.

> FN2. Defendant Woods is named in
> Plaintiff's Complaint as a Superintendent at
> Shawangunk Correctional Facility. Upon

> information and belief, Defendant Woods
> was located at Upstate Correctional Facil-
> ity during the pertinent period of time de-
> scribed in this action. *See* Compl. at ¶ 9;
> Dkt. No. 35, Ack. of Service.

> FN3. Defendant Sheahan is named in
> Plaintiff's Complaint as a Deputy Superin-
> tendent at Shawangunk Correctional Facil-
> ity. Upon information and belief, Defend-
> ant Sheahan was located at Upstate Correc-
> tional Facility during the pertinent period
> of time described in this action. *See* Com-
> pl. at ¶ 10; Dkt. No. 33, Ack. of Service.

Civ. No. 9:10–CV–1066 (MAD/RFT).
Feb. 29, 2012.

Derrick Hamilton, New Haven, CT, pro se.

Hon. Eric T. Schneiderman, Attorney General of
the State of New York, Cathy Y. Sheehan, Esq.,
Assistant Attorney General, of Counsel, Albany,
NY, for Defendants FN4.

> FN4. Three Defendants have not been
> served in this action, and thus the Attorney
> General's Office has not appeared on their
> behalf. *See infra* Part II.C.

### REPORT–RECOMMENDATION and ORDER
RANDOLPH F. TREECE, United States Magistrate
Judge.

**\*1** *Pro se* Plaintiff Derrick Hamilton brings
this civil rights action, pursuant to 42 U.S.C. §
1983, against twenty-two Defendants, alleging,
*inter alia,* that they violated his due process rights
in three disciplinary hearings, violated his Eighth
Amendment right to be free from cruel and unusual
punishment, violated his First Amendment right to
free exercise of religion, retaliated against him for
filing grievances, and conspired against him. Dkt.
No. 1, Compl. Defendants now move for dismissal

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 47. Plaintiff opposes the Motion. Dkt. No. 49. For the reasons that follow, we recommend that Defendants' Motion be **granted** in part and **denied** in part.

## I. BACKGROUND

The following facts are derived from Plaintiff's Complaint, which, in accordance with the standard of review on a motion to dismiss, must be taken as true. *See infra* Part II.A.

On or about November 30, 2007, while incarcerated at Shawangunk Correctional Facility ("Shawangunk"), Defendants Gardner, Giglio, Maly, and Smith sent two non-Defendant officers to Plaintiff's cell in order to confiscate all of Plaintiff's legal and personal documents. *See* Compl. at ¶ 35. One of the documents confiscated resulted in the dismissal of an unrelated 42 U.S.C. § 1983 claim. *Id.*

On December 10, 2007, Defendant Giglio presided over a disciplinary hearing on the charges that Plaintiff took nude photos while at a family reunion site, and sentenced Plaintiff to forty-five days of "keeplock" segregation, including the loss of packages, phone, commissary, and programs such as congregate and religious services. *Id.* at ¶¶ 36–37. Plaintiff began serving the sentence on December 13, 2007. *Id.* at ¶ 37. In keeplock, Plaintiff was deprived of the "everyday social stimuli afforded [to] the general prison population," group recreation activities, and vocational, academic, and/or social programs. *Id.* at ¶ 38. On February 8, 2008, Defendant Bezio reversed Defendant Giglio's guilty disposition, but Plaintiff had served the entire penalty by then. *Id.*

On February 12, 2008, Plaintiff was issued a false misbehavior report charging him with drug use. *Id.* at ¶ 39a.[FN5] On February 29, 2008, Defendant Knott presided over the disciplinary hearing, found Plaintiff guilty, and sentenced him to eighteen months in the special housing unit ("SHU") with a corresponding loss of phone, pack-

ages, and commissary. *Id.* Plaintiff states that "[d]uring the hearing[,][D]efendant Knott violated [his] constitutional and regulatory rights and disregarded clear and convincing evidence that the urine tested was not [Plaintiff]'s." *Id.* On March 11, 2008, Defendant Bezio reversed Defendant Knott's decision and ordered a new hearing. *Id.* at ¶ 39b. However, Defendants Smith and Maly "refused to release Hamilton from the special housing unit pending the hearing." *Id.* On March 18, Defendant Drowns held the rehearing ordered by Defendant Bezio and found Plaintiff guilty, and, like Defendant Knott, imposed a sentence of eighteen months confinement in SHU and loss of phones, packages and commissary; Plaintiff was not in attendance at the hearing. *Id.* at ¶ 40.

> FN5. Plaintiff mistakenly labels two consecutive and separate paragraphs in his Complaint with the number thirty-nine (39). For ease of reference, this Court will refer to the first paragraph as "39a" and the second as "39b."

**\*2** It is unclear from Plaintiff's Complaint exactly what happened next, but from what this Court can discern, on May 22, 2008, Defendant Bezio again reversed this disposition. *Id.* at ¶ 41. At an unstated time, Defendant Smith "signed his signature to confirm that the hearings held on December [10], 2007,[FN6] February 29, 2008[,] and March 18, 2008[,] were conducted in accordance with constitutional and regulatory rights." *Id.* at ¶ 42.

> FN6. Plaintiff clearly states that the administrative hearing Defendant Giglio presided over occurred on December 10, 2007. *See* Compl. at ¶ 36. He further states that he began "serving the sanctions" assigned from that hearing on December 13, 2007. *Id.* at ¶ 37. Accordingly, when he references a "hearing[ ] held on December 13, 2007," *see id.* at ¶ 42, we presume Plaintiff is referring to his December 10, 2007 hearing.

Meanwhile, on May 1, 2008, Defendants Fischer and Bezio approved Defendant Smith's request to transfer Plaintiff to Upstate Correctional Facility ("Upstate"). Plaintiff alleges that Defendant Smith's transfer request was in retaliation to the grievances Plaintiff made about Defendants Smith and Knott; specifically, that Defendant Smith was liable for the wrongful death of "Larry Davis," that Defendant Knott denied Plaintiff unspecified rights at the February 29, 2008 administrative hearing, and that Defendant Knott "deliberately destroy[ed] evidence to hide ... due process violations captured on the audio tape." *Id.* at ¶ 59. While at Upstate, Plaintiff was deprived of headphones, lotion, television, daily access to the law library, family day events, and was subjected to loud banging and yelling from other inmates, among other things. *See id.* at ¶ 60. At some point, Defendants Woods, Sheahan, and Brand destroyed five bags of Plaintiff's personal property, which contained chiefly clothes, hygienic products, and approximately one thousand photographs. *Id .* at ¶ 61.

On June 3, 2008, Plaintiff was transferred back to the Shawangunk general population by Defendants Fischer and Bezio after reports of Plaintiff's misbehavior. *Id.* at ¶ 43. Plaintiff served an aggregate total of 135 days of "segregation time" on the incidents described above. *Id.* at ¶ 42. Plaintiff claims that he was returned to "atypical and significant hardships" when he reentered Shawangunk, and that Defendants Fischer and Bezio "failed to correct the policies, and practices, [of]D]efendants Smith, Maly, Drowns, Knott, Gardner, Giglio, and all others named above who participated in the unconstitutional activity." *Id.* at ¶¶ 62–63.

On March 2, 2009, Plaintiff became an inmate liaison committee clerk. *Id.* at ¶ 44. On or about March 10, Defendant Gardner threatened Plaintiff to stop making complaints about the correctional facility staff or that Plaintiff would lose his liaison job and be placed in SHU. *Id.* at ¶ 45. Then on March 13, 2009, Defendant Gardner "placed Hamilton in the special housing unit under involun-

tary protective custody status[,][i]n a cell without any desk, chair, lockers or humane conditions." *Id.* Defendant Drowns held an administrative hearing on March 19, affirming the involuntary protective custody placement. *Id.* at ¶ 46. Defendants Drowns and Gardner lied at the hearing when they claimed that "the Blood gang wanted to harm" Plaintiff; Plaintiff was also denied the opportunity to present documentary evidence. *Id.*

**\*3** From March 13, 2009 until November 2, 2009, Plaintiff was kept in SHU under involuntary protective custody status, while he "complained constantly" to Defendants Fischer, Smith, Maly, Giglio, Knott, and Hochman that this placement was causing "sever[e] depression[,][e]specially since [D]efendants ... continually informed Hamilton that his life was[ ] in jeopardy [,] [c]ausing Hamilton to become paranoid, unable to sleep and delusional [.]" *Id.* at ¶ 48. Defendant Maly "conducted sham reviews of Hamilton's involuntary protective custody placement [without] meaningful effort ... to return Hamilton to the general population or transfer Hamilton." *Id.* at ¶ 47. Additionally, Defendants "Fischer, Smith, Maly, Giglio, Knott, Hochman, Bezio, and others" refused to provide Plaintiff with "mental health treatment or transfer him out of the conditions that caused the depression[,] [but rather] continued the sham mental health interviews." *Id.* at ¶ 49.

On November 2, 2009, Plaintiff told Defendant Moss that he wanted to be removed from SHU and be placed in a "one on one strip cell," and that Plaintiff had medication in his possession he "was thinking of taking unless he was removed." *Id.* at ¶ 50. Defendant Moss did not immediately move Plaintiff, and Plaintiff "swallowed a handful of pills [in an] attempt[ ] to commit suicide." *Id.* He was taken to Cornwall St. Luke's Hospital and treated. *Id.* at ¶ 51. While at St. Luke's, Defendants Signorella and Forbes repeatedly punched Plaintiff in the ribs, stomach, and chest while he was shackled in the bed, causing him "tremendous[ ]" pain; they also threatened to kill him. *Id.* at ¶ 52. Because

Not Reported in F.Supp.2d, 2012 WL 987374 (N.D.N.Y.)
**(Cite as: 2012 WL 987374 (N.D.N.Y.))**

Plaintiff refused to leave the hospital, Defendants Signorella and Forbes falsified a report stating that Plaintiff caused a disturbance. *Id.*

Plaintiff was transferred to the mental health unit at the Sullivan Correctional Facility where he remained until November 13, 2009. *Id.* at ¶ 51. There, Plaintiff saw Defendants Osman Yildiz, a mental health clinician, and Doctor Mahmud, to whom Plaintiff explained that he would attempt suicide again if returned to Shawangunk's SHU. *Id.* at ¶ 53. These Defendants were "informed by security at [S]hawangunk that Hamilton only took the pills as a ploy to be removed from special housing[,]" but Plaintiff told them that "he took the pills because [D]efendants Moss, Hochman, Fischer, Bezio, and others did not take his depression seriously." *Id.* at ¶ 54. Plaintiff was diagnosed with an adjustment disorder with mixed anxiety and depressed mood, but despite the diagnosis, Defendants Yildiz and Mahmud tried to persuade Plaintiff to return to Shawangunk. *Id.* at ¶ 55.

Plaintiff claims that on or about November 5, 2009, Defendants Yildiz, Mahmud, and Sue Ann Smith conspired with Defendants Moss when they stated that Plaintiff was "attempting to manipulate the mental health unit to be removed from involuntary protective custody ." Defendant Moss also wrote a false misbehavior report charging Plaintiff with faking a suicide attempt in order to be removed from Shawangunk's SHU. *Id.* at ¶¶ 56–58.

**\*4** On November 13, 2009, Defendants Fischer and Bezio transferred Plaintiff to Auburn Correctional Facility ("Auburn") and assigned him to the SHU. On November 14, 2009, Plaintiff was issued two misbehavior reports, which Plaintiff attests were issued "in retaliation for the November 2, 2009, mental anxiety and depression Hamilton suffered while at Shawangunk." *Id.* at ¶ 64. Defendant Wolczyk presided over Plaintiff's disciplinary hearing, and on December 10, 2009, found Plaintiff guilty and assigned him twelve months confinement in SHU, loss of phones, commissary, packages, and good time credits; at this hearing, Plaintiff was

"deprived from calling relevant witnesses or [from] produc[ing] documentary evidence (mental health records)." *Id.* at ¶ 66.

Plaintiff also claims that Defendant Fischer has refused to let Plaintiff practice Judaism or provide Plaintiff with a kosher diet, and that Defendants Fischer, Strickland, Faber, and Mayer deprived Plaintiff from seeing a psychiatrist, a therapeutic counselor, or receive any mental health treatment. *Id.* at ¶¶ 72–75. Instead, these Defendants "filed false documents to make it seem as if Hamilton was being screened by staff [ ] and was found to be in good mental health." *Id.* at ¶ 75.

## II. DISCUSSION
### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ( *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski,* 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint'* may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (emphasis in original)

(quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 754 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

**\*5** A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1960, 173 L.Ed.2d 868 (citing *Twombly* ).[FN7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949, 173 L.Ed.2d 868. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The process of determining whether a plaintiff has "nudged [his] claims ...

across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1950–51, 173 L.Ed.2d 868.

> FN7. By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal,* the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 561 (2007) (quoting *Conley,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563.

### B. Plaintiff's Claims

In his often-conclusory and always-confusing Complaint, Plaintiff makes a variety of allegations against the myriad Defendants in this action. This Court will address those claims *seriatim.*

#### 1. *Eighth Amendment*

Reading his Complaint liberally, Plaintiff states three distinct Eighth Amendment claims: deliberate indifference to his serious medical needs, excessive force, and inhumane conditions of confinement.

#### i. *Deliberate Indifference to a Serious Medical Need*

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06).

The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). Under the objective prong, the alleged medical need must be "sufficiently serious." *Id.; Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d at 702 (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)). Under the subjective component, the plaintiff must demonstrate that the defendant acted with "a sufficiently culpable state of mind." *Hathaway I,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

**\*6** Plaintiff claims that he suffers from mental health ailments, particularly, adjustment disorder with mixed anxiety and depressed mood. *See* Compl. at ¶ 55. According to his Complaint, the "involuntary protective custody status caused him overt depression," and this, in turn, either manifested itself "to the extent of being suicidal," or "he took the pills because Defendants Moss, Hochman, Fischer, Bezio, and others did not take his depression seriously." *Id.* at ¶¶ 53–54. Regardless of

whether the Plaintiff states a "serious medical condition," he fails to allege that the Defendants objectively deprived him of adequate medical care such that they would be constitutionally liable. *See Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006); *see also Mercado v. City of New York,* 2011 WL 6057839, at \*5 n. 6 (S.D.N.Y. Dec.5, 2011) ("Regardless whether he was suicidal, that condition is not dispositive of the seriousness inquiry: 'although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care ... establish[es] constitutional liability.' ") (quoting *Salahuddin,* 467 F.3d at 280).

Plaintiff alleges that after he "swallowed a handful of pills," he was taken to St. Luke's Hospital and treated for the overdose, and then transferred to the mental health unit at Sullivan Correctional Facility, where he stayed for eleven days. Compl. at ¶¶ 50–51. His only complaint about the medical care he received was that the medical personnel, Defendants Sue Ann Smith, Yildiz, and Mahmud, believed "Hamilton was attempting to manipulate the mental health unit to be removed from involuntary protective custody ." *Id.* at ¶ 56. Thus, Plaintiff does not allege any facts by which this Court could find that Defendants denied him adequate medical care.

Further, Plaintiff does not allege that the Defendants acted with the requisite culpable state of mind for a finding of deliberate indifference. Plaintiff states that he "informed [D]efendant Moss that he wanted to be removed from [SHU] and placed in a one on one strip cell. As he (Hamilton) had in his possession medication he was thinking of taking unless he was removed. Defendant Moss refused to move Hamilton from the cell in an expedient manner and Hamilton swallowed a handful of pills and attempted to commit suicide." *Id.* at ¶ 50. Plaintiff was then transported to Auburn, issued a misbehavior report by Defendant Moss for faking a suicide attempt, and subsequently removed from

the mental health treatment program by Defendants Strickland, Fischer, Faber, and Mayer. *Id.* at ¶¶ 58 & 72–75.

A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 836–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This requires "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. at 837.

**\*7** Plaintiff does not state any facts by which we can impute subjective culpability upon any Defendant. Nothing in his allegations indicates that any Defendant knew of a substantial risk that Plaintiff might attempt to commit suicide and that they then responded with deliberate indifference. Further, discharging Plaintiff—after a lengthy hospital stay—under the suspicion that Plaintiff faked a suicide attempt in order to be removed from SHU might be considered negligent conduct under certain circumstances, but that finding, at best, is not sufficient to state an Eighth Amendment claim. *Estelle v. Gamble,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Abdush–Shahid v. Coughlin,* 933 F.Supp. 168, 180 (N.D.N.Y.1996) ("Mere negligence or inadvertent failure ... is not a constitutional violation, however. 'Deliberate indifference' must be demonstrated by proof that corrections personnel intentionally denied, delayed access to, or interfered with prescribed treatment."). Akin to the *Farmer v. Brennan* standard above, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice

involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

Therefore, Plaintiff's claim that Defendants Sue Ann Smith, Yildiz, Mahmud, Moss, Fischer, Bezio, Strickland, Faber, and Mayer were deliberately indifferent to his serious medical needs should be **dismissed.**

### ii. Excessive Force

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. *Robinson v. California,* 370 U.S. 660, 666–67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (cited in *Tramell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003)). To determine whether an Eighth Amendment violation occurred where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoted in *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994)). To validly assert an Eighth Amendment violation through the use of excessive force, an inmate must state (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotations and citations omitted).

Plaintiff asserts that Defendants Forbes and Signorella assaulted him repeatedly while he was shackled in a bed at St. Luke's hospital. *See* Compl. at ¶ 52. Plaintiff claims he was "bruised, in pain[,] and suffered tremendously from the repeated blows and excessive force inflicted by [D]efendants." *Id.* Besides stating that the correctional officers wrote a

false report stating that Plaintiff caused a disturbance, he does not state any other facts about this incident or the nature of any injures he suffered, and Plaintiff does not allege that he sought medical treatment.

**\*8** Liberally construed, Plaintiff's allegations that the Defendants hit him while he was restrained in a hospital bed may well indicate that the Defendants acted wantonly. *See Dallio v. Santamore,* 2010 WL 125774, at *8–9 (N.D.N.Y. Jan.7, 2010) (finding that allegations that assaulting officers continued to hit plaintiff after he was restrained and thus compliant and defenseless triggered an Eighth Amendment claim). While Plaintiff states his claims in a conclusory fashion, he states enough at this state to allege a plausible Eighth Amendment excessive force violation and thus should be entitled to offer evidence to support his claims. Accordingly, Defendants' Motion to Dismiss Plaintiff claims against Defendants Signorella and Forbes should be **denied** and Plaintiff's claim should continue to the next stage of litigation.[FN8]

> [FN8]. Plaintiff also may be claiming that he was harassed by each Defendant, who "constantly informed Hamilton that his life was[ ] in jeopardy." Compl. at ¶ 48. Allegations of verbal harassment are insufficient to support a § 1983 claim. *See Rivera v. Goord,* 119 F.Supp.2d 327, 342 (S.D.N.Y.2000) ("To the extent that the complaint can be read to assert an Eighth Amendment cruel and unusual punishment claim ... based on alleged verbal harassment of plaintiff, such conduct is not actionable under § 1983 ."); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986).

### iii. Conditions of Confinement

Plaintiff claims that he suffered cruel and unusual punishment when incarcerated in SHU at Shawangunk. Specifically, he claims that he was locked in a cell for twenty-three hours a day without any desk, chair, lockers, phone or package

privileges, religious services, family day picnics, community events, re-entry and transitional services, or "humane conditions," and was subjected to "complete isolation, loud yelling, banging on cell doors, banging on walls, [and] feces being thrown," among other things. Compl. at ¶¶ 38, 40, 45, & 48. He complained "constantly" about the conditions of his confinement to Defendants Fischer, Smith, Maly, Giglio, Knott, Bezio, Hochman, and Moss, but Defendants did not remove Plaintiff from SHU. *Id.* at ¶¶ 48–49.

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective ... and subjective test." *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996) (citations omitted). Thus, "[c]onditions of confinement only constitute an Eighth Amendment violation if they involve the deprivation of a single identifiable human need or denial of the minimum civilized measure of life's necessities, and the defendants' state of mind was one of deliberate indifference to that deprivation." *Johnson v. Smith,* 2006 WL 1843292, at *9 (N.D.N.Y. June 29, 2006). The Eighth Amendment does not "mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation[,]" *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Rhodes v. Chapman,* 452 U.S. at 347).

Reading Plaintiff's Complaint liberally, he does not allege enough facts to establish that he was exposed to objectively serious prison conditions that violate the Eighth Amendment. An inmate normally cannot state a valid claim based on "inmate-generated" noise as an impermissibly harsh condition of confinement, *see Griffin v. Coughlin,* 743 F.Supp. 1006, 1018 (N.D.N.Y.1990) (citing *Whitely v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)), nor that a deprivation of his ability to go to programs and to socialize

Not Reported in F.Supp.2d, 2012 WL 987374 (N.D.N.Y.)
**(Cite as: 2012 WL 987374 (N.D.N.Y.))**

triggers the Eighth Amendment, *see Jeffrey v. Ahmed,* 2011 WL 4390220, at *14 (N.D.N.Y. Aug.22, 2011). Additionally, "normal" conditions of SHU confinement do not constitute an Eighth Amendment violation. *See Branch v. Goord,* 2006 WL 2807168, at *5 (S.D.N.Y. Sept.28, 2006); *see also Shannon v. Selsky,* 2005 WL 578943, at *6 (S.D.N.Y. Mar.10, 2005) (noting solitary confinement for twenty-three hours a day with one hour of exercise is not an Eighth Amendment violation). Rather, SHU confinement is not cruel and unusual unless it is "totally without penological justification, grossly disproportionate, or involve[s] the unnecessary and wanton infliction of pain." *Smith v. Coughlin,* 748 F.2d 783, 787 (2d Cir.1984) (internal quotation marks and citations omitted). Further, while the Second Circuit has held that allegations of unsanitary conditions may support an Eighth Amendment claim, *see Gaston v. Coughlin,* 249 F.3d 156, 165–66 (2d Cir.2001) (finding that triable issue of fact existed where prisoner alleged that he was, *inter alia,* exposed to freezing temperatures throughout the winter, rodent infestation, and exposed to a corridor filled with sewage and human feces for several days), allegations of unsanitary conditions that are "general in nature and do not specify any particularized facts regarding the ... level of hygiene," do not state a claim upon which relief can be granted, *Williams v. Carbello,* 666 F.Supp.2d 373, 379 (S.D.N.Y.2009) (citing *Gaston* ). Plaintiff's allegation of "feces being thrown" is clearly not as severe as the conditions described in *Gaston* nor are his allegations specific enough to plausibly suggest that the conditions which he was exposed to in SHU, viewed collectively, were sufficiently "serious" to satisfy the objective prong of his Eighth Amendment claim.

**\*9** Accordingly, because Plaintiff fails to allege any such objectively serious deprivation of the minimum civilized measure of life's necessities, he fails to state a claim upon which relief can be granted regarding the conditions of his confinement. Thus, his claim should be **dismissed.**

2. *Due Process*

Plaintiff alleges that Defendants Giglio, Knott, Drowns, Gardner, Wolczyk, and Smith violated his Due Process rights during his December 10, 2007, February 29, 2008, March 18, 2008, and December 10, 2009, disciplinary hearings which resulted in Plaintiff's confinement in keeplock and SHU. Specifically, Plaintiff claims that Defendant Giglio found Plaintiff guilty during a December 2007 disciplinary hearing although he "admitted the law and facts were as Hamilton stated above;" Defendant "Knott violated Hamilton['s] constitutional and regulatory rights and disregarded clear and convincing evidence" relating to urine testing at Plaintiff's February 29, 2008 disciplinary hearing; on March 18, 2008, Defendant Drowns "violated Hamilton's [c]onstitutional and regulatory rights to be present" when he ruled during the rehearing to the February 29, 2008 disposition ordered by Defendant Bezio; Defendants Drowns and Gardner "deliberately lied" at Plaintiff's March 19, 2009 administrative hearing affirming Plaintiff's placement in involuntary protective custody; Defendant Wolczyk prevented Plaintiff from calling relevant witnesses or producing documentary evidence in his December 10, 2009 hearing; and that Defendant Smith, at some unknown time, "signed his signature to confirm that the hearings held on December [10], 2007, February 29, 2008, and March 18, 2008 were conducted in accordance with constitutional and regulatory rights [despite] the evidence presented." *See* Compl. at ¶¶ 36, 40, 42, 46, & 66.

Here, we find that Plaintiff's conclusory assertions against Defendants Giglio, Knott, and Smith, unaccompanied by any explanations or factual context, are insufficient to state a due process claim upon which relief can be granted. *See, e.g., Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990) (noting that complaints based on violations of constitutional rights must contain more than conclusory allegations to avoid dismissal). For the same reason, Plaintiff's claim against Defendants Drowns and Gardner, as related to the March 19, 2009 disciplinary hearing, also fails to state a claim.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

We turn now to Plaintiff's due process claims against Defendant Drowns, in relation to the March 18, 2008 disciplinary hearing he presided over, and against Defendant Wolczyk, in relation to Plaintiff's December 10, 2009 disciplinary hearing. Compl. at ¶¶ 40 & 66. In order to state a due process claim under § 1983, an inmate must establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)). A prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship. *See Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (noting that a prisoner is not entitled to due process protections unless the resulting restricting confinement subjected the prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life"). Whether the conditions of the segregation amounted to an atypical and significant hardship "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker,* 139 F.3d at 336 (citations omitted).

**\*10** Defendant Drowns sentenced Plaintiff on March 18, 2008, to an eighteen-month term in SHU with a corresponding loss of phone, packages, and commissary privileges. Compl. at ¶ 40. On May 22, 2008, however, Defendant Drowns' determination was reversed by Defendant Bezio, who found that "[D]efendant Drowns violated Hamilton['s] right to be present during the administrative hearing." *Id.* at ¶ 41. Here, because Defendant Drowns' guilty finding in Plaintiff's March 18, 2008 disciplinary hearing was reversed by Defendant Bezio on May 22, 2008, Plaintiff was not subject to a penalty—confinement in SHU—from Defendant Drowns' disposition for longer than about two months. Compl. at ¶¶ 40–41. The Second Circuit has cautioned that "there is no bright-line rule re-

garding the length or type of sanction" that meets the above-stated *Sandin* standard. *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999); *see also Ayers v. Ryan,* 152 F.3d 77, 83 (2d Cir.1998) ("Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry[.]"). Nevertheless, the Second Circuit has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. *See Colon v. Howard,* 215 F.3d 227, 231–32 (2d Cir.2000). Plaintiff provides no facts indicating that the conditions of his confinement were additionally abnormal, outside the conditions inherent in SHU. Therefore, we find that Plaintiff's confinement in SHU and his loss of various privileges from the March 18, 2008 disciplinary hearing Defendant Drowns' presided over, as reversed by Defendant Bezio, did not constitute an atypical and significant hardship, and his due process claim against Defendant Drowns should be **dismissed.**

Addressing Plaintiff's claim against Defendant Wolczyk, the Second Circuit has held that segregative sentences of 125–288 days confinement in SHU are deemed to be "relatively long" and therefore necessitate "specific articulation of fact findings before the district court could properly term the confinement atypical or insignificant." *Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000). Therefore, Defendant Wolczyk's sentence of twelve months in SHU from Plaintiff's December 10, 2009 disciplinary hearing established a liberty interest by which Plaintiff was entitled to some measure of due process before being deprived therewith; namely, the ability to call "relevant witnesses or to produce documentary evidence[.]" Compl. at ¶ 66.

Accordingly, we find that Plaintiff states a valid due process claim against Defendant Wolczyk upon which relief can be granted. Plaintiff's claims against Defendants Giglio, Knott, Gardner, Smith, Drowns, and Bezio, to the extent Plaintiff brings due process claims against Defendant Bezio for his role in reversing the guilty findings in Plaintiff's

disciplinary hearings, should be **dismissed** for failure to state a claim.

### 3. First Amendment Free Exercise and RLUIPA

**\*11** In Plaintiff's extensive twenty-four-page Complaint, he states once, and seemingly in passing, that Defendant Fischer violated his First Amendment free exercise rights and rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by "refusing to permit Hamilton to practice the Judasim [sic] religious tenents [sic]." Compl. at ¶ 71. Plaintiff claims only that Defendant Fischer has "refused to acknowledge Hamilton's request to note he is of the Judaism faith[,][a]nd to provide a kosher diet to Hamilton like all other prisoners of this faith receive." *Id.*

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. U.S. CONST. AMEND. I; *Cutter v. Wilkinson,* 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). The free exercise clause applies to prison inmates, subject to appropriate limiting factors. *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir.2004).

Further, RLUIPA provides, in pertinent part, that

[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person—

(1) is in furtherance of a compelling government-

al interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

The principles which guide the analysis of plaintiff's free exercise claim are similar to those applicable to a RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks. *See Salahuddin v. Goord,* 467 F.3d 263, 274 (2d Cir.2006). RLUIPA prohibits governmental entities subject to its reach from imposing a substantial burden on religion even where it stems from a generally applicable law, practice, or policy, but it places a higher burden on the defendants than does the First Amendment, which requires only that an infringement be "reasonably related to legitimate penological interests." *Dove v. Broome County Corr. Facility,* 2011 WL 1118452, at *10 (N.D.N.Y. Feb.17, 2011) (internal citations omitted).FN9 While the statute does not define "substantial burden," the Second Circuit has assumed that "[s]ince substantial burden is a term of art in the Supreme Court's free exercise jurisprudence ... Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it." *Westchester Day Sch. v. Vill. of Mamaroneck,* 504 F.3d 338, 348 (2d Cir.2007) (citations omitted). The Supreme Court has held that a substantial burden is one that "put [s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 717–718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) (cited in *Westchester Day Sch. v. Vill. of Mamaroneck* ).

FN9. This court also notes that RLUIPA may not allow monetary damages against defendants in their individual or official capacities. *See, e.g., Pugh v. Goord,* 571 F.Supp.2d 477, 507 (S.D.N.Y.2008) (citing cases). A discussion on such at this point in the litigation would be premature.

**\*12** Here, Plaintiff fails to allege enough facts for this Court to determine if he adequately states either a First Amendment and/or RLUIPA claim. His terse, one-paragraph allegation gives no details, such as the duration of the denial of a kosher diet, by which we could evaluate whether he states a claim upon which relief could be granted. *See, e.g., McEachm v. McGuinnis,* 357 F.3d 197, 203 n. 6 (2d Cir.2004) ("There may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored."); *Tafari v. Annets,* 2008 WL 2413995, at \*16 (S.D.N.Y. June 12, 2008) (finding a single meal that was not in accordance with plaintiff's religious dietary needs was a *de minimis* violation insufficient to constitute a violation under the First Amendment). Accordingly, we recommend **dismissal** of Plaintiff's First Amendment and RLUIPA claim **without prejudice** and with **leave to amend** his Complaint to provide this Court with supporting facts that correspond to his claim.

### 4. *Conspiracy*

Plaintiff alleges that Defendants Gardner, Giglio, Maly, and Smith conspired together to cause legal and personal documents of Plaintiff's to be confiscated and not returned, and that Defendants Mahmud, Moss, and Smith conspired to declare that Plaintiff was "attempting to manipulate the mental health unit to be removed from involuntary protective custody." *See* Compl. at ¶¶ 35 & 56. FN10

> FN10. It is impossible to discern from Plaintiff's Complaint whether he is levying these claims against Defendant Joseph T. Smith, or Defendant Sue Ann Smith, or both. However, because Plaintiff fails to state a conspiracy claim upon which relief can be granted, our analysis can proceed despite the confusion.

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002). In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993) (citations, internal quotation marks, and internal alterations omitted).

Additionally, although he does not explicitly assert it in his Complaint, this Court, in consideration of the leniency given to *pro se* litigants, interprets Plaintiff's action as claiming a violation of 42 U.S.C. § 1985, as well.

The only relevant section of that statute is subsection (3) which states, in pertinent part:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ..., if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**\*13** 42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege

of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999) (citations omitted). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't. of Corr. Servs.,* 115 F.Supp.2d 307, 316 (N.D.N.Y.2000) (citations omitted). Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 390–91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (cited in *Hill v. Philip Morris USA,* 2004 WL 1065548, at *4 (S.D.N.Y. May 11, 2004)); *see also Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990) (finding that in order to state a claim under § 1985(3), a plaintiff "must allege, *inter alia,* that the defendants who allegedly conspired sought, with *discriminatory intent,* to deprive the plaintiff of a right covered by the Constitution or other laws") (emphasis added).

Plaintiff has failed to state a valid conspiracy claim upon which relief can be granted. In fact, Plaintiff's only states that the Defendants conspired; he provides no other facts, or even circumstances, from which this Court can surmise that any such conspiracy occurred. Additionally, Plaintiff's allegations of racial discriminatory animus against him is conclusory. His only claims regarding his race were that Defendants Fischer, Wolxzyk, and Bezio, subjected Plaintiff to "mental anxiety and depression[ ][t]hrough acts of disparate treatment, discrimination, [and] racism." Compl. at ¶ 68. He provides no other details nor does he relate a discriminatory animus to Defendants Gardner, Giglio, Maly, Smith, Mahmud, or Moss. Therefore, Plaintiff's claims of conspiracy, pursuant to either § 1983 or § 1985, should be **dismissed.**

### 5. *Retaliation*

Plaintiff states that Defendant Gardner removed Plaintiff from his position as an inmate liais-

on and placed Plaintiff in SHU under "involuntary protective custody status" in retaliation for complaints he made, and that Defendant Smith [FN11] petitioned Defendants Fischer and Bezio to transfer Plaintiff to Upstate Correctional Facility in retaliation to the grievances Plaintiff made about Defendants Smith and Knott. Compl. at ¶¶ 45 & 59.

> FN11. Here, this Court will assume Plaintiff is referring to Defendant Joseph T. Smith, who, as Superintendent of Shawangunk Correctional Facility, would more likely be involved with inmate transfers from Shawangunk than Defendant Sue Ann Smith, a Unit Chief at Sullivan Correctional Facility.

In order to state a valid retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009) (quoting *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) ). The required causal connection means, "in other words, that the protected conduct was a 'substantial or motivating factor' in the defendants' decision to take action against the plaintiff." *Tafari v. Mc-Carthy,* 714 F.Supp.2d 317, 347 (N.D.N.Y.2010) (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

**\*14** The Second Circuit has made clear that an inmate has a right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances as guaranteed under the First and Fourteenth Amendments. *See, e.g .,* *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) (cited in *Dorsey v. Fisher,* 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010)); *see also* *Colon v. Coughlin,* 58 F.3d 865, 972 (2d Cir.1995) ("Prisoners, like non-prisoners, have a constitutional right ... to petition the government for the redress of grievances, and prison offi-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

cials may not retaliate against prisoners for the exercise of that right."). Thus, there is no question that Plaintiff's conduct, filing grievances and making "complaints," is protected by the Constitution and satisfies the first prong of a retaliation claim.

Plaintiff's allegations—again, taken as true for the purposes of this Motion—also establish that the Defendants took "adverse action" sufficient to state a valid retaliation claim. He claims that Defendant Gardner placed Plaintiff in SHU in response to complaints he made. An "alleged transfer to SHU in retaliation ... could be considered adverse action." *See Smith v. Hash,* 2006 WL 2806464, at *6 (N.D.N.Y. Sept.28, 2006). He further claims that Defendant Smith transferred Plaintiff from Shawangunk to Upstate in response to grievances Plaintiff made about Defendant Smith. Compl. at ¶ 59. While "prison officials retain significant flexibility and wide discretion in managing the corrections system and placing inmates appropriately," *Houston v. Goord,* 2009 WL 890658, at *13 (N.D.N.Y. Mar.31, 2009) (citing N.Y. Corr. L. §§ 23, 72, & 112(1), & *Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir.1996)), when such a transfer is made purely with a retaliatory motive, a claim of unlawful retaliation under the First Amendment is established, *see Meriwether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989).

Lastly, Plaintiff alleges, although tersely, enough to state a causal connection between the protected conduct of filing complaints or grievances and the adverse action of being confined in SHU or transferred between correctional facilities. He claims that Defendant Gardner threatened Plaintiff with an incarceration in SHU, based on the complaints Plaintiff was making, on March 10, 2009, and that he was placed in SHU on March 13, 2009. Compl. at ¶ 45. Plaintiff does not state the dates he filed grievances against Defendants Smith and Knott, but he alleges that those grievances were the direct reason that Defendant Smith petitioned to have Plaintiff transferred to Upstate. *Id.* at ¶ 59. Because of the ease of alleging retaliatory animus and

the potential for abuse, courts must approach retaliations claims "with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (internal citations omitted). Nonetheless, Plaintiff's allegations at this stage in the litigation are sufficient to state valid retaliation claims against Defendants Gardner and Smith. To the extent that Defendants' move for this claim to be dismissed, we recommend their Motion be **denied.**[FN12]

> FN12. Defendants do not include a discussion of Plaintiff's retaliation claim in their Memorandum of Law in support of their Motion to Dismiss. *See* Dkt. No. 47–1. However, they make clear that they seek dismissal of Plaintiff's Complaint "in its entirety." *Id.* at p. 21.

### 6. *Destruction/Confiscation of property*
**\*15** Plaintiff claims that on or about November 30, 2007, Defendants Gardner, Giglio, Maly, and Smith instructed two non-Defendants correctional officers to confiscate Plaintiff's legal and personal documents from his cell. Compl. at ¶ 35.

Reading his Complaint liberally, Plaintiff may be alleging that the Defendants violated his right of access to the courts. The Supreme Court has held that the constitutional right of access to courts entitles plaintiffs to "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). To establish a *Bounds* violation, a plaintiff must show "actual injury," as *"Bounds did not create an abstract, freestanding right to a law library or legal assistance." Lewis v. Casey,* 518 U.S. 343, 349 & 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Thus, to establish a claim of inadequate access to the courts under *Bounds,* a plaintiff must show " 'that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim'—for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." *Benjamin v. Fraser,* 264 F.3d 175, 184 (2d Cir.2001) (citing *Lewis v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Casey,* 518 U.S. at 351).

Plaintiff fails to meet this burden. He claims only that the confiscation of an affidavit resulted in the dismissal of an unrelated 42 U.S.C. § 1983 claim. This conclusory statement, unsupported with any other details or facts, is not enough to state a claim upon which relief can be given. Thus, to the extent Plaintiff may be claiming that he was denied access to the courts, this claim against Defendants Gardner, Giglio, Maly, and Smith should be **dismissed.**

Plaintiff also claims that Defendants Brand, Sheahan, and Woods "destroyed five bags of personal property that contained: 45 shirts, 1 pair of shoes, 3 sweatpants, 3 sweatshirts, 2 can openers, 13 towels, 5 wash cloths, 2 combs, 1 nail clipper[ ], 2 cream rinse[s], 10 lotions, 3 toothbrushes, 1 toothpaste, 1 electric razor, 2 pair[s] of gloves, 1,000 photographs, 6 bar[s] of soap, 2 knee braces, and 3 pair[s] of sneakers." Compl. at ¶ 61.

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (emphasis omitted). This Circuit has held that "confiscation ... [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of state court post-deprivation remedies" in the New York penological system. Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir.1996); see also Parratt v. Taylor, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

*16 Because "New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates," Nash v. McGinnis, 585 F.Supp.2d 455, 461 (W.D.N.Y.2008) (citing, inter alia, Koehl v. Dalsheim, 85 F.3d at 88), we find that Plaintiff's constitutional due process rights were not violated and recommend that the Court **dismiss** this claim.

## C. Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m) . FN13 Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, dismissing the case without prejudice as to that defendant. Id.

> FN13. Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L .R. 4.1(b).

In this case, there is no indication that the Defendants named in the Complaint as "Osman Yildiz" and "Sue Ann Smith" have been properly served. See Dkt. Nos. 26 & 27, Lt. (indicating that Sullivan Correctional Facility does not have employees named Osman Yildiz or Susan Ann Smith). FN14

> FN14. The Court notes, however, that Cathy Y. Sheehan, Esq., has been assigned on the case docket as representing Sue Ann Smith. However, a review of the Notices of Appearance Attorney Sheehan filed on behalf of the Defendants, see Dkt. Nos. 30, 37, & 42, as well as the Notice of Defendants' Motion to Dismiss, see Dkt. No. 41, shows no mention of Defendant Sue Ann Smith. The Clerk of the Court is directed to correct this mistaken oversight and re-

move Attorney Sheehan as counsel to Sue Ann Smith.

Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims against these Defendants lack merit, granting Plaintiff the opportunity to properly serve them would be futile. Thus, it is recommended that Plaintiff's claims against Defendants Yildiz and Smith be **dismissed.**

Furthermore, Defendant Curtis Drowns is deceased. *See* Dkt. No. 25, Lt. Federal Rule of Civil Procedure 25(a)(1) provides that if a party dies and the claim is not extinguished by the party's death, substitution of the proper party may occur. A motion for substitution may be made by any party, and the motion must be served on the parties as provided in Federal Rule of Civil Procedure 5, and served upon non-parties as one would serve a summons pursuant to Rule 4. FED. R. CIV. P. 25(a)(1). Further, unless a motion for substitution is made within 90 days after the death is "suggested upon the record by service of a statement of the fact of the death as provided [in the rule] for the service of the motion," the action will be dismissed as against the deceased party. *Id.*

Here, neither Plaintiff nor any Defendant has moved for a motion of substitution. The "rule makes it clear that any party may make a motion for substitution, but as soon as a 'suggestion of death' is filed, the motion for substitution must be made within 90 days." *Withrow v. Taylor,* 2007 WL 3274858, at *2 (N.D.N.Y. Nov.5, 2007) (citing FED. R. CIV. P. 25(a)(1)). There are two affirmative steps required to file a "proper suggestion of death" sufficient to trigger the 90–day time limitation: first, the death must be "formally" suggested "upon the record;" second, the "suggesting party" must serve other parties and non-party successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute. *See id.* at *2–*3 (quoting *George v. United States,* 208 F.R.D. 29,

31 (D.Conn.2001) (internal citations omitted)).

**\*17** In this case, William M. Gonzalez, Esq., Deputy Counsel of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed a letter on April 29, 2011, indicating that Defendant Drowns was deceased. Dkt. No. 25. Plaintiff has not responded nor requested any action from the Court regarding this letter, even though Plaintiff was served with the letter. It is unclear, however, if Attorney Gonzalez or Defendants complied with the requirements for a proper suggestion of death, because there is no indication that the decedent's representative was served. Although technically the Plaintiff's time to move for substitution would not begin to run until a proper suggestion of death is filed, because this Court finds that Plaintiff's claims against Defendant Drowns are meritless and is recommending dismissal, there is no need for substitution of a personal representative.

### D. Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims. *See Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (internal citations omitted); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Thus, a defendant may not be liable for damages simply by virtue of holding a supervisory position. *See, e.g., Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Rather, the personal involvement of a supervisory defendant may be shown when:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d at 873.FN15

> FN15. Several lower courts have struggled with the impact *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) had upon *Colon,* and specifically whether *Iqbal* calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See Sash v. United States,* 674 F.Supp.2d 531, 543 (S.D.N.Y.2009) (collecting cases). Because the Second Circuit has not yet issued a decision settling this matter, *Colon* remains good law.

Defendants contest that Defendants Bezio and Fischer were not personally involved in any of Plaintiff's alleged constitutional violations, but instead were included by virtue of their supervisory positions only. We agree. Plaintiff alleged that Defendant Bezio and Fischer approved transfers of Plaintiff between correctional facilities and authorized him to be placed in the SHU. Compl. at ¶¶ 59, 61, & 64. Further, on three different occasions, Defendant Bezio reversed the sanctions that hearing officers levied on Plaintiff pursuant to disciplinary hearings. *See* Compl. at ¶¶ 38, 39(b) & 41. These claims are insufficient to state direct participation by the Defendants in any constitutional violation, that the Defendants' policies allowed the continuance of constitutional violations, or that the Defendants were negligent in their supervision of subordinates, besides conclusory statements that they were. Therefore, to the extent supervisory liability is alleged based on any cause of action we recommend proceeding forward, such as excessive force, Plaintiff has failed to allege the personal involvement of any supervisor.

**E. Eleventh Amendment**

*18 Plaintiff brings this action against each Defendant in his or her individual and official capacity and seeks both monetary compensation and injunctive relief. Compl. at ¶¶ 89–92.

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although by its terms, the amendment bars suit by citizens of one State against another State, the Supreme Court has held that such amendment similarly bars suits against a State by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.' " *Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the State, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. at 98; *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993); *Daisernia v. State of New York,* 582 F.Supp. 792, 796 (N.D.N.Y.1984). To the extent a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.,* 915 F.Supp. 525, 539 (N.D.N.Y.1995) (citing, *inter alia, Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994)); *see also Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir.1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer ....").

In appropriate circumstances, the jurisdictional bar of the Eleventh Amendment may immunize a state official acting in his or her official capacity. *See In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir.2007) (citation omitted). However, under the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a suit may proceed against a state official in his or her official capacity—notwithstanding the Eleventh Amendment—when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency,* 482 F.3d at 618 (quotations and citations omitted).

In his Complaint, Plaintiff seeks declaratory relief as well as compensatory damages. It is not clear from this pleading, however, whether by seeking declaratory relief, Plaintiff is in any way seeking prospective relief. Plaintiff also is no longer incarcerated, as he was released from DOCCS custody on November 10, 2009. *See* New York State DOCCS, Inmate Population Information Search, *available at* http://nysdoccslookup.docs.state.ny.us (last visited February 16, 2012, search for Department Identification Number ("DIN") 93–A–5631); *see also* Dkt. No. 50, Pl. Lt.[FN16] Therefore, any claim for prospective relief would invariably be denied as moot. *Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir.1989) (noting that the prisoner's transfer to another facility renders his claims for declaratory and injunctive relief moot); *Hallett v. New York State Dep't of Corr. Servs.,* 109 F.Supp.2d 190, 196 (S.D.N.Y.2000) (noting that upon plaintiff's release from prison, he was "no longer incarcerated under the supervision of any of the named defendants," thus rendering moot his requests for injunctive and declaratory relief). As such, all claims for relief against all Defendants in their official capacities should be **dismissed** pursuant to the Eleventh Amendment. However, such claims for compensatory damages may be pursued against the Defendants in their individual capacities consistent with the recommendations stated herein.

FN16. "When determining the sufficiency of plaintiff's claims, for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's complaint, to documents attached to the complaint as an exhibit or incorporated by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in brining suit." *Wachtmeister v. Swiesz,* 2002 WL 1585526, at *2 (N.D.N.Y. June 12, 2002) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). This Court takes judicial notice of the fact that Plaintiff was released from DOCCS custody. *See Marcus v. AT & T Corp.,* 938 F.Supp. 1158, 1164–65 (S.D.N.Y.1996) (stating that a court may take judicial notice of public documents even if not included in or attached to the plaintiff's complaint).

### F. Qualified Immunity

**\*19** The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Firzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). The doctrine protects public officials from "personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service." *Eng v. Coughlin,* 858 F.2d at 895.

Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. at 815). The only pleading filed in the present case is the Plaintiff's Complaint. Defendants have not raised this affirmative defense in a responsive pleading as set forth in FED. R. CIV. P. 8(c), but rather in their memorandum of law in support of

their Motion to Dismiss. *See* Dkt.No. 47–1, at pp. 18–19. Generally, however, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983); *see also McKenna v. Wright,* 386 F.3d 432, 435 (2d Cir.2004) (quoting *Green* ). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; in such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall,* 22 F.Supp.2d 156, 162 (S.D.N.Y.1998) (citing *Green v. Maraio,* 722 F.2d at 1019; *see also McKenna v. Wright,* 386 F.3d at 434–55 (noting that the "qualified immunity defense can be presented in a Rule 12(b)(6) motion, but that the defense faces a formidable hurdle").

Pursuant to this Court's analysis, the remaining claims are excessive force claims against Defendants Signorella and Forbes, a due process claim against Defendant Wolczyk, and retaliation claims against Defendants Gardner and Smith. A fair reading of the Complaint does not give rise to the qualified immunity defense at this juncture. Indeed, it cannot be said that Plaintiff's rights were not clearly established at the time of the alleged constitutional violations. If a plaintiff had a "clearly established, constitutionally protected right that was violated, [Defendants] must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law." *Gill v. Hoadley,* 261 F.Supp.2d 113, 125 (N.D.N.Y.2003) (citing, *inter alia, Harhay v. Town of Ellington Bd. of Educ. .,* 323 F.3d 206, 211 (2d Cir.2003)); *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Lewis v. Cowan,* 165 F.3d 154, 166 (2d Cir.1999). Thus, the inquiry depends on the reasonableness of the Defendants' acts. The Second Circuit has held, however, that such analysis "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 793 (2d Cir.2002). For these reasons, any adjudication as to the applicability of the quali-

fied immunity affirmative defense would be premature since "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee,* 332 F.Supp.2d 659, 666 (S.D.N.Y.2004).

### G. Protective Order Barring Discovery

**\*20** Defendants also move for a protective order staying discovery pending the resolution of defendant's motion to dismiss, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure. That rule provides, in relevant part, that

[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery.

FED. R. CIV. P. 26(c)(1); *see also Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y.2002) (granting stay of discovery pending determination of motion to dismiss where court found defendants presented "substantial arguments" for dismissal of many if not all of the claims in the lawsuit); *United States v. Cnty. of Nassau,* 188 F.R.D. 187, 188–89 (E.D.N.Y.1999) (granting stay of discovery during the pendency of a motion to dismiss where the "interests of fairness, economy and efficiency ... favor[ed] the issuance of a stay of discovery," and where the plaintiff failed to claim prejudice in the event of a stay).

This Court notes, however, that the Defendants have not yet filed an answer and a scheduling order mandating and setting forth a time-table for discovery has not yet been issued. Thus, no discovery has occurred, and this request is moot.

### III. CONCLUSION

For the reasons stated herein, it is hereby

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt. No. 47) be **granted in part** and **denied in part** as follows:

1. To the extent asserted, Eighth Amendment excessive force claims against Defendants Signorella and Forbes, relating to an assault on Plaintiff at St. Luke's Hospital, should survive Defendants' Motion and proceed to discovery;

2. To the extent asserted, retaliation claims against Defendant Gardner, relating to his confinement of Plaintiff in SHU under involuntary protective custody status pursuant to complaints Plaintiff made, and against Defendant Smith, relating to his request to transfer Plaintiff pursuant to Plaintiff's filing of grievances against Defendant Smith, should survive Defendants' Motion and proceed to discovery;

3. To the extent asserted, due process claims against Defendant Wolczyk, relating to the disciplinary hearing of December 10, 2009, which he presided over, should survive Defendants' Motion and proceed to discovery;

4. To the extent asserted, and should the District Court adopt the above recommendations, Plaintiff's First Amendment and RLUIPA claim against Defendant Fischer should be **dismissed without prejudice** and Plaintiff be **granted leave to amend** his Complaint within thirty (30) days of the date of such adoption that is consistent with the recommendations made herein;

5. All other asserted claims against all other Defendants be **dismissed** for failure to state a claim; and it is further

**\*21 ORDERED,** that the Clerk of the Court remove Cathy Y. Sheehan, Esq., as counsel for the unserved Defendant Sue Ann Smith; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

N.D.N.Y.,2012.
Hamilton v. Fisher
Not Reported in F.Supp.2d, 2012 WL 987374 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 987122 (N.D.N.Y.)
**(Cite as: 2012 WL 987122 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Derrick HAMILTON, Plaintiff,
v.
Brian FISHER [FN1], Commissioner of New York
State Department of Correctional Services, Joseph
T. Smith, Superintendent of Shawangunk Corr.,
John Maly, Deputy Shawangunk Corr. Fac., Kay
Knott, Deputy of Shawangunk Corr. Fac., Dennis
Giglio, Captain of Shawangunk Corr. Fac., G.
Gardner, Lieutenant of Shawangunk Corr. Fac.,
R.K. Woods, Superintendent of Shawangunk Corr.
Fac., M. Sheahan, Deputy Supt. of Shawangunk
Corr. Fac., Sergeant Brand, Upstate Corr. Fac.,
Curtis Drowns, Commissioner Hearing Officer,
Norman Bezio, Director of Special Housing, H.
Moss, Sergeant Shawangunk Corr. Fac., M. Si-
gnorella, Corr. Officer, Shawangunk Corr. Fac., D.
Forbes, Corr. Officer, Shawangunk Corr. Fac., Joe
Wolczyk, Commissioner Hearing Officer, Neil
Hochman, Psychologist, Shawangunk Corr. Fac.,
Susan Strickland, Mental Health Unit Chief Auburn
Corr. Fac., Osman Yildiz, Social Worker, Sullivan
Corr. Fac., Sue Ann Smith, Unit Chief, Sullivan
Corr. Fac., Doctor Mahmud, Psychiatrist, Sullivan
Corr. Fac., Doreen Faber, Social Worker, Auburn
Corr. Fac., Christopher P. Mayer, Unit Chief, Au-
burn Corr. Fac., Defendants.

FN1. The correct spelling of defendant's
name is "Brian Fischer".

No. 9:10–CV–1066 (MAD/RFT).
March 22, 2012.

Derrick Hamilton, New Haven, CT, pro se.

Hon. Eric T. Schneiderman, Attorney General of
the State of New York, Cathy Y. Sheehan, Esq., of
Counsel, Albany, NY, for Defendants.

**ORDER**

MAE A. D'AGOSTINO, District Judge.

**\*1** In this *pro se* action under 42 U.S.C. § 1983
, plaintiff, an inmate in the custody of the New
York State Department of Correctional and Com-
munity Supervision ("DOCCS"), claims that de-
fendants violated his Eighth Amendment rights,
First Amendment rights and Due Process rights.
Additionally, plaintiff alleges that defendants reta-
liated against him for filing grievances and conspired
against him. Defendants' moved to dismiss the
amended complaint pursuant to Fed.R.Civ.P.
12(b)(6) (Dkt. No. 47). The motions were referred
to United States Magistrate Judge Randolph R.
Treece for a Report–Recommendation pursuant to
28 U.S.C. § 636(b) (1)(B) and Local Rule 72.3(c).
Magistrate Judge Treece issued a Reportmendation (Dkt. No. 52) recommending that de-
fendants' motion to dismiss be granted in part and
denied in part. [FN2]

> FN2. The Clerk is directed to append
> Judge Treece's Report–Recommendation to
> this decision, and familiarity is presumed.
> (Dkt. No. 52).

When a party files specific objections to a ma-
gistrate judge's report-recommendation, the district
court makes a *"de novo* determination of those por-
tions of the report or specified proposed findings or
recommendations to which objection is made." 28
U.S.C. § 636(b)(1). When a party fails to make spe-
cific objections, however, the court reviews the ma-
gistrate judge's report for clear error. *See Farid v.
Bouey,* 554 F.Supp.2d 301, 307 (N.D.N.Y.2008);
*see also Gamble v. Barnhart,* No. 02CV1126, 2004
WL 2725126, \*1 (S.D.N.Y. Nov. 29, 2004)
(citations omitted). After the appropriate review,
"the court may accept, reject, or modify, in whole
or in part, the findings or recommendations made
by the magistrate judge." 28 U.S.C. § 636(b)(1).

After careful review of all of the papers herein,
including the Magistrate Judge's Re-

Not Reported in F.Supp.2d, 2012 WL 987122 (N.D.N.Y.)
**(Cite as: 2012 WL 987122 (N.D.N.Y.))**

port–Recommendation, and no objections submitted thereto, it is

**ORDERED** that:

**1.** Magistrate Judge Treece's Report–Recommendation and Order is **ADOPTED** for the reasons stated therein.

**2.** The Clerk of the Court shall serve a copy of this Order and Magistrate Judge Treece's February 29, 2012 Report–Recommendation and Order on all parties in compliance with the Local Rules.

**IT IS SO ORDERED.**

N.D.N.Y.,2012.
Hamilton v. Fisher
Not Reported in F.Supp.2d, 2012 WL 987122 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

Ⓗ

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Angelo ORTIZ, Plaintiff,
v.
DEPARTMENT OF CORRECTION of the CITY OF
NEW YORK, et al., Defendants.
No. 08 Civ. 2195(RJS)(HBP).

April 29, 2011.
*REPORT AND RECOMMENDATION*

PITMAN, United States Magistrate Judge.
**\*1** TO THE HONORABLE RICHARD J.
SULLIVAN, United States District Judge,
I. *Introduction*

Plaintiff Angelo Ortiz, a former inmate on Rikers
Island, commenced this action *pro se* against the
Department of Correction of the City of New York
("NYCDOC") and five individual defendants pursuant to
42 U.S.C. § 1983 ("Section 1983"). Ortiz alleges he was
subjected to unsanitary conditions in violation of his
Eighth Amendment right against cruel and unusual
punishment. On consent, the NYCDOC was dismissed
from this action on August 10, 2010 (Docket Item 51).

By notice of motion dated September 22, 2010
(Docket Item 57), individual defendants Correction
Officer Tamika Hernandez, Correction Officer Kaia
Sweeting, Correction Officer Petchula Harris, Deputy
Warden Yolanda Canty and Captain Kelly Lester move to
dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure. For the reasons set
forth below, I respectfully recommend that the motion be
granted.

II. *Facts*[FN1]

> **FN1.** The facts set forth herein are drawn from
> plaintiff's second amended complaint (Second

Amended Complaint, dated May 2, 2009
(Docket Item 30)) unless otherwise noted.

Plaintiff's claim arises from allegedly unsanitary
conditions he was subjected to while in the custody of the
NYCDOC and incarcerated at Rikers Island. On three
occasions between December 3 and December 14, 2007,
the toilet in plaintiff's cell overflowed and contaminated
the cell with the products of elimination. The flooding was
apparently the result of a drainage problem that the
NYCDOC was attempting to rectify; plaintiff was told a
plumber had been called.

On December 3, 2007, plaintiff noticed that his toilet
was overflowing as soon as he was transferred into his cell
in the 11th Lower Housing Unit. He alerted Hernandez,
who told plaintiff that he "better get use [sic] to it" and
that this had been going on for "the long's," which I take
to mean a long time. [FN2] When plaintiff asked to be moved
to a different cell, Hernandez told him that he must wait
until the plumber fixed the drain. Plaintiff also noticed
human waste coming out of the drain outside his cell. At
approximately 4 p.m. that day, plaintiff was moved. After
the flooding, plaintiff was not given appropriate
equipment (an unspecified "mask" and gloves) to clean his
cell. He told the deputy in charge that he was sick from the
smell and that he had "a tumor in [his] head." He was told
to go sit in the dayroom.

> **FN2.** Plaintiff handwrote his second amended
> complaint on a form complaint. He also
> handwrote his response to the motion to dismiss.
> Although plaintiff frequently used improper
> grammar, his submissions are understandable.

On December 8, 2007, plaintiff awoke to find that
another sewage overflow had flooded his cell; the sewage
touched his feet. His entire unit was sent to the gym for
four hours. When he returned to his cell, he again cleaned
his cell without a mask or gloves.

On the evening of December 13, 2007, plaintiff's cell
flooded again due to a sewage overflow, and he slept in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

the dayroom on chairs and tables. The next day, when plaintiff asked a captain if he could be moved, another captain was called. The second captain handcuffed plaintiff, told him to keep quiet and moved him to intake, where plaintiff slept on the floor. Plaintiff was then relocated to another part of the prison and later moved to another facility. He never again slept in his cell in the 11th Lower Housing Unit.

**\*2** Plaintiff claims he suffered severe headaches and dizziness as a result of the flooding. He seeks $100,000 in damages for pain and suffering, emotional stress and neglect.

III. *Analysis*

A. *Standards Applicable to a Motion to Dismiss*

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. *See City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). " '[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). The Court also may consider "matters of which judicial notice may be taken." *Leonard T. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999) (citing *Allen v. WestPoint–Pepperill, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)). In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d

331, 333 (S.D.N.Y.2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed.1997)).

*Hoffenberg v. Bodell,* 01 Civ. 9729(LAP), 2002 WL 31163871 at \*3 (S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007); *Johnson & Johnson v. Guidant Corp.,* 525 F.Supp.2d 336, 345–46 (S.D.N.Y.2007) (Lynch, D.J.).

The Supreme Court has clarified the proper mode of inquiry to evaluate a motion to dismiss pursuant to Rule 12(b)(6), which uses as a starting point the principle that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

[I]n *Bell Atl [antic] Corp. v. Twombly,* 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)[,] that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly,* a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**\*3** *Talley v. Brentwood Union Free Sch. Dist.,* 08 Civ. 790, 2009 WL 1797627 at \*4 (E.D.N.Y. June 24, 2009).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do .... Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ....

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) (citations, internal quotations and alterations omitted).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

In evaluating a motion under Rule (12)(b)(6), the court must determine whether the plaintiff has alleged any facially plausible claims. *See Smith v. NYCHA,* No. 09–4473–CV, 2011 WL 564294 at *1 (2d Cir. Feb. 18, 2011) (unpublished). A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1949 (internal quotations omitted). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1950, *quoting* Fed.R .Civ.P. 8(a)(2).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1949; *Reed Const. Data Inc. v. McGraw–Hill Cos., Inc.,* 09 Civ. 8578, 2010 WL 3835196 at *3 (S.D.N.Y. Sept. 14, 2010) (Sweet, D.J.). As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1950.

Nevertheless, where, as here, a plaintiff proceeds *pro se,* the complaint must be liberally construed to raise the strongest claims the allegations suggest. *Sims v. Blot,* 534 F.3d 117, 133 (2d Cir.2008); *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Tracy v. Freshwater,* 623 F.3d 90, 100–04 (2d Cir.2010) (observing that the requirement of "special solicitude" includes liberal construction of papers, "relaxation of the limitations on the amendment of pleadings," leniency in enforcing procedural rules, and

"deliberate, continuing efforts to ensure that a *pro se* litigant understands what is required of him.") (citations omitted); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006).

B. *Exhaustion Requirement*

**\*4** The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Handberry v. Thompson,* 446 F.3d 335, 341 (2d Cir.2006); *Oates v. City of New York,* 02 Civ. 5960(GEL), 2004 WL 1752832 at *1 (S.D.N.Y. Aug. 4, 2004) (Lynch, D.J.). However, while "the PLRA establishes a mandatory exhaustion requirement, it does not create a jurisdictional predicate to our ability to hear the appeal." *Handberry v. Thompson, supra,* 446 F.3d at 342, *citing Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003). Thus, "[t]he failure to exhaust available administrative remedies is an affirmative defense ... [that] is waivable." *Handberry v. Thompson, supra,* 446 F.3d at 342, *quoting Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004); *accord Johnson v. Rowley, supra,* 569 F.3d at 45; *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004); *Hobson v. Fischer,* 10 Civ. 5512(SAS), 2011 WL 891314 at *2 n. 22 (S.D.N.Y. Mar. 14, 2011) (Scheindlin, D.J.); *Banks v. Stewart,* 08 Civ. 7463(RJS)(THK), 2010 WL 2697075 at *2 (S.D.N.Y. July 6, 2010) (Sullivan, D.J.) (adopting Report and Recommendation), *quoting Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006).

Defendants do not argue that plaintiff failed to exhaust his administrative remedies. Therefore, I conclude that defendants have waived this defense.

C. *Standards Applicable to Section 1983 Claims*

Section 1983 imposes liability on individuals who, while acting under the color of state law, violate an individual's federally-protected rights. *Perkins v. Brown,* 285 F.Supp.2d 279, 283 (E.D.N.Y.2003); *Johnson v. Bendheim,* 00 Civ. 720(JSR), 2001 WL 799569 at *5

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

(S.D.N.Y. July 13, 2001) (Rakoff, D.J.). Plaintiff alleges that defendants violated his Eighth Amendment right against cruel and unusual punishment by subjecting him to the unsanitary conditions of repeated toilet overflows.

A jailed individual is protected by the United States Constitution against deliberate indifference to conditions that pose a substantial risk of serious harm to his physical well-being. If the individual is a sentenced prisoner, the source of protection is the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994) (citations omitted). If the individual is a pretrial detainee, the source of protection is the Due Process Clause of the Fourteenth Amendment. *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). It is unclear whether plaintiff was a pretrial detainee or was serving a sentence at the time of the events alleged in the complaint, but this ambiguity is of no moment because the Fourteenth Amendment provides substantially the same protection to pretrial detainees that the Eighth Amendment provides to sentenced prisoners. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979); *Weyant v.. Okst, supra,* 101 F.3d at 856; *Bryant v. Maffucci,* 923 F.2d 979, 983 (1991); *see also Caiozzo v. Koreman,* 581 F.3d 63, 70 (2d Cir.2009) ("We have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment." (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000)). Moreover, "[b]ecause the due process rights of pretrial detainees are 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' and the same standard applies, cases cited that refer to the Eighth Amendment are thus applicable to the conditions of confinement claims alleged here." *Pine v. Seally,* No. 9:09–CV–1198 (DNH/ATB), 2011 WL 856426 at *3 n. 12 (N.D .N.Y. Feb. 4, 2011), *quoting City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983).

**\*5** The Eighth Amendment prohibits "cruel and unusual punishments." In *Wilson v. Seiter,* 501 U.S. 294, 296–302 (1991), the United States Supreme Court addressed an inmate's claim that prison conditions violated the Eighth Amendment's prohibition against cruel and unusual punishment and noted that "[t]he Constitution ... 'does not mandate comfortable prisons,'" ... and only those deprivations denying 'the minimal civilized measure of life's necessities,' ... are sufficiently grave to form the

basis of an Eighth Amendment violation." *Wilson v. Seiter, supra,* 501 U.S. at 298, *quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 349 (1981); *Salahuddin v. Goord,* 467 F.3d 263, 267 (2d Cir.2006).

In *Farmer v. Brennan, supra,* 511 U.S. at 834, the Supreme Court articulated a two-part test with both objective and subjective components for determining whether prison conditions violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious.' " *Farmer v. Brennan, supra,* 511 U.S. at 834, *quoting Wilson v. Seiter, supra,* 501 U . S. at 298; *see also Hudson v. McMillian, supra,* 503 U.S. 1, 5 (1992). For claims premised on "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan, supra,* 511 U.S. at 834 (1994), *citing Helling v. McKinney,* 509 U.S. 25, 35 (1993).

Additionally, the Supreme Court required that "a prison official must have a 'sufficiently culpable state of mind.' " *Farmer v. Brennan, supra,* 511 U.S. at 834, *quoting Wilson v. Seiter, supra,* 501 U.S. at 297; *see also Wilson v. Seiter, supra,* 501 U.S. at 302–303; *Hudson v. McMillian, supra,* 503 U.S. at 8; Trammell v. Keane, *supra,* 338 F.3d at 161. In cases involving prison conditions, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan, supra,* 511 U.S. at 834, *quoting Wilson v. Seiter, supra,* 501 U.S. at 302–03; *see also Helling v. McKinney, supra,* 509 U.S. at 34–35; *Hudson v. McMillian, supra,* 503 U.S. at 5; *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Hines v. Lacy,* 189 F.3d 460, 1999 WL 642915 at *3 (2d Cir.1999) (unpublished) (internal citations omitted); *Lyncee v. Jenks,* 98 Civ. 3638(RCC), 2000 WL 343893 at *2–*3 (S.D.N.Y. Mar. 31, 2000) (Casey, D.J.). An official acts with deliberate indifference when she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan, supra,* 511 U.S. at 837; *see also Wilson v. Seiter, supra,* 501 U.S. at 298–302 (1991); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). "The subjective element requires a state of mind that is the equivalent of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

criminal recklessness ...." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

**\*6** A Section 1983 claim will not lie for prison conditions that are merely unpleasant. However, chronic exposure to human waste will give rise to a colorable claim. In *Gaston v. Coughlin,* 249 F.3d 156, 165–66 (2d Cir.2001), the Second Circuit reinstated an inmate's Eighth Amendment claim against two defendants where the area in front of the inmate's cell "was filled with human feces, urine, and sewage water" for several consecutive days. There, the Court of Appeals stated that it was "unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end." *Gaston v. Coughlin, supra,* 249 F.3d at 166. Similarly, in *LaReau v. MacDougall,* 473 F.2d 974, 977–79 (2d Cir.1972), the Second Circuit held that an inmate who spent five days in a cell that contained only a grate-covered hole in the floor for a toilet, which could only be flushed from the outside, was deprived of his Eighth Amendment rights. "Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted. The indecent conditions that existed in this ... cell seriously threatened the physical and mental soundness of its unfortunate occupant." *LaReau v. MacDougall, supra,* 473 F.2d at 978; *see also Wright v. McMann,* 387 F.2d 519, 522, 526 (2d Cir.1967) (finding 33–day placement of prisoner in strip cell which was "fetid and reeking from the stench of the bodily wastes of previous occupants which ... covered the floor, the sink, and the toilet," combined with other conditions, violated Eighth Amendment); *Smith v. United States,* No. 9:09–CV–729 (TJM/DRH), 2011 WL 777969 at \*2, \*11 (N.D.N.Y. Feb. 3, 2011) (Report and Recommendation), *adopted by,* 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011) (denying motion for summary judgment where inmate alleged that officers "refused to flush the toilet or provide the inmates with toilet paper for two weeks," causing overflow of human waste to spill onto cell floor and inmate to become "nauseous and lightheaded from the odor").

Courts outside of this Circuit have reached the same result where exposure to sewage lasts for a substantial period of time. *See McCord v. Maggio,* 927 F.2d 844, 846–47 (5th Cir.1991) (finding Eighth Amendment violation where inmate lived in cell for two years and slept on floor for months "into which rain water and backed-up sewage leaked"); *Williams v. Adams,* 935 F.2d 960, 961–62 (8th Cir.1991) (reversing grant of summary judgment for defendants where plaintiff alleged "that the toilet in the cell did not work" and overflowed continuously "and the floor stay[ed] filthy with its wast[e]" over 13–day period); *Howard v. Adkison,* 887 F.2d 134, 136–38 (8th Cir.1989) (Eighth Amendment violation sufficiently proven where inmate lived for two years in cell where walls, door and food slot "were covered with human waste," mattress was "stained with urine and human waste" and pleas for remedial measures went unanswered); *McCray v. Sullivan,* 509 F.2d 1332, 1336 (5th Cir.1975) (finding conditions in isolation cells where inmates lived for as long as 21 days violated Eighth Amendment where waste "frequently" overflowed onto the floors of the cells); *Looper v. Sanders,* Civil No. 6:10–cv–06037, 2011 WL 861714 at \*4–\*5, \*8 (W.D.Ark. Mar. 10, 2011) (denying defendants' motion for summary judgment where plaintiff was exposed to raw sewage for over 10 months); *Jones v. Sanders,* No. 08–6035, 2009 WL 2432632 at \*7 (W.D.Ark. Aug. 7, 2009) (Report and Recommendation) (recommending denial of defendants' motion for summary judgment where plaintiff was exposed to raw sewage for a month and a half).

**\*7** On the other hand, where exposure to such waste is intermittent or limited to a matter of hours, courts normally will not entertain such actions. "The Eighth Amendment is generally not violated ... where unsanitary conditions are temporary." *Kee v. Hasty,* 01 Civ. 2123(KMW)(DF), 2004 WL 807071 at \*26 n. 24 (S.D.N.Y. Apr. 14, 2004) (Freeman, M.J.) (Report and Recommendation), *citing McNatt v. Unit Manager Parker,* No. 3:99 Cv. 1397(AHN), 2000 WL 307000 at \*4 (D.Conn.2000); *Whitnack v. Douglas County,* 16 F.3d 954, 955–58 (8th Cir.1994) (reversing jury verdict for plaintiff and finding no violation based on 24–hour exposure to vomit in sink, dried feces on toilet seat and dried urine puddles on floor before cleaning supplies were made available); *Prellwitz v. Anderson,* Civil No. 07–2120 (PAM/JSM), 2007 WL 2033804 at \*2–\*3 (D.Minn. July 12, 2007) (granting motion to dismiss under 28 U.S.C. §

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

1915A(b) where waste water on cell floor lasted only three hours and odor of inoperable toilet lasted six hours); *Odom v. Keane,* 95 Civ. 9941(SS), 1997 WL 576088 at *5 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, D.J.) (condition where toilet failed to flush between 9 p.m. and 7 a.m. for several months "does not amount to cruel and unusual punishment"); *Evans v. Fogg,* 466 F.Supp. 949, 950 (S.D.N.Y.1979) (Lasker, D.J.) ("To be kept in a refuse-strewn cell for 24 hours and in a flooded cell (a condition resulting from [plaintiff's own acts) for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment.").

In *Burkholder v. Newton,* 116 F. App'x 358, 363 (3d Cir.2004), the Third Circuit affirmed the dismissal of the complaint where a prisoner alleged his toilet often overflowed during a 30–day period. "It is questionable if having ... a toilet that backs up sometimes is really an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.' " *Burkholder v. Newton, supra,* 116 F. App'x at 363, *quoting Sandin v. Conner,* 515 U.S. 472, 484 (1995). *But see DeSpain v. Uphoff,* 264 F.3d 965, 971–72 (10th Cir.2001) (reversing grant of summary judgment for defendants where plaintiff alleged that a unit-wide backup of the plumbing system lasted 36 hours); *Sherman v. Gonzalez,* No. 1:09–cv–00420–LJO–SKO PC, 2010 WL 2791565 at *4–*6, *8 (E.D.Cal. July 14, 2010) (Report and Recommendation), *adopted by,* 2010 WL 3432240 (E.D.Cal. Aug. 31, 2010) (denying defendants' motion to dismiss where prisoner was left in his cell for five hours following toilet overflow that prompted prison officials to leave building).

Where an inmate's exposure to waste lasts for three or four days, the Circuits are split. *Compare Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir.1996) (affirming summary judgment for defendants where plaintiff was subjected to an overflowing toilet in his cell for four days), *with McBride v. Deer,* 240 F.3d 1287, 1291–92 (10th Cir.2001) (vacating Rule 12(b)(6) dismissal where plaintiff alleged he was forced to live in "feces-covered cell" for three days), *and Sperow v. Melvin,* 182 F.3d 922, 1999 WL 450786 at *l–*3 (7th Cir.1999) (unpublished)

(reversing Rule 12(b)(6) dismissal where inmate "was subjected to appalling conditions" of waste-filled cell "for three full days"); *and Young v. Quinlan,* 960 F.2d 351, 355–56, 363–65, (3d Cir.1992), *superceded by statute on other grounds as stated in Ghana v. Holland,* 226 F.3d 175, 184 (3d Cir.2000) (reversing summary judgment for defendants where inmate was moved to "dry cell" without working toilet for 96 hours and forced to urinate and defecate in his cell).

**\*8** Under the subjective component of the two-prong test, a Section 1983 claim will not lie for conduct by prison officials that is merely negligent. *Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003) (affirming grant of summary judgment for defendants and finding no deliberate indifference, but at worst negligence, where inmate was left with one roll of toilet paper to last approximately nine days); *accord Dye v. Lomen,* 40 F. App'x 993, 994, 996–97 (7th Cir.2002) (no proof that defendants deprived plaintiff with toilet paper for several days to unnecessarily and wantonly inflict pain); *Harris v. Fleming,* 839 F.2d 1232, 1234–35 (7th Cir.1988) (finding defendants' neglect of plaintiff's need for toilet paper over five days "was not intentional, nor did it reach unconstitutional proportions"). "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny .... To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *accord County of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998), *citing Daniels v. Williams,* 474 U.S. 327, 328 (1986) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Kruzel v. County of Suffolk,* 23 F. App'x 95, 96 (2d Cir.2002); *John E. Andrus Mem'l, Inc. v. Daines,* 600 F.Supp.2d 563, 585 (S.D.N.Y.2009) (Seibel, D.J.); *Miner v. N.Y. State Dep't of Health,* 02 Civ. 3180(MBM), 2004 WL 1152491 at *5 (S.D.N.Y. May 24, 2004) (Mukasey, D.J.).

Finally, courts have dismissed plaintiffs' claims where there is no genuine issue of fact that defendants were deliberately indifferent to only a brief toilet overflow. *Lollis v. Page,* Civil No. 4:07–cv–4067, 2008 WL 853561

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

at *4 (W.D.Ark. Mar. 27, 2008) (defendant "supplied cleaning materials to Plaintiff" ten to fifteen minutes after toilet overflow); Brown v. Hickman, Civil No. 06–3035, 2007 WL 2806711 at *9–*10 (W.D.Ark. Sept. 25, 2007) (adopting Report and Recommendation) (although toilet overflowed for 4 1/2 hours and did not work for 22 hours, a plumber was called and defendant "checked the cell and saw only a small amount of water on the floor").

D. *Application of the Foregoing Principles to Plaintiff's Claim*

Judged by the standards set forth above, I conclude that plaintiff's claim does not survive the motion to dismiss. As an initial matter, the circumstances alleged by plaintiff are not sufficiently serious under the objective prong. Even if plaintiff's allegations are true, the conditions he describes did not pose a substantial risk of serious harm.

As the cases discussed above demonstrate, courts have generally distinguished claims based on an inmate's continuous and chronic exposure to waste from claims of only intermittent or brief exposure. Here, plaintiff alleges: (1) that he was exposed to a sewage overflow for an unspecified number of hours on December 3, 2007; (2) that he awoke to a second overflow on December 8, 2007, and was moved later that day, and (3) that a third overflow occurred on the night of December 13, 2007 which resulted in plaintiff being moved elsewhere. In each of these incidents, plaintiff was only exposed to waste for a relatively small number of hours; it appears that his total exposure was probably less than 24 hours. Although unpleasant, these incidents are simply too limited to withstand a motion to dismiss. In *Sherman v. Gonzalez, supra,* 2010 WL 2791565 at *4, the complaint was found to withstand a motion to dismiss because it alleged that plaintiff had actually "suffered significant physical harm from the conditions in his cell" and "was rushed to an outside hospital for emergency treatment after the unsanitary conditions triggered a severe asthma attack, and [that] his heart stopped temporarily." In contrast, plaintiff here never suffered from any similar conditions and only complained about headaches, dizziness and sickness. Plaintiff's allegation that he had "a tumor in [his] head" does not change the foregoing analysis. The allegation that plaintiff developed a tumor from transitory exposure to

sewage is fanciful and need not be credited here. "The law requires 'something more than a fanciful allegation' to survive a motion to dismiss." *Brown v. Lindemann,* 83 Civ. 6174(RLC), 1992 WL 147667 at *4 (S.D.N.Y. June 15, 1992) (Carter, D.J.), *quoting Contemporary Mission, Inc. v. United States Postal Serv.,* 648 F.2d 97, 100 (2d Cir.1981). I conclude, therefore, that the facts here are distinguishable from those in *Sherman v. Gonzalez, supra.*

**\*9** While the Second Circuit has stated that it was "unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement *for days on end," Gaston v. Coughlin, supra,* 249 F.3d at 166 (emphasis added), the conditions to which plaintiff was subjected here did not last "for days on end." Five days passed between each incident, and the exposure did not last for an entire day in any of the incidents. This, I conclude, distinguishes this case from the cases cited above in which a plaintiff's claim was sustained. Judges in this district have repeatedly declined to find that sporadic or brief exposures to waste represented cruel and unusual punishment. *Odom v. Keane, supra,* 1997 WL 576088 at *5; *Evans v. Fogg, supra,* 466 F.Supp. at 950. Similarly, in the cases cited above where Courts of Appeals have reversed Rule 12(b)(6) dismissals or grants of summary judgment in favor of defendants, the exposure to sewage and waste was of far longer duration than that alleged here.

Additionally, I note that in *Wesolowski v. Kamas,* 590 F.Supp.2d 431, 434–35 (W.D.N.Y.2008), *aff'd,* No. 09–2506–pr, 2011 WL 477583 (2d Cir. Feb. 11, 2011), the Honorable David G. Larimer, United States District Judge, stated that a "prison's failure to provide [plaintiff] with specific cleaning supplies or the magnitude of its response to an overflowed toilet elsewhere on the cell block, represent minor inconveniences of prison life which 'are part of the penalty that criminal offenders pay for their offenses against society' " (*quoting Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985)). I agree with Judge Larimer's analysis, and I conclude that plaintiff's allegations concerning the lack of cleaning supplies to represent a transitory problem, not a constitutional deprivation.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

Furthermore, even if plaintiff could satisfy the objective prong of a Section 1983 claim, his claim would still fail because he does not sufficiently allege that defendants were deliberately indifferent. Plaintiff does not sufficiently allege that defendants actually knew of and disregarded a substantial risk to plaintiff's health or safety, or that defendants were aware of facts from which they could have inferred that there was a substantial risk of serious harm, that they drew such an inference and that they disregarded it.

Although plaintiff claims that the defendants "all knew [the backed-up toilet in plaintiff's cell] was an on going problem, and did nothing about it," his own narrative in the second amended complaint contradicts this statement. He details the various attempts by prison officials to repair the sewage system and to relocate plaintiff and other inmates until the problem was resolved. There is a clear difference between cases where defendants allegedly knew about unsanitary conditions but did nothing and cases where officials actually acted to resolve or alleviate the problem, as they are alleged to have done here. *Compare Smith v. United States, supra, 2011 WL 777969 at \*2* (prison officials refused to flush inmates' toilet or provide inmates with toilet paper for two weeks). The complaint's specific factual allegations demonstrate that defendants repeatedly took steps to alleviate plaintiff's exposure to the overflowing toilet. During the first incident, plaintiff was told that a plumber had been called—which is the antithesis of deliberate indifference. The complaint also states that within hours of the first incident, plaintiff was moved. When plaintiff became sick from cleaning waste, prison officials let him leave his cell and sit in the dayroom. In the second incident plaintiff describes, the entire unit was moved to the gym. And during the third incident, plaintiff slept overnight in the dayroom one night, in intake the next night and never returned to his cell to sleep.

**\*10** Because plaintiff's claims do not "raise a right to relief above the speculative level," he has failed to state a claim. *Bell Atl. Corp. v. Twombly, supra,* 550 U.S. at 555 (citation omitted). Therefore, I respectfully recommend that the individual defendants' motion to dismiss be granted. FN3

FN3. While plaintiff's claims fail on the merits as to all individual defendants, Hernandez also appears to have a valid defense pursuant to Fed.R.Civ.P. 12(b)(2). As discussed above, service was not made on Hernandez (Docket Item 41). Defendants note this fact but argue that the complaint should be dismissed as to all defendants on Rule 12(b)(6) grounds (Defs.' Mem. at 2 n. 1). Because plaintiff has failed to state a claim, I need not reach the Rule 12(b)(2) issue.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I recommend that the individual defendants' motion to dismiss (Docket Item 57) be granted.

## V. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1)(C)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Richard J. Sullivan, United States District Judge, 500 Pearl Street, Room 640, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); United States *v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983) (*per curiam* ).

S.D.N.Y.,2011.

Ortiz v. Department of Correction of City of New York
Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2638137 (S.D.N.Y.)

(Cite as: 2011 WL 2638137 (S.D.N.Y.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Benjamin SMITH, Plaintiff,
v.
UNITED STATES of America; Dan Peterson, Factory
Manager, FCI Ray Brook; Susan Keiffer, Case
Manager, FCI Ray Brook; Federal Correctional
Industries (Unicor), FCI Florence, Florence, Colorado;
Mr. Felner, Unit Manager, FCI Ray Brook; D. Kirkby,
Factory Foreman, FCI Ray Brook; Mr. Lucas, Case
Manager, FCI Ray Brook; and T.R. craig, Facility
Superintendent, FCI Ray Brook, Defendants.
No. 9:09–CV–729 (TJM/DRH).

Feb. 3, 2011.
Benjamin Smith, Cumberland, MA, pro se.

Hon. Richard S. Hartunian, United States Attorney,
Charles E. Roberts, Esq., Assistant United States Attorney,
of Counsel, Syracuse, NY, for Defendants.

**REPORT–RECOMMENDATION AND ORDER**[FN1]

> **FN1.** This matter was referred to the undersigned
> for report and recommendation pursuant to 28
> U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

**\*1** Plaintiff pro se Benjamin Smith ("Smith"), a
federal prison inmate, brings this action under *Bivens v.
Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971),
alleging that defendants, six employees of the Ray Brook
Federal Correctional Institution ("Ray Brook"), violated
his constitutional rights under the First, Eighth, and
Fourteenth Amendments. Compl. (Dkt. No. 1). Smith also
alleges a product liability and negligence claim under the
Federal Tort Claims Act ("FTCA") against the individual
defendants as well as the United States and one of its

agencies.[FN2] *Id.* Presently pending is defendants' motion to
dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the
alternative, for summary judgment pursuant to
Fed.R.Civ.P. 56. Dkt. No. 23. Smith opposes the motion.
Dkt. Nos. 27, 33. For the following reasons, it is
recommended that defendants' motion be granted in part
and denied in part.

> **FN2.** A *Bivens* action cannot be asserted directly
> against the United States or federal agencies. *See
> F.D.I.C. v. Meyer,* 510 U .S. 471, 484–86 (1994)
> (refusing to extend *Bivens* to allow suits to be
> brought directly against the federal government
> or its agencies).

**I. Background**

The facts are related herein in the light most favorable
to Smith as the nonmoving party. *See* subsection II(B)
*infra.* The events in question occurred during Smith's
incarceration at Ray Brook. Liberally construing his
complaint, Smith asserts six causes of action concerning
a variety of matters.

**A. Interference With Mail**

In April 2006, Smith was involved in a civil action
that he filed against the City of Philadelphia. Compl. at 2.
At that time, defendant Keiffer, Smith's case manager at
Ray Brook, opened and read Smith's legal mail without his
authorization. *Id.* Keiffer also either failed to deliver a
deposition notice to Smith or failed to advise him of the
scheduled deposition, causing Smith to miss this
proceeding. *Id.* On April 28, 2006, Smith lodged an
informal complaint against Keiffer with defendant Felner,
a unit manager at Ray Brook. *Id.* On that same day,
Keiffer filed a disciplinary report noting that Smith failed
to report to a specified area of the facility to participate in
a "legal call" despite having been previously notified of
the appointment and paged by the control room. Smith
Decl. (Dkt. No. 27–1) Ex. A, at 3.

**B. Retaliation/False Disciplinary Reports**

Smith contends that Keiffer filed the April 28, 2006,
disciplinary report in retaliation for his complaint to

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

defendant Felner. Compl. at 2. This report was allegedly "swept under the rug" and essentially ignored by defendant Felner due to its "blatant retaliatory nature." *Id.* Smith filed a formal grievance against Keiffer on June 6, 2006, complaining that she opened and withheld his mail. Smith Decl., Ex. A, at 4. This grievance was denied by the warden, who noted that the legal mail was addressed to both Smith and Keiffer. *Id.* at 7a. The warden also asserted that Smith had received proper notice of the scheduled deposition but failed to attend. *Id.*

Smith claims that on August 3, 2006, defendants Keiffer and Lucas, a case manager at Ray Brook, threatened to retaliate against him if he continued to file grievances. Magnusson Decl. (Dkt. No. 23–6) at 24; Compl. at 3. Smith reported these threats to the Regional Office on August 16, 2006. Smith Decl., Ex. A, at 5–7. On August 17, 2006, Smith's custody classification score was changed from "Medium" to "High" by Keiffer and Lucas.[FN3] *Id.* at 7b; Magnusson Decl. at 24. Smith filed a grievance related to this classification score change on October 8, 2006 which was received on October 25, 2006. Smith Decl., Ex. A, at 7c. On November 2, 2006, Keiffer lodged a disciplinary report against Smith, charging him with threatening her with bodily harm and being insolent towards a staff member. *Id.* at 8; Fehlner Decl. (Dkt. No. 23–4) Ex. B. As a result of this incident, Smith spent three weeks in the Special Housing Unit ("SHU"). Compl. at 3.

> **FN3.** Smith has withdrawn his claim that his custody classification score was changed in retaliation for the grievances filed. *See* Dkt. No. 27 at 5. Thus, his retaliation claim involves only the allegedly fraudulent and retaliatory disciplinary reports regarding his failure to attend the deposition and his threatening conduct on November 2, 2006.

**\*2** In late 2006 and early 2007, Smith appealed numerous grievances to the Regional Office that had been denied by administrators at Ray Brook. Magnusson Decl. at 14, 16, 18, 20, 22, 24.[FN4] In all of these grievances, Smith complained that defendants erroneously raised his custody classification score and filed false disciplinary reports against him in retaliation for past grievances he lodged against Keiffer. *Id.* These appeals were addressed and denied as the reviewers confirmed that his custody

score appropriately reflected the severity of his criminal conviction. *Id.* at 15, 17, 19, 21, 23, 25. The administrators also found no evidence to substantiate Smith's allegations that the prison staff had retaliated against him. *Id.*

> **FN4.** As of April 2010, Smith had filed a total of 119 grievances through the Administrative Remedy Program. Magnusson Decl. at 2, ¶ 6.

### C. Biased Disciplinary Hearing Officer

As a result of the November 2, 2006, incident, a disciplinary hearing was held at which defendant Felner presided as the hearing officer. Compl. at 3; Felner Decl. ¶ 6. Smith maintains that Felner was biased against him based on his prior knowledge of the ongoing retaliation. Compl. at 3. Smith claims, and defendants deny, that during the hearing Felner stated that the assault charge would be dismissed "because he knew that Mrs. Keiffer was lying," but that he had to find Smith "guilty of something." *Id.;* Felner Decl. ¶ 9. At the conclusion of the hearing, Felner found that the charged conduct did not amount to a "High Severity" offense but did constitute the "Moderate Severity" offense of "Insolence." Felner Decl. ¶ 7. Felner then "informally resolved" the matter through verbal counseling and "extra duty," and recommended that Smith be released from the SHU. *Id.* ¶ 8.

### D. Inadequate Conditions of Confinement

While Smith was in the SHU, he shared the small cell with three other inmates. Compl. at 3. This cell had one toilet that had to be flushed by a corrections officer from outside the cell. *Id.* However, the corrections officers, who are not specifically named in the complaint, refused to flush the toilet or provide the inmates with toilet paper for two weeks. *Id.* Smith and the other inmates were forced to use pieces of clothing and napkins as toilet paper. *Id.* The toilet eventually overflowed, causing human waste to pour onto the floor of the cell. *Id.* Smith, who slept on a plastic mattress on the floor near the overflowing toilet, became nauseous and lightheaded from the odor. *Id.* Smith claims that the prison staff, particularly Fehlner, knew of but ignored these conditions. *Id.*

### E. Product Liability/Negligence

On June 12, 2007, Smith was sitting in an office chair

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

while working in the "factory" at Ray Brook. *Id.* at 4. As Smith leaned back, the chair broke, and he fell backward onto a sheared metal support bar. *Id.* at 4. This resulted in an injury to Smith's lower back. *Id.* Smith maintains that the chair, which had been manufactured by UNICOR[FN5] at the Florence Federal Correctional Facility in Florence, Colorado, was "defective." *Id.* Smith also asserts that defendant Peterson, factory manager at Ray Brook, and defendant Craig,[FN6] facility superintendent at Ray Brook, knew that this particular chair was defective but failed to take steps to protect him from this unsafe condition. *Id.*[FN7] Smith filed a claim with the Federal Bureau of Prisons seeking monetary damages for the injuries he received due to the allegedly defective chair. Magnusson Decl. at 50. This claim was rejected, and Smith was advised to seek a remedy through the Inmate Accident Compensation System instead.[FN8] *Id.*

> **FN5.** UNICOR, also known as Federal Prison Industries, is a government-owned corporation that employs and trains federal prison inmates, and produces various goods including office furniture. *See generally* UNICOR ONLINE, http://www.unicor.gov (last visited Jan. 21, 2011).

> **FN6.** It appears that Craig is the defendant previously identified as "John Doe." *See id.*

> **FN7.** Peterson maintains that the chair in question had been at Ray Brook since before he began working there. Peterson Decl. (Dkt. No. 23–7) ¶ 3. Peterson also denies having knowledge of any prior incidents involving the chairs at Ray Brook that would suggest they were defective or unsafe at the time of Smith's injury. *Id.*

> **FN8.** The Inmate Accident Compensation System provides "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." *18 U.S.C. § 4126*. This system affords the exclusive remedy for federal inmates who sustain work-related injuries while incarcerated. *United*

*States v. Demko,* 385 U.S. 149, 152 (1966). Moreover, *§ 4126* provides "the exclusive remedy when a work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel." *Moore v. United States,* No. 85–CV–1151, 1988 WL 70025, at *3–4 (N.D.N.Y June 30, 1988) (Munson, J.).

**\*3** Smith sought compensation pursuant to the Inmate Accident Compensation Act, but he was denied because his injuries were deemed "non-work-related." Smith Decl., Ex. E, at 41.

### F. Deliberate Indifference to Medical Needs

As a result of the fall caused by the broken chair, Smith suffered a puncture wound, measuring approximately 1/4″ in diameter, and bruising on his lower back. Compl. at 4. Smith contends that despite his obvious need for medical attention evidenced by "profuse" bleeding, his complaints of pain, and his inability to walk unassisted, defendants Peterson and Kirkby, factory foreman at Ray Brook, failed to request any medical treatment for him. *Id.* These defendants dismissed Smith's injury as "just a little blood," and Peterson ordered him to return to his cell at the end of the work shift. *Id.* Smith notes that two inmates had to help him walk back to his housing unit. *Id.* After returning to his cell, Smith continued to bleed from his back injury and remained in pain. *Id.* at 5. Over two and one-half hours later, medical personnel were summoned by the housing unit officer. *Id.* Smith filed several grievances complaining of inadequate medical treatment related to this incident. Magnusson Decl. at 26, 28, 30. These grievances and the subsequent appeals were denied, and the reviewing administrators found that Smith received proper and prompt medical care. *Id.* at 27, 29, 31.

### II. Discussion

Smith alleges that Keiffer intercepted his legal mail without his authorization and further violated his due process rights by failing to advise him of a pending civil deposition. Smith also alleges that after he filed grievances against Keiffer, Keiffer and Lucas retaliated by charging him with false disciplinary infractions and providing a biased hearing officer, Fehlner, at the subsequent

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

disciplinary hearing. Moreover, Smith claims that Fehlner was deliberately indifferent to the unsanitary conditions of the SHU, and Peterson and Kirkby were deliberately indifferent to his serious medical needs after he was injured on the broken chair. Finally, Smith alleges that Peterson and Craig failed to protect him from the unsafe chair, which had been defectively manufactured by the United States and UNICOR.

Defendants contend that: (1) any claims related to the interference with Smith's mail in April 2006 are barred by the statute of limitations; (2) Smith did not suffer any actual injury related to the interference with his mail; (3) Smith fails to state a claim for retaliation; (4) there is no support for Smith's conclusory allegation that the disciplinary hearing officer was biased; (5) the FTCA does not authorize suits against the United States based in strict liability; (6) defendants were not aware that the chair posed an excessive risk to Smith; (7) Smith's injury was not sufficiently serious for Eighth Amendment purposes; and (8) Smith's claim under the FTCA is barred by the Inmate Accident Compensation Act.

### A. Conversion of the Motion

**\*4** Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Federal Rule of Civil Procedure 56. In support of their motion, defendants have submitted declarations and exhibits. A district court may convert a motion to dismiss into a motion for summary judgment if the nonmoving party has "sufficient notice" and an opportunity to respond to the motion for summary judgment. Groden v. Random House, Inc., 61 F.3d 1045, 1052 (2d Cir.1995). To determine if notice is sufficient, "[t]he essential inquiry is whether the [non-movant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Id. (internal quotation marks omitted). Notice is especially important when the nonmoving party "is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues." Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir.1983).

Here, the motion to dismiss explicitly indicated that defendants sought, in the alternative, summary judgment.

See Dkt. Nos. 23, 23–1. Moreover, defendants provided Smith with a Notification of the Consequences of Failing to Respond to a Summary Judgment Motion. Dkt. No. 23–9. This form advised Smith of Local Rule 7.1's requirement that he submit the following in opposition to the motion: a memorandum of law, one or more affidavits, and a concise statement of material facts. Id. It also cautioned that failure to respond to the motion might result in the dismissal of some or all of his claims. Id. These documents provided sufficient notice that the defendants' motion to dismiss was likely to be converted into one for summary judgment. This is further evidenced by the fact that Smith filed a lengthy memorandum of law, a declaration, and 55 pages of exhibits in opposition to the defendants' motion. See Dkt. Nos. 27, 27–1. Smith also filed a subsequent reply titled "Plaintiff's Response to Defendants' Reply to the Motion in Opposition to *Summary Judgment."* Dkt. No. 33 (emphasis added). Clearly, Smith had sufficient notice that the motion might be converted, and he responded accordingly.

### B. Summary Judgment—Legal Standard

A motion for summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits that support the motion. Fed.R.Civ.P. 56(c); *Celotex Corp.,* 477 U.S. at 323. Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson,* 477 U.S. at 248. All ambiguities are resolved and all reasonable inferences are drawn in favor of the nonmoving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

**\*5** The party opposing the motion must respond by setting forth facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250. The nonmoving party must do

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the nonmoving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006); *see also Sealed Plaintiff v. Sealed Defendant No. 1,* 537 F.3d 185, 191 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

### C. Interference With Mail

Smith alleges that Keiffer intercepted his legal mail in April 2006 and caused him to miss a scheduled deposition. Defendants argue that these claims are barred by the statute of limitations or, alternatively, should be dismissed on the merits.

### 1. Statute of Limitations

"It is undisputed that the statute of limitations for a *Bivens* action arising in New York is three years." *Thunder Island Amusements, Inc. v. Ewald,* 650 F.Supp.2d 195, 199 (N.D.N.Y.2009) (McCurn, S.J.) (citing *Tapia–Ortiz v. Doe,* 171 F .3d 150, 151 (2d Cir.1999) (per curiam)). The record shows conflicting dates on which the complaint was filed. The docket sheet indicates that the complaint was postmarked on June 16, 2009, and filed on June 25, 2009. The official district court stamp on the first page of the complaint shows that it was filed on June 25, 2009. Compl. at 1. Smith signed the fourth page of the complaint and dated it as June 12, 2009. *Id.* at 4. However, the handwritten attachment to the complaint has an official district court stamp with a filing

date of November 5, 2008, and was signed by Smith on October 31, 2008. *Id.* at 5, 9. Smith explains that he filed his original complaint on November 5, 2008, and amended that complaint on June 25, 2009. Dkt. No. 33, at 1.

If the complaint was filed in June 2009, the interference with legal mail claim, which arises from events occurring prior to June 2006, would be barred by the statute of limitations. On the other hand, if the complaint was filed in November 2008, this claim is timely as the events occurred after November 2005. Liberally construing the complaint and making all reasonable inferences in Smith's favor, it must be determined that the complaint was filed on November 5, 2008. The handwritten part of the complaint bears an official stamp indicating that it was filed on that date. Therefore, Smith has offered sufficient facts at least to raise a material issue whether the complaint was filed within the period of limitations and defendants' motion on this ground should be denied.

### 2. Merits of the Mail Interference Claim

**\*6** Smith alleges that Keiffer intercepted and withheld his legal mail, causing him to miss a scheduled deposition pertaining to an ongoing civil action. Because the legal correspondence at issue was clearly addressed to "Benjamin Smith, Pro Se, c/o Susan Keiffer, Case Manager," Smith's claim that Keiffer was not authorized to open this mail is without merit. The envelope, notices of deposition, and letter from the attorney who was to take Smith's deposition were all addressed in this manner. Dkt. No. 28, Exs. A, B, C, & E.

Moreover, after Smith failed to attend the first scheduled deposition on April 28, 2006, a letter was mailed directly to Ray Brook's warden in an attempt to reschedule the proceeding. *Id.* at Ex. D. It is clear that the court and defense counsel in the civil action sought to communicate directly with prison staff and administrators in an effort to schedule Smith's deposition. Therefore, it was entirely proper for those staff members to open and read such correspondence. Smith's mail interference claim is thus limited to his assertion that Keiffer's actions or omissions interfered with his ability to participate in the pending civil action.

Interference with an inmate's legal mail implicates the

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

right to access the courts guaranteed by the Fourteenth Amendment. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). To state a valid claim, a prisoner must allege that the official deliberately and maliciously interfered with legal mail, resulting in an "actual injury" such as a dismissal of an otherwise meritorious legal claim. *Id.; see also Lewis v. Casey,* 518 U.S. 343, 351 (1996). Further, "[w]hile a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis,* 320 F.3d at 351 (internal citation omitted). Instead, the prisoner must show that officials "regularly and unjustifiably interfered with the incoming mail." *Id.* (internal quotation marks omitted).

Smith identifies only one specific instance in which Keiffer interfered with his legal mail, causing him to miss a scheduled deposition. Not only does this act fall short of "regular" interference, but Keiffer's act was justified. Indeed, as noted above, the mail bore her name in the address. Moreover, defendants have countered with evidence indicating that Smith was properly advised of the pending deposition. On the April 12, 2006, letter that accompanied the notice of deposition, there is a handwritten note indicating: "Inmate Smith aware of time and date per our conversation outside of unit 4–26–06—he stated he didn't need to be put on call out." Dkt. No. 28, Ex. C. Smith fails to respond with any evidence to support his conclusory assertion that Keiffer maliciously failed to advise him of the deposition appointment.

In addition, Smith fails to allege an actual injury. Although missing a scheduled deposition may cause delay and annoyance, it is not tantamount to the dismissal of a meritorious claim. It appears that the deposition that Smith missed on April 28, 2006, was rescheduled for May 22, 2006. *Id.* at Ex. D. There is nothing in the record to suggest that this rescheduled deposition did not take place or that Smith was negatively impacted by missing the first appointment.

**\*7** Therefore, Smith has not sufficiently alleged malicious intent on the part of Keiffer nor identified any actual harm he suffered. Accordingly, it is recommended that defendants' motion be granted as to Smith's mail interference claim.

**D. Retaliation/False Disciplinary Reports**

Smith alleges that he was subjected to retaliation on two occasions. Smith claims that Keiffer filed false disciplinary reports against him on April 28, 2006, and November 2, 2006, after he filed administrative grievances against her.[FN9] Claims of retaliation are rooted in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004). To state an actionable claim for retaliation, a plaintiff must first show that the conduct at issue was constitutionally protected and, second, that the conduct was a "substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

> **FN9.** Smith also asserts that Lucas threatened to retaliate against him by stating "we are going to get you." Compl. at 3. However, this does not constitute "adverse action" to support a retaliation claim. *See Smith v. Christopher,* No. 9:06–CV–1196, 2008 WL 4283519, at \*13 (N.D.N.Y. Sept. 16, 2008) (Kahn, J. & Peebles, M.J.) (defendant's threat that if plaintiff did not drop his lawsuit he would "never see the streets again" was "nothing more than simple verbal harassment which does not rise to the level of constitutional significance"); *Bartley v. Collins,* No. 95 Civ. 10161, 2006 WL 1289256, at \*6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."). There is nothing to provide a causal connection between Smith's protected conduct and Lucas. Lucas was not named in any of the grievances that pre-date the disciplinary reports, and he did not file any disciplinary reports against Smith. Therefore, Smith cannot establish a retaliation claim against Lucas. *See Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (affirming the dismissal of a retaliation claim because defendant was not named in plaintiff's original

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

grievance); *Tafari v. McCarthy,* 714 F.Supp.2d 317, 373–74 (N.D.N.Y.2010) (Hurd, J. & Lowe, M.J.) (plaintiff could not establish any connection between the grievances he filed and defendants who were not named in the grievances).

Courts must view retaliation claims with care and skepticism due to the ease with which they can be fabricated and to avoid judicial intrusion into matters of prison administration. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 214–15 (N.D.N.Y.2008) (McAvoy, S.J. & Lowe, M.J.). Conclusory allegations alone are insufficient. *Id.* at 214 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). For purposes of the first element of the claim, it is undisputed that the filing of grievances is constitutionally protected conduct. *See* Gill, 389 F.3d at 384; *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002).

### 1. April 28, 2006 Disciplinary Report

Smith's contention that Keiffer filed the April 28, 2006 disciplinary report in retaliation for his complaints about her opening his legal mail is conclusory and unsupported by the record. Smith fails to identify or provide a copy of any formal grievance he filed against Keiffer prior to April 28, 2006. In fact, the earliest formal grievance related to the alleged mail interference is dated June 6, 2006, and was received on July 17, 2006. Smith Decl., Ex. A, at 4. Moreover, Smith seems to have changed his argument regarding Keiffer's motivation for this disciplinary report, claiming it was filed in an effort to "cover her back" after failing to notify him of the scheduled deposition. *See* Dkt. No. 27 at 3. Smith has therefore failed to establish a causal connection between any constitutionally protected conduct and the April 28, 2006, disciplinary report. *See Tafari,* 714 F.Supp.2d at 373 (plaintiff failed to establish a causal connection because he only filed a grievance *after* the report was lodged against him).

### 2. November 2, 2006 Disciplinary Report

**\*8** Smith claims that the November 2, 2006, disciplinary report was filed in direct response to the formal grievance he filed on October 8, 2006. The first prong of the analysis is therefore met. The issue thus becomes whether the grievance was a substantial or motivating factor for the disciplinary report.

"[T]he temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation." *Gayle,* 313 F.3d at 683. Here, Smith filed a grievance against Keiffer on October 8, 2006, it was received on October 25, 2006, and Keiffer lodged a disciplinary report against him on November 2, 2006. Smith Decl., Ex. A, at 7c; Magnusson Decl. at 24. This close temporal relationship provides circumstantial evidence that the disciplinary report was retaliatory.

However, unlike *Gayle,* the disciplinary report at issue here did not arise from the same statements or facts involved in the grievance. *See Gayle,* 313 F.3d at 683 (giving additional support to plaintiff's retaliation claim because the disciplinary report arose from statements plaintiff made to defendant while discussing the grievance he had filed six days earlier). Indeed, the grievance and the disciplinary report involve wholly independent facts and circumstances. While Smith's grievance complained that Keiffer and Lucas improperly raised his custody classification score in August 2006, the disciplinary report charged Smith with threatening bodily harm and being insolent towards a staff member after he allegedly approached Keiffer in a physically threatening manner on November 2, 2006. Smith Decl., Ex. A, at 7c–8.

Smith asserts that his retaliation claim is further supported by the outcome of the disciplinary hearing that followed the November 2, 2006, incident. Smith claims that since he was only found guilty of a lesser offense and was released from the SHU, it follows that the original charges were fabricated and retaliatory. This reasoning is not persuasive and, if followed, would undermine the prison disciplinary review process. There is nothing to suggest that Fehlner's decision finding Smith guilty of a lesser offense than that originally charged by Keiffer was an attempt to cover up or remedy retaliatory action.

Therefore, the only link between Smith's grievance and the disciplinary report is the temporal proximity and Smith's conclusory allegation that the report was retaliatory and false. This is insufficient to survive summary judgment. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (noting that where circumstantial

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

evidence is the sum total of plaintiff's proof, "we might be inclined to affirm the grant of summary judgment based on the weakness of [plaintiff's] case"). There is thus insufficient support for Smith's claim that his exercise of constitutionally protected conduct, filing grievances, was the motivating factor behind the November 2, 2006, disciplinary report. Accordingly, it is recommended that defendants' motion as to Smith's retaliation claim be granted.

### 3. False Disciplinary Reports Claim

**\*9** An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). To constitute an actionable claim, "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right" or the denial of procedural protections. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *Freeman,* 808 F.2d at 952. Because Smith makes no specific allegation that he was denied a required procedural safeguard and, as explained immediately above, he cannot establish a claim of retaliation, any remaining due process claim regarding the issuance of false disciplinary reports must also fail. Defendants' motion as to any such claims should also be granted.

### E. Biased Hearing Officer

Smith next alleges that his due process rights were violated by Felner, who presided over the disciplinary hearing that followed the November 2, 2006, incident and was biased against him. It is well-established that an "inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996). Although a hearing officer's impartiality does not have to mirror that of judges generally, the result of a disciplinary hearing cannot be "arbitrarily and adversely predetermined." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). An impartial hearing officer is one who "does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990). Prison officials serving as adjudicators enjoy a rebuttable presumption that they are unbiased. *Allen,* 100 F.3d at 259.

To support his assertion that Fehlner was biased, Smith claims that Felner was aware of Keiffer's allegedly retaliatory conduct. Compl. at 3. However, Felner's knowledge of, or even participation in an investigation into, Keiffer's alleged retaliatory actions does not demonstrate bias against Smith. *See Vega v. Artus,* 610 F.Supp.2d 185, 200 (N.D.N.Y.2009) (Suddaby, J.) (failing to find bias where the hearing officer conducted both the disciplinary proceeding and the investigation into the inmate's grievance against the involved corrections officer).

Smith also points to a statement Felner allegedly made at the hearing in which he admitted that the disciplinary report was false but had to find Smith "guilty of something." *See* Compl. at 3; Smith Decl., ¶ 13. Assuming this to be true, as must be done for purposes of this motion, it indicates that Felner's decision was arbitrarily and adversely predetermined. Even though only of a lesser charge, Smith was indeed found guilty. Fehlner vehemently denies ever making such a statement. Felner Decl. ¶ 9. Nonetheless, this dispute raises a triable issue of fact. *See Keesh v. Goord,* No. 04–CV–271A, 2007 WL 2903682, at \*15 (W.D.N.Y. Oct. 1, 2007) (denying defendants' motion for summary judgment in light of prisoner's sworn assertion that the hearing officer advised that his guilt had been predetermined, even though the hearing officer vigorously disputed making such a statement). Accordingly, it is recommended that defendants' motion for summary judgment be denied as to Smith's due process claim that the hearing officer was biased.

### F. Eighth Amendment

**\*10** Smith alleges two Eighth Amendment violations: (1) the unsanitary conditions of his confinement in the SHU and (2) the inadequate medical treatment he received after he was injured on the broken chair.

### 1. Conditions of Confinement

The Eighth Amendment prohibition against cruel and unusual punishment extends to prison conditions. *Horne v. Coughlin,* 155 F.3d 26, 31 (2d Cir.1998). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective ... and subjective test." *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996) (citations omitted).

In order to satisfy the objective element of this claim, "a 'plaintiff must demonstrate that the conditions of his confinement result[ed] in ... serious deprivations of basic human needs' or deprived him 'of the minimal civilized measure of life's necessities .' " *Govan v. Campbell,* 289 F.Supp.2d 289, 296 (N.D.N.Y.2003) (Sharpe, M.J.) (quoting *Anderson v. Coughlin,* 757 F.2d 33, 34–35 (2d Cir.1985)). Basic human needs include "food, clothing, shelter, medical care, and reasonable safety." *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002) (citation and internal quotation marks omitted).

The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind ... of deliberate indifference to inmate health or safety." *Farmer,* 511 U.S. at 834 (citations omitted). This entails a showing that the prison official knew of but disregarded an excessive risk to inmate health or safety. *Id.* at 837. Such knowledge can be inferred from circumstantial evidence "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Here, Smith asserts that he was housed in a cell of the SHU with three other inmates and was not provided toilet paper for two weeks. Compl. at 3. Smith further alleges that the prison officers refused to flush the toilet, which was controlled from outside of the cell, causing the toilet to overflow and covering the floor with urine and feces. *Id.* Smith claims that he was forced to sleep on the floor near the sewage and became ill due to the odor. *Id.* Such conditions satisfy the objective element of an Eighth Amendment claim. *See Gaston v. Coughlin,* 249 F.3d 156, 166 (2d Cir.2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end."); *Reeder v. Hogan,* No. 9:09–CV–520, 2010 WL 3909050, at *7 (N.D.N.Y. Sept. 30, 2010) (Mordue, C.J.) ("Deprivation of toiletries, 'especially toilet paper, can

rise to the level of unconstitutional conditions of confinement.' " (quoting *Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003)).

**\*11** With regard to the subjective element, Smith fails to name the prison guards who allegedly refused to flush the toilet and does not attempt to ascribe this conduct to Fehlner. However, he asserts that "Mr. Fehlner, Unit Manager knew of the fact that raw sewage could make plaintiff sick but [he] ignored his complaints which caused his sickness and nausousness [sic]." Compl. at 4. This language, liberally construed, suffices to allege that Felner was aware of the inhumane conditions in the SHU but failed to take remedial action despite Smith's complaints that the odor of sewage was making him ill. *See Gaston,* 249 F.3d at 166 (assertion that defendant prison guards "made daily rounds of SHU" was sufficient to establish that they had actual knowledge of obvious inhumane conditions). This satisfies the subjective element of the Eighth Amendment claim.

Importantly, nowhere in their motion papers do defendants dispute that Felner knew of the conditions in the SHU. In fact, they do not address the conditions-of-confinement claim at all in the initial motion. *See generally* Dkt. No. 23. Defendants' attention to this claim is limited to a single paragraph in their Reply to Plaintiff's Response in which they simply assert that the claim must be dismissed because Smith failed to name the prison guards who refused to flush the toilet. Dkt. No. 28 at 5. Moreover, in his own declaration, Felner does not mention the conditions-of-confinement claim at all. *See* Felner Decl. Accordingly, it is recommended that defendants' motion for summary judgment be denied as to Smith's conditions-of-confinement claim against Felner.

## 2. Medical Care

To state an Eighth Amendment claim for inadequate medical care, a plaintiff must establish the same objective and subjective elements as outlined in the conditions-of-confinement claim above. *See Helling v. McKinney,* 509 U.S. 25, 35 (1993). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

averted." *Farmer, 511 U.S. at 844*.

" 'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.2003)* (quoting *Hudson v. McMillian, 503 U.S. 1, 9 (1992)*). When determining if a medical condition is sufficiently serious, a court may consider factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir.2003)* (citing *Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998)*). The severity of the denial of care should also be judged in the context of the surrounding facts and circumstances of the case. *Smith, 316 F.3d at 185*. Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance, 143 F.3d at 702*. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble, 429 U.S. 97, 104 (1976)*.

**\*12** In this case, Smith fails to establish a serious medical need to satisfy the objective element. Smith claims that he suffered a puncture wound measuring 1/4" in diameter as well as a bruise measuring 10" long and 3" wide on his lower back when he fell onto the broken chair. Compl. at 4. Smith maintains that he bled "profusely" and required the assistance of two inmates to walk back to his cell. *Id.* However, the medical records do not support his assertion that his injuries were serious.

The Inmate Injury Assessment and Followup form, completed by an emergency medical technician on the day of Smith's injury, indicates that Smith suffered a "small scrape" on his upper buttock. Magnusson Decl., Ex. E. The injury required "Minor First Aid," and Smith was advised to rest, ice his back, and make a sick call if the pain worsened. *Id.* Moreover, on the Inmate Injury Report, which Smith signed, the incident is summarized by the following: "Leaned back in chair and chair back rest snapped off. Injured fell back onto piece of metal which

snapped causing a *small cut/puncture."* Smith Decl., Ex. E, at 36 (emphasis added). A small cut requiring minor first aid is insufficient to establish the objective element of Smith's Eighth Amendment claim. *See Dawes v. Coughlin, 159 F.3d 1346 (2d Cir.1998)* (a 1 1/2 -inch laceration on inmate's elbow is insufficient to constitute a serious injury under the Eighth Amendment); *Tafari, 714 F.Supp.2d at 354* (bruises and superficial lacerations from an assault did not constitute a serious medical condition).

Accordingly, it is recommended that defendants' motion as to Smith's Eighth Amendment claim of inadequate medical care be granted.

### G. Product Liability/Negligence

Smith invokes the FTCA and seeks compensation from the United States and UNICOR for injuries he received due to the allegedly defective chair. Smith also alleges that defendants Peterson and Craig were negligent in their failure to inspect the chair to ensure it was safe for use.[FN10] Defendants argue that the Inmate Accident Compensation Act ("IACA") is the exclusive means of recovery for Smith's work-related injuries, and, therefore, the court lacks jurisdiction to adjudicate his FTCA claim.

> [FN10.] It is also possible to interpret Smith's claim against these defendants as a conditions-of-confinement claim under the Eighth Amendment. However, such a claim would fail as Smith cannot establish that Craig or Peterson acted with the requisite culpable state of mind. There is nothing to suggest that they were aware of and consciously disregarded the allegedly unsafe condition of the chair prior to Smith's fall. Indeed, Peterson denied having knowledge of any prior incidents involving the chairs at Ray Brook. Peterson Decl. at ¶ 3. As explained below, Smith cannot establish that these defendants were negligent. Therefore, neither can they be found to have acted with deliberate indifference, which requires proof of a state of mind beyond that for mere negligence and akin to recklessness. *See Farmer, 511 U.S. at 839–40*. Moreover, it appears that Smith has abandoned any Eighth Amendment claims against Peterson. *See* Dkt. No. 27 at 8.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

### 1. Inmate Accident Compensation Act

The IACA allows for the compensation of federal prison inmates "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Defendants are correct that the IACA is the exclusive remedy for a prisoner's work-related injuries. 28 C.F.R. § 301.319; *United States v. Demko,* 385 U.S. 149, 152–54 (1966). Smith sought recovery through the IACA process and was apparently denied because his injuries were not work-related. Although Smith was in the factory at Ray Brook when the incident occurred, the Injury Report indicates that his injuries were "Non Work Related" because the incident "did not occur at his work station." Smith Decl., Ex. E, at 36. After the prison Safety Committee denied his initial claim, Smith filed a grievance with the warden's office at FCI Cumberland, where he had been transferred. *Id.* at 38. The warden denied the claim, arguing that Smith's injuries were caused by his own negligent use of the chair and noting that the supervisory staff had determined the incident was not work-related. *Id.* at 39. Smith appealed this decision to the Administrator of National Inmate Appeals, who also denied the IACA claim because his injuries were "non-work-related." *Id.* at 41.

**\*13** Thus, defendants have consistently asserted that Smith's injury was not work-related and, therefore, that the IACA was inapplicable. On this motion, defendants assert that Smith's claim under the FTCA is barred by the IACA because his injury was work-related. The defendants attempt to have it both ways—Smith's injury was work-related for purposes of the FTCA but not so for purposes of the IACA. Because prison administration officials at multiple levels have already denied Smith's IACA claim and deemed his injuries non-work-related, there exists at least a question of fact as to whether Smith's injury was work-related as to bar Smith's FTCA claim. Accordingly, defendants' motion on this ground should be denied.

### 2. Federal Tort Claims Act

The FTCA waives sovereign immunity and permits lawsuits against the United States for injuries caused by the negligence of any government employee acting within the scope of his or her employment. 28 U.S.C. §

1346(b)(1). Defendants correctly point out that the FTCA does not allow suits against the United States based on strict product liability. *See Laird v. Nelms,* 406 U.S. 797, 798–99 (1972) ("[T]he Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of misfeasance or nonfeasance on the part of the Government." (internal quotation marks and citation omitted)). Smith concedes this point and appears to have limited his FTCA claim to hold the United States liable for the alleged negligence of Peterson and Craig. *See* Compl. at 4; Dkt. No. 27 at 8. Smith alleges that these defendants "failed to properly inspect" the chair to ensure "safe operation and equipment." Dkt. No. 27 at 8. Even though defendants have not specifically responded to a negligence claim, such an action can be disposed of on the merits as Smith fails to establish a prima facie case.

Under the FTCA, a court is to apply state tort law. *Gardner v. United States,* 896 F.Supp. 89, 92 (N.D.N.Y.1995) (Scullin, J.). To state a claim of negligence in New York, a plaintiff must establish the following elements: (1) the existence of a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damage proximately resulting from that breach. *Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 467 (2d Cir.1995). With regard to the duty element, "plaintiff must establish that a dangerous condition existed ... *and* that the United States either affirmatively created that condition or had notice, actual or constructive, of its existence." *Gardner,* 896 F.Supp. at 92. Constructive notice can be established by showing that the defect was "visible and apparent" and existed "for a sufficient length of time prior to the accident to permit the owner to discover and remedy it." *DiNunzio v. Ken–Jil Elec. Contractors, Inc.,* 473 F.Supp.2d 485, 487 (S.D.N.Y.2007) (internal quotation marks and alterations omitted). Constructive notice is also generally found where a "reasonable inspection" would have uncovered the dangerous condition. *Id.*

**\*14** Here, even assuming the chair was in a "dangerous condition," Smith fails to allege or explain how defendants had actual or constructive notice of such a condition. Peterson claimed that there had been no prior incidents involving similar chairs in the factory at Ray Brook. Peterson Decl. ¶ 3. There are no records of prior complaints or injuries related to the chairs to establish

Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)

(Cite as: 2011 WL 777969 (N.D.N.Y.))

actual notice that they were unsafe. Moreover, Smith makes no allegations that the dangerous condition was apparent or existed long enough to establish constructive notice. Similarly, there is no evidence that a reasonable inspection would have uncovered the dangerous condition. Therefore, Smith cannot establish that the defendants had notice of the dangerous condition.

Accordingly, it is recommended that defendants' motion as to Smith's product liability/negligence claim under the FTCA be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 23) be:

1. **GRANTED** as to his claims for:

   A. Interference with mail;

   B. Retaliation/false disciplinary reports;

   C. Eighth Amendment claim of inadequate medical care; and

   D. Product liability/negligence under the FTCA;

2. **DENIED** as to his claims for:

   A. A biased hearing officer; and

   B. Conditions of confinement; and

3. All defendants be **TERMINATED** except Felner.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. §

636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2011.

Smith v. U.S.
Not Reported in F.Supp.2d, 2011 WL 777969 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 776150 (N.D.N.Y.)

(Cite as: 2011 WL 776150 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Benjamin SMITH, Plaintiff,
v.
UNITED STATES of America; Dan Peterson, Factory Manager, FCI Ray Brook; Susan Keiffer, Case Manager, FCI Ray Brook; Federal Correctional Industries (Unicor), FCI Florence, Florence, Colorado; Mr. Felner, Unit Manager, FCI Ray Brook; D. Kirkby, Factory Foreman, FCI Ray Brook; Mr. Lucas, Case Manager, FCI Ray Brook; and T.R. Craig, Facility Superintendent, FCI Ray Brook, Defendants.
No. 9:09–CV–729 (TJM/DRH).

March 1, 2011.
Benjamin Smith, Cumberland, MD, pro se.

Charles E. Roberts, Office of the United States Attorney, Syracuse, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

**\*1** This *pro se* action brought under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), was referred to the Hon. Judge David R. Homer, United States Magistrate Judge, for a Report and Recommendation. No objections to the Report–Recommendation and Order dated February 3, 2011 have been filed, and the time to do so has expired. Furthermore, after examining the record, this Court has determined that the Report–Recommendation and Order is not subject to attack for plain error or manifest injustice.

**II. CONCLUSION**

Accordingly, the Court adopts the Report–Recommendation and Order for the reasons stated therein. It is therefore **ORDERED** that Defendants'

motion for summary judgment (Dkt. No. 23) is **GRANTED IN PART AND DENIED IN PART.**

The motion is **GRANTED** as to the claims for:

A. Interference with mail;

B. Retaliation/false disciplinary reports;

C. Eighth Amendment claim of inadequate medical care; and

D. Product liability/negligence under the FTCA, and these claims are **DISMISSED.**

The motion is **DENIED** as to the claims for:

A. A biased hearing officer; and

B. Conditions of confinement.

Based on this determination, all defendants are **TERMINATED except Defendant Felner.**

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Smith v. U.S.
Not Reported in F.Supp.2d, 2011 WL 776150 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

United States District Court, S.D. New York.

Abdul SHARIFF, Mark Bartley, Jamal Stephenson, David Gobern, Lewis Purcell, Sam Johnson, Terence Stevens, Stephen Gowins, and Abdul Suluk, Plaintiffs,
v.
Philip COOMBE, Commissioner of New York State Docs; Glen Goord, Acting Commissioner; Christopher Artuz, Superintendent of Green Haven Corr. Facility; Gail Haponic, Acting Deputy of Admin. of Green Haven; Roger Maines, Supervisor of Green Haven; M. Muller, Maintenance Supervisor of Green Haven, individually and in their official capacities, and the State of New York, Defendants.
No. 96 Civ. 3001(BSJ).

June 26, 2002.
*Memorandum & Order*

JONES, J.

### I. INTRODUCTION

**\*1** Plaintiffs, nine disabled prisoners who depend on wheelchairs for mobility, bring this action against the State of New York and six individuals employed by the New York State Department of Correctional Services ("DOCS") in an administrative capacity. Those six individuals, who are sued both in their individual and in their official capacities, are two former DOCS Commissioners and four administrators at Green Haven Correctional Facility ("Green Haven"), including the Superintendent, the former Plant Superintendent, a Deputy Superintendent, and a Maintenance Supervisor. Plaintiffs seek both injunctive and monetary relief for conditions affecting disabled inmates at Green Haven. The gravamen of the Fourth Amended Complaint [FN1] is that the conditions at Green Haven amount to unlawful discrimination against disabled inmates. These conditions allegedly violate (1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; (2) Title V of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*; (3) Section 70 of the New York State Correction Law; and (4) the Eighth and Fourteenth Amendments of the Constitution pursuant to 42 U.S.C. § 1983.

> FN1. Unless otherwise noted, references to the "Fourth Amended Complaint" refer to Plaintiffs' most recent Complaint, the Fourth Amended Complaint dated September 29, 1998.

Defendants move for summary judgment on several grounds pursuant to Federal Rule of Civil Procedure 56. Due to changes in the legal standards applicable to Plaintiffs' claims and the facts relevant to the issues of injunctive relief, exhaustion, and prior adjudication, the court must reserve decision on some issues at this time. In such circumstances, the court has identified issues for additional briefing by the parties in a second round of dispositive motions. Indeed, the complexity of those and other issues applicable to Plaintiffs' remaining claims may require a hearing for proper resolution. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice to renew.

### II. CLAIMS FOR INJUNCTIVE RELIEF

Any Plaintiff who is no longer incarcerated at Green Haven is barred from asserting a claim for injunctive relief regarding conditions at Green Haven. *See Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (citing cases). Plaintiffs Bartley, Gobern, Johnson, Purcell, Stevens, and Suluk are no longer incarcerated at Green Haven. Therefore, the court dismisses with prejudice all claims for injunctive relief brought by those six Plaintiffs.

Plaintiffs are not entitled to injunctive relief for those claims that are now moot because they have been addressed by prison officials. *See Prins v. Coughlin,* 76 F.3d 504, 506; *see also Farmer v. Brennan,* 511 U.S. 825, 846 (1994). Plaintiffs' injunctive claims as to the A & B yard have been rendered moot because Defendants have "repaired and repaved" this yard. (*See, e.g.,* Pls.' Mem. of

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

Law in Opp'n to Defs.' Mot. for Summ. J. at 11.) Accordingly, all Plaintiffs, but particularly Plaintiffs Shariff and Stephenson, are precluded from seeking injunctive relief as to the conditions of the A & B yard that have been repaired, and the court dismisses those claims with prejudice.

**\*2** In light of the changes in both Plaintiffs' circumstances and the conditions at Green Haven that have occurred since this motion was filed, the court has been unable to address Plaintiffs' remaining claims for injunctive relief. For example, when this motion was filed, numerous repairs and renovations were scheduled for Green Haven. (*See* Turbin Aff. Ex. E.) If any such repairs were, in fact, conducted, Plaintiffs' claims for injunctive relief concerning those repairs would also be mooted. The court directs the parties to address these issues, as well as other changes in the facts of this case that may affect the viability of Plaintiff's claims for injunctive relief, in the additional briefing ordered by the court.

### III. CLAIMS FOR MONETARY RELIEF

#### A. CLAIMS UNDER 42 U.S.C. § 1983

Absent express statutory abrogation or consent by a state to suit, the Eleventh Amendment bars suits brought in federal court against a state by citizens of another state or the state's own citizens. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72-73 (2000); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996). Section 1983 does not abrogate a state's immunity, *Quern v.. Jordan,* 440 U.S. 332, 343-45 (1979), and New York has not consented to suit in federal court, *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir.1977). State employees sued in their official capacities are also immune from suits for monetary damages under the Eleventh Amendment in cases where the state is the real party in interest. *See Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Moreover, "[s]tates[ ] and state officers, if sued in their official capacities for retrospective relief ... are not 'persons' subject to suit under § 1983." *K & A Radiologic Tech. Services, Inc. v. Commissioner of Dep't of Health,* 189 F.3d 273, 278 (2d Cir.1999). Therefore, the court dismisses Plaintiffs' claims for monetary relief pursuant to § 1983 against the State of New York and the other six

Defendants in their official capacities.

#### B. THE ADA AND THE REHABILITATION ACT [FN2]

> [FN2]. The ADA, which was adopted in 1992 and covers individuals and entities that do not receive federal funds, is broader in scope than the Rehabilitation Act, which was adopted in 1973 and is limited to programs receiving financial assistance from the federal government. *See Kilcullen v. New York State Dep't of Labor,* 205 F.3d 77, 79 n. 1 (2d Cir.2000).

Neither Title II of the ADA nor Section 504 of the Rehabilitation Act provides for suits against state officials in their individual capacities. *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001) (collecting cases). Therefore, the court dismisses with prejudice Plaintiffs' claims under the ADA and the Rehabilitation Act against the six individual Defendants in their individual capacities.

The legal standards applicable to Plaintiffs' claims under the ADA and the Rehabilitation Act against the State of New York and the other six Defendants in their official capacities have changed during the pendency of this motion. The changes in the law render much of Defendants' briefing on these claims inapplicable. The court directs the parties to brief Plaintiffs' remaining claims under the ADA and the Rehabilitation Act in light of the standards set forth in *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98 (2d Cir.2001). *See also Harris v. New York State Dep't of Health,* No. 01 Civ. 3343, 2002 WL 726659, at \*27-\*31 (S.D .N.Y. Apr. 24, 2002) (applying the standards set forth in *Garcia* ).

#### C. STATE LAW CLAIMS

**\*3** Plaintiffs raise state law claims alleging that Defendants have failed to fulfill their duties under Section 70 of the New York State Correction Law. The court dismisses Plaintiffs' claims under Section 70 against the State of New York and the six other defendants in both their personal and their official capacities for lack of subject matter jurisdiction pursuant to New York State Correction Law Section 24 and the Eleventh Amendment. *See Baker v. Coughlin,* 77 F.3d 12, 14-15 (2d Cir.1996).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

IV. OTHER ARGUMENTS CONCERNING
PLAINTIFFS' REMAINING CLAIMS

A. EXHAUSTION OF ADMINISTRATIVE
REMEDIES

In their Motion for Summary Judgment, Defendants argue that Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies. Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA") on April 26, 1996, no action brought by a prisoner pertaining to prison conditions may be brought until all available administrative remedies are exhausted. *Porter v. Nussle,* 122 S.Ct. 983, 988 (2002); *see* 42 U.S.C. § 1997e(a) (Supp.2000) (as amended by PLRA § 803). While the mandatory exhaustion requirement of the PLRA does not apply retroactively, any claim filed after April 26, 1996, must be exhausted administratively before it may be raised in federal court. *See Salahuddin v. Mead,* 174 F.3d, 272, 275 (2d Cir.1999); *Blissett v. Casey,* 969 F.Supp. 118, 125 (N.D.N.Y.1997).

The court denies without prejudice to renew that portion of Defendants' motion seeking dismissal of Plaintiffs' claims for failure to exhaust administrative remedies. The court reserves final decision on the issues raised by Defendants' arguments relating to exhaustion for three reasons. First, the issue of exhaustion was briefed insufficiently by the parties to permit the court to rule. Specifically, the court requires a detailed, plaintiff-by-plaintiff analysis of the exhaustion requirements applicable to each claim and the actions taken by each Plaintiff. Second, the court recognizes that Plaintiffs may have pursued additional administrative remedies during the pendency of this motion. Third, changes in the law since briefing was submitted on this motion have clarified the exhaustion requirements applicable to each Plaintiff's claims. Depending on the exhaustion requirements applicable to each claim and the actions taken by individual Plaintiffs to pursue administrative relief, the court may lack jurisdiction over some of Plaintiffs' remaining claims. The court notes the following as guidance for the parties in fashioning future arguments:

Plaintiff Shariff's initial *pro se* Complaint was filed on February 27, 1996; therefore, the claims he alleged therein are not subject to mandatory exhaustion. Nevertheless, the court retains discretion and may require exhaustion with respect to the pre-PLRA claims raised by Plaintiff Shariff under certain circumstances. *See* 42 U.S.C. § 1997e(a) (1994) (amended 1996). The court expressly leaves open the questions of whether the court should, in its discretion, require exhaustion as to Plaintiff Shariff's claims and whether Plaintiff Shariff did, in fact, pursue administrative remedies with respect to the claims raised in this case.[FN3]

> [FN3]. Additionally, the parties have not addressed the question of whether any claims raised by Shariff in amendments to the initial Complaint filed after April 26, 1996, should be subject to the mandatory exhaustion requirements of the PLRA. The court reserves decision as to that issue.

*4 The other eight Plaintiffs first included their claims as part of the multiple amended complaints filed in this case after the exhaustion provisions were amended in 1996. Thus, it seems likely to the court that those eight Plaintiffs are required to have exhausted their claims prior to filing them in federal court. *Cf. Farber v. Wards Co., Inc.,* 825 F.2d 684, 689 (2d Cir.1987) (noting that "Rule 15(c) governs the 'relation back' of amended pleadings only for the purpose of the statute of limitations"). "Rule 15(c) does not exist merely to keep the door open for any tardy plaintiff.... Rather, Rule 15(c) stands as a remedial device for adding or substituting a party who 'but for a mistake concerning the identity of the proper party' would have been named originally." *Morin v. Trupin,* 778 F.Supp. 711, 735 (S.D.N.Y.1991). Thus, the decision by the other eight Plaintiffs, who raise many claims distinct from those initially filed by Plaintiff Shariff in his *pro se* Complaint, to file their claims as part of this case rather than filing their own lawsuits is unlikely to have obviated the PLRA's mandatory exhaustion requirement with respect to their claims. Since this issue has not been addressed in the light of current case law, the court reserves decision on this issue as well.

B. PRIOR ADJUDICATION

When briefing was submitted on this motion, some of Plaintiffs' claims already had been adjudicated or were

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

pending in other fora. (Defs.' Reply Mem. for Summ. J., Table C.) Defendants argue for dismissal of Plaintiffs' claims on the basis of such prior adjudication, which may preclude Plaintiffs from raising those claims in this court. *See Harris v. New York State Dep't of Health,* No. 01 Civ. 3343, 2002 WL 726659 (S.D.N.Y. Apr. 24, 2002) (discussing interaction between preclusion rules and abstention doctrines). Once again, the court has not been provided with enough detail of the claims raised by Plaintiffs in other proceedings to determine whether preclusion rules, abstention doctrines, or principles concerning double recoveries would bar any of the claims raised in the Fourth Amended Complaint, and Defendants have not addressed those topics substantively in their briefing on this motion. Thus, the court denies without prejudice to renew Defendants' motion to dismiss Plaintiffs' claims as a result of prior adjudication.

## C. PRIOR PHYSICAL INJURY REQUIREMENT

Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Claims by prisoners brought pursuant to § 1983 for emotional damages unrelated to any physical injuries are subject to dismissal. *See, e.g., Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir.2001) (finding failure to make an objective showing of actual injury necessary to state an Eighth Amendment claim based on prison conditions); *Siglar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir.1997) (finding bruised ear an insufficient physical injury to overcome bar of § 1997e(e)); *Zehner v. Trigg,* 952 F.Supp. 1318, 1322-23 (S.D.Ind.) (dismissing claim based on prisoners' exposure to asbestos), *aff'd* 133 F.3d 459, 461 (7th Cir.1997); *Brazeau v. Travis,* No. 96 CV 783, 1996 WL 391701, at *1 (N.D.N.Y. July 9, 1996) (holding that claim for emotional damages caused by delay in receipt of parole hearing transcript was barred by § 1997e(e)).

**\*5** The absence of a physical injury does not constitute a total bar to claims by prisoners under § 1983, since application of § 1997e(e) does not bar claims for nominal damages, punitive damages, or declaratory or injunctive relief. *Wagnoon v. Gatson,* 00 Civ. 3722 and 99 Civ. 5872, 2001 U.S. Dist. LEXIS 8417, at *12-*13 (June 25, 2001). Nevertheless, Plaintiffs' claims for

compensatory damages relating to non-physical accidents, particularly those raised by Plaintiffs Gobern, Johnson, and Purcell, may not meet the physical injury requirement of the PLRA. The court expressly leaves open the question of whether any Plaintiff can meet the prior physical injury requirement, which has been inadequately briefed on a plaintiff-by-plaintiff basis. Indeed, Defendant raises this issue only briefly in the context of argument presented as to the standard applicable to claims of a deprivation of rights under the Eighth Amendment. (*See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 30-31.)

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice to renew. The following claims raised in the Fourth Amended Complaint are dismissed with prejudice: claims by Plaintiffs Bartley, Gobern, Johnson, Purcell, Stevens, and Suluk for injunctive relief; all claims for injunctive relief as to the conditions of the A & B yard that have been repaired; all claims against the State of New York and the other six Defendants in their official capacities for monetary relief pursuant to § 1983; all claims against the six individual Defendants in their individual capacities pursuant to the ADA and the Rehabilitation Act; and all claims against all Defendants under Section 70 of the New York State Correction Law. The remainder of Defendants' Motion for Summary Judgment is denied without prejudice to renew.

The court directs the parties to appear before the court for a conference at 3:00 p.m. on Tuesday, July 2, 2002, prepared to discuss Plaintiffs' remaining claims and current conditions at Green Haven. If Defendants choose to submit additional briefing, such briefing must be submitted as a renewed motion for summary judgment filed within thirty days of the date of this Memorandum and Order.

SO ORDERED:

S.D.N.Y.,2002.

Shariff v. Coombe
Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 1392164 (S.D.N.Y.), 24 NDLR P 61

(Cite as: 2002 WL 1392164 (S.D.N.Y.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1996 WL 391701 (N.D.N.Y.)
**(Cite as: 1996 WL 391701 (N.D.N.Y.))**

▶

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Michael C. BRAZEAU, Plaintiff,
v.
Biron D. TRAVIS, Chairman of New York State
Parole; and New York State Division of Parole, Appeals Unit, Defendants.

No. 96–CV–0783 (RSP) (RWS).
July 9, 1996.

Michael C. Brazeau, Comstock, NY, plaintiff, *pro se*

DECISION AND ORDER

POOLER, District Judge.

I. *Background*

**\*1** Michael Brazeau filed a civil rights complaint and applied to proceed *in forma pauperis.* Brazeau has not paid any fee relating to this action.

Because Brazeau's complaint is without arguable basis in law, I dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b)(1), and Rule 5.4(a) of the Local Rules of Practice of this District.

In his complaint, Brazeau claims that on June 22, 1995, at a final revocation hearing relating to his parole, the administrative law judge revoked Brazeau's parole and remanded Brazeau to prison for twenty-four (24) months. Brazeau alleges that defendants wrongfully delayed sending him the transcript of the final revocation hearing for forty-five (45) days. Compl. at 4. Brazeau also claims that this delay caused him to suffer anxiety and anguish. *Id.* Brazeau asserts that defendant New York State Division of Parole, Appeals Unit, failed to respond to Brazeau's appeal within the required time limit of one hundred twenty (120) days. *Id.* His appeal is now pending before the Appellate Division, Third Department. *Id.* at 5. Brazeau contends that

these events constituted violations of his constitutional rights. For a more complete statement of Brazeau's claims, see his complaint.

II. *Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed *in forma pauperis* is a two-step process. First, the court must determine whether the plaintiff may proceed with the action without prepaying the full $120.00 filing fee. The court then must consider whether the cause of action stated in the complaint is frivolous or malicious, or if it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. § 1915A(b)(1).

I have determined that Brazeau's financial status qualifies him to file this lawsuit without prepaying the full $120.00 filing fee. I therefore turn to the second inquiry. Section 1915(e), in part, directs the court to dismiss a frivolous or malicious action. *See* 28 U.S.C. § 1915(e); *see also* 28 U.S.C. § 1915A(b)(1). Brazeau alleges that his constitutional rights were violated when the defendants delayed mailing the transcript of the final parole revocation hearing to Brazeau for forty-five (45) days. Brazeau contends that he "suffered from anxiety and anguish." Compl. at 4. Section 1997e of Title 42, was amended to prohibit an inmate from bringing an action in federal court that alleges mental or emotional injury unless the inmate also makes a prior showing of physical injury. *See* 42 U.S.C. § 1997e.[FN1]

> FN1. This portion of the statute now reads:
>
> (e) Limitation on recovery.—No federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The damages Brazeau seeks relate to his alleged anxiety and mental anguish.[FN2] Because

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 391701 (N.D.N.Y.)
**(Cite as: 1996 WL 391701 (N.D.N.Y.))**

Brazeau has not alleged any prior physical injury in conjunction with his alleged mental injury, he may not properly maintain this lawsuit. *See* 42 U.S.C. § 1997e. Accordingly, I dismiss this case pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1). *See Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

> FN2. Brazeau also seeks to have "45 days taken off the 24 month hold imposed by N.Y.S. Parole...." Compl. at 2. Thus, Brazeau seeks a reduction in his prison sentence by way of this civil rights action. However, a prisoner only may obtain sentence reductions through a habeas corpus petition pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254; *Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973) (holding that "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity" of their underlying criminal convictions); *see also Channer v. Mitchell,* 43 F.3d 786, 787 (2d Cir.1994) (holding that "habeas corpus—not a § 1983 action—provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment...." and citing *Preiser,* 411 U.S. at 488–90).

*2 Finally, I note that, as amended on April 26, 1996, 28 U.S.C. § 1915 provides the following:

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

I hereby notify Brazeau that he has brought an action that was dismissed by the court as frivolous.

In accordance with the terms of 28 U.S.C. § 1915(g), I caution plaintiff that he will be barred from bringing future actions in this or other districts if he is found to have brought, on 3 or more prior occasions, actions such as the instant lawsuit that were dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and/or 28 U.S.C. § 1915A(b)(1), unless plaintiff alleges that he is under imminent danger of serious physical injury.

In light of the foregoing, it is hereby

ORDERED, that leave to proceed or prosecute this action *in forma pauperis* is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b)(1) and Rule 5.4(a) of the Local Rules of Practice of this District as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk of the Court note that this inmate has brought an action that was dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1), and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

N.D.N.Y.,1996.
Brazeau v. Travis
Not Reported in F.Supp., 1996 WL 391701 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln
Work-Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe # 1,
Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.
No. Civ.A. 95CV1641RSPDS.

Sept. 22, 1997.
Kenneth Brown, State Court Institute-Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

DECISION AND ORDER

POOLER, J.

*1 The above matter comes to me following a
Report-Recommendation by Magistrate Judge Daniel
Scanlon, Jr., duly filed on April 17, 1997. Following ten
days from the service thereof, the Clerk has sent me the
entire file, including any and all objections filed by the
parties herein.

Plaintiff Kenneth Brown commenced this Section

1983 civil rights action on November 17, 1995. On
February 12, 1996, Magistrate Judge Scanlon ordered
Brown to submit an amended complaint alleging the
specific acts committed by the individuals named as
defendants which Brown claimed violated his
constitutional rights. Brown filed an amended complaint
on March 21, 1996. In his amended complaint, Brown
alleged that defendants violated his rights under the Eighth
and Fourteenth Amendments by failing to process properly
his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact he
had never violated the conditions of his parole. For a more
complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams
made a motion to dismiss for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No.
14, at 2. On August 19, 1996, defendants Bishop, Magee,
Barton, and McMahan made a motion to dismiss the
complaint against them or, in the alternative, for summary
judgment. Dkt. No. 20. On October 17, 1996, defendants
Herman, Stewart, and Stanford made a motion to dismiss
for failure to state a claim. Dkt. No 34. On April 17, 1996,
Magistrate Judge Scanlon recommended that all
defendants' motions to dismiss be granted and that the
complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave
to file a second amended complaint and a copy of his
proposed amended complaint. Dkt. No. 53. I turn first to
the last motion filed, Brown's motion for leave to amend
his complaint a second time.

Brown seeks to file a second amended complaint
"setting forth in detail the personal involvement of each
defendant and how their acts of commission and omission
served to deprive plaintiff of Constitutionally secured
rights." Dkt. No. 53. The district court has discretion
whether to grant leave to amend. *Ruffolo v. Oppenheimer*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

& Co., 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss-the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

*2 Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to

allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a de novo determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for pro se pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. See Camardo v. General Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[FN1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

> FN1. I note, however, that the report-recommendation would survive even *de novo* review.

### CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

### ORDER and REPORT-RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

### BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1-2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5-7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8-10.

In February, 1993, plaintiff was arrested on robbery

charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11-14; Exs. C-J.

*5 Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15-17; Exs. F-I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. See LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing Ortiz v. Cornette, 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their]] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.
E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby
ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart

and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

N.D.N.Y.,1997.

Brown v. Peters
Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Slip Copy, 2013 WL 5730176 (S.D.N.Y.)
**(Cite as: 2013 WL 5730176 (S.D.N.Y.))**

**c**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Alvern JAMES, Plaintiff,
v.
CORRECT CARE SOLUTIONS, Aramark Corporation and Westchester County, Defendants.

No. 13–cv–0019 (NSR).
Oct. 21, 2013.

OPINION AND ORDER

NELSON S. ROMÁN, District Judge.

**\*1** Plaintiff Alvern James ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Correct Care Solutions, LLC ("CCS") and Aramark Correctional Services, LLC FN1 ("Aramark") violated his constitutional rights while he was confined at Westchester County Jail ("WCJ"). Before this Court are the Motions to Dismiss of Defendant Aramark and Defendant CCS pursuant to Federal Rule of Civil Procedure 12(b)(6).

> FN1. Aramark was erroneously sued under the name Aramark Corporation. Def. Aramark Mem. 1.

**I. Background**

For purposes of this motion, this Court accepts as true the facts as stated in Plaintiff's Second Amended Complaint. Defendant CCS administers medical services at WCJ. Def. CCS Mem. 2–3. Defendant Aramark is employed by Westchester County to provide food services at WCJ. Def. Aramark Mem. 3–4. Plaintiff alleges that on October 28, 2012 at approximately 5 a.m., while he was working in the kitchen at WCJ, an Aramark employee told him to move a cart containing several stainless steel pots of hot grits. Second Am. Compl. 3. While pushing the cart, a wheel of the cart became jammed because of a loose "diamond plated

manmade saddle" in the floor and caused the container of hot grits to spill onto Plaintiff's body. *Id.* Some of the hot grits spilled onto Plaintiff's exposed left forearm, which caused Plaintiff's skin to burn. *Id.* Plaintiff alleges that after the grits spilled, his burn went untreated for 5 or 6 hours. FN2 *Id* at 3–4.

> FN2. In Plaintiff's handwritten potion of the complaint, it appears that he states that five hours passed between injury and treatment. Second Am. Compl. 3. However, on the typewritten page of the complaint, Plaintiff states that six hours passed between injury and treatment. *Id* at 4.

According to Plaintiff, he was not seen by medical personnel until 6 hours after the accident, and he was never taken to the hospital. Plaintiff received treatment for his burn at WCJ from CCS employees. Def. CCS Mem. 2. Plaintiff alleges that in the weeks that followed the accident, his bandages were not changed on 6 days: October 30 and 31, and November 1, 15, 16, and 17. He further claims that he was given inadequate medical attention, including being asked to wait while a nurse practitioner ate her lunch before seeing Plaintiff and that medical personnel failed to wear gloves when treating him.

Plaintiff filed a grievance against CCS with the jail on October 31, 2012 in which he claimed that 8 hours passed between his accident and the administration of treatment. CCS Mot. to Dismiss Ex. D. The grievance includes a written statement signed by Plaintiff at 8:25 a.m. on October 28, 2012—less than 4 hours after the accident—in which he states that he had already seen a nurse who "didn't do anything" but told him to "put ice on [the burn]." *Id* at 9. The Grievance report provides that Plaintiff was taken to the nurse again at 8:15 a.m., where the nurse practitioner applied silvedene cream (an anti-microbial cream), dressed Plaintiff's wound, and ordered daily follow-up consultations until the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

burned healed. Also included in the grievance is an officer's report, which recounts Plaintiff as saying that the "injury occurred approx. 0500" and that Plaintiff was "advised to apply ice to affected area" after being escorted to the nurse by another officer.

**\*2** Plaintiff alleges that a kitchen worker [FN3] informed him that Aramark was aware that the floor plate was loose prior to the accident. Plaintiff also states that he was not trained to move the equipment he handled, and that Aramark's equipment was improperly maintained. No internal grievance was filed by Plaintiff at the WCJ with respect to Aramark or the loose floor saddle.

> **FN3.** It is unclear from Plaintiff's complaint whether the named kitchen worker was an Aramark employee.

## II. Legal Standard

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *accord Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which

relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal." Thomas v. Westchester,* No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read *pro se* complaints " 'to raise the strongest arguments that they suggest,' " *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir.2010) (summary order) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006)). *See also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) ("even after *Twombly,* though, we remain obligated to construe a pro se complaint liberally."). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (quoting *Twombly,* 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to rewrite it." *Geldzahler v. New York Medical College,* 663 F.Supp.2d 379, 387 (S.D.N.Y.2009) (internal citations and alterations omitted).

**\*3** The materials that may be considered on a motion to dismiss are those "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007). One way a document may be deemed incorporated by reference is where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith,* 861 F.Supp.2d 220, 224 n. 2 (S.D.N.Y.2012). Especially important to the inquiry of whether to consider a document outside the complaint is whether plaintiff has notice of the docu-

ments outside the complaint. *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("[T]he district court ... could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."). Conversely, when the defendant includes documents that do not fall into these categories, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment ... and afford all parties the opportunity to present supporting material." *Friedl v. City of N .Y.,* 210 F.3d 79, 83 (2d Cir.2000) (internal quotation marks omitted). "In addition, because a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint." *Brooks v. Jackson,* No. 11 Civ. 6627(JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept.23, 2013).

Here, Defendant CCS included Plaintiff's grievance report ("Grievance") as an exhibit to its motion to dismiss. The Grievance was submitted to the warden of the WCJ as part of internal complaint procedure as required under the Prison Litigation Reform Act ("PLRA") before a plaintiff may bring certain actions to court .[FN4] Plaintiff filed the grievance on October 31, 2012 and was denied on November 21, 2012. CCS Mot. to Dismiss Ex. D. The Grievance includes a Grievance Investigation Form, a Special Report, including officers' reports, and a Report of Inmate Injury completed by Plaintiff. *Id.* In his complaint, Plaintiff specifically refers to the grievance by noting that the attempted administrative channels before filing this suit. Although Plaintiff did not include the grievance as an exhibit, Plaintiff nonetheless incorporated the grievance by reference.[FN5] Further, Plaintiff is clearly aware of the existence of the document and all of the information contained within given that he signed the decision to deny his grievance. Second Am. Compl. 6. "Where plaintiff has actual

notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991). Therefore, the court will consider the grievance as incorporated by reference into Plaintiff's complaint in deciding the motion to dismiss.

> FN4. The relevant section of the PLRA, 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

> FN5. The pro forma complaint provides that documents "related to the exhaustion of [ ] administrative remedies" may be attached as exhibits. Second Am. Compl. 7.

**\*4** Defendant Aramark also included documents with its motion to dismiss that are outside the complaint. Namely, Aramark included the agreement between Aramark and Westchester County to provide food services to WCJ. Aramark submitted a motion to dismiss to the court but asks, in the alternative, that the court translate its motion to a motion for summary judgment in the instance that the court considers documents outside the pleadings. The court finds no reason to convert Aramark's motion to dismiss to a motion for summary judgment so that the agreement may be considered. As the agreement is not incorporated by reference nor integral to Plaintiff's claim, it is inappropriate for consideration on a motion to dismiss. *Cortec Indus.,* 949 F.2d at 48. Accordingly, the court will exclude consideration of the additional document included by Aramark and instead, consider only the facts in Plaintiff's complaint and Plaintiff's Grievance.

**III. Defendant CCS's Motion to Dismiss**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Cruel and Unusual Punishments clause of the Eighth Amendment forms the basis of a convicted prisoner's claim that he or she is not being provided adequate medical care.[FN6] *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009). To establish an Eighth Amendment claim arising from inadequate medical treatment, a prisoner must show that there was a "deliberate indifference to [a] serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Under this standard, prison officials are required to ensure that prisoners receive adequate medical attention. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, but "not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006). To determine if the prisoner's Eighth Amendment rights were violated, courts apply a test with a subjective and an objective component. *Id.* The test requires plaintiff to show first, that the alleged deprivation of medical care was "sufficiently serious [and] result[ed] in the denial of the minimal civilized measure of life's necessities," *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal citations omitted), and second, that the prison official acted with a sufficiently culpable state of mind. *Salahuddin,* 467 F.3d at 280.

> FN6. Plaintiff does not specify in his complaint whether he was a pre-trial detainee or a convicted and sentenced prisoner at the time of the alleged conduct. The result, however, is the same. "Although a deliberate indifference claim must be brought under different constitutional provisions depending on the Plaintiff's status-the Eighth Amendment for convicted prisoners and the Fourteenth Amendment for pre-trial detainees-the standard for evaluating claims of deliberate indifference is the same under both amendments." *Thomas v. Westchester County,* No. 12–CV–6718 (CS), 2013 WL 3357171, at *3 n. 9 (S.D.N.Y. July 3, 2013); *see also Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009).

**a. Objective Test**

The first requirement for a showing of an Eighth Amendment violation is that there was a deprivation of care that was sufficiently serious, which is determined by an objective test with two prongs. The first prong is whether the prisoner was actually denied adequate medical care. *Salahuddin,* 467 F.3d at 279. "[T]he prison official's duty is only to provide reasonable care," *id,* and thus, "prison officials who act reasonably [when responding to an inmate] cannot be found liable under the Cruel and Unusual Punishments Clause," *Farmer,* 511 U.S. at 845. Conversely, liability may result where prison officials fail "to take reasonable measures" in response to a medical need. *Id* at 847.

**\*5** The second prong of the objective test is whether the alleged deprivation of medical care was sufficiently serious. *Salahuddin,* 467 F.3d at 279. "[T]he prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (internal quotation marks omitted); *see also Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) ("The standard for Eighth Amendment violations contemplates a condition of urgency that may result in degeneration or extreme pain.") (internal quotation marks omitted). Relevant factors regarding the seriousness of the condition include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.' " *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). The inquiry is "fact-specific" and "must be tailored to the specific circumstances of each case," *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003), meaning that "[i]n cases where the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Salahuddin,* 467 F.3d at 280. For instance, where a prisoner claims that the care provided was adequate but that there was a delay or interruption in administration, courts may "focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Smith,* 316 F.3d at 185.

Plaintiff alleges that he was denied treatment for five or six hours after the initial incident [FN7] and that he was denied proper follow-up treatment by not having his bandages properly changed or his wound properly cleaned. The first allegation is based on the delay in treatment, which requires focusing on the delay rather than the underlying condition alone.

> FN7. In his complaint, Plaintiff alleges that five and six hours passed between his injury and treatment. Second Am. Compl. 3, 4. In his grievance, Plaintiff alleges that the time lapse was 8 hours. Grievance 3. In the grievance, however, plaintiff signed a "Statement Form" on 8:25 a.m. on October 28, 2012, the date of the accident. In his own words, Plaintiff writes that the accident occurred "around 5 am" and that he was taken to the nurse who told him "to put ice on it." CCS Mot. to Dismiss Ex. D, at 11 (non-paginated exhibit). Given that he signed this statement at 8:25 a.m. and stated himself that he had already been seen by the nurse, it is impossible that 5 hours passed between his injury and treatment. However, reading the complaint liberally, it may be the case that Plaintiff is referring to the fact that 5 or 6 hours passed between the accident and when he returned to the nurse for the second time, after a blister had formed on his arm. At the second visit, the nurse wrapped Plaintiff's wound and administered antimicrobial cream. For purposes of this motion, the court will take Plaintiff's claim to refer

to the second visit after his burn formed a blister.

Plaintiff claims that the prison officials were notified immediately after the accident of Plaintiff's injury, but did not adequately respond for several hours. However, by Plaintiff's own admission, he was seen by a nurse shortly after the accident and when it became clear a few hours later that the injury required further treatment, Plaintiff's burn was treated further. Even allowing for a few hours of lapse, "[c]ourts in this Circuit have repeatedly held that pain experienced for even longer than two to three hours does not rise to the level of an Eighth Amendment violation." *Mitchell v. New York City Dept. of Corrections,* No. 10 CV 0292(RJH), 2011 WL 503087, at *4 (S.D.N.Y. Feb.14, 2011) (listing cases where up to 8 to 9 hours of lapse between injury and treatment was not considered serious); *Heredia v. Doe,* 473 F.Supp.2d 462, 464 (S.D.N.Y.2007) (adopting recommendation to dismiss claim where jail staff did not send plaintiff to hospital after slipping and falling on his back until the day after the fall); *Rodriguez v. Mercado,* No. 00–CV–8588, 2002 WL 1997885, at *9 (S.D.N.Y. Aug.28, 2002) (dismissing claim where plaintiff was seen within eight or nine hours of the incident by a nurse who prescribed him Tylenol).

**\*6** The injury Plaintiff sustained encompassed an area "about 8 inches by 6 inches" and caused him extreme pain. Second Am. Compl. 3. The burn was characterized as "third-degree" in the Grievance, although Plaintiff does not allege the severity of his burn in the Complaint. Although this court determined that second degree burns sustained from spilling hot coffee and that resulted in blistering the size of "a couple of fingers" was not serious, *Pressley v. Green,* No. 02 Civ. 5261(NRB), 2004 WL 2978279 (S.D.N.Y. Dec.21, 2004). However, the severity and size of the burn is more significant in this case. While there was no threat of death or degeneration from Plaintiff's injury, Plaintiff did allege that his wound caused him extreme pain, as a serious burn likely would.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Further, "the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." *Smith,* 316 F.3d at 186; *accord Odom v. Kerns,* No. 99–CV–10668, 2008 WL 2463890, at \*7 (S.D.N.Y. June 18, 2008) (cuts and open wounds that eventually became infected could be serious medical needs). If Plaintiff's bandages were not changed on six different occasions in the weeks following his burn as alleged, such failure might result in infection. In fact, in his Grievance, Plaintiff states that his burn was "infested with bacteria from puss discharge not being cleaned with disinfectans [sic] and wrapping has a foul odor." Grievance at 4. Therefore, reading the complaint in the light most favorable to the *pro se* Plaintiff, there is a plausible allegation of a serious injury in Plaintiff's Complaint.

### i. Subjective Test

The second requirement for an Eighth Amendment violation is a subjective test that asks whether the accused Eighth Amendment violator acted with a "sufficiently culpable state of mind." *Salahuddin,* 467 F.3d at 280. In Eighth Amendment prison-conditions cases, a sufficiently culpable state of mind is "deliberate indifference to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks and citation omitted). A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety." *Id* at 837. "This 'deliberate indifference' element is equivalent to the familiar standard of 'recklessness' as used in criminal law." *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002) (quoting *Farmer,* 511 U.S. at 839–40). In order to meet this standard, the "charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Farmer,* 511 U.S. at 836–37. Mere negligence on the part of a prison official is not sufficient to constitute deliberate indifference. *Id* at 835–37.

Even if Plaintiff's burn is a serious medical condition, Plaintiff must also show that "defendants acted or failed to act while actually aware of a substantial risk that serious inmate harm would result." *Farid v. Ellen,* 593 F.3d 233, 248 (2d Cir.2010) (alterations and internal quotation marks omitted). In examining the facts, even in the light most favorable to the Plaintiff, there is no indication that defendant CCS acted with the requisite state of mind. None of CCS's activities could be deemed to reach the level of criminal recklessness. First, the Grievance makes clear that the Plaintiff saw a nurse soon after his accident, and subsequently followed up with a nurse a few hours later. "The bare fact of delay suggests at most negligence, and the Supreme Court in *Estelle* cautioned that mere negligence is insufficient to state a claim under § 1983." *Linden v. Westchester County,* No. 93 Civ. 8373(MBM), 1995 WL 686742, at \*3 (S.D.N.Y.1995). Even if Plaintiff's wounds were not changed on six occasions over the course of three weeks as alleged, there is nothing more in Plaintiff's complaint that makes a plausible claim that defendants knew and consciously disregarded an excessive risk to Plaintiff's health and safety. His burn was bandaged within hours of the accident and treated thereafter.

\*7 At best, Plaintiff makes out a claim for negligence, which has long been held to be insufficient to sustain a claim under the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ( "[A] complaint that a physician has been negligent in ... treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance,* 143 F.3d at 703 ("negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."); *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir.2011) ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness-an act or a failure to act by a prison doctor that evinces a conscious dis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

regard of a substantial risk of serious harm.") (alteration and internal quotation marks omitted). "While not changing [ ] bandages daily may potentially amount to negligence," occasional failure to change bandages, without the accompanying state of mind, is not sufficient to state a claim. *Thomas v. Westchester,* No. 12–CV–6718 (CS), 2013 WL 3357171, at \*5 (S.D.N.Y. July 3, 2013).

Plaintiff also argues that he should have been taken to the hospital to determine the severity of his burns. Failure to seek outside medical advice alone is not sufficient to allege deliberate indifference because "mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998). "The prisoner's right is to medical carenot the type or scope of medical care which he personally desires." *Gonzales v. Wright,* 665 F.Supp.2d 334, 337 (S.D.N.Y.2009) (quoting *U.S. ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970)). CCS employees did not believe that Plaintiff's injury warranted a hospital visit, and even if Plaintiff disagreed, such disaccord is not actionable. Thus, Plaintiff has not plausibly alleged that CCS had the requisite state of mind in order to state a claim for deliberate indifference.

For the reasons stated above, Defendant CCS's motion to dismiss is granted with respect to Plaintiff's Eighth Amendment deliberate indifference claim.

**b. Defendant Aramark's Motion to Dismiss**

Plaintiff also brings this action against Aramark, a food service provider for the WCJ, under 42 U.S.C. § 1983 for "failure to train, no proper protective equipment, old, rundown and not maintained equipment." Second Am. Compl. 5. Plaintiff was working in the kitchen under the instruction of Aramark employees at the time the accident occurred. Plaintiff's claims are that Aramark, through its employees, did not fix a dangerous condition that caused an accident, and that Plaintiff was not properly trained to handle the cart he was asked to push. Reading the complaint liberally, as afforded a

*pro se* plaintiff, it seems that Plaintiff's claim is that Aramark failed to protect Plaintiff from a risk of harm in violation of his Eighth Amendment right to be free from cruel and unusual punishment. With a failure to protect claim, plaintiff must show that he is "incarcerated under conditions posing a substantial risk of harm," *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and that prison officials "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. "Whether ... prison official [s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842. Plaintiff alleges that Aramark, though its employees, was aware of the loose diamond plate in the floor that caused the accident in which he was injured and that Aramark did nothing to remedy the situation. However, the court need not reach the issue of whether Plaintiff properly alleges notice and failure to protect because Aramark is not subject to liability under 42 U.S.C. § 1983 due to the fact that it is not a state actor.

**i. State Actor**

\*8 Aramark, a private defendant, may only be held liable under § 1983 if it acted "under the color" of state law. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. A private defendant may be considered a state actor through the application of one of three tests: the close nexus test, the state

compulsion test, and the public function test.

To find state action under the close nexus test, "there [must be] a sufficiently close nexus between the State and the challenged action of the [ ] entity so that the action of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (internal citation omitted). Being regulated by the state alone does not elevate the status of a non-state actor to that of a state actor. *Id.* This test ensures that constitutional standards apply only to action for which the state is "*responsible,*" so that the entity may fairly be treated as the state. *Id.*

The state compulsion test requires a showing that the state actor has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

To show state action under the public function test, the action must be "so clearly governmental in nature as to amount to a public function." *Jordan v. Federal Bureau of Prisons,* No. 09 Civ. 8561(ALC), 2013 WL 1143617, at *12 (S.D.N.Y. Mar.19, 2013). "The public function test as applied is quite stringent and under the doctrine an extraordinarily low number of functions have been held to be public." *Doe v. Harrison,* 254 F.Supp.2d 338, 343 (S.D.N.Y.2003) (quoting *Ruhlman v. Ulster County Dept. of Social Services,* 234 F.Supp.2d 140, 166 (N.D.N.Y.2002)) (internal quotation marks omitted). "Acts of prison employees will [ ] almost certainly be considered acts of the State whatever the terms of their employment." *Horvath v. Westport Library Ass'n,* 362 F.3d 147, 151 (2d Cir.2004). However, the Supreme Court held that the negligent acts of a private physician working under contract to provide medical services to prison inmates was considered state action. *West v. Atkins,* 487 U.S. 42, 54–57, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Further, "[t]he mere fact that a private actor is paid by state funds, or is hired by a state

actor, is insufficient to establish state action." *Emanuel v. Griffin,* No. 13 Civ. 1806(JMF), 2013 WL 5477505, at *5 (S.D.N.Y. Oct.2, 2013).

**\*9** In addition, a private employer is not liable under § 1983 for injury committed by its employees unless such action is taken in furtherance of an official policy or custom.[FN8] *Monell v. Dep't of Social Serv. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *see also Mora v. Camden County,* Civil No. 09–4183(JBS), 2010 WL 2560680, at *10 (D.N.J. June 21, 2010) ("in order for an entity such as Aramark to be liable under § 1983, Plaintiffs must show that the entity had a relevant policy or custom, and that the policy caused the constitutional violation."). A policy is made "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of County Commis of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

> FN8. "Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses." *Rojas v. Alexander's Dept. Store, Inc.,* 924 F.2d 406, 408 (2d Cir.1990).

There is nothing in the complaint that suggests that Aramark should be treated as a state actor. Further, other than conclusory statements that Aramark was apprised of the condition of the floor, Plaintiff makes no allegations that there was systematic failure on Aramark's part to fix potential hazards in the kitchen area that could harm prisoners in violation of the Eighth Amendment. There are no facts to

make a plausible claim that Aramark's failure to prevent this accident was due, even in part, to the furtherance of a policy or custom.

## IV. State Law Claims

In construing the complaint liberally, Plaintiff's complaint could be read as asserting claims under state law for negligence and/or medical malpractice. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all federal claims over which it had original jurisdiction. Having dismissed all of Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate his state law claims, and thus the Court declines to exercise supplemental jurisdiction over any purported state law claims.

## V. Conclusion

For the foregoing reasons, Defendant Aramark's Motion to Dismiss and Defendants CCS's Motions to Dismiss are GRANTED. The Clerk is respectfully directed to terminate the pending Motions, (Doc. 50 & Doc. 44), and terminate CCS and Aramark from the case.

SO ORDERED:

S.D.N.Y.,2013.
James v. Correct Care Solutions
Slip Copy, 2013 WL 5730176 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.